CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/22/2023

LAURA A. AUSTIN, CLERK
BY:  s/ CARMEN AMOS
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| MICHELE BLAIR, individually and as Guardian and next friend of S.B, a minor; | ) ) ) |
| Plaintiff. | ) ) |
| v. | ) ) ) ) |
| APPOMATTOX COUNTY SCHOOL BOARD, DR. ANNETTE A. BENNETT, Individually and in her official capacity as Superintendent of Appomattox County Public Schools, DENA OLSEN, individually and in her official capacity as school counselor at Appomattox County High School, AVERY VIA, individually and in his official capacity as school counselor at Appomattox County High School, ANEESA KHAN, individually | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No.  **6:23CV00047**

Verified Complaint for Compensatory
and Punitive Damages
(42 U.S.C. § 1983 42 U.S.C. § 1985(3)
Title IX, Intentional Interference with
Parental Relationship, Legal Malpractice,
Intentional Infliction of Emotional Distress)

**JURY TRIAL DEMANDED**

Plaintiff, Michele Blair, individually and as Guardian and next friend of S.B., a minor, by and through her attorneys of record, files this Complaint against Appomattox County School Board, Annette Bennett, Dena Olsen, Avery Via, and Aneesa Khan, Defendants, and in support thereof alleges as follows:

## INTRODUCTION

1.      Plaintiff files this action to vindicate and secure her fundamental parental rights to direct the upbringing of, and physical and mental health decision-making for her daughter, S.B., the fundamental right to familial privacy for Plaintiff and S.B. under the United States and Virginia constitutions, to recover damages for tortious interference with the parent-child relationship,

conspiracy, intentional infliction of emotional distress, professional malpractice, and other rights under Virginia law.

2.      Defendants Appomattox County School Board, Bennett, Olsen and Via and their employees and agents ("Appomattox Defendants") deliberately concealed from Plaintiff information related to her daughter's asserted gender identity and Appomattox Defendants' efforts to affirm S.B.'s asserted discordant gender identity at school, including the use of an alternate name and pronouns and use of opposite sex restroom facilities. Appomattox Defendants further withheld information regarding bullying, verbal, physical and sexual assault that S.B. suffered as a result of her asserted discordant gender identity and use of opposite sex restrooms. As a result of Appomattox Defendants' conduct, Mrs. Blair was deprived of information required to exercise her fundamental parental rights to direct the upbringing of her daughter, including making educational and mental health decisions.

3.      As a further result of the Appomattox Defendants' deliberate concealment of information from Mrs. Blair, she could not provide S.B. with the care she needed to address her distress concerning her sex, the effects of the bullying and the assaults related to her assertion of a discordant gender identity. Deprived of her parents' care and treatment as a result of Appomattox Defendants' conduct, S.B. feared continuing harassment and assaults at school and threats from schoolmates to pursue S.B. and her family at home and ran away. She was found by an adult male who kidnapped S.B., drugged and violently raped her in the backseat of his car. It was this man that she lost her virginity to. He then drove her to Washington, D.C. and left her with two men who raped and drugged her again. These two men drove her to Maryland and left her with a registered sex offender. He kept S.B. in a locked room after raping her and trafficking her to other men.

4.      Law enforcement rescued S.B. from the sex offender's home in Baltimore and notified Mr. and Mrs. Blair to come to Maryland to bring S.B. home. However, before they could reach Maryland and re-unite with S.B., Maryland public defender Aneesa Khan was assigned to represent S.B

5.      Ms. Khan learned that S.B. had said she identified as a boy at school. Ms. Khan began a series of acts aimed at depriving Mrs. Blair of custody of her daughter and keeping S.B. in Maryland to be affirmed in a male identity. Mrs. Blair is informed and believes that Ms. Khan made material misrepresentations to S.B. regarding her parents and convinced the traumatized S.B. to lie about the Blairs' conduct so as to deprive Mrs. Blair of rightful custody of her daughter. Claiming to repeat charges made by S.B., Ms. Khan made false accusations that Mrs. Blair was guilty of abuse and neglect because she failed to support S.B.'s assertion of a male gender identity. On information and belief, aided by Ms. Olsen and Mr. Avery, Ms. Khan facilitated the initiation of child protective services investigations in Virginia and Maryland with the intent of depriving Mrs. Blair of her right to custody of her daughter in the Commonwealth of Virginia. Said investigations concluded with findings that the charges were unsubstantiated.

6.      As a result of Ms. Khan's material misrepresentations and other actions aimed at depriving Mrs. Blair of custody of her daughter, S.B. was placed in the temporary custody of the Maryland Department of Juvenile Services ("DJS"), which, at Khan's insistence, placed S.B. in facilities with adolescent males where she was again sexually assaulted, exposed to drugs, and denied medical and mental health care.

7.      Because of the sexual assaults and other mistreatment S.B. suffered as a result of being separated from her parents in Virginia, S.B. ran away from the Maryland facilities and was again taken by a male adult who transported her to Texas where she was again raped, drugged,

starved, and tortured until law enforcement in Texas rescued her and notified her mother who returned her to Virginia.

8.     These egregious acts resulted from the Appomattox Defendants' deliberate concealment of information regarding S.B.'s discordant gender identity, actions taken at school to affirm that identity, and unaddressed assaults resulting from the affirmed identity that undermined Mrs. Blair's parental authority and prevented her from exercising her right to direct S.B.'s upbringing and provide needed care. Appomattox Defendants' conduct further resulted in Ms. Khan representing S.B. and engaging in further actions, including on information and belief, working with Ms. Olsen and Mr. Avery to deprive Mrs. Blair of rightful custody of her daughter and tortiously interfere with her right to care, custody and control of her daughter.

9.     Plaintiff is bringing this action seeking compensatory and punitive damages under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 20 U.S.C. § 1681, the Virginia Constitution and Virginia statutes. Plaintiff is also seeking attorneys' fees and costs under 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

10.     This action is filed pursuant to 42 U.S.C. § 1983 seeking redress of injuries suffered by Plaintiff from deprivation, under color of state law, of rights secured by the Fourteenth Amendment to the United States Constitution, by the laws of the United States and the laws of Virginia. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a).

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and other applicable law because the events and omissions giving rise to the claims in this action arose in Appomattox County, which is situated within the Western District of Virginia and divisional boundaries of the Lynchburg Division. Venue is also proper in this Court because Defendants Appomattox County

School Board, Bennett, Olsen, and Avery reside or have their principal place of business in this District.

12.      Venue is proper in this Court as to Defendant Khan under Virginia Code § 8.01-330 because she engaged in intentional acts, including material misrepresentations to the court aimed at harming Mrs. Blair and interfering with the custody and care of her daughter in Virginia. On information and belief, Ms. Khan also worked in concert with Virginia residents Olsen and Avery to intentionally interfere with Mrs. Blair's right to custody and control of her daughter in Virginia. Ms. Khan also committed professional malpractice in representing S.B. causing harm to S.B. and her mother as residents of the Commonwealth of Virginia.

## PARTIES

13.      Michele Blair is a resident of Appomattox County, and is the paternal grandmother and adoptive mother of S.B.

14.      S.B. is age 16, a resident of Appomattox County and is the adoptive daughter of Michele and Roger Blair.

15.      Defendant Appomattox County School Board ("School Board") is a body corporate charged with the responsibility of overseeing all practices and policies that govern Appomattox County Public Schools and is vested with all the powers and charged with all the duties, obligations, and responsibilities imposed upon Appomattox County Public Schools, pursuant to Va. Code Ann. § 22.1-28. Pursuant to Va. Code Ann. § 22.1-71, the School Board has the power to sue and be sued.

16.      Defendant Dr. Annette A. Bennett is the Superintendent and chief executive officer of Appomattox County Public Schools. Bennett's duties include oversight and control of

Appomattox County Public Schools, authorizing, executing, enforcing, and implementing the School Board's policies and overseeing the operation and management of the District.

17.    Defendant Dena Olsen is employed by Defendant School Board as a Guidance Counselor at Appomattox County High School. She is sued in her official and individual capacities.

18.    Defendant Avery Via is employed by Hope for Tomorrow, a ministry of Patrick Henry Family Services, as a counselor. At all times relevant to this Complaint, Via worked full time as a counselor at Appomattox County High School pursuant to a contract between Patrick Henry Family Services and the School Board to provide counseling services at district schools. He therefore was acting as an agent for the School Board and under color of state law. He is sued in his official and individual capacities.

19.    Defendant Aneesa Khan is a public defender employed by the City of Baltimore who at all times relevant to this Complaint 1) knew that she was representing a minor who is a citizen and resident of the Commonwealth of Virginia; 2) directed electronic activity into and engaged in other activities in the Commonwealth to engage with Olsen, Via, and others for the purpose of intentionally interfering with the rights of a minor citizen of Virginia to have her education, care and upbringing directed by her parents in Virginia and with Mrs. Blair's right to custody and care of her daughter in the Commonwealth of Virginia; and 3) acted to prevent the lawful return of S.B. to her parents in the Commonwealth of Virginia as provided under the Interstate Compact of Juveniles and other applicable laws. She is sued in her individual capacity.

## FACTUAL ALLEGATIONS

20.     S.B. was adopted by Mrs. Blair and her husband at age 2 after her father died and her mother was unable to care for her. She had spent many months in the foster care system and suffered trauma before being adopted by the Blairs.

21.     S.B. had a history of mental health issues arising from the early childhood trauma. With the onset of puberty in 2019, S.B. began experiencing distress about her body. She was also experiencing depression, eating disorders, engaging in self-harm, and experiencing hallucinations.

22.     S.B. was enrolled in middle school in Appomattox County Public Schools during the 2020-2021 school year.

23.     During the 2020-2021 school year, middle school staff regularly interacted with Mrs. Blair when they noticed that S.B. was having difficulties, including noticing evidence of self-harm. Mrs. Blair was able to act on that information and work with S.B.'s private counselors to therapeutically address the issues.

24.     Toward the end of the 2020-2021 school year, S.B.'s symptoms grew worse and she was admitted for in-patient psychiatric care at CMG Piedmont Psychiatric Center from June 1-8, 2021 in Lynchburg.

25.     When S.B. was enrolled for her freshman year at Appomattox County High School ("ACHS"), Mrs. Blair provided school staff with information from S.B.'s mental health records, including the diagnoses of "major depressive disorder, recurrent episode" and "intentional self-harm by sharp object" and her hospitalization for treatment of those diagnoses.

26.     On August 5, 2021 S.B. underwent a psychiatric evaluation at CMG Piedmont Psychiatric Center at the request of Mrs. Blair.

27.     The psychiatric evaluation included a diagnosis of "severe gender dysphoria" and related symptoms. However, the results of the evaluation were not prepared until August 11, 2021. Mrs. Blair did not receive a copy of the report and was not aware of the diagnosis until several months later when she read it in a court filing by Ms. Khan. She was scheduled to meet with the treatment team on August 27, 2021 to review the evaluation but was unable to because of the events of August 25, 2021.

28.     Therefore, when S.B. started her freshman year at ACHS on August 10, 2021, the school had knowledge of S.B.'s mental health diagnoses and her very recent history of self-harm and in-patient psychiatric hospitalization. Neither Mrs. Blair nor the school had any knowledge of her diagnosis of gender dysphoria at that time.

29.     S.B. was "gender non-conforming" in her dress and interests, liking "emo" style dress featuring band shirts and jeans, and skateboarding. Mrs. Blair supported the unconventional choices and helped S.B. buy "emo" style clothes for school.

30.     S.B.'s peers were not so accepting of her choices and, beginning the second day of school, a group of boys began harassing and threatening her on the school bus.

31.     On August 11, 2021, Ms. Olsen heard from S.B.'s science teacher that she overheard S.B. telling a friend that S.B. wanted to be referred to by a male name and pronouns.

32.     Ms. Olsen met S.B. in the hallway and asked S.B. if she identified as a boy or a girl. S.B. indicated that she identified as a boy. Without any further inquiry, Ms. Olsen told S.B. that if she identified as a boy, she could use the male restroom at school. A few days later Ms. Olsen told S.B. that her female classmates were uncomfortable with S.B. using the girls' bathroom so S.B. should only use the boys' bathroom.

33.     Ms. Olsen did not explore S.B.'s assertion of a male identity. She either did not review or reviewed and disregarded S.B.'s mental health records provided to the school showing diagnoses of depression, self-harm and recent hospitalization before telling S.B., a diminutive teenage girl, to use male privacy facilities at the high school.

34.     Unlike the staff at the middle school who regularly interacted with and notified Mrs. Blair about issues related to S.B.'s mental health, Ms. Olsen did not notify Mrs. Blair about S.B.'s statement that she identified as a boy or Olsen's instructions to S.B. to use the male privacy facilities.

35.     On August 12, 2021, S.B. met with Ms. Olsen and Mr. Via, who was working at ACHS providing counseling services to students. S.B. told them that she identified as a boy and wanted to use a male name, "D," and he/him pronouns. Ms. Olsen and Mr. Via claimed that S.B. told them that her parents were not supportive of her gender identity. However, Mr. and Mrs. Blair did not yet know about S.B.'s asserted male identity and preferred name/pronouns. S.B. had not yet told them, no one from ACHS had informed them and the results of the psychiatric evaluation were not yet provided to them.

36.     On August 12, 2021, S.B. discussed with Ms. Olsen and Mr. Via the bullying and harassment that occurred on the school bus on August 11, 2021. She reported that boys on the bus directed profane epithets at her because she looked like a boy, threatened to sodomize her until she "liked boys," threatened to hold her out of the window of the bus by her hair until she apologized, and made other similar threats. Other students reportedly threatened to shoot her and told her they knew where she lived.

37.     Ms. Olsen and ACHS' Assistant Principal Poldi Moreno reviewed recordings from the bus on August 11, 2021 and allegedly did not view threatening behavior or hear the threats

reported by S.B. on the video recording. However, Ms. Olsen interviewed other students who were on the bus who confirmed the events as relayed by S.B.

38.     Ms. Olsen contacted Mrs. Blair to pick S.B. up from school. Although staff was consistently calling S.B. by the male name "D," S.B. asked Ms. Olsen not to use that name with Mrs. Blair because it might upset her. Ms. Olsen referred to S.B. as "S" when she contacted Mrs. Blair.

39.     During the discussion about the bus incident, Ms. Olsen did not inform Mrs. Blair that S.B. was identifying as a boy named "D" at school, using male pronouns and using the male restroom, or that S.B. was being bullied and sexually harassed by male classmates. She purposely used S.B.'s legal name during the meeting despite using the name "D" when speaking with S.B., deceiving Mrs. Blair about S.B.'s gender discordance. Ms. Olsen further deceived Mrs. Blair by omitting the cause of the bus incident, *i.e.*, S.B.'s gender confusion.

40.     S.B. was subjected to harassment, threats, and assaults in the hallways and the male bathrooms at the high school between August 12 and August 25, 2021. Boys were following behind her in a group, touching her, threatening her with knife violence and rape, and shoving her up against the hallway wall. Despite knowing that S.B. was vulnerable to such threats from the bus incident, Ms. Olsen did not check on S.B.'s welfare until she was notified by administrators that other parents were bringing to the administration's attention incidents occurring in the restrooms.

41.     Instead, Ms. Olsen continued to call S.B. into counseling sessions to discuss her identification as a boy and staff's efforts to affirm and promote that identity. In fact, S.B. commented to Ms. Olsen that she had been called into the counseling office to discuss gender identity eight times during the 12 days school had been in session.

42.     In the sessions, Ms. Olsen encouraged S.B. to "embrace" her male identity. Mr. Via also directed S.B. to internet sites, apps, and social media networks that promoted transgender ideas, indicating she could find friends there.

43.     A child's assertion of a discordant gender identity is a significant mental health concern. Ms. Olsen's and Mr. Via's actions in affirming S.B.'s assertion of a male identity and facilitating social transitioning through use of opposite sex names, pronouns, and opposite sex privacy facilities is an integral part of mental health intervention for gender dysphoria, *Grimm v. Gloucester County School Board*, 972 F.3d 586, 596 (4th Cir. 2020).

44.     Therefore, in meeting and counseling with S.B., Ms. Olsen and Mr. Via were engaging in a form of psychotherapy in violation of District policy regarding counseling services. District Policy I J provides:

> The guidance and counseling program does not include the use of counseling techniques which are beyond the scope of the professional certification or training of counselors, including hypnosis, or other psychotherapeutic techniques that are normally employed in medical or clinical settings and focus on mental illness or psychopathology.

45.     At no point did Ms. Olsen or Mr. Via notify Mrs. Blair that they were counseling her daughter about transgender identities, affirming her as a male, including permitting and encouraging the diminutive (less than 100 pound) teenage girl to use male restrooms despite knowing that S.B. had already been threatened and sexually harassed on the bus for her gender discordance. At no point did Ms. Olsen or Mr. Via inform Mrs. Blair of the existence, nature and extent of the threats and harassment directed at S.B.

46.     On August 23, 2021, Ms. Olsen was informed that school and District administrators had received reports from parents about incidents in the boys' restrooms during the times S.B. was using them as directed by Ms. Olsen.

47.     Plaintiff is informed and believes and based thereon alleges that Superintendent Bennett was aware of the reported incidents but did not direct Ms. Olsen, Mr. Via, or any other ACHS staff to follow the Appomattox County Public School's anti-harassment/bullying policies.

48.     On August 24, 2021, Ms. Olsen and school Counselor Amy Moore met with S.B. and discussed her use of the boys' bathroom. The counselors mentioned "concerns" raised about S.B. using the boys' bathroom. S.B. reported that she was threatened, harassed, and sexually assaulted when she was using the restroom. She made the statement that "all the boys are rapists," and explained that she defined "rape" as inappropriate touching. The counselors and S.B. agreed that S.B. would begin using the nurse's restroom.

49.     Even in light of new reports of S.B. being assaulted and threatened, Ms. Olsen still did not notify Mrs. Blair about S.B.'s assertion of a male identity, use of male names, pronouns, and restrooms at school, the counselors' affirmation of that identity, and the harassment, threats and assaults related to S.B.'s assertion of a male identity.

50.     Notably, Mrs. Blair was notified and had to consent to her daughter receiving a Tylenol at school, yet was never informed about something as consequential as being affirmed as a boy, using the boys' bathroom and being harassed and sexually assaulted at school.

51.     Ms. Olsen asked the School Resource Officer Daniel Gunter to review school surveillance tapes to see if they revealed any safety concerns.

52.     Mrs. Blair was not informed about the surveillance tapes and Officer Gunter's review of them until many months after S.B. had been returned home and then only by reviewing notes obtained by counsel. Mrs. Blair was never told about the result of the review but is informed and believes that Officer Gunter contemporaneously reported that the tapes revealed several male students entering into the boys' bathroom during times that S.B. was in there.

53.     On August 25, 2021, Ms. Olsen and Officer Gunter interrogated S.B. without her parents being notified or permitted to be present.  They implied that S.B. had fabricated the reports of threats of rape from males and pressured her to recant her story. Ms. Olsen told S.B.:

> There was some information you shared from the bus incident that was untrue and there were some parts that were true. When you report information to us it is important to tell us the entire story. You never want to falsify a report. Or when you said yesterday that every boy in the school was a rapist. It is not fair to label every boy in the school a rapist. That is considered defamation of character. If you walked out of here and said every boy is a rapist and a boy called his dad who had the money, he could sue you for defamation of character when you have no basis to call every boy in the school a rapist. I'm not saying there is not an individual in this town that is not that. However, you cannot confidently say and I know and he knows that not every male in this school is a rapist. It is so important to know that you cannot say things because you are upset.

54.      Officer Gunter in a coercive tactic advised S.B. that she could face a civil lawsuit if she continued to accuse innocent males of threatening her.

55.     S.B. defended her statements and told Ms. Olsen and Officer Gunter: "I didn't want to tell you anything about this. Any time you have called me in here for something, I didn't want to tell you about any of it."  She reminded them, "I think you are here to uphold the law because that's the way it is. You are supposed to keep your students safe. If you hear something about rape, you have to do something."

56.     As of June 29, 2021, District Policy JFHA/GBA provides that reports of sexual harassment, which includes, "unwelcome sexual physical contact, unwelcome ongoing or repeated sexual flirtation or propositions, or remarks sexual slurs, leering, epithets, threats, verbal abuse, derogatory comments or sexually degrading descriptions, and graphic comments about an individual's body," all of which were reported by S.B. to Ms. Olsen, Mr. Via and Officer Gunter, must be reported to the District's Title IX compliance officer and be investigated.

57. Instead of alerting the Title IX compliance officer for investigation as required under Policy JFHA/GBA, Ms. Olsen, Mr. Via and Officer Gunter interrogated, intimidated and threatened S.B., who was the sexual harassment victim.

58. Following the interrogations on August 25, 2021, Ms. Olsen informed Mrs. Blair that S.B. had been using the boys' restroom and said only that there were "safety concerns." Ms. Olsen still did not tell Mrs. Blair that S.B. said she identified as a boy and that in response to that school staff had been using a male name and pronouns for S.B. as well as permitting and encouraging her to use the male restroom, or that S.B. was the victim of harassment, threats, and assaults.

59. Plaintiff is informed and believes and based thereon alleges that Defendants Olsen's and Via's concealment of information from Mrs. Blair was part of a District protocol or guideline that directed staff to not inform parents when their children expressed a discordant gender identity and asked to be treated as the opposite sex, using opposite sex names and pronouns and use opposite sex privacy facilities, unless the minor child agrees to disclosing the information. Plaintiff is informed and believes that Superintendent Bennett and members of the School Board were aware of the protocol or guideline, adhered to, and implemented it.

60. On August 25, 2021, Ms. Olsen also told Mrs. Blair that she noticed self-harm injuries on S.B.'s body and claimed she was unaware of the injuries until then. However, S.B.'s mental health records, including documentation of the self-harm injuries, had been provided to the high school before S.B. started school. Mental health records from the middle school included entries from school staff who noticed the injuries and alerted Mrs. Blair, who addressed them through private therapy and hospitalization.

61.     After returning home on August 25, 2021, Mrs. Blair found a hall pass with the name "D" on it and S.B. then told Mrs. Blair that she was identifying as a boy at school. This was the first time that Mrs. Blair learned that S.B. asserted a male identity at school. S.B. then told her mother that a group of male students had "jacked" her up against the wall of the boys' bathroom and threatened her with violence. S.B. said that she was terrified of what they would do. S.B. also told her mother that she would not have been using the boys' bathroom except for the fact that Ms. Olsen instructed her to do so.

62.     Mrs. Blair told S.B. that she did not need to return to school and they would "figure it out in the morning."

63.     S.B. was still frightened and was afraid she and her family would be subjected to more threats or harm. S.B. suffered a psychotic breakdown and decided to run away.

64.     Later that night of August 25, 2021, S.B. left through her bedroom window and ran away. She was abducted and raped by an adult male stranger and subsequently taken across state lines to Washington DC and Maryland and raped and drugged repeatedly by multiple men.

65.     After S.B. ran away, law enforcement found a good-bye note S.B. left for her parents.  They provided her with a copy. The note said, "You've done your job, Jesus loves you." She said "I'm afraid of what is to come if I stayed. Be on your guard. There are bad people around here" S.B. signed the note "All my love."

66.     S.B.'s abductor took her to Washington D.C. where she was trafficked to two brothers who also drugged and raped her. They in turn trafficked her to a man they identified as a "family member" who took S.B. to Baltimore and again drugged and raped her. The F.B.I. and Baltimore law enforcement found S.B. in that man's home on September 2, 2021. He was a registered sex offender.

67.     That night, law enforcement notified Mrs. Blair that S.B. had been rescued and that she could pick her up in Maryland the next day.

68.     Law enforcement did not tell Mrs. Blair that S.B. was being taken to a hospital for a sexual assault examination. Had Mrs. Blair been informed, she would have immediately left for Baltimore to be with S.B. Instead S.B., age 14, had to undergo an intrusive and traumatizing sexual assault examination alone.

69.     Mr. and Mrs. Blair left for Baltimore with the back seat filled with blankets, stuffed animals and treats to comfort S.B. on the ride home.

70.     As S.B. was riding in the police car on the way to a detention center, she asked the police officers to call her mom. She said that she did not want to go to jail and wanted to go home, so she asked if they could call her mom, Michele Blair, and gave them the phone number. The officers said that they could not do that.

71.     S.B., a 14-year-old victim of rape and sex trafficking, was placed in solitary confinement in a juvenile detention center and remained there for five days, believing that she had done something wrong, while Mr. and Mrs. Blair fought to get access to her and bring her home.

72.     Mr. and Mrs. Blair arrived in Maryland the morning after S.B.'s rescue, September 3, 2021, to pick her up, but they were not permitted to see her. Mr. and Mrs. Blair were told S.B. was in isolation. Mrs. Blair's entreaties to see S.B. or talk to her on the phone were refused. Instead, she was told she needed to appear in court that afternoon. Meanwhile S.B., held like a prisoner and treated like an abandoned child, was not told that her parents had arrived to pick her up.

73.     At some point on September 3, 2021, Aneesa Khan was assigned to represent S.B. in juvenile court proceedings in Maryland. Plaintiff is informed and believes that Ms. Khan did

16

not tell S.B. that her parents were there, clearly and intentionally giving S.B. the impression that her parents had not come to get her.

74.    Ms. Khan learned that S.B. had asserted a male identity at school. Plaintiff is informed and believes that when Ms. Khan introduced herself to S.B. on September 3, 2021, she asked S.B. if her parents used a male name and pronouns with her at home. S.B. said no.

75.    Later that afternoon, after waiting eight hours, the Blairs appeared in the Circuit Court of the City of Baltimore, juvenile division before Judge Robert Kershaw. S.B. appeared via video from the detention center. Mrs. Blair told S.B., "I love you, baby," and S.B. replied "I love you too, Nana."

76.    Ms. Khan immediately informed the court that S.B. was a "trans male" who preferred the name "D." and male pronouns and admonished those in the courtroom to follow that protocol.

77.    Judge Kershaw said he understood that S.B. had voluntarily agreed to return home to Virginia with her parents.

78.    Ms. Khan reported that was not the case. Ms. Khan represented to the court that S.B. did not consent to returning home, reported being the victim of emotional and physical abuse from her parents, reported that her parents did not support her when she said she was transgender, and that she was unsafe at home.

79.    Desperate, Mrs. Blair offered to have S.B. return to Virginia to live with another family who S.B. knew and who had arranged for trauma therapy. Ms. Khan stated that the offer was rejected and that S.B. also rejected having her parents transport her to Virginia. Ms. Khan further stated that S.B. said that Mrs. Blair repeatedly told her that she could not be a transgender in her house. This was a blatantly false statement as, due to the Appomattox Defendants'

concealment, Mrs. Blair did not know about S.B.'s transgender identity until she told Mrs. Blair just hours before she ran away.

80.     Based on Ms. Khan's lies and misrepresentations, Judge Kershaw ordered that S.B. remain in Maryland under the temporary custody of the Maryland Department of Juvenile Services ("DJS").

81.     At some point on September 3, 2021, only hours after S.B. had been located, before her rescue and location were known to anyone but law enforcement, Mrs. Blair and Ms. Khan, the Appomattox County Department of Social Services' ("DSS") child abuse hotline received calls from "mandated reporters" who repeated allegations against Mrs. Blair virtually identical to the allegations Ms. Khan had reported to the court.

82.     On September 4, 2021, the Appomattox County child abuse hotline received another call from a "mandated reporter" who claimed that the Blairs had physically abused S.B.

83.     Appomattox County social service officials also received reports that Mrs. Blair had subjected S.B. to "conversion therapy" aimed at changing S.B.'s gender identity. This was factually impossible, as Mrs. Blair did not know about S.B.'s asserted male gender identity until August 25, 2021 shortly before S.B. ran away and therefore could not have subjected her to any form of therapy regarding her gender identity.

84.     The calls and reports to Appomattox County's hotline prompted a child abuse investigation into Mrs. Blair. Mrs. Blair is a long-time volunteer with CASA, Court Appointed Special Advocates, who provide individualized support for children who are victims of abuse and must navigate the juvenile court system. As a CASA volunteer Mrs. Blair had been vetted and trained regarding helping child abuse victims. The investigation by Appomattox County DSS was closed with no findings of abuse or neglect on the part of the Blairs.

85.     School records show that Ms. Khan communicated with Ms. Olsen on at least September 9, 2021 regarding S.B. Plaintiff is informed and believes and based thereon alleges that Ms. Khan communicated with Ms. Olsen and Mr. Via on numerous occasions in September and October 2021 with the intent to elicit testimony and other information for purposes of falsely accusing Mrs. Blair of emotional and physical abuse of S.B. related to S.B.'s asserted gender identity, and thereby interfere with Mrs. Blair's right to custody of her daughter in the Commonwealth of Virginia.

86.     Mr. Via provided Ms. Khan with S.B.'s mental health records, including the August 5, 2021, psychiatric evaluation by CMG Piedmont Psychiatric Center, which included a diagnosis of gender dysphoria. Mrs. Blair was not provided with copies of these records at that time or previously and up to that time did not know of or had not seen the evaluation with the diagnosis of gender dysphoria.

87.     Ms. Khan offered the mental health records provided by Mr. Via as evidence that Mrs. Blair was aware of S.B.'s diagnosis of gender dysphoria and was guilty of emotional abuse and neglect for refusing to affirm S.B.'s identity as a male, and so should be deprived of custody of her daughter.

88.     On September 9, 2021, Michael Thomas, senior probation officer for Appomattox County, filed with the Appomattox County Juvenile and Domestic Relations Court ("J&DR Court") a Requisition for Runaway Juvenile under the Interstate Compact for Juveniles ("ICJ") requesting that Maryland return S.B. to Virginia. The Requisition was signed by the court.

89.     The Commonwealth of Virginia and State of Maryland are member states of the ICJ, which becomes effective when a juvenile runs away from her home state and is found in

another state. The ICJ includes policies and procedures regarding runaway juveniles that the member states agree to follow. The states have specific offices set aside for ICJ matters.

90.     On September 13, 2021, attorneys for the Appomattox County DSS petitioned the J&DR Court to vacate the September 9, 2021 ICJ Requisition. The DSS attorneys alleged that the requisition was the incorrect document to file under the circumstances of the case. The attorneys said the September 9, 2021 requisition was appropriate for when a runaway consents to return to her home state, which was the understanding on September 2, 2021 when S.B. was rescued and told police officers she wanted to go home. The attorneys said they had information that S.B. did not consent to returning to Virginia, which is governed by a different section requiring different documentation. The J&DR court granted the petition.

91.     On September 14, 2021, Mrs. Blair filed a verified Petition related to a Child in Need of Supervision with the Appomattox County J&DR Court, in accordance with the ICJ procedures for runaway juveniles who do not consent to returning home.

92.     On September 20, 2001, the Appomattox County J&DR Court held a hearing on Mrs. Blair's Petition and issued a Requisition for Runaway Juvenile under the ICJ directing that Maryland return S.B. to Virginia.

93.     Meanwhile, the Maryland court had continued its order granting emergency temporary custody to the Maryland DJS pending a September 24, 2021 hearing on Virginia's ICJ Requistion.

94.     Maryland DJS placed S.B. in a group home which housed S.B., a diminutive (less than 100 pounds) 14 year old girl and rape victim with teenage boys. S.B. was not provided with any trauma therapy or medical care for the physical consequences of the many rapes she had suffered while being abused by sex-traffickers. She was enrolled in public school to which she was

permitted to walk from the group home. The court ordered that S.B. be fitted with a GPS tracking device.

95.     While in the group home, S.B. was told by Ms. Khan that her parents no longer wanted her, and that Ms. Khan was going to arrange for S.B. to live with a family in Maryland who would affirm her as a boy. S.B. later told her mother that she missed her but tried to not think about it because she believed her mother did not want her anymore.

96.     Mrs. Blair sent letters and gifts to S.B. during the time that S.B. was in the group home, but S.B. was prevented from receiving them, thus further perpetuating the lie that S.B.'s parents had abandoned her and further interfering with Mrs. Blair's parental relationship with S.B.

97.     S.B. later told her mother that Ms. Khan told S.B. to lie about Mrs. Blair so that Ms. Khan could "win the case." S.B. said that Ms. Khan told her to falsely say, *inter alia*, that her parents abused her, starved her, and made her prepare her own meals beginning at age 8. S.B. also revealed that she was frequently skipping school in Maryland to take drugs and do other things and that Ms. Khan knew about it but said she was not concerned so long as she could win the case.

98.     The Maryland court conducted hearings and continued to order that Maryland DJS retain temporary custody over S.B. until November 10, 2021, when it granted the Virginia ICJ requisition request, with S.B. scheduled to be transported to a residential therapeutic facility in Northern Virginia.

99.     The next day, the public defender's office filed in the Maryland Court of Appeals an Ex Parte Emergency Motion for Injunction pending appeal to stay Judge Kershaw's November 10, 2021 order permitting S.B. to be returned to Virginia. In the motion, the public defender's office claimed that "D.B." endured emotional abuse and neglect by parents due to their failure to recognize "his gender identity." The appeal was filed on November 12, 2021.

100.    Meanwhile, S.B. was being re-traumatized by being subjected to sexual assaults by male residents of the group home and was not receiving trauma therapy or medical care. Mrs. Blair is informed and believes that S.B. learned that the judge's order to return her to Virginia was being appealed by Ms. Khan so that she would have to continue staying in Maryland.

101.    On November 12, 2021 S.B. decided to run away. She removed her tracking device and failed to return to the group home after school.

102.    After S.B. ran away Ms. Khan reached out to S.B. on social media, telling S.B. to contact her because she had "good news."

103.    Ms. Khan also visited the home of one of S.B.'s fellow students in Maryland. In violation of attorney-client confidentiality and perhaps other confidentiality requirements, Ms. Khan told the student details about S.B.'s case and asked for information on S.B.'s whereabouts. Plaintiff is informed and believes that the details about S.B.'s case were also shared at the Maryland high school.

104.    S.B. thought she was meeting a 16-year-old boy who liked skateboarding, whom she had met online, but who was in fact an older man. He was intercepted by law enforcement in Texas, where Sage had traveled to meet him. Sage was abducted by yet another adult male predator who sexually abused, drugged, starved and tortured her until she was rescued by law enforcement on January 24, 2022. Texas law enforcement contacted Mrs. Blair immediately and told her that they were going to take S.B. to the hospital for a sexual assault examination. Mrs. Blair asked them to wait until she could arrive. She immediately flew to Texas and accompanied S.B. during the examination. Texas officials released S.B. to her mother, and they returned to Virginia.

105.     S.B. has undergone intensive in-patient and outpatient therapy to address the multiple incidents of extreme trauma caused by Defendants' acts and omissions. She has been diagnosed with Complex PTSD for which she will likely need therapy for the rest of her life.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983**
**VIOLATION OF SUBSTANTIVE DUE PROCESS FUNDAMENTAL PARENTAL**
**RIGHT TO DIRECT UPBRINGING OF CHILDREN**
**(By Mrs. Blair individually against Appomattox Defendants)**

106.     Plaintiff re-alleges the factual allegations in Paragraphs 1-105 by reference.

107.     At the time of the events described in this Complaint, precedent in the Supreme Court of the United States and the Supreme Court of Virginia had established that the Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of fit parents to direct the upbringing, care, custody, and control of their children. *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville,* 530 U.S. 57, 68 (2000), *Wyatt v. McDermott*, 283 Va. 685 (Va. 2012). Furthermore, Virginia Code § 1-240.1 has memorialized the fundamental right of parents in the Commonwealth since 2013: "A parent has a fundamental right to make decisions concerning the upbringing, education, and care of the parent's child."

108.     At the time of the events described in this Complaint, Supreme Court precedent had established that the fundamental right of parents to direct the upbringing, care, custody, and control of her children under the 14th Amendment to the United States Constitution includes the right of fit parents to direct the medical and mental health decision-making for her children, even if the children disagree with the decision. *Parham v. J. R.*, 442 U.S. 584 (1979).

109.     Defendants have violated and are continuing to violate Plaintiff's fundamental right to make decisions regarding the upbringing, custody, care, and control of her child in implementing a protocol or guideline directing staff, or knowingly permitting staff, to conceal from parents

information regarding their children's assertions of a discordant gender identity and attendant requests to affirm alternate identities with alternate names, pronouns and use of opposite-sex facilities, unless their minor children consent.

**Defendants Olsen's and Via's Acts and Omissions Infringing Plaintiff's Fundamental Rights.**

110.    Defendants Olsen and Via know or should know that the U.S. Constitution, as interpreted by the Supreme Court of the United States and Fourth Circuit and memorialized in Virginia Code § 1-240.1, provides that the fundamental right to direct the care, custody, and control of children resides first in the parent and cannot be infringed by state actors absent a compelling state interest.

111.    Defendants Olsen and Via acted with reckless disregard for Plaintiff's fundamental parental rights by purposefully and intentionally concealing critical information regarding the upbringing, care and control of her daughter. Olsen and Via had evidence of and knew that S.B. had a history of trauma and was hospitalized for mental health issues only two months before the start of school. Despite that evidence, Olsen and Via intentionally concealed from Mrs. Blair that S.B. said she identified as a boy, requested to be addressed by a male name and pronouns, was directed to use the boys' privacy facilities, and was being sexually and physically harassed and assaulted because of identifying as a boy and using the boys' privacy facilities.

112.    By depriving Plaintiff of critical information regarding S.B.'s gender identity and sexual harassment and assaults at school, Defendants Olsen and Via have infringed Plaintiff's fundamental right to direct S.B.'s upbringing in that Plaintiff did not have the information necessary to make reasoned decisions regarding how to respond to S.B.'s announcement of a male gender identity and the sexual harassment she suffered in the way most appropriate for protecting S.B.'s mental health and keeping her safe.

**School Board's and Superintendent's Acts and Omissions Infringing Plaintiff's Fundamental Rights**

113.   Defendants School Board and Superintendent Bennett know or should know that the U.S. Constitution, as interpreted by the Supreme Court of the United States and Fourth Circuit and memorialized in Virginia Code § 1-240.1 provides that the fundamental right to direct the care, custody, and control of children resides first in the parent and cannot be infringed by state actors absent a compelling state interest.

114.   Defendants School Board and Superintendent Bennett acted with reckless disregard for those established fundamental rights by failing to adequately direct, train and/or supervise District administration and staff that the Constitution and Virginia law require that parental rights must be respected when addressing critical issues involving children's mental health and emotional well-being such as a child's assertion of a discordant gender identity and request to be treated as an alternate sex, addressed by alternate names and pronouns, and use opposite-sex privacy facilities.

115.   Defendants School Board and Superintendent Bennett failed to act in keeping with the United States Constitution to protect parental rights by directing that parents are to be informed when a child asserts an alternate gender identity and requests that the identity be affirmed at school. Instead of acting to protect parental rights, the Board and Superintendent have permitted District administrators and staff to conceal important information related to children's assertion of an alternate gender identity and requests for affirmation from parents unless the minor child agrees.

116.   The Board's and Superintendent's acts and omissions leave the issue of whether the fundamental rights of parents to direct the care, custody, and control of her children will be respected through notification of and adherence to parental instructions concerning affirmation of

an alternate gender identity in their children to the unbridled discretion of District administrators and staff.

117.    Defendants School Board and Superintendent Bennett have acted with reckless disregard for Plaintiff's established fundamental rights by failing to adequately train or supervise District staff in the implementation of District Policy IJ and its prohibition on engaging in psychotherapy and requirements for parental notice and consent.

118.    Defendants School Board and Superintendent Bennett have acted with reckless disregard for Plaintiff's established fundamental rights by failing to adequately train or supervise District staff in the implementation of District Policy JFHA/GBA's requirements regarding reporting and investigating incidents of sexual harassment and assault. As a result, Defendants Olsen and Via failed to comply with Policy JFHA/GBA and to notify Mrs. Blair of the incidents of harassment and assault suffered by S.B. to permit Mrs. Blair to provide necessary care and protect S.B. from further injury.

119.    The Appomattox Defendants cannot assert a compelling state interest for disregarding Plaintiff's long-established fundamental constitutional right to direct the upbringing, care, and education of her daughter, and Defendants' *de facto* prohibition against parental notification is not narrowly tailored.

120.    Defendants' violation of Plaintiff's fundamental constitutional rights has caused and continues to cause Plaintiff undue hardship and irreparable harm.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiff' Substantive Due Process Right to Familial Privacy Under the U.S. Constitution)**
**(By Mrs. Blair individually Against Appomattox Defendants)**

121.    Plaintiff incorporates the factual allegations in paragraphs 1-105 by reference as if set forth in full.

122.    The Due Process Clause in the Fourteenth Amendment to the United States Constitution protects the sanctity of the family as an institution deeply rooted in this nation's history and tradition, through which moral and cultural values are passed down to children. *Moore v. East Cleveland*, 431 U.S. 494, 503-504 (1977). The Constitution protects the private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). This right was well established by Supreme Court and Fourth Circuit precedent at the time of the Defendants' conduct as alleged. *Hodge v. Jones,* 31 F.3d 157, 163 (4th Cir. 1994).

**Defendants Olsen's and Via's Acts and Omissions Infringing Plaintiff's Fundamental Right to Familial Privacy.**

123.    Defendants Olsen and Via interfered with Mrs. Blair's fundamental right to familial privacy and invaded the private realm of her family when they intentionally and purposely concealed from Mrs. Blair critical personal information regarding S.B.'s mental health and well-being at school, *i.e.*, that S.B., a 14-year-old girl whom Olsen and Via knew or should have known had a history of trauma and mental health problems, a) said that she identified as a boy; b) wanted to be called by a male name and pronouns; c) was directed by Olsen to use the boys' restroom after a severe bullying event on the bus; d) was counseled by Olsen and Via to embrace a male identity; e) was provided with pro-transgender resources including websites, social media platforms and apps which were frequented by men who sought to harm and traffic vulnerable girls.

124.    Defendants Olsen and Via interfered with Mrs. Blair's fundamental right to familial privacy and invaded the private realm of her family when they intentionally and purposely concealed from Mrs. Blair critical personal information regarding S.B.'s mental health and well-being at school, *i.e.*, that S.B., a 14-year-old girl whom Olsen and Via knew or should have known had a history of trauma and mental health problems, was being sexually and physically harassed and assaulted on the bus, in the hallways and in the boys restroom that Olsen had told S.B. to use,

with no actions being taken by school staff as required by District Policy JFHA/GBA. Defendant Olsen affirmatively placed S.B. in harm's way, instructing a diminutive 14-year-old girl who had previously been threatened with sexual assault, to use the boys' bathroom which would also be used by some of boys who had threatened her.

125.    Defendants Olsen's and Via's deliberate concealment of personal information regarding S.B.'s health and well-being as described *supra* interfered with Plaintiff's intimate personal decisions in that Mrs. Blair was denied the information necessary to evaluate significant events in her daughter's life and make personal family decisions regarding the most appropriate responses in light of S.B.'s health and social history, emotional maturity and the family's shared values of which only Mrs. Blair was intimately aware.

126.    Defendants Olsen's and Via's deliberate concealment of personal information regarding S.B.'s health and well-being as described *supra* severely interfered with the parent/child relationship between Mrs. Blair and S.B. by erecting a wall of secrecy regarding significant personal issues, sowing seeds of distrust regarding her parents' love and concern for her, and finally in leading to a psychotic break which led to S.B. leaving home, being abducted by a stranger she had met online, and being trafficked into Maryland and separated from her parents for several months.

127.    Defendants Olsen's and Via's actions altered the parent/child relationship between Mrs. Blair and S.B., causing S.B. severe emotional distress, physical and psychological trauma, and significant financial hardships.

128.    Defendants Olsen and Via cannot assert a compelling state interest for concealing personal information regarding a 14-year-old girl with significant mental health issues from her parent in violation of Plaintiff's constitutional right to familial privacy. Defendants' actions and

unauthorized involvement in S.B.'s mental health decisions related to gender identity are not narrowly tailored.

**School Board's and Superintendent's Acts and Omissions Infringing Plaintiff's Fundamental Rights**

129.    Defendants School Board and Superintendent Bennett know or should know that the U.S. Constitution, as interpreted by the Supreme Court of the United States and Fourth Circuit, provides that the fundamental right to familial privacy cannot be infringed by state actors absent a compelling state interest.

130.    Defendants School Board and Superintendent Bennett acted with reckless disregard for that established fundamental right by failing to adequately direct, train and/or supervise District administration and staff that the Constitution and Virginia law require that the right to familial privacy must be respected so that when critical personal issues involving children's mental health and emotional well-being such as a child's assertion of a discordant gender identity and request to be treated as an alternate sex, addressed by alternate names and pronouns, and use opposite-sex privacy facilities arise at school parents must be notified.

131.    Defendants School Board and Superintendent Bennett failed to act in keeping with the United States Constitution to protect familial privacy by directing that parents are to be informed when a child asserts an alternate gender identity and requests that the identity be affirmed at school so that the parent can make the intimate private decisions necessary to address the issues. Instead of acting to protect familial privacy rights, the Board and Superintendent have permitted and authorized District administrators and staff to conceal information related to children's assertion of an alternate gender identity and requests for affirmation from parents unless the minor child consents.

132.    The Board's and Superintendent's acts and omissions leave the issue of whether familial privacy will be respected through parental notification of issues concerning affirmation of an alternate gender identity in their children to the unbridled discretion of District administrators and staff.

133.    Defendants School Board and Superintendent Bennett have acted with reckless disregard for Plaintiff's established fundamental right to familial privacy failing to adequately train or supervise District staff in the implementation of District Policy IJ and its prohibition on engaging in psychotherapy and requirements for parental notice and consent.

134.    Defendants School Board and Superintendent Bennett have acted with reckless disregard for Plaintiff's established fundamental right to familial privacy by failing to adequately train or supervise District staff in the implementation of District Policy JFHA/GBA's requirements regarding reporting and investigating incidents of sexual harassment and assault. As a result, Defendants Olsen and Via failed to comply with Policy JFHA/GBA and to notify Mrs. Blair of the incidents of harassment and assault suffered by S.B. to permit Mrs. Blair to make intimate personal decisions that respond to the incidents in the manner most appropriate to S.B.'s personal history, emotional maturity and the family's values of which only Mrs. Blair is aware.

135.    The Appomattox Defendants cannot assert a compelling state interest for disregarding Plaintiff's long-established fundamental right to familial privacy and Defendants' *de facto* prohibition against parental notification is not narrowly tailored.

136.    Defendants' violation of Plaintiff's fundamental rights has caused and continues to cause Plaintiff undue hardship and irreparable harm.

### THIRD CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Violation of S.B.'s Substantive Due Process Right to Familial Privacy Under the U.S. Constitution)
### (By Mrs. Blair on behalf of S.B. Against Appomattox Defendants)

137.    Plaintiff incorporates the factual allegations in paragraphs 1-105 by reference as if set forth in full.

138.    The Due Process Clause in the Fourteenth Amendment to the United States Constitution protects the sanctity of the family as an institution deeply rooted in this nation's history and tradition, through which moral and cultural values are passed down to children. *Moore v. East Cleveland*, 431 U.S. 494, 503-504 (1977). The Constitution protects the private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). This right was well established by Supreme Court and Fourth Circuit precedent at the time of the Defendants' conduct as alleged. *Hodge v. Jones,* 31 F.3d 157, 163 (4th Cir. 1994).

**Defendants Olsen's and Via's Acts and Omissions Infringing S.B.'s Right to Familial Privacy.**

139.    Defendants Olsen and Via interfered with S.B.'s fundamental right to familial privacy and invaded the private realm of her family when they intentionally and purposely concealed from her mother critical personal information regarding S.B.'s mental health and well-being at school, *i.e.*, that S.B., a 14-year-old girl whom Olsen and Via knew had a history of trauma and mental health problems, a) said that she identified as a boy; b) wanted to be called by a male name and pronouns; c) was told by Olsen to use the boys' restroom; d) was counseled by to embrace a male identity; e) was provided with online sites that promote transgender ideas including websites, social media platforms and apps which were frequented by men who sought to harm vulnerable girls.

140.    Defendants Olsen and Via interfered with S.B.'s fundamental right to familial privacy and invaded the private realm of her family when they intentionally and purposely concealed from her mother critical personal information regarding S.B.'s mental health and well-being at school, *i.e.*, that S.B., a 14-year-old girl whom Olsen and Via knew had a history of trauma and mental health problems, was being sexually and physically harassed and assaulted on the bus, in the hallways and in the boys restroom that Olsen had told S.B. to use, with no actions being taken by school staff as required by District Policy JFHA/GBA.

141.    Defendants Olsen's and Via's deliberate concealment of personal information regarding S.B.'s health and well-being, and knowing placement of a teenage girl already threatened with sexual assault into boys' bathrooms with those who threatened her, as described *supra,* interfered with S.B.'s right to have intimate personal decisions made by her parent in that Mrs. Blair was denied the information necessary to evaluate significant events in S.B.'s life and provide S.B. with responses that are most appropriate for her in light of her health and social history, emotional maturity and the family's shared values of which only Mrs. Blair was intimately aware.

142.    Defendants Olsen's and Via's deliberate concealment of personal information regarding S.B.'s health and well-being as described *supra* severely interfered with the parent/child relationship between Mrs. Blair and S.B. by erecting a wall of secrecy regarding significant personal issues, sowing seeds of distrust in S.B. regarding her parents' love and concern for her, and finally in leading to a psychotic break which led to S.B. leaving home, being abducted and sexually abused by a stranger she had met online, and being trafficked into Maryland and separated from her parents for several months.

143.    Defendants Olsen's and Via's actions altered the parent/child relationship between Mrs. Blair and S.B., causing S.B. severe emotional distress, physical and psychological trauma, and significant hardships.

144.    Defendants cannot assert a compelling state interest for concealing personal information regarding a 14-year-old girl with significant mental health issues from her parent in violation of S.B.'s constitutional right to familial privacy. Defendants' actions and unauthorized involvement in S.B.'s mental health decisions related to gender identity are not narrowly tailored.

**School Board's and Superintendent Infringed Plaintiff's Fundamental Rights**

145.    Defendants School Board and Superintendent Bennett know or should know that the U.S. Constitution, as interpreted by the Supreme Court of the United States and Fourth Circuit, provides that the fundamental right to familial privacy cannot be infringed by state actors absent a compelling state interest.

146.    Defendants School Board and Superintendent Bennett acted with reckless disregard for that established fundamental right by failing to adequately direct, train and/or supervise District administration and staff that the Constitution and Virginia law require that the right to familial privacy must be respected so that when critical personal issues involving children's mental health and emotional well-being— such as a child's assertion of a discordant gender identity and request to be treated as an alternate sex, addressed by alternate names and pronouns, and use opposite-sex privacy facilities arise at school— parents must be notified.

147.    Defendants School Board and Superintendent Bennett failed to act in keeping with the United States Constitution to protect familial privacy by directing that parents are to be informed when a child asserts an alternate gender identity and requests that the identity be affirmed at school so that the parent can make the intimate private decisions necessary to address these issues. Instead of acting to protect familial privacy rights, the Board and Superintendent have

permitted and authorized District administrators and staff to conceal information related to children's assertion of an alternate gender identity and requests for affirmation from parents unless the minor child consents.

148.    The Board's and Superintendent's acts and omissions leave the issue of whether familial privacy will be respected through parental notification of issues concerning affirmation of an alternate gender identity in their children to the unbridled discretion of District administrators and staff.

149.    Defendants School Board and Superintendent Bennett have acted with reckless disregard for S.B.'s established fundamental right to familial privacy by failing to adequately train or supervise District staff in the implementation of District Policy IJ and its prohibition on engaging in psychotherapy and requirements for parental notice and consent.

150.    Defendants School Board and Superintendent Bennett have acted with reckless disregard for S.B.'s established fundamental right to familial privacy by failing to adequately train or supervise District staff in the implementation of District Policy JFHA/GBA's requirements regarding reporting and investigating incidents of sexual harassment and assault. As a result, Defendants Olsen and Via failed to comply with Policy JFHA/GBA and to notify Mrs. Blair of the incidents of sexual harassment and assault suffered by S.B. to permit Mrs. Blair to evaluate significant events in S.B.'s life and provide S.B. with responses that are most appropriate for her in light of her health and social history, emotional maturity and the family's shared values of which only Mrs. Blair was intimately aware.

151.    The Appomattox Defendants cannot assert a compelling state interest for disregarding S.B.'s long-established fundamental right to familial privacy and Defendants' *de facto* prohibition against parental notification is not narrowly tailored.

152.    Defendants' violation of S.B.'s right to familial privacy has caused and continues to cause S.B. undue hardship and irreparable harm.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF TITLE IX (20 U.S.C. § 1681, et seq.)**
**(Deliberate Indifference to Sexual Harassment / Hostile Sex Environment)**
**(By Mrs. Blair on behalf of S.B. against Appomattox Defendants)**

153.    Plaintiff incorporates the factual allegations in paragraphs 1-105 by reference as if set forth in full.

154.    Title IX of the Education Amendments of 1972 provides, with limited exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

155.    Title IX damages liability arises against a Title IX recipient when school officials with authority to take corrective action are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to the educational opportunities or benefits provided by the school. The "deliberate indifference" must, at minimum, cause students to undergo harassment or make them "vulnerable" to it.

156.    Appomattox County Public Schools is a recipient of federal financial assistance for purposes of Title IX.

157.    Appomattox County Public Schools officials with authority to take corrective action, in particular, on information and belief, the Board and Superintendent Bennett, and with prior knowledge, were deliberately indifferent to S.B.'s reports, reports by witnesses and video evidence of sexual harassment and assaults on school buses, in hallways and male restrooms causing her to undergo repeated acts of sexual harassment and assault, thereby creating an unsafe,

sexually hostile environment that was severe, pervasive, and objectively offensive, in violation of Title IX in a variety of ways, including 1) failing to adhere to District Policy JFHA/GBA, in the case of the Board and Superintendent Bennett, failing to train and supervise District employees in the implementation of the Policy; 2) failing to take appropriate responsive action, including notifying Mrs. Blair of the initial acts of harassment on August 11, 2023; 3) failing to notify Mrs. Blair of the multiple instances of sexual harassment and assault occurring as a result of Defendants' actions in affirming S.B. as a male and instructing her to use a male restroom; 4) failing to notify the Title IX coordinator: 5) failing to take appropriate action in response to the allegations of harassment and assault aimed at investigating the incidents and preventing future incidents; 6) interrogating S.B. without her parents being notified or present to coerce S.B. to recant her allegations; 7) threatening S.B. with possible criminal and civil liability if she "falsely stated" that male peers harassed and/or assaulted her; 8) failing to consider or disregarding S.B.'s mental health history before affirming her as a male and instructing her to use male restrooms.

158.    Officials with authority to take corrective measures in response to the student-on-student sexual harassment at ACHS, Superintendent Bennett, and Counselor  Olsen in particular, acted with deliberate indifference to the severe, pervasive, and objectively offensive sexual harassment that S.B. suffered and that she reported to ACHS officials by deliberately refusing to affirmatively contact Mrs. Blair  to inform her of the incidents, inform  Mrs. Blair of her and S.B.'s rights under Title IX, provide a timely and equitable response, or take other corrective actions as required by District Policy JFHA/GBA and  state and federal laws.

159.    On information and belief, at all relevant times the School Board and Superintendent Bennett exercised substantial control over the response, and lack of response, to S.B.'s reports of being sexually harassed and assaulted at school.

36

160.   The sexual harassment of S.B. consisting of repeated instances of sexual harassment, threats and assaults based on her male appearance and use of a male name, pronouns and privacy facilities, which went unaddressed by the District was so severe, pervasive and objectively offensive that it deprived S.B. of access to the educational opportunities and benefits provided by Defendant School Board, in that the environment was so unsafe for S.B. that S.B. feared returning to school, that students would harm her and/or her family, and had a psychotic breakdown causing her  to run away to be abducted and sex trafficked by deviant strangers.

161.   As a direct and proximate result of Defendants' deliberate indifference to the severe, pervasive and objectively offensive sexual harassment suffered by S.B. has suffered and will continue to suffer significant physical and psychological trauma, educational disruption, and emotional distress.

**FIFTH CAUSE OF ACTION**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS 42 U.S.C. §1985(3)**
**(By Mrs. Blair Individually against Ms. Olsen, Mr. Via and Ms. Khan)**

162.   Plaintiff incorporates the factual allegations in paragraphs 1-105 by reference as if set forth in full.

163.   Plaintiff is informed and believes and based thereon alleges that Defendants Dena Olsen, Avery Via, and Aneesa Khan conspired to violate Plaintiff's fundamental right to custody and control and to direct the care and upbringing of her daughter, S.B., based on Mrs. Blair's perceived viewpoint about affirming an incongruent gender identity in her daughter.

164.   Plaintiff is informed and believes that on or about September 3, 2021, Ms. Khan learned that S.B. had asserted a discordant gender identity and was being addressed by a male name and pronouns while attending ACHS. Mrs. Blair is informed and believes that while S.B. was in custody in Baltimore Ms. Khan asked S.B. whether S.B.'s parents called her a boy at home,

to which S.B. answered no. Upon hearing that answer, Ms. Khan determined, without taking into account any of S.B.'s mental health history or life circumstances and without having any contact with Mrs. Blair, that Mrs. Blair had an unfavorable viewpoint of S.B.'s assertion of a male gender identity, and that her perceived viewpoint constituted abuse and neglect.

165.    Khan determined that S.B. should not be returned to Mrs. Blair in Virginia and that Mrs. Blair should be deprived of her fundamental parental rights because Ms. Khan perceived that Mrs. Blair (whom Khan had never met nor spoken to) was not sufficiently supportive of S.B.'s assertion of a male gender identity, which Ms. Khan believed constituted abuse and neglect.

166.    On information and belief, Mrs. Blair alleges that on or about September 3, 2021, Ms. Khan communicated with Ms. Olsen and Mr. Via in Virginia regarding S.B.'s assertion of a discordant gender identity and Ms. Khan's belief that Mrs. Blair was not appropriately supporting the alternate identity and thereby being abusive and neglectful. On information and belief, Mrs. Blair alleges that Ms. Olsen and Mr. Via had a meeting of the minds with Ms. Khan that Mrs. Blair was guilty of abuse and neglect for not being sufficiently supportive of S.B.'s assertion of a male gender identity and that they, Khan, Olsen and Via, should act to deprive Mrs. Blair of custody of her daughter because of a perceived disfavored viewpoint regarding affirming S.B.'s assertion of a male identity. Olsen and Via never had a conversation with Mrs. Blair about her views of gender identity in relation to her daughter but assumed and fraudulently asserted abuse by Mrs. Blair.

167.    On information and belief, Mrs. Blair alleges that on or after September 3, 2021, Ms. Olsen and Mr. Via agreed to work with Ms. Khan to provide evidence to the Maryland juvenile court to demonstrate that Mrs. Blair was guilty of neglect and abuse of S.B. because of their perception that Mrs. Blair had and unfavorable viewpoint regarding S.B.'s assertion of a male gender identity.

168.    Ms. Khan, Ms. Olsen and Mr. Via committed several overt acts in furtherance of the conspiracy to deprive Mrs. Blair of her right to custody and control and to direct the upbringing and care of S.B. In particular, Ms. Olsen and Mr. Via volunteered to appear and did appear virtually in Maryland juvenile court and provided false testimony about Mrs. Blair's purported failure to (in their view) properly support her daughter's assertion of a male gender identity, an assertion Mrs. Blair did not know about, thanks to Ms. Olsen's and Mr. Via's concealment of information, until hours before S.B. ran away on August 25, 2021. Despite only speaking with Mrs. Blair briefly on two occasions in August 2021, and not about S.B.'s asserted male gender identity, Mr. Via presented false sworn testimony that Mrs. Blair and her husband had been verbally abusive, emotionally abusive, and unsupportive to S.B. Mr. Via also acted to provide Ms. Khan with mental health records for S.B., including the August 5, 2021 psychiatric evaluation showing a diagnosis of gender dysphoria, a diagnosis of which Mrs. Blair was not aware.

169.    Plaintiff is informed and believes that Ms. Olsen and Mr. Via took other actions in concert with Ms. Khan aimed at depriving Mrs. Blair of her fundamental right to have custody and control and to direct the upbringing and care of S.B., based on Ms. Khan's, Mr. Via's and Ms. Olsen's discriminatory animus toward Mrs. Blair because of their perception of Mrs. Blair's viewpoint concerning the proper response to S.B.'s assertion of a male gender identity. Had Mrs. Blair held the viewpoint that it was in S.B.'s best interest to affirm S.B.'s assertion of a male gender identity without question, then Mrs. Blair would not have been deprived of custody of her daughter.

170.    Ms. Khan committed overt acts in furtherance of the conspiracy in making material misrepresentations to the court regarding abuse and neglect by Mrs. Blair and her husband, by telling S.B., a traumatized rape and sex trafficking victim, to lie about her home life with her

parents, *e.g.,* that they yelled at her for being transgender, they physically hurt her, deprived her of privileges because she was transgender, deprived her of food and forced her to make her own meals, all of which were untrue but were presented to the court for the purpose of furthering the conspiracy to deprive Mrs. Blair of custody of her daughter based on their perception of her disfavored viewpoint regarding affirmation of S.B.'s assertion of a male gender identity.

171.   Ms. Khan committed further overt acts in falsely telling S.B. that her parents no longer wanted her, and that Ms. Khan was going to find S.B. a new family in Maryland that would affirm S.B. as a boy, and in preventing S.B. from receiving letters and gifts from Mrs. Blair while S.B. was being detained in Maryland.

172.   Plaintiff is informed and believes that Ms. Khan took further overt acts in furtherance of the conspiracy of which Plaintiff is presently unaware but were aimed at depriving Mrs. Blair of custody, care, and control of her daughter because of Ms. Khan's discriminatory animus toward Mrs. Blair due to her perceived disfavored viewpoint on affirmation of S.B.'s asserted male identity. Had Mrs. Blair held the viewpoint that S.B.'s asserted male identity should be affirmed without question, then Ms. Khan would not have sought to deprive Mrs. Blair of her fundamental parental rights.

173.   As a result of the overt acts committed in furtherance of the conspiracy by Ms. Khan, Ms. Olsen and Mr. Via, Plaintiff was deprived of custody, care, and control of her daughter from September 3, 2021 to November 10, 2021, when the Maryland court granted Virginia's Requisition under the ICJ. As a further result of the overt acts committed in furtherance of the conspiracy by Ms. Khan, Ms. Olsen and Mr. Via, Plaintiff was deprived of the custody, care, and control of her daughter from November 12, 2021 to January 24, 2022 when S.B. ran away from the abusive Maryland group home believing that her parents did not want her and was raped and

trafficked in Texas. As a result of the deprivation of custody caused by the conspiratorial acts, Mrs. Blair has suffered and will continue to suffer extreme emotional distress, physical injuries, psychological injuries, including a diagnosis of PTSD, diminution of her parental relationship with S.B., and financial losses in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### LEGAL MALPRACTICE
### (By Mrs. Blair on behalf of S.B. v. Defendant Khan)

174.    Plaintiff realleges the factual allegations of Paragraphs 1-105 and incorporates them herein by reference.

175.    Defendant Khan, as an assistant public defender for the City of Baltimore, was assigned to represent the interests of S.B. in the juvenile court action in Maryland, thereby establishing an attorney-client relationship between Ms. Khan and S.B.

176.    As S.B.'s attorney, Ms. Khan had an obligation to act in the best interest of her client whom she knew to be a citizen and resident of Virginia living with parents in Virginia, and who was present in Maryland only as the result of being sex trafficked across state lines.

177.    As S.B.'s attorney, Ms. Khan had a duty of candor to the court to present truthful testimony and evidence related to S.B.'s case so as to achieve a proper, legal, and equitable resolution for S.B.

178.    As S.B.'s attorney, Ms. Khan had a duty of care to her client.

179.    Ms. Khan breached her obligations to S.B. by coercing S.B. to lie about her relationship with her parents, their provision of food and other essential care for S.B., their alleged interactions with S.B. related to her assertion of a male gender identity, their treatment of her physically and emotionally, and other issues related to her home life for the purposes of creating a false narrative of abuse and neglect on the part of Mrs. Blair and her husband so as to prevent Mrs.

Blair from regaining custody and S.B. from receiving the care and comfort of her parents at home in Virginia after traumatic sexual assaults. Ms. Khan knowingly and intentionally presented that false testimony to the Maryland court to secure an order of temporary custody with Maryland DJS so as to prevent Mrs. Blair from regaining custody and returning S.B. to Virginia.

180.    Ms. Khan also knowingly and intentionally presented false testimony from Defendants Olsen and Via regarding Mrs. Blair's and her husband's knowledge of S.B.'s assertion of a male gender identity and a purportedly abusive response to the assertion so as to deprive Mrs. Blair of custody of S.B. in Virginia and deprive S.B. of the care and comfort of her parents after traumatic sexual assaults.

181.    Ms. Khan made other material misrepresentations to the court to the detriment of S.B., including that S.B. did not want to return to her parents, that S.B. was thriving while in the custody of Maryland DJS, that S.B. was performing well in school in Maryland and that S.B. would be harmed if she returned to Virginia.

182.    Ms. Khan breached her duty to S.B. by falsely telling S.B. that her parents did not want her any longer and that Ms. Khan was going to secure a new family for S.B. in Maryland who would affirm S.B. as a boy. She also breached her duty to S.B. by withholding from S.B. letters and gifts from Mrs. Blair in order to further communicate the false message that Mrs. Blair and her husband no longer cared about, cared for, or wanted to be reunited with S.B.

183.    As the direct result of Ms. Khan's breaches of duty, S.B. suffered unjustified separation from her parents and family home in Virginia and 1) as a less than 100 pound teenage girl just rescued from sex trafficking, was committed to the male unit of a group care home with no trauma therapy or medical care required to address effects of sexual assault and other trauma, and 2) was required to wear a GPS monitoring device as if she were charged with a criminal

offense. These actions exacerbated the emotional, psychological and physical injuries S.B. suffered from being the victim of rape and sex trafficking and left S.B. vulnerable to and actually becoming the victim of further trauma.

184.    As a direct result of Ms. Khan's breaches of duty, S.B. suffered significant distress from being convinced that her parents no longer cared for or wanted to be reunited with her so that she would be permanently separated from her family and home in Virginia. This exacerbated the emotional, psychological and physical injuries S.B. had suffered from being the victim of rape and sex trafficking and left S.B. vulnerable to and actually becoming a victim of further trauma.

185.    As a direct result of Ms. Khan's breaches of duty, S.B. was coerced into presenting false testimony to the court to present a false narrative of her parents as being abusive and neglectful and thereby extending S.B.'s time away from her family and home in Virginia. This exacerbated the emotional, psychological and physical injuries S.B. had suffered from being the victim of sex trafficking and left S.B. vulnerable to, and the victim of, further trauma.

186.    As a direct result of Ms. Khan's breaches of duty, S.B. suffered further trauma while in the custody of Maryland DJS and believing that she could not return home because her parents abandoned her, because of Ms. Khan, S.B. ran away and was again abducted and sex trafficked. This exacerbated and added to the emotional, psychological and physical injuries S.B. had suffered from being the victim of sex trafficking.

187.    Ms. Khan breached her duty of confidentiality to S.B. by contacting one of S.B.'s school peers, going to her home and sharing with her details of S.B.'s circumstances in an effort to find S.B., return her to Maryland and keep her away from her parents and home in Virginia. S.B.'s private matters were then shared with others at the school in Maryland.

188.    As the result of Ms. Khan's breaches of duty as S.B.'s attorney, S.B. has suffered and will continue to suffer significant physical, psychological and emotional injuries, including a diagnosis of Complex PTSD for which she will likely need lifetime therapy.

## SEVENTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH PARENTAL RIGHTS
### (By Mrs. Blair individually against Defendants Olsen, Via and Khan)

189.    Plaintiff realleges the factual allegations of paragraphs 1-105 and incorporates them by reference.

190.    A cause of action for intentional interference with parental rights is recognized in Virginia. *Wyatt v. McDermott*, 283 Va. 685, 725 S.E.2d 555 (2012). Virginia law has further codified that: "A parent has a fundamental right to make decisions concerning the upbringing, education, and care of the parent's child." Va. Code § 1-240.1.

191.    Defendants Olsen, Via, and Khan have deliberately and intentionally acted to interfere with Mrs. Blair's fundamental right to make decisions concerning the upbringing, education and care for S.B., as alleged below, and caused Mrs. Blair and S.B. significant physical, psychological, and emotional distress as well as financial hardship.

192.    Mrs. Blair is the parent and legal guardian of S.B. Both Mrs. Blair and S.B. are citizens and residents of the Commonwealth of Virginia. As S.B.'s parent and legal guardian, Mrs. Blair has the right to maintain a parental relationship with S.B. in the Commonwealth of Virginia absent a judicial finding of unfitness. There is no judicial adjudication of unfitness against Mrs. Blair. Claims of abuse and neglect related to Mrs. Blair's alleged lack of support for S.B.'s asserted male identity were dismissed by the Virginia Department of Social Services as unsubstantiated.

193.    Defendants Olsen and Via are outside of the parent-child relationship between Mrs. Blair and S.B. They intentionally interfered with Mrs. Blair's parental relationship with S.B. by concealing from Mrs. Blair, and failing to properly respond to, incidents of sexual harassment,

bullying, threats, and assault beginning on August 11, 2021 and continuing through August 25, 2021. The concealment of said incidents from Mrs. Blair interfered with her parental relationship with S.B. by preventing Mrs. Blair from having the information necessary to exercise her parental rights and provide comfort, care, protection, and support for S.B. and to provide a proper parental response to prevent further incidents.

194.   As a result of Ms. Olsen's and Mr. Via's intentional acts, S.B. felt unsafe at school and feared further threats to her and her family's safety. S.B. ran away and was abducted by a sex trafficker. As a result, Mrs. Blair was deprived of custody of her daughter, who was transported to Maryland where she was further abused and suffered further separation and abuse due to the actions of Ms. Khan as alleged *supra.*

195.   Defendants Olsen and Via further intentionally interfered with Mrs. Blair's parental relationship with S.B. by concealing from Mrs. Blair that 1) S.B. asserted a male gender identity and was permitted to use a male name and pronouns; 2) Ms. Olsen told S.B.to use the boys' bathroom; 3) Ms. Olsen and Mr. Via told S.B. to embrace her male identity; and 4) Mr. Via directed S.B.to online resources aimed at affirming transgender identities. The concealment of said information from Mrs. Blair interfered with her parental relationship with S.B. by preventing Mrs. Blair from knowing about and providing parental guidance and response to S.B.'s assertion of a male gender identity before S.B. ran away from home and was trafficked into Maryland.

196.   Defendants Olsen and Via further intentionally interfered with Mrs. Blair's parental relationship with S.B. by acting in concert with Ms. Khan to create and present false testimony of parental abuse and neglect aimed at depriving Mrs. Blair of custody of S.B. and returning S.B. to Virginia. Ms. Olsen and Mr. Via voluntarily appeared virtually in court in Maryland at Ms. Khan's request and provided false testimony regarding S.B.'s home life and incomplete and inaccurate

testimony regarding the actions taken by District staff prior to August 25, 2021 with the intention of preventing Mrs. Blair from regaining rightful custody of S.B. in Virginia.

197.     As a result of Ms. Olsen's and Mr. Via's actions taken in concert with Ms. Khan, Mrs. Blair was deprived of custody of S.B. for more than five months while S.B. was placed under the custody of Maryland DJS and subjected to further sexual harassment and assault prompting S.B. to run away and be trafficked again, further depriving Mrs. Blair of custody even after a November 10, 2021 order returning S.B. to Virginia.

198.     Ms. Khan is outside of the parent-child relationship between Mrs. Blair and S.B. Ms. Khan acted intentionally and deliberately to interfere with Mrs. Blair's parental relationship with S.B. in a concerted and orchestrated effort to deprive Mrs. Blair of custody of S.B. and to transfer custody to the State of Maryland, and eventually, as she told S.B., to another family in Maryland who would affirm S.B. as a boy.

199.     Ms. Khan's intentional acts taken to interfere with Mrs. Blair's parental relationship with S.B. include, *inter alia*, 1) Telling S.B. that her parents no longer cared for or wanted to be reunited with her and withholding letters and gifts; 2) Coercing S.B. to lie about her home life and relationship with her parents to create a false narrative that Mrs. Blair and her husband were emotionally, mentally and physically abusive to S.B. because of her assertion of a male gender identity; 3) On information and belief, working with third parties to make allegations of abuse and neglect against Mr. and Mrs. Blair to prevent them from regaining custody and returning with S.B. to Virginia; 4) Making material misrepresentations to the court to prevent Mrs. Blair from regaining custody and returning with S.B. to Virginia; 5) Communicating with at least one student peer of S.B. and sharing confidential details of S.B.'s circumstances in order to find S.B. and return

her to custody in Maryland and deprive Mrs. Blair of rightful custody as ordered by the court on November 10, 2021.

200.    As a result of Ms. Khan's actions 1) Mrs. Blair was deprived of custody of S.B. for more than five months while S.B. was placed under the custody of Maryland DJS and subjected to further sexual harassment and assault prompting S.B. to run away and be trafficked again, further depriving Mrs. Blair of custody even after a November 10, 2021 order returning S.B. to Virginia; 2) Mrs. Blair's parental relationship with S.B. was damaged by Ms. Khan's false allegations that Mrs. Blair no longer cared for or wanted to be reunited with S.B. and withholding of Mrs. Blair's letters and gifts; 3) Mrs. Blair's parental relationship with S.B. was damaged by false accusations of abuse and neglect leading to child protective service investigations later closed as unsubstantiated.

201.    As a result of the actions taken by Defendants Olsen, Via, and Khan, Mrs. Blair has suffered and will continue to severe emotional distress, physical injury, psychological injury and significant financial hardship. Mrs. Blair has been diagnosed with PTSD as a result of Defendants' egregious actions and will likely need therapy for the rest of her life to address the symptoms of PTSD.


## EIGHTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (By Mrs. Blair individually against Defendants Olsen, Via, Khan)

202.    Plaintiff realleges the factual allegations of paragraphs 1-105 and incorporates them by reference.

203.    Defendants Olsen and Via knew or should have known that S.B. had a history of trauma and mental health issues, including diagnoses of "major depressive disorder, recurrent episode" and "intentional self-harm by sharp object" for which she was hospitalized in June 2021 just two months before the beginning of the school year, and that during her middle school years she had problems with depression, eating disorders and self-harm, as listed in contact logs.

204.    Despite knowledge of S.B.'s trauma and mental health issues, Ms. Olsen and Mr. Via intentionally concealed from Mrs. Blair that S.B. had asserted a male gender identity, asked to be called by a male name and pronouns, and was told by Ms. Olsen to use the boys' restroom.

205.    Despite knowledge of S.B.'s trauma and mental health issues and of the concealed information regarding S.B.'s assertion of a male gender identity and use of male bathrooms, Ms. Olsen and Mr. Via intentionally concealed from Mrs. Blair that S.B. had experienced sexual harassment, assaults, and threats on the bus and in hallways and the male bathrooms between August 11, 2021 and August 25, 2021.

206.    Despite knowledge of S.B.'s history of trauma and mental health issues, Ms. Olsen and Mr. Via recklessly failed to respond to the incidents of sexual harassment, assaults and threats as required under District Policy JFHA/GBA and state and federal laws.

207.    Defendants Olsen's and Via's concealment of information, failure to comply with policies and laws regarding reporting of sexual harassment and abuse and other actions aimed at withholding information related to S.B.'s health and well-being were extreme and outrageous in the context of the knowledge that S.B. had a history of trauma and mental health issues and had just been released from in-patient psychiatric care prior to the start of school. Defendant Olsen's and Via's concealment was furthermore extreme and outrageous in light of the knowledge that

during middle school years S.B. was having difficulties and District staff had kept Mrs. Blair informed, which permitted S.B. to receive the care that she needed.

208.    As a result of Defendants Olsen's and Via's extreme and outrageous conduct, Mrs. Blair was deprived of the ability to respond to S.B.'s difficulties and in particular to the harassment and threats before they escalated to the point that S.B. feared for her and her family's safety, ran away and was raped and sex trafficked into Maryland, separated from her family and home, causing Mrs. Blair significant emotional distress from not knowing if her daughter was alive or dead and whether she would ever see her again.

209.    The severe emotional distress suffered by Mrs. Blair resulted in significant and substantial physical, emotional and psychological injuries and significant financial hardships. Mrs. Blair is entitled to compensatory and punitive damages for Defendants extreme and outrageous actions.

210.    Ms. Khan recklessly disregarded Mrs. Blair's parental rights and intentionally acted to deprive her of those rights by coercing S.B. to lie to create a false narrative of abuse and neglect on the part of Mrs. Blair and her husband against S.B.

211.    Ms. Khan recklessly disregarded Mrs. Blair's parental rights and intentionally acted to deprive her of those rights by falsely telling S.B. that Mrs. Blair no longer cared for or wanted to be reunited with her, withholding letters and gifts, and promising to find S.B. a Maryland family who would affirm S.B. as a boy.

212.    Ms. Khan acted with reckless disregard for Mrs. Blair's parental rights by making material misrepresentations and offering false testimony to the court regarding Mrs. Blair's fitness as a parent and response to S.B.'s assertion of a male gender identity for purposes of depriving

Mrs. Blair of rightful custody of S.B. and leaving S.B. in the custody of Maryland DJS to further Ms. Khan's plan to continue affirming S.B. as a boy.

213. Ms. Khan's actions were extreme and outrageous in falsely representing Mrs. Blair as an abusive and neglectful parent, causing child protection services in Virginia and Maryland to investigate Mrs. Blair and denying her access to her 14-year-old daughter who was the victim of sex trafficking, being denied therapeutic and medical care, being told she had been abandoned and being placed in a male unit of a group home where she was exposed to drugs, further sexual harassment and assault, all because Ms. Khan believed that S.B. must be affirmed as a male.

214. As a result of Ms. Khan's extreme and outrageous actions intentionally aimed at harming and actually harming Mrs. Blair's parental relationship with S.B., Mrs. Blair suffered and will continue to suffer severe emotional distress that was manifested in physical, mental and emotional injuries and substantial financial and personal hardships, including a diagnosis of PTSD.

215. Mrs. Blair is entitled to compensatory and punitive damages for the extreme and outrageous conduct of Ms. Khan.

**NINTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(By Mrs. Blair on behalf of S.B. against Defendants Olsen, Via, Khan)**

216. Plaintiff realleges the factual allegations of paragraphs 1-105 and incorporates them by reference.

217. Defendants Olsen and Via knew or should have known that S.B. had a history of trauma and mental health issues, including diagnoses of "major depressive disorder, recurrent episode" and "intentional self-harm by sharp object" for which she was hospitalized in June 2021 just two months before the beginning of the school year, and that during her middle school years she had problems with depression, eating disorders and self-harm, as listed in contact logs.

218.    Despite knowledge of S.B.'s trauma and mental health issues, Ms. Olsen and Mr. Via intentionally concealed from Mrs. Blair that S.B. had asserted a male gender identity, asked to be called by a male name and pronouns, and was told by Ms. Olsen to use the boys' restroom.

219.    Despite knowledge of S.B.'s trauma and mental health issues and of the concealed information regarding S.B.'s assertion of a male gender identity and use of male bathrooms, Ms. Olsen and Mr. Via intentionally concealed from Mrs. Blair that S.B. had experienced sexual harassment, assaults, and threats on the bus and in hallways and the male bathrooms between August 11, 2021 and August 25, 2021.

220.    Despite knowledge of S.B.'s history of trauma and mental health issues, Ms. Olsen and Mr. Via recklessly failed to respond to the incidents of sexual harassment, assaults and threats, including failing to notify S.B.'s mother, as required under District Policy JFHA/GBA and state and federal laws.

221.    Defendants Olsen's and Via's concealment of information, failure to comply with policies and laws regarding reporting of sexual harassment and abuse and other actions aimed at withholding information related to S.B.'s health and well-being were extreme and outrageous in the context of the knowledge that S.B. had a history of trauma and mental health issues and had just been released from in-patient psychiatric care prior to the start of school.

222.    As a result of Defendants Olsen's and Via's extreme and outrageous conduct, S.B. was deprived of her mother's care and decision-making regarding how to best respond to S.B.'s difficulties and in particular to the harassment and threats before they escalated to the point that S.B. feared for her and her family's safety, ran away and was raped and sex trafficked into Maryland, separated from her family and home, causing S.B. significant emotional distress from not knowing if she would ever see her parents again.

223.    The severe emotional distress suffered by S.B. resulted in significant and substantial physical, emotional and psychological injuries and significant financial hardships. S.B. is entitled to compensatory and punitive damages for Defendants extreme and outrageous actions.

224.    Ms. Khan intentionally acted to deprive S.B. of her right to have her mother direct her education, care, and upbringing in her family home in Virginia by coercing S.B. to lie to create a false narrative of abuse and neglect on the part of Mrs. Blair and her husband against S.B. in order to retain S.B. in Maryland to be affirmed as a male.

225.    Ms. Khan recklessly disregarded S.B.'s right to have her mother direct her education, care, and upbringing in the family home in Virginia and acted to deprive her of those rights by falsely telling S.B. that Mrs. Blair no longer wanted her, withholding letters and gifts and promising to find S.B. a Maryland family who would affirm S.B. as a boy.

226.    Ms. Khan acted with reckless disregard for S.B.'s right to have her mother direct her education, care, and upbringing in the family home in Virginia by making material misrepresentations and offering false testimony to the court regarding Mrs. Blair's fitness as a parent and response to S.B.'s assertion of a male gender identity for purposes of depriving Mrs. Blair of rightful custody of S.B. and leaving S.B. in the custody of Maryland DJS to further Ms. Khan's plan to continue affirming S.B. as a boy.

227.    Ms. Khan's actions were extreme and outrageous in falsely misrepresenting to S.B., who was traumatized and prevented from seeing her parents, that Mrs. Blair had abandoned her and that S.B. was going to stay in Maryland with a family who would affirm her as a boy.

228.    As a result of Ms. Khan's extreme and outrageous actions intentionally aimed at harming and actually harming S.B.'s relationship with Mrs. Blair, S.B. suffered and continues to suffer severe emotional distress that was manifested in physical, mental and emotional injuries and

resulted in S.B. running away from a believed permanent placement in a male unit of a group home where S.B. was exposed to sexual harassment and assault, and again being sex trafficked.

229.    S.B. is entitled to compensatory and punitive damages for the extreme and outrageous conduct of Ms. Khan.

**PRAYER FOR RELIEF:**

WHEREFORE, Plaintiff prays for relief as follows:

1.    Compensatory damages according to proof;

2.    Punitive damages;

3.    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

4.    For such other and further relief that the Court should deem just and proper.

Dated: August 22, 2023.

/s/Mary E. McAlister
Mary E. McAlister (VA Bar No.76057)
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org

Vernadette R. Broyles (GA Bar No. 593026)*
Ernest G. Trakas (MO Bar 33813)*
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
etrakas@childparentrights.org
*pro hac vice admission pending

Attorneys for Plaintiff

53

## VERIFICATION

I, Michele Blair, am over the age of 18 and the Plaintiff in this action. I declare under penalty of perjury under 28 U.S.C. §1746 that I have read the foregoing Complaint, and the factual allegations contained within, and to the best of my knowledge the factual allegations are true and correct.

Executed on August 21, 2023 at Concord, Virginia.

_____

Michele Blair