IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

MICHELE BLAIR, INDIVIDUALLY AND
AS GUARDIAN AND NEXT FRIEND OF
S.B., A MINOR,

   Plaintiff,

v.                       Case No. 6:23cv00047

APPOMATTOX COUNTY SCHOOL
BOARD, et al.,

   Defendants.

## DENA OLSEN'S BRIEF IN SUPPORT OF MOTION TO DISMISS

## I.      INTRODUCTION

S.B., at 14-years-old, alleges she was sex-trafficked to Maryland and Texas where she was drugged and raped by multiple individuals. S.B. and her[1] guardian, Michele Blair ("Blair"), have undoubtedly experienced and survived a nightmare. Those experiences and related damages, however, are in no way attributable to the Appomattox County School Board ("School Board"), Superintendent Annette Bennett ("Dr. Bennett"), or school guidance counselor Dena Olsen ("Olsen"). The Complaint does not allege any facts to connect their conduct with Plaintiffs' experiences. These defendants are not responsible for the criminal activities of others that caused Plaintiffs' damages.

Simply put, the Complaint does not state a claim against Olsen and should be dismissed with prejudice. Plaintiffs' substantive due process rights were not violated nor does Olsen's conduct "shock the conscience." Moreover, Olsen is entitled to qualified immunity, as the rights

---

[1] The Complaint refers to S.B. by using the pronouns she and her. This brief follows that convention as well.

alleged were not clearly established.  Further, the Complaint does not state a claim against Olsen

for violation of Title IX, as there is no individual liability under that statute.  Nor does the

Complaint state a claim for § 1985 conspiracy, as the facts alleged do not support the existence

of a conspiracy or a class-based discriminatory animus.  Olsen's conduct did not interfere with

Blair's parental rights so as to state a claim for tortious interference.  Finally, the Complaint does

not allege facts to state a claim for intentional infliction of emotional distress.

## II.      ALLEGATIONS

Blair is S.B.'s paternal grandmother and adoptive mother.  (ECF Doc. 1, at ¶ 13.)  S.B. is

currently 16 years old and has a history of mental health issues, including depression, eating

disorders, engaging in self-harm, and experiencing hallucinations.  (*Id.* at ¶¶ 14, 21.)  She was

admitted for inpatient psychiatric care at CMG Piedmont Psychiatric Center in Lynchburg,

Virginia, from June 1-8, 2021.  (*Id.* at ¶ 24.)  She underwent a psychiatric evaluation at Blair's

request on August 5, 2021.  (*Id.* at ¶ 26.)  S.B. was diagnosed with "severe gender dysphoria"[2]

and related symptoms in a report prepared August 11, 2021.  (*Id.* at ¶ 27.)

---

[2] The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5") defines gender dysphoria as marked incongruence between one's experienced/expressed gender and their assigned gender, lasting at least 6 months as manifested by at least two of the following:

1.     A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics);

2.     A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics);

3.     A strong desire for the primary and/or secondary sex characteristics of the other gender;

4.     A strong desire to be of the other gender (or some alternative gender different from one's assigned gender);

5.     A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender); and

S.B. enrolled in Appomattox Public Schools during the 2020-2021 school year.  (*Id.* at ¶ 22.)  At that time, she was in eighth grade.  (*Id.*)  S.B. began the 2021-2022 school year as a freshman at Appomattox County High School ("ACHS") on August 10, 2021.  (*Id.* at ¶¶ 22, 28.)

Plaintiffs allege that on August 11, 2021, S.B. met with Olsen, a guidance counselor at ACHS, in the hallway of the school.  (*Id.* at ¶¶ 17, 32.)  S.B. told Olsen that she identified as a boy and wanted to use a male name and male pronouns.  (*Id.* at ¶¶ 31-32.)  According to Plaintiffs, Olsen told S.B. she could use the boys' restroom at school.  (*Id.* at ¶ 32.)  Plaintiffs further allege that Olsen later told S.B. to only use the boys' restroom.  (*Id.*)  Plaintiffs allege that Olsen did not share this information with Blair.  (*Id.* at ¶ 34.)

Plaintiffs allege that, on August 12, 2021, Olsen and Avery Via ("Via")[3] met with S.B., at which time S.B. told them that her parents were not supportive of her gender identity.  (*Id.* at ¶ 35.)  During this meeting, S.B. shared with Olsen and Via that she experienced bullying and harassment on the school bus on August 11, 2021.  (*Id.* at ¶ 36.)  Olsen and the ACHS Assistant Principal reviewed the bus film from August 11, 2021, which did not substantiate all of S.B.'s report.  (*Id.* at ¶ 37.)  Nevertheless, Olsen contacted Blair to pick up S.B. from school and shared with Blair what had occurred on the school bus.  (*Id.* at ¶ 39.)  At S.B.'s request, Olsen used her female name and female pronouns when communicating with Blair.  (*Id.* at ¶¶ 38-39.)

Plaintiffs allege that S.B. experienced "harassment, threats, and assaults in the hallways and the male bathrooms at the high school between August 12 and August 25, 2021."  (*Id.* at ¶

---

      6.      A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender).

The condition must also be associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning.

[3] Via is a counselor employed by Hope for Tomorrow and provides services to students at ACHS.  (ECF Doc. 1, at ¶ 18.)

40.)  Specifically, "[b]oys were following behind her in a group, touching her, threatening her with knife violence and rape, and shoving her up against the hallway wall."  (*Id.*)

On August 24, 2021, Plaintiffs allege that Olsen met with S.B. and directed S.B. to use the nurse's restroom.  (*Id.* at ¶ 48.)  At this time, S.B. stated "all boys are rapists" and explained that she defined rape as "inappropriate touching."  (*Id.*)  Plaintiffs allege that Blair was not notified of these concerns.  (*Id.* at ¶¶ 49-50.)

On August 25, 2021, Olsen and the School Resource Officer ("SRO Gunter") met with S.B.  (*Id.* at ¶ 53.)  Olsen then informed Blair that S.B. had been using the boys' restroom and there were safety concerns.  (*Id.* at ¶ 58.)  Olsen also informed Blair that she noticed evidence of self-harm on S.B.'s body.  (*Id.* at ¶ 60.)

When S.B. returned home on August 25, 2021, Blair found a hall pass with S.B.'s male name on it.  (*Id.* at ¶ 61.)  S.B. told Blair that she was identifying as a boy at school.  (*Id.*)  S.B. allegedly told Blair that she had been threatened with violence by boys at school and she was afraid of what they would do.  (*Id.* at ¶ 61.)  Blair told S.B. that she did not need to return to school and they would "figure it out in the morning."  (*Id.* at ¶ 62.)  That night S.B. ran away from home.  (*Id.* at ¶ 63.)

S.B. was abducted by an adult male stranger, drugged, raped, and trafficked to Washington D.C.  (*Id.* at ¶ 64.)  She was then taken to Baltimore, where she was located on September 2, 2021.  (*Id.* at ¶ 66.)  Law enforcement contacted Blair on September 2, 2021, and told her that she could pick S.B. up in Maryland on September 3, 2021.  (*Id.* at ¶¶ 68-69, 72.)

S.B. was taken to a juvenile detention center, where she remained for five days.  (*Id.* at ¶ 71.)  On September 3, 2021, S.B. appeared in court via video and was assigned a public defender to represent her—Aneesa Khan ("Khan").  (*Id.* at ¶¶ 72-73, 75.)  Khan informed the court that

S.B. was a "trans male" who used a male name and male pronouns. (*Id.* at ¶ 76.) She represented to the court that S.B. did not consent to returning home, reported being the victim of emotional and physical abuse from her parents, that her parents did not support her being transgender, and that she was unsafe at home. (*Id.* at ¶ 78.) Khan told the court that S.B. told her that Blair repeatedly said S.B. could not be transgender in their house. (*Id.* at ¶ 79.) The court ordered that S.B. remain in Maryland under the custody of the Maryland Department of Juvenile Services ("DJS"). (*Id.* at ¶ 80.) Maryland DJS placed S.B. in a group home with teenage boys and she was enrolled in public school. (*Id.* at ¶ 94.) Plaintiffs allege that S.B. was subjected to sexual assaults by the male residents of the group home and did not receive trauma therapy or medical care. (*Id.* at ¶ 100.)

Khan communicated with Olsen on September 9, 2021, regarding S.B. (*Id.* at ¶ 85.) Plaintiffs allege that they are "informed and believe[]" that Khan communicated with Olsen and Via "on numerous occasions in September and October 2021 with the intent to elicit testimony and other information for purposes of falsely accusing Mrs. Blair of emotional and physical abuse of S.B. related to S.B.'s asserted gender identity . . . ." (*Id.*)

On November 12, 2021, S.B. removed her GPS tracking device and ran away. (*Id.* at ¶ 101.) S.B. thought she was meeting a 16-year-old boy who liked skateboarding—whom she had met online—but actually met an older man who trafficked her to Texas. (*Id.* at 104.) S.B. was rescued by law enforcement on January 24, 2022. (*Id.*) Texas officials released S.B. to Blair, and they returned to Virginia. (*Id.*)

S.B. has received intensive in-patient and outpatient therapy to address the trauma she experienced and has been diagnosed with Complex PTSD. (*Id.* at ¶ 105.)

## III.   ARGUMENT

### A.   Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  To survive a motion to dismiss, the complaint must contain facts that, when taken as true, are sufficient to state a claim to relief that is "plausible on its face."  *Id.* at 678 (internal quotations omitted).  To state a *plausible* claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This is because "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

The law is clear that "in reviewing a Rule 12(b)(6) dismissal, [courts] are not confined to the four corners of the Complaint." *U.S. ex. rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F. 3d 131, 136 (4th Cir. 2014).  The Court may also consider documents integral to the Complaint.  *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  A document is integral to a complaint when the claims "turn on, []or are . . . otherwise based" on the document.  *Id.*  "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach a document to a motion to dismiss the complaint . . . not

only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims." *Spirito v. Peninsula Airport Comm'n,* 350 F. Supp. 3d 471, 486 (E.D. Va. 2018) (citing *Gasner v. County of Dinwiddie,* 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Pursuant to the exhibit-prevails rule, if a Plaintiff "relies upon the documents to form the basis for a claim or a part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 754 (7th Cir. 2002); *Goines,* 882 F.3d at 16. Where the plaintiff incorporates a document upon which her claim is based, or when the Complaint shows that the plaintiff has adopted the contents of the document, it is proper to accept the contents of the documents over conflicting allegations in the Complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 233-35 (4th Cir. 2004).

Here, Plaintiffs' Complaint provides a detailed narrative of the conversations alleged to have taken place during counseling sessions between S.B. and Olsen. (*See* ECF Doc. 1, at ¶¶ 31, 35-38, 46-48, 51, 53, 55, 58, 60.) These quotations could only have been obtained from Olsen's Counseling Notes. As such, Plaintiffs' "quoted" and "relied upon" Olsen's notes, which are attached as Exhibit 1.[4]

**B.     The official capacity claim against Olsen must be dismissed.**

Plaintiffs have sued Olsen in both her individual and official capacity as a Guidance Counselor. An official-capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social*

---

[4] Olsen does not intend to convert her Motion to Dismiss into a Motion for Summary Judgment by referring to documents relied upon or quoted in Plaintiffs' Complaint. To the extent the Court disagrees, Olsen requests that the Court disregard the documents relied upon or quoted in Plaintiffs' Complaint and proceed in reviewing this pleading as a Motion to Dismiss, rather than a Motion for Summary Judgment.

*Services,* 436 U.S. 658, 690 n.55 (1978).  A § 1983 lawsuit brought against an individual in his official capacity is, therefore, duplicative of a claim brought against the municipality.  *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985); *Love–Lane v. Martin,* 355 F.3d 766, 783 (4th Cir. 2004).  Because official capacity suits are redundant when the government entity has also been sued, they should be dismissed.  *See Coffee v. Department of Juvenile Justice*, No. 3:14-cv-262, 2014 WL 3616164, at *1 n.1 (E.D. Va. July 21, 2014) (dismissing official capacity suit as superfluous when entity named as a defendant); *Love-Lane*, 355 F.3d at 784; *Mainstream Loudoun v. Board of Trustees of Loudoun County Library*, 2 F. Supp. 2d 783, 790 (E.D. Va. 1998).  As a result, because Plaintiffs have named the School Board as a defendant in this case, the official capacity claim against Olsen in the First, Second, Third, Fourth, and Fifth Causes of Action should be dismissed.

To the extent the claims in the Seventh, Eighth, and Ninth Causes of Action are against Olsen in her official capacity as a Guidance Counselor, they must also be dismissed.[5]  Claims against Olsen in her official capacity are the same as a suit against the School Board.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 n.8 (4th Cir. 1999); *Kentucky*, 473 U.S. at 165.  The School Board enjoys absolute immunity from actions sounding in tort, even when its employees commit an act of gross negligence or an intentional tort.  *See Kellam v. School Bd. of the City of Norfolk*, 202 Va. 252, 255, 117 S.E.2d 96, 98 (1960); *Niese v. City of Alexandria*, 264 Va. 230, 239, 564 S.E.2d 127, 132 (2002); *Croghan v. Fairfax Cnty. School Bd.*, 59 Va. Cir. 120 (Fairfax 2002); *Pusey v. Riner*, 26 Va. Cir. 321 (Fairfax 1992).  As such, Olsen, in her official capacity, enjoys absolute immunity for allegations of intentional interference with parental rights and

---

[5] The Sixth Cause of Action is only against Khan.

intentional infliction of emotional distress in the Seventh, Eighth, and Ninth Causes of Action, and they should be dismissed.

## C.     The Complaint does not state a substantive due process claim against Olsen (First, Second, and Third Causes of Action).

Plaintiffs' First, Second, and Third Causes of Action assert three substantive due process claims against Olsen: (1) a violation of Blair's right to direct the upbringing of S.B.; (2) a violation of Blair's right to familial privacy; and (3) a violation of S.B.'s right to familial privacy.  (ECF Doc. 1, at ¶¶ 106-52.)  In support of these claims Plaintiffs allege that:

1.     Olsen failed to inform Blair that S.B. identified as a male and requested to be addressed by a male name and pronouns;

2.     Olsen "directed" S.B. to use male restrooms even though S.B. experienced "harassment" when doing so; and

3.     Olsen "counseled" S.B. to "embrace a male identity" and provided S.B. with related resources.

(*Id.* at ¶¶ 111, 123-24, 139.)

Plaintiffs' First, Second, and Third Causes of Action should be dismissed for two reasons.  First, Plaintiffs fail to plausibly allege a violation of their substantive due process rights and that Olsen's conduct was sufficiently egregious or outrageous to violate the Fourteenth Amendment.  Second, Olsen is entitled to qualified immunity because the constitutional rights allegedly violated were not clearly established at the time of Olsen's alleged conduct.

### 1.     The Complaint does not plausibly allege that Olsen violated Blair's liberty interest in the care, custody, and control of S.B.

The Due Process Clause of the Fourteenth Amendment contains a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)).  One such liberty interest is the "right of parents to make

decisions concerning the care, custody, and control of their children." *Id.* at 66. "[T]he precise boundaries of a parent's right to control a child's upbringing and education," however, "is neither absolute nor unqualified." *Bailey v. Va. High Sch. League, Inc.*, 488 F. App'x 714, 716 (4th Cir. 2012) (citation omitted). For example, a parent's interest is "subject to the child's interest in his personal health and safety and the state's interest as parens patriae in protecting that interest." *D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016) (quoting *White ex rel. White v. Chambliss*, 112 F.3d 731, 735 (4th Cir. 1997)).

Because Olsen's alleged conduct is executive, rather than legislative, in nature, the Complaint must plausibly allege that Olsen's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999); *Callahan v. N.C. Dep't of Pub. Safety*, 18 F.4th 142, 149 n.5 (4th Cir. 2021) ("Where executive action is concerned, only the most 'egregious' and 'outrageous' official conduct will do.") (citation omitted); *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 845 (E.D. Va. 2022).

The Complaint alleges that Olsen violated Blair's liberty interest in the care, custody, and control of S.B. in several ways:

1.   Olsen failed to inform Blair that S.B. identified as a male and requested to be addressed as a male;

2.   Olsen "counseled" S.B. to "embrace a male identity" and provided S.B. with related resources; and

3.   Olsen "directed" S.B. to use male restrooms even though S.B. experienced "harassment" when doing so.

(ECF Doc. 1, at ¶ 111.)

First, Olsen's alleged failure to keep Blair informed does not demonstrate conduct so "egregious" and "outrageous" to violate the Fourteenth Amendment. *See Littlejohn v. Sch. Bd.*

10

*of Leon Cnty.*, --- F. Supp. 3d ---, 2022 WL 18670372, at *8 (N.D. Fla. Dec. 22, 2022) (dismissing the plaintiffs' substantive due process claims because the school officials' decision to meet with a student to discuss the student's preferred name and pronouns without informing the student's parents did not shock the conscience).  Indeed, S.B. specifically requested that Olsen not tell Blair that S.B. identified as a male and wished to be address as a male because S.B.'s parents "were not supportive of [S.B.'s] gender identity" and referring to S.B. as a male in front of Blair might "upset" Blair.  (ECF Doc. 1, at ¶¶ 35, 38.)  *See D.B.*, 826 F.3d at 740 (noting that a parent's interest is "subject to the child's interest in his personal health and safety") (quoting *White ex rel. White*, 112 F.3d at 735); *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 622 F. Supp. 3d 118, 130-32 (D. Md. 2022) (determining that parents have no fundamental right "to be promptly informed of their child's gender identity" without regard to "their child's wishes or any concerns regarding the detrimental effect the disclosure may have on that child"), *vacated on other grounds*, 78 F.4th 622 (4th Cir. 2023).[6]

Second, Olsen's alleged decision to "counsel[]" S.B. and provide S.B. with resources also does not demonstrate "egregious" and "outrageous" conduct.  This is especially so given that

---

[6] Contrary to Plaintiffs' allegations that Blair was unaware of S.B.'s male identity until August 25, 2021, (ECF Doc. 1, at ¶¶ 35, 58, 61, 79, 83), and that Blair was unaware of S.B.'s experiences at school, (*id.* at ¶¶ 39, 45, 49, 58), Olsen's Counseling Notes indicate Olsen did, in fact, keep Blair informed and that Blair was aware that S.B. identified as male.

- Blair's "response was is this because [S.B.] is acting like a boy."
- S.B. to Olsen: "No, because I don't want my mom to know I used the men's restroom.  I don't want her to get mad at me about being transgender again at me and I don't want to talk to her about that.  Every time she brings it up it's yelling and stuff."
- Blair to Olsen: "Let me guess, it's about [S.B.] wanting to be a boy isn't it?"
- "Student had asked me to make sure I use the name [S.B.] and pronoun *she* when talking with mom because mom gets so upset about the student choosing to identify as a male."

(Ex. 1, at 3, 5, 7.)

Blair's liberty interest does not entitle her to dictate the nature of S.B.'s school environment.  *See Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1200 (9th Cir. 2005) (holding that "there is no fundamental right of parents to be the *exclusive* provider of information regarding sexual matters to their children, either independent of their right to direct the upbringing and education of their children or encompassed by it"); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395-96 (6th Cir. 2005) ("While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child.").  *See also Leebaert v. Harrington*, 332 F.3d 134, 141 (2d Cir. 2003) (noting that a parent does not have a fundamental right "to tell a public school what his or her child will and will not be taught").

Finally, the allegations that Olsen failed to tell Blair that Olsen instructed S.B. to use male restrooms does not plausibly suggest conduct that shocks the conscience.[7]  In fact, the law of the Fourth Circuit at the time of these events permitted S.B. to use the boys' restroom.  *Grimm v. Gloucester County Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020).

Plaintiffs allege that between August 12 and 25, 2021, S.B. was "subjected to harassment, threats, and assaults" in school hallways and male restrooms.  (ECF Doc. 1, at ¶ 40.)  The Complaint fails to plausibly allege, however, that Olsen had knowledge of the alleged "harassment, threats, and assault" before August 24, 2021—the day before S.B. ran away from home—when Olsen spoke with S.B. concerning allegations of "incidents" in the male restrooms "during the times S.B. was using them."  (*Id.* at ¶¶ 46, 48, 63.)  For example, S.B. apparently never mentioned these alleged "incidents" during any of S.B.'s counseling sessions with Olsen

---

[7] Olsen's Counseling Notes indicate that Olsen did not instruct S.B. to use the male restrooms. (*See* Ex. 1, at 4 ("Counselor expressed concern to [S.B.] about using the boys bathroom and safety concerns").)

that predated the August 24, 2021 conversation.  (*See id.* at ¶ 41.)  After the August 24, 2021 conversation, Olsen and S.B. agreed that S.B. would use the nurse's restroom.  (*Id.* at ¶ 48.) Olsen's alleged knowledge of a single incident on August 11, 2021, of boys on S.B.'s school bus "bullying and harass[ing]" S.B., (*id.* at ¶ 36), is insufficient to plausibly allege that Olsen knew that allegedly instructing S.B. to use the male restrooms would place S.B. in danger.[8]

In short, the Complaint fails to plausibly allege that Olsen's alleged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins*, 195 F.3d at 738.  Blair's allegations instead demonstrate that Olsen responded reasonably to S.B.'s desire to identify as male, to S.B.'s fear that her parents would not approve, and upon learning that other students were "harass[ing]" S.B. in the male restrooms.  Thus, this Court should dismiss the First Cause of Action.[9]

## 2.    The Complaint does not plausibly allege that Olsen violated Plaintiffs' liberty interest in familial privacy.

The substantive component of the Fourteenth Amendment's Due Process Clause also recognizes a liberty interest in familial privacy.  *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir.

---

[8] To the extent the Complaint alleges that Olsen acted negligently by instructing S.B. to use the male restrooms after learning of the August 11 bus incident, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."  *Dean ex rel. Harkness*, 976 F.3d 407, 414 (4th Cir. 2020) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998)).

[9] The First Cause of Action vaguely references Virginia Code § 1-240.1.  (ECF Doc. 1, at ¶ 107.) If Blair is asserting that Olsen violated section 1-240.1, § 1983 is not the appropriate vehicle for such a claim.  *See Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 143 S. Ct. 1444, 1453 (2023) (noting that § 1983 protects *federal* rights).  Because a violation of section 1-240.1 arises under state law, the First Cause of Action must be dismissed to the extent it is premised on a violation of section 1-240.  *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014) ("Conduct violating state law without violating federal law will not give rise to a § 1983 claim.") (citation omitted).  Furthermore, any claim under section 1-240.1 should be dismissed because the statute does not contain a statutory-enforcement provision.  *McArthur*, 610 F. Supp. 3d at 846 (citing *Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 315-16, 787 S.E.2d 855, 858 (2016)).

1994).   This interest protects against state interference with "particularly intimate family decisions" and state action that "sever[s], alter[s], or otherwise affect[s] the parent/child relationship." *Id.*  But an individual's interest in familial privacy, like a parent's interest in the care, custody, and control of his or her child, "is neither absolute nor unqualified." *Renn ex rel. Renn v. Garrison*, 100 F.3d 344, 349 (4th Cir. 1996) (quoting *Hodge*, 31 F.3d at 164). Additionally, because the liberty interest in familial privacy is difficult to define, actionable violations of an individual's interest in familial privacy are strictly construed. *Hodge*, 31 F.3d at 163-64.   As a result, courts recognize a violation of familial privacy only when state action (1) was "directly aimed at the parent-child relationship"; (2) implicated a family's right "to remain together without the coercive interference of the awesome power of the state"; (3) "drove a wedge into [a] family and threatened its very foundation"; or (4) "eroded the family's solidarity internally and impaired the family's ability to function." *Id.* (citations omitted).

Like the First Cause of Action, the Second and Third Cause of Action rely on Olsen's alleged executive action.  (ECF Doc. 1, at ¶¶ 123-24, 139.)  Thus, the Complaint again must plausibly allege that Olsen's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins*, 195 F.3d at 738; *Callahan,* 18 F.4th at 149 n.5 (citation omitted); *McArthur*, 610 F. Supp. 3d at 845.

The allegations underlying the Second and Third Causes of Action essentially mirror the allegations underlying the First Cause of Action.  (*Compare* ECF Doc. 1, at ¶¶ 106, 110-12 *with* ECF Doc. 1, at ¶¶ 121, 123-28, 137, 139-44.)  Those allegations do not allege that Olsen's conduct was aimed directly at S.B.'s relationship with S.B.'s parents.  Plaintiffs also do not plausibly allege that Olsen infringed on their familial privacy with coercive conduct. Furthermore, Plaintiffs fail to plausibly allege that Olsen "drove a wedge" between S.B. and

S.B.'s parents or that Olsen's conduct "eroded the family's solidarity internally." *Hodge*, 31 F.3d at 163. Thus, Plaintiffs fail to plausibly allege that Olsen engaged in any of the four types of conduct recognized as violating an individual's liberty interest in familial privacy. Additionally, Plaintiffs' allegations fail to plausibly allege that Olsen engaged in "egregious" or "outrageous" conduct sufficient to "shock the contemporary conscience." *Hawkins*, 195 F.3d at 738. Plaintiffs' allegations, as noted above, instead demonstrate that Olsen responded reasonably to S.B.'s desire to identify as male, to S.B.'s fear that her parents would not approve, and upon learning that other student were "harass[ing]" S.B. in the male restrooms.

For these reasons, the Second and Third Causes of Action should be dismissed.

### 3.     Olsen is entitled to qualified immunity.

There is a second, independent reason that the First, Second, and Third Causes of Action should be dismissed: Olsen is entitled to qualified immunity because the constitutional rights Olsen allegedly violated were not clearly established at the time of the alleged misconduct.

"When a government official is sued in their individual capacity, qualified immunity protects them 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 682-83 (4th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity, therefore, "protects all but the plainly incompetent or those who knowingly violate the law." *Putman v. Harris*, 66 F.4th 181, 186 (4th Cir. 2023) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (cleaned up)); *Hulbert v. Pope*, 70 F.4th 726, 733 (4th Cir. 2023) (noting that qualified immunity gives officials "breathing room to make reasonable but mistaken judgments") (citation omitted). Qualified immunity is especially

important in the school setting given that school officials have "a difficult job, and a vitally important one." *Morse v. Frederick*, 551 U.S. 393, 409 (2007).

Courts ask two questions in determining whether qualified immunity applies: (1) "whether a constitutional violation occurred" and (2) "'whether the right violated was 'clearly established' at the time of the official's conduct." *Sharpe*, 59 F.4th at 683 (quoting *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010)). Courts may exercise discretion in determining which question to ask first. *Callahan*, 555 U.S. at 236; *see Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Further, courts "prefer questions of qualified immunity to be decided at the earliest possible stage in litigation." *Putman*, 66 F.4th at 186 (quoting *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (cleaned up)).

As to the second question, "[a] right can be clearly established by cases of controlling authority in this jurisdiction or by a consensus of persuasive authority from other jurisdictions." *Sharpe*, 59 F.4th at 683 (citing *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)). For controlling authority, courts look to "decisions of the Supreme Court, [the relevant] court of appeals, and the highest court of the state in which the case arose." *Garrett v. Clarke*, 74 F.4th 579, 584 (4th Cir. 2023) (quoting *Hill v. Crum*, 727 F.3d 312, 322 (4th Cir. 2013) (internal quotation marks omitted)). "In the absence of controlling authority . . . 'a robust consensus' of persuasive authority may demonstrate" a rule that is clearly established. *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-99 (2018)).

But regardless of the source of authority, the "constitutional question" must have been placed "beyond debate." *Kisela*, 138 S. Ct. at 1152 (internal quotation marks and citation omitted). That is, at the time of the government official's alleged misconduct, "the law was sufficiently clear that every reasonable official would understand that what he is doing is

unlawful." *Garrett*, 74 F.4th at 584 (quoting *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted)).  Further, the "[c]learly established" right should not be defined "at a high level of generality." *Kisela*, 138 S. Ct. at 1152 (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)).  The right should instead be defined "with specificity." *Knibbs v. Momphard*, 30 F.4th 200, 223 (4th Cir. 2022).

When defined with the appropriate level of specificity, the question here is whether a reasonable official in Olsen's position would know that her alleged conduct—allegedly not informing Blair that S.B. identified as male and requested to be addressed as male; instructing S.B. to use the male restrooms; and counseling S.B. to "embrace a male identity" and providing S.B. with related resources—violated Blair's liberty interest in the care, custody, and control of S.B. or Plaintiffs' liberty interest in familial privacy.  The answer clearly is no.

At the time of Olsen's alleged conduct, neither a controlling authority nor a "robust consensus" of persuasive authority had placed "beyond debate" that a school official's conduct similar to Olsen's in a similar situation violated the liberty interests at issue in this case.  Indeed, the Fourth Circuit has noted that the parameters of these liberty interests remain undefined.  *See Bailey*, 488 F. App'x at 716; *Hodge*, 31 F.3d at 163-64.  The liberty interest in familial privacy has even been described as "amorphous." *Martin v. Saint Mary's Dep't of Soc. Servs.*, 346 F.3d 502, 506 (4th Cir. 2003) ("The contours of the right to familial integrity may not be 'sufficiently clear' in certain situations, to be deemed 'clearly established' as required."); *Hodge*, 31 F.3d at 163-64.  Not only was the constitutional right not clearly established, but Blair did not have a fundamental right protected by the Fourteenth Amendment at all.  *See John & Jane Parents 1*, 622 F. Supp. 3d at 130 ("I must consider whether the Plaintiffs constitutional rights as parents encompasses a fundamental right to be promptly informed of their child's gender identity, when

it differs from that usually associated with their sex assigned at birth, regardless of their child's wishes or any concerns regarding the detrimental effect the disclosure may have on that child. As explained below, there is no such fundamental right under the Due Process Clause of the Fourteenth Amendment.").

Further, other federal courts have noted the uncertainty in the reach of these liberty interests. *Littlejohn*, 2022 WL 18670372, at *3 (holding that the defendants were entitled to qualified immunity because "the law regarding substantive due process rights afforded to parents is an unsettled area of constitutional law, such that a reasonable person would not be able to know when their conduct is in violation of the law"); *Jackson v. Peekskill City Sch. Dist.*, 106 F. Supp. 3d 420, 428 (S.D.N.Y. 2015) (determining that school counselor who conspired to secretly transport the plaintiffs' daughter from school to a health clinic to obtain birth control was entitled to qualified immunity because it was not clearly established that the counselor violated the plaintiffs' substantive due process rights).

In short, it was not clearly established at the time of the events underlying the Complaint that Olsen's alleged conduct would violate Blair's liberty interest in the care, custody, and control of S.B. or Plaintiffs' liberty interest in familial privacy. In fact, the law of the Fourth Circuit at the time of these events required school officials to permit S.B. to use the boys' restroom. *Grimm*, 972 F.3d 586. For this second, independent reason, this Court should dismiss Plaintiffs' First, Second, and Third Causes of Action.

D. **The Complaint does not state a Title IX claim against Olsen (Fourth Cause of Action).**

The Fourth Cause of Action purports to state a Title IX claim against the Appomattox Defendants. (ECF Doc. 1, at ¶¶ 154-61.) As there is no individual liability under Title IX, the

Fourth Cause of Action does not state a claim against Olsen and must be dismissed with prejudice.

"It is impossible to bring a Title IX action against an individual." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 419 (E.D Va. 1999) (citing *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607 (8th Cir. 1999); *Smith v. Metro. Sch. Dist.*, 128 F.3d 1014 (7th Cir. 1997)).  Title IX conditions receipt of federal funds on a promise not to discriminate.  *Id.*  Because school officials are not recipients of federal funds, they may not be sued in their individual capacity under Title IX.  *Id.* (citing *Kinman*, 171 F.3d at 610).  Therefore, the Fourth Cause of Action must be dismissed as to Olsen in her individual capacity.

## E.   The Complaint does not state a § 1985 conspiracy claim against Olsen (Fifth Cause of Action).

The Fifth Cause of Action purports to state a claim against Olsen, Via, and Khan for conspiracy to violate civil rights under 42 U.S.C. § 1985(3).  Plaintiffs assert that Olsen, Via, and Khan "conspired to violate Plaintiff's fundamental rights to custody and control and to direct the care and upbringing of her daughter, S.B., based on Mrs. Blair's perceived viewpoint about affirming an incongruent gender identity in her daughter."  (ECF Doc. 1, at ¶ 163.)  The Complaint does not state a claim under § 1985(3) and this Cause of Action should be dismissed with prejudice as to Olsen.

Section 1985(3) provides, in relevant part:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages

occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  Thus, a claim for conspiracy to interfere with civil rights requires,

(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Society Without a Name v. Virginia*, 655 F. 3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).  Section 1985 creates no substantive rights, but merely provides a remedy for conspiracies to violate a person's right to equal protection of the laws.  *See United Bros. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983); *Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 373 (1979).  A plaintiff has "a weighty burden to establish a civil rights conspiracy."  *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996).

## 1.   The Complaint does not allege facts to support the existence of a conspiracy.

The first element of a conspiracy to interfere with civil rights is the existence of a conspiracy.  To prove the conspiracy element under § 1985, a plaintiff must plead sufficient facts that would "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."  *Ruttenberg v. Jones*, 283 F. App'x 121, 132 (4th Cir. 2008).  A plaintiff "must show an agreement or a meeting of the minds by [the defendants] to violate the [plaintiff's] constitutional rights."  *Simmons*, 47 F.3d at 1377.  When no concrete factual allegations are offered to support such a meeting of the minds among defendants, the § 1985(3) claim must fail.  *A Society Without a Name*, 47 F.3d at 346-47.  The Fourth Circuit Court of Appeals has "rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy."  *Simmons*, 47 F.3d at 1377.  It has

"specifically rejected § 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.* at 1376-77.

In *A Society Without a Name*, the Fourth Circuit affirmed the magistrate judge's conclusion that the plaintiff had not alleged sufficient facts to support the existence of a conspiracy. *A Society Without a Name*, 655 F.2d at 347. The magistrate judge in that case noted that the plaintiff failed "to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made." *Id.* As such, the allegations were "insufficient to support a meeting of the minds by the defendants." *Id.*

Here, Plaintiffs do not allege any facts to support the bare allegation that Olsen, Via, and Khan conspired to violate Blair's civil rights. The allegations that these defendants "conspired" and "had a meeting of the minds" are conclusory and lack the concrete factual support necessary to plausibly allege a § 1985(3) conspiracy. (*See, e.g.,* ECF Doc. 1, at ¶¶ 163, 166.) Moreover, the purported factual allegations supporting Blair's conspiracy claim are plead "upon information and belief." (*See, e.g., id.* at ¶¶ 166-67, 169.) This falls short of the pleading standard to survive a motion to dismiss. *See Kashdan v. George Mason Univ.*, 70 F.4th 694, 701-02 (4th Cir. 2023).

"Although a plaintiff may initially plead parts of [her] case 'upon information and belief,' [her] allegations may not be wholly conclusory." *Id.* at 701. There must be facts supporting the allegations pleaded upon information and belief. *Id.* at 702. "'[O]n information and belief' in pleading cannot salvage otherwise conclusory allegations." *Parks v. Clarke*, No. 3:22-cv-29, 2023 WL 2760070, at *6 (W.D. Va. Mar. 31, 2023) (citing *Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 36 (D. Md. 2020)). "[A]llegations based 'upon information and belief' must be

supported by 'secondhand information' that provides the plaintiff with a 'good-faith reason' for believing it to be true." *Drzymala v. BAE Sys. Controls, Inc.*, No. 7:21-cv-522, 2022 WL 3971050, at *3 (W.D. Va. Aug. 31, 2022) (quoting *Carter v. Va. Dep't of Game & Inland Fisheries*, No. 3:16cv661, 2018 WL 3614975, at *9 (E.D. Va. July 27, 2018)).

Here, there are no facts to support the allegations plead "on information and belief", which are merely conclusory recitations of the elements of the cause of action. Because the Complaint does not allege facts to support the existence of a conspiracy, the Fifth Cause of Action does not state a claim against Olsen.

### 2.   The Complaint does not allege facts to support a claim of specific class-based invidiously discriminatory animus.

The second element of a claim for civil conspiracy to interfere with civil rights is that the conspirators must be motivated by a specific, class-based invidiously discriminatory animus. *A Society Without a Name*, 655 F.3d at 346. "To meet the requirement of a class-based discriminatory animus, under this section the class must possess the 'discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex.'" *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir 1985) (quoting *Bellamy v. Mason's Stores, Inc.*, 368 F. Supp. 1025, 1028 (E.D. Va. 1973)). Class-based invidiously discriminatory animus requires concrete supporting facts and cannot be inferred. *See Gooden v. Howard County, Md.*, 954 F.2d 960, 970 (4th Cir. 1992). "The other 'class-based animus' language of this requirement has been narrowly construed . . . ." *United Bros. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837 (1983).

Blair has not and cannot allege any facts to support the existence of a class-based discriminatory animus on the part of Olsen or any other Defendant. In fact, she has not alleged that she is a member of any class that would support an action under § 1985(3). *See Bray v.*

*Alexandria Women's Health Clinic*, 506 U.S. 263, 274 (1993) (a viewpoint on abortion was "not the stuff out of which § 1985(3) 'invidiously discriminatory animus' is created"); *Kaetz v. Unknown U.S. Marshals*, No. 21-62, 2021 WL 6808287, at *6 (W.D. Pa. June 7, 2021) (holding that viewpoints and political opinions do not constitute "immutable characteristics" to state a § 1985(3) conspiracy claim). As such, the Fifth Cause of Action does not state a claim against Olsen.

### 3.   Absent a constitutional violation there can be no conspiracy.

Absent an underlying constitutional violation, there can be no § 1985 conspiracy claim. *Wimbush v. Youngkin*, No. 7:22-cv-640, 2023 WL 2505483, at *3 (W.D. Va. Mar. 14, 2023) (citing *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989); *Beztak Land Co. v. City of Detroit*, 298 F.3d 559, 569 (6th Cir. 2002); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001)). As explained *supra* in Part III.C., the Complaint does not plausibly allege an underlying constitutional violation. Therefore, it also does not plausibly allege a conspiracy to violate constitutional rights. The Fifth Cause of Action does not state a claim and should be dismissed with prejudice.

### F.   The Complaint does not state a claim against Olsen for intentional interference with parental rights (Seventh Cause of Action).[10]

The Seventh Cause of Action purports to assert a claim for intentional inference with parental rights against Olsen, Via, and Khan. (ECF Doc. 1, at ¶¶ 190-201.) Blair alleges that Olsen interfered with her "fundamental right to make decisions concerning the upbringing, education, and care for S.B." and caused Plaintiffs "significant physical, psychological, and emotional distress as well as financial hardship." (*Id.* at ¶ 191.) Blair alleges that Olsen interfered with her parental rights by:

---

[10] The Sixth Cause of Action is pled only against Khan.

1.      Concealing and failing to properly respond to sexual harassment, bullying, threats, and assault from August 11, 2021 to August 25, 2021;

2.      Concealing that S.B. asserted a male gender identity and was permitted to use a male name and pronouns;

3.      Concealing that S.B. was told to use the boys' bathroom;

4.      Concealing that S.B. was told to embrace her male identify;

5.      Acting in concert with Khan to create and present false testimony of parental abuse and neglect; and

6.      Voluntarily appearing virtually in court in Maryland and providing false testimony regarding S.B.'s home life and incomplete and inaccurate testimony regarding actions taken by School Board staff before August 25, 2021.

(*Id.* at ¶¶ 193, 195-96.)

Blair alleges that, as a result of these acts she was prevented from "having the information necessary to exercise her parental rights and provide comfort, care, protection, and support for S.B. and to provide a proper parental response to prevent further incidents," as well as "deprived of custody of her daughter" and then "deprived of custody of S.B. for more than five months while S.B. was placed under the custody of Maryland DJS and subjected to further sexual harassment and assault prompting S.B. to run away and be trafficked again, further depriving Mrs. Blair of custody . . ." (*Id.* at ¶¶ 193-94, 197.)

Blair alleges damages in the form of "severe emotional distress, physical injury, psychological injury and significant financial hardship" and asserts that she has "been diagnosed with PTSD as a result of Defendants' egregious actions and will likely need therapy for the rest of her life to address the symptoms of PTSD." (*Id.* at ¶ 201.)

The Supreme Court of Virginia has recognized a cause of action for interference with parental rights.  *See Wyatt v. McDermott*, 283 Va. 685, 692, 725 S.E.2d 555, 558 (2012).  To plead such a claim, however, Blair must assert facts to plausibly allege:

1.    The complaining parent has a right to establish or maintain a parental or custodial relationship with her minor child;

2.    A party outside of the relationship between the complaining parent and her child intentionally interfered with the complaining parent's parental or custodial relationship with her child by removing or detaining the child from returning to the complaining parent, without the parent's consent, or by otherwise preventing the complaining parent from exercising her parental or custodial rights;

3.    The outside party's intentional interference caused harm to the complaining parent's parental or custodial relationship with her child; and

4.    Damages resulted from such interference.

*Id.* at 699, 725 S.E.2d at 562 (quoting *Kessel v. Leavitt*, 204 W. Va. 95, 140, 511 S.E.2d 720, 765 (W. Va. 1998)).  "[T]hese elements presuppose not merely any interference of any kind, but rather, a tortious interference as that concept is summarized both in the text of and the comments to the Restatement."  *Coward v. Wellmont Health Sys.*, 295 Va. 351, 360, 812 S.E.2d 766, 771 (2018)).  The Restatement provides, "One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent."  Restatement 2d Torts § 700.  "[T]he harm lies in the physical interruption of the parent-child relationship, a concrete factor."  *Wyatt*, 283 Va. at 701, 725 S.E.2d at 563.

Here, there is no allegation—nor could there be—that Olsen removed S.B. from Blair or detained S.B. from returning to Blair without Blair's consent or otherwise acted tortiously in preventing Blair from exercising her custodial rights.  Instead, S.B. ran away from home and from Maryland DJS.  (ECF Doc. 1, at ¶¶ 194, 197.)  The Complaint does not factually link

Olsen's alleged conduct with S.B.'s decision to run away, much less the criminal actions of the third parties who trafficked, drugged, and raped S.B.  Blair's allegations that Olsen interfered with her parental relationship by concealing information does not state a claim for tortious interference with parental rights, which requires an intentional interference with the physical relationship between parent and child.  *See, e.g. Wyatt*, 283 Va. at 701, 725 S.E.2d at 563; Restatement 2d Torts § 700.  The Seventh Cause of Action does not state a claim against Olsen and should be dismissed with prejudice.

**G.**   **The Complaint does not state a claim against Olsen for intentional infliction of emotional distress (Eighth and Ninth Causes of Action).**

The Eighth and Ninth Causes of Action purport to assert claims for intentional infliction of emotional distress by Blair and S.B. against Olsen, Via, and Khan.  (ECF Doc. 1, at ¶¶ 202-29.)  Plaintiffs allege that Olsen "intentionally concealed from Mrs. Blair that S.B. had asserted a male gender identity, asked to be called by a male name and pronouns, and was told by Ms. Olsen to use the boys' restroom."  (*Id.* at ¶¶ 204, 218.)   They further allege that Olsen "intentionally concealed from Mrs. Blair that S.B. had experienced sexual harassment, assaults, and threats on the bus and in hallways and the male bathrooms between August 11, 2021 and August 25, 2021."  (*Id.* at ¶¶ 205, 219.)  They allege that Olsen "recklessly failed to respond to the incidents of sexual harassment, assaults and threats as required under District Policy JFHA/GBA and state and federal laws."  (*Id.* at ¶¶ 206, 220.)   According to Plaintiffs, this conduct deprived Blair "of the ability to respond to S.B.'s difficulties and in particular to the harassment and threats before they escalated to the point that S.B. feared for her and her family's safety, ran away and was raped and sex trafficked into Maryland, separated from her family and home" all of which caused Plaintiffs "significant emotional distress."  (*Id.* at ¶¶ 208, 222.)

A cause of action for intentional infliction of emotional distress has four elements that must be proved: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the conduct and the resulting emotional distress; and (4) the emotional distress was severe. *Almy v. Grisham*, 273 Va. 68, 77, 639 S.E.2d 182, 186 (2007) (citing *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974)). The defendant must have intended to cause severe emotional distress. It is insufficient for the conduct of the defendant itself to have been intentional. *See Almy,* 273 Va. at 77-78, 639 S.E.2d at 187. "[A] plaintiff must show that 'the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result.'" *Taylor v. CNA Corp.,* 782 F. Supp. 2d 182, 205 (E.D. Va. 2010) (quoting *Womack v. Eldridge,* 215 Va. 338, 342, 210 S.E.2d 145, 147 (1974)).

Plaintiffs do not allege that Olsen intended to inflict emotional distress. (*See* ECF Doc. 1, at ¶¶ 202-29.) Instead, they allege that Olsen "intentionally concealed" information from Blair and failed to respond to sexual harassment, assaults, and threats. (*Id.* at ¶¶ 205-06, 219-20.) This is insufficient to state a claim for intentional infliction of emotional distress.

Only the most extreme conduct will support recovery for the tort of intentional infliction of emotional distress. To support such a claim, "it is insufficient for a defendant to have acted with an intent which is tortious or even criminal." *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 162 (1991) (internal citations and quotations omitted). "Even if a defendant has intended to inflict emotional distress, or his conduct can be characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort, the requirement of the second prong has not been satisfied." *Id.* (internal citations and quotations

omitted).  Instead, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (internal citations and quotations omitted).

The conduct outlined in the Complaint does not rise to the level necessary to state a claim for intentional infliction of emotional distress.  Plaintiffs assert that the conduct was outrageous and intolerable, not because of the acts themselves, but because of Olsen's alleged "knowledge that S.B. had a history of trauma and mental health issues and had just been released from in-patient psychiatric care prior to the start of school," and "knowledge that during middle school years S.B. was having difficulties and District staff had kept Mrs. Blair informed, which permitted S.B. to receive the care that she needed."  (*Id.* at ¶¶ 207, 221.)  This falls short.  None of Olsen's alleged conduct was sufficiently outrageous to meet this standard.

Furthermore, "severe" distress, for purposes of an intentional infliction of emotional distress action, is when the emotional distress is "extreme," and "so severe that no reasonable person could be expected to endure it."  *Harris v. Kreutzer*, 271 Va. 188, 205, 624 S.E.2d 24, 34 (2006) (quoting *Russo*, 241 Va. at 27, 400 S.E.2d at 163) (internal quotations omitted).  Mere allegations that a plaintiff was "nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work" is not sufficient. *Russo*, 241 Va. at 28, 400 S.E.2d at 163; *see also Harris*, 271 Va. at 205, 624 S.E.2d at 34 (allegations of nightmares, difficulty sleeping, extreme loss of self-esteem and depression requiring psychological treatment and counseling, mortification, humiliation, shame, disgrace, and injury to reputation were not sufficient to allege severe distress for the purposes of a claim of intentional infliction of emotional distress).

The Complaint alleges only that Plaintiffs suffered "severe emotional distress" resulting in "significant and substantial physical, emotional and psychological injuries and significant financial hardships."  (ECF Doc. 1, at ¶¶ 201, 223.)  The Complaint alleges further that Blair "has been diagnosed with PTSD as a result of Defendants' egregious actions and will likely need therapy for the rest of her life to address the symptoms of PTSD."  (*Id.* at ¶ 201.)  These conclusory allegations do not plausibly allege the severe distress resulting from Olsen's alleged conduct required to state a claim for intentional infliction of emotional distress.  Moreover, the Complaint does not factually connect Olsen's alleged conduct to S.B.'s decision to run away, much less to the criminal actions of the third parties who trafficked, drugged, and raped S.B.  There is no casual connection.

The Eighth and Ninth Causes of Action should be dismissed with prejudice as to Olsen.

## IV.   CONCLUSION

For all of the foregoing reasons, Dena Olsen, by counsel, respectfully requests that this Court grant her motion to dismiss and dismiss the Complaint against her in its entirety and with prejudice.

**DENA OLSEN,**

By Counsel

 s/Melissa Y. York
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Counsel for Dena Olsen
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com

## C E R T I F I C A T E

I hereby certify that on the 20th day of September, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mary E. McAlister, Esq., VSB No. 76057
Child & Parental Rights Campaign, Inc.
P.O. Box 637
Monroe, VA 24574
770-448-4525 - Phone
mmcalister@childparentrights.org

Vernadette R. Broyles, Esq., VSB No. GA 593026
Ernest G. Trakas, Esq., VSB No. MO 33813
Child & Parental Rights Campaign, Inc.
5805 State Bridge Road, Suite G310
Johns Creek, GA 30097
770-448-4525 - Phone
vbroyles@childparentrights.org
etrakas@childparentrights.org

s/Melissa Y. York
Melissa Y. York (VSB No. 77493)
Jeremy D. Capps (VSB No. 43909)
Counsel for Dena Olsen
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com