IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

MICHELE BLAIR, INDIVIDUALLY AND
AS GUARDIAN AND NEXT FRIEND OF
S.B., A MINOR,

    Plaintiff,

v.                               Case No. 6:23cv00047

APPOMATTOX COUNTY SCHOOL
BOARD, et al.,

    Defendants.

**DR. ANNETTE A. BENNETT'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

## I.      INTRODUCTION

S.B., at 14 years old, alleges she was sex-trafficked to Maryland and Texas where she was drugged and raped by multiple individuals. S.B. and her[1] guardian, Michele Blair ("Blair"), have undoubtedly experienced and survived a nightmare. Those experiences and related damages, however, are in no way attributable to the Appomattox County School Board ("School Board"), Superintendent Annette Bennett ("Dr. Bennett"), or school counselor Dena Olsen ("Olsen"). The Complaint does not allege any facts to connect Dr. Bennett with Plaintiffs' experiences. Moreover, Dr. Bennett is not responsible for the criminal activities of others that caused Plaintiffs' damages.

Simply put, the Complaint does not state a claim against Dr. Bennett and should be dismissed with prejudice. Plaintiffs' substantive due process rights were not violated nor does Dr. Bennett's conduct "shock the conscience." Moreover, Dr. Bennett did not fail to train and

---

[1] The Complaint refers to S.B. by using the pronouns she and her. This brief follows that convention as well.

supervise school employees.  Further, Dr. Bennett is entitled to qualified immunity, as the rights alleged were not clearly established.  Finally, the Complaint does not state a claim against Dr. Bennett for violation of Title IX, as there is no individual liability under that statute.

## II.    ALLEGATIONS

Blair is S.B.'s paternal grandmother and adoptive mother.  (ECF Doc. 1, at ¶ 13.)  S.B. is currently 16 years old and has a history of mental health issues, including depression, eating disorders, engaging in self-harm, and experiencing hallucinations.  (*Id.* at ¶¶ 14, 21.)  She was admitted for inpatient psychiatric care at CMG Piedmont Psychiatric Center in Lynchburg, Virginia, from June 1-8, 2021.  (*Id.* at ¶ 24.)  She underwent a psychiatric evaluation at Blair's request on August 5, 2021.  (*Id.* at ¶ 26.)  S.B. was diagnosed with "severe gender dysphoria"[2] and related symptoms in a report prepared August 11, 2021.  (*Id.* at ¶ 27.)

---

[2] The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5") defines gender dysphoria as marked incongruence between one's experienced/expressed gender and their assigned gender, lasting at least 6 months as manifested by at least two of the following:
1.    A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics);
2.    A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics);
3.    A strong desire for the primary and/or secondary sex characteristics of the other gender;
4.    A strong desire to be of the other gender (or some alternative gender different from one's assigned gender);
5.    A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender); and
6.    A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender).

The condition must also be associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning.

S.B. enrolled in Appomattox Public Schools during the 2020-2021 school year.  (*Id.* at ¶ 22.)  At that time, she was in eighth grade.  (*Id.*)  S.B. began the 2021-2022 school year as a freshman at Appomattox County High School ("ACHS") on August 10, 2021.  (*Id.* at ¶¶ 22, 28.)

Plaintiffs allege that on August 11, 2021, S.B. met with Olsen, a school counselor at ACHS, in the hallway of the school.  (*Id.* at ¶¶ 17, 32.)  S.B. told Olsen that she identified as a boy and wanted to use a male name and male pronouns.  (*Id.* at ¶¶ 31-32.)  According to Plaintiffs, Olsen told S.B. she could use the boys' restroom at school.  (*Id.* at ¶ 32.)  Plaintiffs further allege that Olsen later told S.B. to use only the boys' restroom.  (*Id.*)  Plaintiffs allege that Olsen did not share this information with Blair.  (*Id.* at ¶ 34.)

Plaintiffs allege that, on August 12, 2021, Olsen and Avery Via ("Via")[3] met with S.B., at which time S.B. told them that her parents were not supportive of her gender identity.  (*Id.* at ¶ 35.)  During this meeting, S.B. shared with Olsen and Via that she experienced bullying and harassment on the school bus on August 11, 2021.  (*Id.* at ¶ 36.)  Olsen and the ACHS Assistant Principal reviewed the bus film from August 11, 2021, which did not substantiate all of S.B.'s report.  (*Id.* at ¶ 37.)  Nevertheless, Olsen contacted Blair to pick up S.B. from school and shared with Blair what had occurred on the school bus.  (*Id.* at ¶ 39.)  At S.B.'s request, Olsen used her female name and female pronouns when communicating with Blair.  (*Id.* at ¶¶ 38-39.)

Plaintiffs allege that S.B. experienced "harassment, threats, and assaults in the hallways and the male bathrooms at the high school between August 12 and August 25, 2021."  (*Id.* at ¶ 40.)  Specifically, "[b]oys were following behind her in a group, touching her, threatening her with knife violence and rape, and shoving her up against the hallway wall."  (*Id.*)

---

[3] Via is a counselor employed by Hope for Tomorrow and provides services to students at ACHS.  (ECF Doc. 1, at ¶ 18.)

On August 24, 2021, Plaintiffs allege that Olsen met with S.B. and directed S.B. to use the nurse's restroom. (*Id.* at ¶ 48.) At this time, S.B. stated "all boys are rapists" and explained that she defined rape as "inappropriate touching." (*Id.*) Plaintiffs allege that Blair was not notified of these concerns. (*Id.* at ¶¶ 49-50.) Plaintiffs also allege that based on "inform[ation] and belie[f]," Dr. Bennett was aware of these incidents, but that Dr. Bennett did not direct Olsen, Via, or other staff to follow the "anti-harassment/bullying policies." (*Id.* at ¶ 47.) Plaintiffs do not allege who provided Dr. Bennett with this information or when Dr. Bennett learned of this information.

On August 25, 2021, Olsen and the School Resource Officer ("SRO Gunter") met with S.B. (*Id.* at ¶ 53.) Olsen then informed Blair that S.B. had been using the boys' restroom and there were safety concerns. (*Id.* at ¶ 58.) Olsen also informed Blair that she noticed evidence of self-harm on S.B.'s body. (*Id.* at ¶ 60.)

When S.B. returned home on August 25, 2021, Blair found a hall pass with S.B.'s male name on it. (*Id.* at ¶ 61.) S.B. told Blair that she was identifying as a boy at school. (*Id.*) S.B. allegedly told Blair that she had been threatened with violence by boys at school and she was afraid of what they would do. (*Id.*) Blair told S.B. that she did not need to return to school and they would "figure it out in the morning." (*Id.* at ¶ 62.) That night S.B. ran away from home. (*Id.* at ¶ 63.)

S.B. was abducted by an adult male stranger, drugged, raped, and trafficked to Washington D.C. (*Id.* at ¶ 64.) She was then taken to Baltimore, where she was located on September 2, 2021. (*Id.* at ¶ 66.) Law enforcement contacted Blair on September 2, 2021, and told her that she could pick S.B. up in Maryland on September 3, 2021. (*Id.* at ¶¶ 68-69, 72.)

S.B. was taken to a juvenile detention center, where she remained for five days. (*Id.* at ¶ 71.) On September 3, 2021, S.B. appeared in court via video and was assigned a public defender to represent her—Aneesa Khan ("Khan"). (*Id.* at ¶¶ 72-73, 75.) Khan informed the court that S.B. was a "trans male" who used a male name and male pronouns. (*Id.* at ¶ 76.) She represented to the court that S.B. did not consent to returning home, reported being the victim of emotional and physical abuse from her parents, that her parents did not support her being transgender, and that she was unsafe at home. (*Id.* at ¶ 78.) Khan told the court that S.B. told her that Blair repeatedly said S.B. could not be transgender in their house. (*Id.* at ¶ 79.) The court ordered that S.B. remain in Maryland under the custody of the Maryland Department of Juvenile Services ("DJS"). (*Id.* at ¶ 80.) Maryland DJS placed S.B. in a group home with teenage boys and she was enrolled in public school. (*Id.* at ¶ 94.) Plaintiffs allege that S.B. was subjected to sexual assaults by the male residents of the group home and did not receive trauma therapy or medical care. (*Id.* at ¶ 100.)

Khan communicated with Olsen on September 9, 2021, regarding S.B. (*Id.* at ¶ 85.) Plaintiffs allege that they are "informed and believe[]" that Khan communicated with Olsen and Via "on numerous occasions in September and October 2021 with the intent to elicit testimony and other information for purposes of falsely accusing Mrs. Blair of emotional and physical abuse of S.B. related to S.B.'s asserted gender identity . . . ." (*Id.*)

On November 12, 2021, S.B. removed her GPS tracking device and ran away. (*Id.* at ¶ 101.) S.B. thought she was meeting a 16-year-old boy who liked skateboarding—whom she had met online—but actually met an older man who trafficked her to Texas. (*Id.* at 104.) S.B. was rescued by law enforcement on January 24, 2022. (*Id.*) Texas officials released S.B. to Blair, and they returned to Virginia. (*Id.*)

S.B. has received intensive inpatient and outpatient therapy to address the trauma she experienced and has been diagnosed with Complex PTSD. (*Id.* at ¶ 105.)

## III.    ARGUMENT

### A.    Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, the complaint must contain facts that, when taken as true, are sufficient to state a claim to relief that is "plausible on its face." *Id.* at 678 (internal quotations omitted). To state a *plausible* claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This is because "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

The law is clear that "in reviewing a Rule 12(b)(6) dismissal, [courts] are not confined to the four corners of the Complaint." *U.S. ex. rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F. 3d 131, 136 (4th Cir. 2014). The Court may also consider documents integral to the Complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A document is integral to a complaint when the claims "turn on, []or are . . . otherwise based" on the document. *Id.*

"[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint . . . .  This ruling encompasses not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims."  *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471, 486 (E.D. Va. 2018) (citing *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Pursuant to the exhibit-prevails rule, if a plaintiff "relies upon the documents to form the basis for a claim or a part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Ill. Dep't of Prof'l Regul.*, 300 F.3d 750, 754 (7th Cir. 2002); *Goines*, 882 F.3d at 166. Where the plaintiff incorporates a document upon which her claim is based, or when the Complaint shows that the plaintiff has adopted the contents of the document, it is proper to accept the contents of the documents over conflicting allegations in the Complaint.  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233-35 (4th Cir. 2004).

Here, Plaintiffs' Complaint provides a detailed narrative of the conversations alleged to have taken place during counseling sessions between S.B. and Olsen.  (*See* ECF Doc. 1, at ¶¶ 31, 35-38, 46-48, 51, 53, 55, 58, 60.)  These quotations could only have been obtained from Olsen's Counseling Notes.  As such, Plaintiffs "quoted" and "relied upon" Olsen's notes, which were attached as Exhibit 1 to Olsen's Motion to Dismiss and have been placed under seal by this Court.[4]  (ECF Doc. 24, 25.)

---

[4] Dr. Bennett does not intend to convert her Motion to Dismiss into a Motion for Summary Judgment by referring to documents relied upon or quoted in Plaintiffs' Complaint.  To the extent the Court disagrees, Dr. Bennett requests that the Court disregard the documents relied upon or quoted in Plaintiffs' Complaint and proceed in reviewing this pleading as a Motion to Dismiss, rather than a Motion for Summary Judgment.

**B.    The official-capacity claim against Dr. Bennett must be dismissed.**

Plaintiffs have sued Dr. Bennett in both her individual and official capacity as the Superintendent of Appomattox County Public Schools.  An official-capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y.C Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  A § 1983 lawsuit brought against an individual in her official capacity is, therefore, duplicative of a claim brought against the municipality.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Love–Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).  Because official-capacity suits are redundant when the government entity has also been sued, they should be dismissed.  *See Coffee v. Dep't of Juv. Just.*, No. 3:14-cv-262, 2014 WL 3616164, at *1 n.1 (E.D. Va. July 21, 2014) (dismissing official-capacity suit as superfluous when entity named as a defendant); *Love-Lane*, 355 F.3d at 784; *Mainstream Loudoun v. Bd. of Trs. of Loudoun Cnty. Libr.*, 2 F. Supp. 2d 783, 790 (E.D. Va. 1998).  As a result, because Plaintiffs have named the School Board as a defendant in this case, the official-capacity claim against Dr. Bennett in the First, Second, Third, and Fourth Causes of Action should be dismissed.

**C.    Plaintiffs' First, Second, and Third Causes of Action do not state a claim against Dr. Bennett.**

 Plaintiffs' First, Second, and Third Causes of Action assert three claims against Dr. Bennett: (1) a violation of Blair's right to direct the upbringing of S.B.; (2) a violation of Blair's right to familial privacy; and (3) a violation of S.B.'s right to familial privacy.  (ECF Doc. 1, at ¶¶ 106-52.)  In support of these claims, Plaintiffs allege that Dr. Bennett has recklessly disregarded fundamental rights by failing to "adequately direct, train and/or supervise District administration and staff" with respect to parental rights, familial-privacy rights, reporting incidents of sexual harassment and assault, and the prohibition against psychotherapy.  (*E.g.*, *id.*,

at ¶¶ 113-20, 129-36, 145-52.)  Based on the foregoing, it appears that Plaintiffs are conflating

three distinct claims:

    1.     substantive due process;

    2.     failure to train; and

    3.     failure to supervise.[5]

However the claims are construed, Plaintiffs' First, Second, and Third Causes of Action should

be dismissed for the reasons set forth below.

    **1.**     **The Complaint does not state a substantive due process claim against Dr. Bennett.**

To the extent Plaintiffs are asserting three substantive due process claims against

Dr. Bennett, Plaintiffs' claims are addressed in order.

    **a.**     **The Complaint does not plausibly allege that Dr. Bennett violated Blair's liberty interest in the care, custody, and control of S.B.**

The Due Process Clause of the Fourteenth Amendment contains a substantive component

that "provides heightened protection against government interference with certain fundamental

rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v.

Glucksberg*, 521 U.S. 702, 719 (1997)).  One such liberty interest is the "right of parents to make

decisions concerning the care, custody, and control of their children." *Id.* at 66.  "[T]he precise

boundaries of a parent's right to control a child's upbringing and education," however, "is

neither absolute nor unqualified." *Bailey v. Va. High Sch. League, Inc.*, 488 F. App'x 714, 716

(4th Cir. 2012) (citation omitted).  For example, a parent's interest is "subject to the child's

interest in his personal health and safety and the state's interest as parens patriae in protecting

---

[5] Plaintiffs also allege that Dr. Bennett failed to "adequately direct."  Because there is no
discernable distinction between a failure to "adequately direct" and a failure to "adequately
supervise"—and Plaintiffs fail to draw any distinction—this brief combines Plaintiffs' potential
claims for failure to direct and failure to supervise.

that interest." *D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016) (quoting *White ex rel. White v. Chambliss*, 112 F.3d 731, 735 (4th Cir. 1997)).

Because Dr. Bennett's alleged conduct is executive,[6] rather than legislative in nature, the Complaint must plausibly allege that Dr. Bennett's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999); *Callahan v. N.C. Dep't of Pub. Safety*, 18 F.4th 142, 149 n.5 (4th Cir. 2021) ("Where executive action is concerned, only the most 'egregious' and 'outrageous' official conduct will do.") (citation omitted); *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 845 (E.D. Va. 2022). The Complaint also must plausibly allege that Dr. Bennett "acted personally in the deprivation of" Plaintiffs' rights. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). That is, that Dr. Bennett "had personal knowledge of and involvement in the alleged deprivation of" Plaintiffs' rights. *Id.*

The Complaint alleges that Dr. Bennett violated Blair's liberty interest in the care, custody, and control of S.B. by failing to adequately "train and/or supervise District administration and staff" as to (1) the parameters of this liberty interest; (2) the implementation of District Policy IJ and its prohibition on engaging in psychotherapy; and (3) the implementation of District Policy JFHA/GBA's requirements for reporting and investigating incidents of sexual harassment and assault. (ECF Doc. 1, at ¶¶ 47, 114, 117-18.) The Complaint

---

[6] Indeed, Plaintiffs allege that Dr. Bennett "implemented" an alleged "protocol or guideline" that directed staff not to inform parents that, among other things, a child requested to be referred to by a name and pronouns that did not confirm to his or her gender, unless the child consented. (ECF Doc. 1, at ¶ 59.) (*See also, id.* at ¶ 16 (alleging that Dr. Bennett "authoriz[ed], execut[ed], enforc[ed], and implement[ed] the School Board's policies").) To "implement" means "to give practical effect to and ensure of actual fulfillment by concreate measures." *Implement*, Merriam Webster's Collegiate Dictionary (10th ed. 1997). Thus, Dr. Bennett's alleged function was inherently executive. *Cf. Collins v. Yellen*, 141 S. Ct. 1761, 1785 (2021) ("[I]nterpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law.") (quotation omitted).

also alleges that Dr. Bennett violated Blair's liberty interest by permitting "District administration and staff" pursuant to a "protocol or guideline" not to disclose to parents that a child requested to be referred to by a gender nonconforming name and gender nonconforming pronouns, requested to use a gender nonconforming restroom, or expressed gender confusion, unless the child consented.  (*Id.* at ¶¶ 59, 115-16.)

Other than these conclusory allegations, however, there is no factual allegation as to *how* Dr. Bennett failed to adequately "train and/or supervise District administration and staff," much less in manner that was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Hawkins*, 195 F.3d at 738.  The Complaint does allege that on "inform[ation] and belie[f]" Dr. Bennett "was aware" of "incidents in the boys' restroom during the time S.B. was using them."  (ECF Doc. 1, at ¶¶ 46-47.)  Yet, this allegation is premised on nothing more than speculation and conjecture.  Not only does the Complaint fail to allege who informed Olsen that "school and District administrators had received reports from parents about incidents in the boys' restrooms" and the "administrators" who received the reports, it further fails to allege when or from whom Dr. Bennett learned of this information, or even the extent to which Dr. Bennett was "aware."  Conclusory allegations based merely "'upon information and belief' . . . are insufficient to defeat a motion to dismiss."[7]  *Harman v. Unisys Corp.*, 356 F. App'x 638, 640-41 (4th Cir. 2009); *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true.").

---

[7] Furthermore, the Complaint fails to plausibly allege that Dr. Bennett was responsible for training and supervising "District administration and staff" on the relevant matters.  *See* Va. Code § 22.1-79(1) (noting that it is the school board's responsibility to "[s]ee that the school laws are properly explained, enforced, and observed").

As to the allegation that Dr. Bennett permitted "District administration and staff" pursuant to a "protocol or guideline" to withhold certain information from parents absent a child's consent, the Complaint again relies on an "information and belief" allegation, (ECF Doc. 1, at ¶ 59), which is insufficient at the motion-to-dismiss stage, *Harman*, 356 F. App'x at 640-41; *In re Darvocet*, 756 F.3d at 931.

Yet, even if this allegation were plausible, Dr. Bennett's alleged conduct was not so "egregious" and "outrageous" to violate the Fourteenth Amendment.  *See Littlejohn v. Sch. Bd. of Leon Cnty.*, --- F. Supp. 3d ---, 2022 WL 18670372, at *8 (N.D. Fla. Dec. 22, 2022) (dismissing the plaintiffs' substantive due process claims because the school officials' decision to meet with a student to discuss the student's preferred name and pronouns without informing the student's parents did not shock the conscience); *see also D.B.*, 826 F.3d at 740 (noting that a parent's interest is "subject to the child's interest in his personal health and safety") (quoting *White ex rel. White*, 112 F.3d at 735); *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 622 F. Supp. 3d 118, 130-32 (D. Md. 2022) (determining that parents have no fundamental right "to be promptly informed of their child's gender identity" without regard to "their child's wishes or any concerns regarding the detrimental effect the disclosure may have on that child"), *vacated on other grounds*, 78 F.4th 622 (4th Cir. 2023).[8]

---

[8] Contrary to Plaintiffs' allegations that Blair was unaware of S.B.'s male identity until August 25, 2021, (ECF Doc. 1, at ¶¶ 35, 58, 61, 79, 83), and that Blair was unaware of S.B.'s experiences at school, (*id.* at ¶¶ 39, 45, 49, 58), Olsen's Counseling Notes indicate Olsen did, in fact, keep Blair informed and that Blair was aware that S.B. identified as male.

- Blair's "response was is this because [S.B.] is acting like a boy."
- S.B. to Olsen: "No, because I don't want my mom to know I used the men's restroom.  I don't want her to get mad at me about being transgender again at me and I don't want to talk to her about that.  Every time she brings it up it's yelling and stuff."
- Blair to Olsen: "Let me guess, it's about [S.B.] wanting to be a boy isn't it?"

Furthermore, Blair's liberty interest does not entitle her to dictate the nature of S.B.'s school environment.  *See Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1200 (9th Cir. 2005) (holding that "there is no fundamental right of parents to be the *exclusive* provider of information regarding sexual matters to their children, either independent of their right to direct the upbringing and education of their children or encompassed by it"); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395-96 (6th Cir. 2005) ("While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child."); *see also Leebaert v. Harrington*, 332 F.3d 134, 141 (2d Cir. 2003) (noting that a parent does not have a fundamental right "to tell a public school what his or her child will and will not be taught").

Finally, the Complaint's factual allegations mention Dr. Bennett only twice and focus on the alleged misconduct of others with only vague implications that—based on "inform[ation] and belie[f]"—Dr. Bennett was "aware" of the misconduct.  (ECF Doc. 1, at ¶¶ 47, 59.)  These conclusory allegations are insufficient to plausibly allege that Dr. Bennett was aware of an alleged deprivation of Blair's liberty interest in the care, custody, and control of S.B., much less that Dr. Bennett was personally involved.  *Wright*, 766 F.2d at 850 (quoting *Vinnedge*, 550 F.2d at 928).

---

•     "Student had asked me to make sure I use the name [S.B.] and pronoun *she* when talking with mom because mom gets so upset about the student choosing to identify as a male."

(ECF Doc. 25, at 3, 5, 7.)

In short, the Complaint fails to plausibly allege that Dr. Bennett's alleged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins*, 195 F.3d at 738. Thus, this Court should dismiss the First Cause of Action.[9]

**b.    The Complaint does not plausibly allege that Dr. Bennett violated Plaintiffs' liberty interest in familial privacy.**

The substantive component of the Fourteenth Amendment's Due Process Clause also recognizes a liberty interest in familial privacy. *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994). This interest protects against state interference with "particularly intimate family decisions" and state action that "sever[s], alter[s], or otherwise affect[s] the parent/child relationship." *Id.* But an individual's interest in familial privacy, like a parent's interest in the care, custody, and control of his or her child, "is neither absolute nor unqualified." *Renn ex rel. Renn v. Garrison*, 100 F.3d 344, 349 (4th Cir. 1996) (quoting *Hodge*, 31 F.3d at 164). Additionally, because the liberty interest in familial privacy is difficult to define, actionable violations of an individual's interest in familial privacy are strictly construed. *Hodge*, 31 F.3d at 163-64. As a result, courts recognize a violation of familial privacy only when state action (1) was "directly aimed at the parent-child relationship"; (2) implicated a family's right "to remain together without the coercive interference of the awesome power of the state"; (3) "drove

---

[9] The First Cause of Action vaguely references Virginia Code § 1-240.1. (ECF Doc. 1, at ¶ 107.) If Blair is asserting that Dr. Bennett violated section 1-240.1, § 1983 is not the appropriate vehicle for such a claim. *See Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 143 S. Ct. 1444, 1453 (2023) (noting that § 1983 protects *federal* rights). Because a violation of section 1-240.1 arises under state law, the First Cause of Action must be dismissed to the extent it is premised on a violation of section 1-240. *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014) ("Conduct violating state law without violating federal law will not give rise to a § 1983 claim.") (citation omitted). Furthermore, any claim under section 1-240.1 should be dismissed because the statute does not contain a statutory-enforcement provision. *McArthur*, 610 F. Supp. 3d at 846 (citing *Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 315-16, 787 S.E.2d 855, 858 (2016)).

a wedge into [a] family and threatened its very foundation"; or (4) "eroded the family's solidarity internally and impaired the family's ability to function." *Id.* (citations omitted).

Like the First Cause of Action, the Second and Third Causes of Action rely on Dr. Bennett's alleged executive action. (ECF Doc. 1, at ¶¶ 129-36, 145-52.) Thus, the Complaint again must plausibly allege that Dr. Bennett's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins*, 195 F.3d at 738; *Callahan*, 18 F.4th at 149 n.5 (citation omitted); *McArthur*, 610 F. Supp. 3d at 845.

The allegations underlying the Second and Third Causes of Action essentially mirror the allegations underlying the First Cause of Action. (*Compare* ECF Doc. 1, at ¶¶ 113-20, *with id.* at ¶¶ 129-36, 145-52.) Those allegations do not allege that Dr. Bennett's conduct was aimed directly at S.B.'s relationship with S.B.'s parents. Plaintiffs also do not plausibly allege that Dr. Bennett infringed on their familial privacy with coercive conduct. Furthermore, Plaintiffs fail to plausibly allege that Dr. Bennett "drove a wedge" between S.B. and S.B.'s parents or that Dr. Bennett's conduct "eroded the family's solidarity internally." *Hodge*, 31 F.3d at 163. Thus, Plaintiffs fail to plausibly allege that Dr. Bennett engaged in any of the four types of conduct recognized as violating an individual's liberty interest in familial privacy.

Additionally, Plaintiffs' allegations fail to plausibly allege that Dr. Bennett engaged in "egregious" or "outrageous" conduct sufficient to "shock the contemporary conscience." *Hawkins*, 195 F.3d at 738. Plaintiffs' allegations instead rely on conclusory assertions upon "information and belief." (*See* ECF Doc. 1, at ¶¶ 47, 59.) As noted above, such allegations are insufficient to survive a motion to dismiss. *Harman*, 356 F. App'x at 640-41; *In re Darvocet,* 756 F.3d at 931.

Furthermore, as noted above, the Complaint's factual allegations mention Dr. Bennett twice and emphasize the alleged misconduct of others with only vague implications that—based on "inform[ation] and belie[f]"—Dr. Bennett was "aware" of the misconduct.  (ECF Doc. 1, at ¶¶ 47, 59.)  These conclusory allegations are insufficient to plausibly allege that Dr. Bennett was aware of an alleged violation of Plaintiffs' liberty interest in familial privacy, much less that Dr. Bennett was personally involved.  *Wright*, 766 F.2d at 850 (quoting *Vinnedge*, 550 F.2d at 928).

### 2.    The Complaint does not plausibly allege that Dr. Bennett failed to train "District administration and staff."

"[T]he inadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [subordinates] . . . come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  The circumstances under which a failure to train can violate § 1983, therefore, are "limited."  *Id.* at 387.  To survive a motion to dismiss, a plaintiff must plausibly allege that:

1.    "the subordinates actually violated the plaintiff's constitutional or statutory rights,"

2.    "the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact," and

3.    "this failure to train actually caused the subordinates to violate the plaintiff's rights."

*Moody v. City of Newport News*, 93 F. Supp. 3d 516, 537 (E.D. Va. 2015) (quotation omitted). "In the school context, the failure to train must amount to deliberate indifference to the rights of students, and the deficiency in training 'must be closely related to the ultimate injury.'"  *Doe by Watson v. Russell Cnty. Sch. Bd.*, 292 F. Supp. 3d 690, 710 (W.D. Va. 2018) (quotation omitted).

"To satisfy the first element, a plaintiff must allege that the defendant's subordinates actually violated her rights." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 584 (W.D. Va. 2021) (citation omitted). "Under the second element, 'in order to have exhibited deliberate indifference, the supervisory power must have had notice of the constitutional or statutory violation, and thereafter must have consciously chosen a particular course of action in response.'" *Id.* (quoting *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

As demonstrated in Olsen's Brief in Support of Motion to Dismiss, the Complaint fails to plausibly allege that Olsen and Via[10] violated Blair's liberty interest in the care, custody, and control of S.B. or Plaintiffs' liberty interest in familial privacy. (ECF Doc. 13, at 9-15.) The Complaint instead demonstrates that Olsen and Via—the alleged subordinates of Dr. Bennett—responded reasonably to S.B.'s desire to identify as male, to S.B.'s fear that her parents would not approve, and upon learning that other students were "harass[ing]" S.B. in the male restrooms. Thus, Plaintiffs' failure to train claim falters at the first element.

Plaintiffs' claim likewise falters at the second and third elements. Even assuming that Olsen and Via did violate Plaintiffs' substantive due process rights—which they did not—the Complaint does not plausibly allege that Dr. Bennett had notice of Olsen and Via's alleged conduct or that this conduct would violate Plaintiffs' constitutional rights. Plaintiffs offer only

---

[10] The Complaint asserts fewer allegations against Via than against Olsen. (*E.g.*, ECF Doc. 1, at ¶¶ 35, 43.) Regardless, the Complaint attempts to hold Via and Olsen liable for the same alleged violations of Plaintiffs' substantive due process rights. Thus, for the reasons that Olsen did not violate Plaintiffs' substantive due process rights, Via likewise did not violate Plaintiffs' substantive due process rights.

two factual allegations against Dr. Bennett: that on "inform[ation] and belie[f]," (1) Dr. Bennett "was aware" of "incidents in the boys' restroom during the time S.B. was using them, and (2) Dr. Bennett permitted "District administration and staff" pursuant to a "protocol or guideline" to withhold certain information from parents absent a child's consent. (ECF Doc. 1, at ¶¶ 47, 59.)

But as noted above, conclusory allegations based merely "'upon information and belief' . . . are insufficient to defeat a motion to dismiss." *Harman*, 356 F. App'x at 640-41; *In re Darvocet*, 756 F.3d at 931. The Complaint also fails to provide factual support that Dr. Bennett was aware of and implemented the alleged "protocol or guideline" knowing that it would violate Plaintiffs' constitutional rights. Furthermore, the Complaint does not support with facts the conclusory allegations that Dr. Bennett failed to train "District administration and staff" on district policies. Plaintiffs instead rely on a leap in logic that because Olsen and Via allegedly engaged in misconduct over a two-week period—from August 11-25, 2021—Dr. Bennett must have failed to adequately train them. That is insufficient to state a plausible failure to train claim. *See Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1162 (2023) (noting that a plaintiff's factual allegations must do more than raise a "speculative possibility" of wrongdoing) (quotation and quotation marks omitted).

### 3. The Complaint does not plausibly allege that Dr. Bennett failed to supervise "District administration and staff."

In section 1983 actions, a supervisory official may not be held liable under a theory of respondeat superior. *Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020). A supervisor is instead liable only when "(1) he knew that his subordinate 'was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury'; (2) his response showed 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an

'affirmative causal link' between his inaction and the constitutional injury." *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

As to the first element, a supervisor must have "notice of a subordinate's tendency to act outside the law." *Campbell*, 972 F.3d at 398 (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). Additionally, conduct is pervasive when it "is widespread, or at least has [occurred] on several different occasions." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (internal quotation marks omitted).

At the outset, the Complaint fails to plausibly allege that Olsen and Via violated Blair's liberty interest in the care, custody, and control of S.B., or Plaintiffs' liberty interest in familial privacy. (ECF Doc. 13, at 9-15.) Thus, any failure to supervise claim necessarily fails because there is no underlying constitutional violation. *See Campbell*, 972 F.3d at 398 (noting that supervisors bear responsibility for their subordinate's "illegal conduct") (quotation omitted).

Turning to the first element of a failure to supervise claim, the Complaint does not plausibly allege that Dr. Bennett had notice that any subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." *King*, 825 F.3d at 224 (internal quotation marks omitted) (quoting *Shaw*, 13 F.3d at 799). As noted above, Plaintiffs' "upon information and belief" allegations are insufficient to plausibly suggest that Dr. Bennett was "aware" of Olsen and Via's alleged conduct over the relevant two-week period, let alone of conduct that posed an unreasonable risk of constitutional injury. *In re Darvocet*, 756 F.3d at 931; *Harman*, 356 F. App'x at 640-41. Because the Complaint does not plausibly allege that Dr. Bennett had notice of "conduct that posed a pervasive and unreasonable risk of constitutional injury," the Complaint also fails to plausibly allege that Dr. Bennett acted with deliberate

indifference or that there is a causal link between Dr. Bennett's alleged conduct and Plaintiffs' alleged injuries. *See King*, 825 F.3d at 224 (quoting *Shaw*, 13 F.3d at 799).

### 4.    Dr. Bennett is entitled to qualified immunity.

There is a second, independent reason that the First, Second, and Third Causes of Action should be dismissed: Dr. Bennett is entitled to qualified immunity because the constitutional rights allegedly violated were not clearly established at the time of the alleged misconduct.

"When a government official is sued in their individual capacity, qualified immunity protects them 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 682-83 (4th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity, therefore, "protects all but the plainly incompetent or those who knowingly violate the law." *Putman v. Harris*, 66 F.4th 181, 186 (4th Cir. 2023) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (cleaned up)); *Hulbert v. Pope*, 70 F.4th 726, 733 (4th Cir. 2023) (noting that qualified immunity gives officials "breathing room to make reasonable but mistaken judgments") (citation omitted). Qualified immunity is especially important in the school setting given that school officials have "a difficult job, and a vitally important one." *Morse v. Frederick*, 551 U.S. 393, 409 (2007).

Courts ask two questions in determining whether qualified immunity applies: (1) "whether a constitutional violation occurred" and (2) "'whether the right violated was 'clearly established' at the time of the official's conduct." *Sharpe*, 59 F.4th at 683 (quoting *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010)). Courts may exercise discretion in determining which question to ask first. *Callahan*, 555 U.S. at 236; *see Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Further, courts "prefer questions of

qualified immunity to be decided at the earliest possible stage in litigation." *Putman*, 66 F.4th at 186 (quoting *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (cleaned up)).

As to the second question, "[a] right can be clearly established by cases of controlling authority in this jurisdiction or by a consensus of persuasive authority from other jurisdictions." *Sharpe*, 59 F.4th at 683 (citing *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)). For controlling authority, courts look to "decisions of the Supreme Court, [the relevant] court of appeals, and the highest court of the state in which the case arose." *Garrett v. Clarke*, 74 F.4th 579, 584 (4th Cir. 2023) (quoting *Hill v. Crum*, 727 F.3d 312, 322 (4th Cir. 2013) (internal quotation marks omitted)). "In the absence of controlling authority . . . 'a robust consensus' of persuasive authority may demonstrate" a rule that is clearly established. *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-99 (2018)).

But regardless of the source of authority, the "constitutional question" must have been placed "beyond debate." *Kisela*, 138 S. Ct. at 1152 (internal quotation marks and citation omitted). That is, at the time of the government official's alleged misconduct, "the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Garrett*, 74 F.4th at 584 (quoting *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted)). Further, the "[c]learly established" right should not be defined "at a high level of generality." *Kisela*, 138 S. Ct. at 1152 (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)). The right should instead be defined "with specificity." *Knibbs v. Momphard*, 30 F.4th 200, 223 (4th Cir. 2022).

When defined with the appropriate level of specificity, the question here is whether a reasonable official in Dr. Bennett's position would know that her alleged conduct—failing to adequately train and supervise "District administration and staff" as to the parameters of

Plaintiffs' liberty interests and various district policies as a result of events that allegedly occurred over a two-week period—violated Blair's liberty interest in the care, custody, and control of S.B. or Plaintiffs' liberty interest in familial privacy. The answer clearly is no.

At the time of Dr. Bennett's alleged conduct, neither controlling authority nor a "robust consensus" of persuasive authority had placed "beyond debate" that a school official's conduct similar to Dr. Bennett's in a similar situation violated the liberty interests at issue in this case. Indeed, the Fourth Circuit has noted that the parameters of these liberty interests remain undefined. *See Bailey*, 488 F. App'x at 716; *Hodge*, 31 F.3d at 163-64. The liberty interest in familial privacy has even been described as "amorphous." *Martin v. Saint Mary's Dep't of Soc. Servs.*, 346 F.3d 502, 506 (4th Cir. 2003) ("The contours of the right to familial integrity may not be 'sufficiently clear' in certain situations, to be deemed 'clearly established' as required."); *Hodge*, 31 F.3d at 163-64.

Not only was the constitutional right not clearly established, but Blair did not have a fundamental right protected by the Fourteenth Amendment at all. *See John & Jane Parents 1*, 622 F. Supp. 3d at 130 ("I must consider whether the Plaintiffs' constitutional rights as parents encompasses a fundamental right to be promptly informed of their child's gender identity, when it differs from that usually associated with their sex assigned at birth, regardless of their child's wishes or any concerns regarding the detrimental effect the disclosure may have on that child. As explained below, there is no such fundamental right under the Due Process Clause of the Fourteenth Amendment.").

Further, other federal courts have noted the uncertainty in the reach of these liberty interests. *Littlejohn*, 2022 WL 18670372, at *3 (holding that the defendants were entitled to qualified immunity because "the law regarding substantive due process rights afforded to parents

22

is an unsettled area of constitutional law, such that a reasonable person would not be able to know when their conduct is in violation of the law"); *Jackson v. Peekskill City Sch. Dist.*, 106 F. Supp. 3d 420, 428 (S.D.N.Y. 2015) (determining that a school counselor who conspired to secretly transport the plaintiffs' daughter from school to a health clinic to obtain birth control was entitled to qualified immunity because it was not clearly established that the counselor violated the plaintiffs' substantive due process rights).

In short, it was not clearly established at the time of the events underlying the Complaint that Dr. Bennett's alleged conduct would violate Blair's liberty interest in the care, custody, and control of S.B. or Plaintiffs' liberty interest in familial privacy. In fact, the law of the Fourth Circuit at the time of these events required school officials to permit S.B. to use the boys' restroom. *Grimm v. Gloucester County Sch. Bd.*, 972 F.3d 586. Additionally, it was not clearly established that Dr. Bennett's failure to train and supervise school employees as to these rights would violate Plaintiffs' substantive due process rights.

\*      \*      \*

For the reasons set forth above, the Complaint fails to allege plausible (1) substantive due process claims, (2) failure to train claims, or (3) failure to supervise claims against Dr. Bennett. Additionally, Dr. Bennett is entitled to qualified immunity as to these claims. The First, Second, and Third Causes of Action, therefore, should be dismissed.

**D.      The Complaint does not state a Title IX claim against Dr. Bennett (Fourth Cause of Action).**

The Fourth Cause of Action purports to state a Title IX claim against the Appomattox Defendants. (ECF Doc. 1, at ¶¶ 154-61.) As there is no individual liability under Title IX, the Fourth Cause of Action does not state a claim against Dr. Bennett and must be dismissed with prejudice.

"It is impossible to bring a Title IX action against an individual." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 419 (E.D Va. 1999) (citing *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607 (8th Cir. 1999); *Smith v. Metro. Sch. Dist.*, 128 F.3d 1014 (7th Cir. 1997)). Title IX conditions receipt of federal funds on a promise not to discriminate. *Id.* Because school officials are not recipients of federal funds, they may not be sued in their individual capacity under Title IX. *Id.* (citing *Kinman*, 171 F.3d at 610). Therefore, the Fourth Cause of Action must be dismissed as to Dr. Bennett in her individual capacity.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Dr. Bennett, by counsel, respectfully requests that this Court grant her motion to dismiss and dismiss the Complaint against her in its entirety and with prejudice.

**DR. ANNETTE A. BENNETT**

By Counsel

 s/Melissa Y. York
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Counsel for Dr. Annette A. Bennett
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com

# C E R T I F I C A T E

I hereby certify that on the 2nd day of October, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mary E. McAlister, Esq., VSB No. 76057
Child & Parental Rights Campaign, Inc.
P.O. Box 637
Monroe, VA 24574
770-448-4525 - Phone
mmcalister@childparentrights.org

Vernadette R. Broyles, Esq., GA No. 593026
Ernest G. Trakas, Esq., MO No. 33813
Child & Parental Rights Campaign, Inc.
5805 State Bridge Road
Suite G310
Johns Creek, GA 30097
770-448-4525 - Phone
vbroyles@childparentrights.org
etrakas@childparentrights.org

s/Melissa Y. York
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Counsel for Dr. Annette A. Bennett
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com