IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

MICHELE BLAIR, INDIVIDUALLY AND
AS GUARDIAN AND NEXT FRIEND OF
S.B., A MINOR,

   Plaintiff,

v.                          Case No. 6:23cv00047

APPOMATTOX COUNTY SCHOOL
BOARD, et al.,

   Defendants.

## THE APPOMATTOX COUNTY SCHOOL BOARD'S
## BRIEF IN SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION

S.B., at 14 years old, alleges she was sex-trafficked to Maryland and Texas where she was drugged and raped by multiple individuals. S.B. and her[1] guardian, Michele Blair ("Blair"), have undoubtedly experienced and survived a nightmare. Those experiences and related damages, however, are in no way attributable to the Appomattox County School Board ("School Board"), Superintendent Annette Bennett ("Dr. Bennett"), or school counselor Dena Olsen ("Olsen"). The Complaint does not allege any facts to connect the School Board to Plaintiffs' experiences. Moreover, the School Board is not responsible for the criminal activities of others that caused Plaintiffs' damages.

Plaintiffs do not plausibly allege a policy or custom attributable to the School Board or that a purported policy or custom violated their substantive due process rights. Moreover, the Complaint fails to plausibly allege that the School Board failed to train and supervise its

---

[1] The Complaint refers to S.B. by using the pronouns she and her. This brief follows that convention as well.

employees.  Further, the Complaint does not state a claim against the School Board for a violation of Title IX.  Simply put, the Complaint does not state a claim against the School Board and should be dismissed with prejudice.

## II.    ALLEGATIONS

Blair is S.B.'s paternal grandmother and adoptive mother.  (ECF Doc. 1, at ¶ 13.)  S.B. is currently 16 years old and has a history of mental health issues, including depression, eating disorders, engaging in self-harm, and experiencing hallucinations.  (*Id.* at ¶¶ 14, 21.)  She was admitted for inpatient psychiatric care at CMG Piedmont Psychiatric Center in Lynchburg, Virginia, from June 1-8, 2021.  (*Id.* at ¶ 24.)  She underwent a psychiatric evaluation at Blair's request on August 5, 2021.  (*Id.* at ¶ 26.)  S.B. was diagnosed with "severe gender dysphoria"[2] and related symptoms in a report prepared August 11, 2021.  (*Id.* at ¶ 27.)

---

[2] The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5") defines gender dysphoria as marked incongruence between one's experienced/expressed gender and their assigned gender, lasting at least 6 months as manifested by at least two of the following:

1.    A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics);

2.    A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics);

3.    A strong desire for the primary and/or secondary sex characteristics of the other gender;

4.    A strong desire to be of the other gender (or some alternative gender different from one's assigned gender);

5.    A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender); and

6.    A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender).

The condition must also be associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning.

S.B. enrolled in Appomattox Public Schools during the 2020-2021 school year.  (*Id.* at ¶ 22.)  At that time, she was in eighth grade.  (*Id.*)  S.B. began the 2021-2022 school year as a freshman at Appomattox County High School ("ACHS") on August 10, 2021.  (*Id.* at ¶¶ 22, 28.)

Plaintiffs allege that on August 11, 2021, S.B. met with Olsen, a school counselor at ACHS, in the hallway of the school.  (*Id.* at ¶¶ 17, 32.)  S.B. told Olsen that she identified as a boy and wanted to use a male name and male pronouns.  (*Id.* at ¶¶ 31-32.)  According to Plaintiffs, Olsen told S.B. she could use the boys' restroom at school.  (*Id.* at ¶ 32.)  Plaintiffs further allege that Olsen later told S.B. to use only the boys' restroom.  (*Id.*)  Plaintiffs allege that Olsen did not share this information with Blair.  (*Id.* at ¶ 34.)

Plaintiffs allege that, on August 12, 2021, Olsen and Avery Via ("Via")[3] met with S.B., at which time S.B. told them that her parents were not supportive of her gender identity.  (*Id.* at ¶ 35.)  During this meeting, S.B. shared with Olsen and Via that she experienced bullying and harassment on the school bus on August 11, 2021.  (*Id.* at ¶ 36.)  Olsen and the ACHS Assistant Principal reviewed the bus film from August 11, 2021, which did not substantiate all of S.B.'s report.  (*Id.* at ¶ 37.)  Nevertheless, Olsen contacted Blair to pick up S.B. from school and shared with Blair what had occurred on the school bus.  (*Id.* at ¶ 39.)  At S.B.'s request, Olsen used her female name and female pronouns when communicating with Blair.  (*Id.* at ¶¶ 38-39.)

Plaintiffs allege that S.B. experienced "harassment, threats, and assaults in the hallways and the male bathrooms at the high school between August 12 and August 25, 2021."  (*Id.* at ¶ 40.)  Specifically, "[b]oys were following behind her in a group, touching her, threatening her with knife violence and rape, and shoving her up against the hallway wall."  (*Id.*)

---

[3] Via is a counselor employed by Hope for Tomorrow and provides services to students at ACHS.  (ECF Doc. 1, at ¶ 18.)

On August 24, 2021, Plaintiffs allege that Olsen met with S.B. and directed S.B. to use the nurse's restroom.  (*Id.* at ¶ 48.)  At this time, S.B. stated "all boys are rapists" and explained that she defined rape as "inappropriate touching."  (*Id.*)  Plaintiffs allege that Blair was not notified of these concerns.  (*Id.* at ¶¶ 49-50.)  Plaintiffs also allege that based on "inform[ation] and belie[f]," Dr. Bennett was aware of these incidents, but that Dr. Bennett did not direct Olsen, Via, or other staff to follow the "anti-harassment/bullying policies."  (*Id.* at ¶ 47.)  Plaintiffs do not allege who provided Dr. Bennett with this information or when Dr. Bennett learned of this information.

On August 25, 2021, Olsen and the School Resource Officer ("SRO Gunter") met with S.B.  (*Id.* at ¶ 53.)  Olsen then informed Blair that S.B. had been using the boys' restroom and there were safety concerns.  (*Id.* at ¶ 58.)  Olsen also informed Blair that she noticed evidence of self-harm on S.B.'s body.  (*Id.* at ¶ 60.)

When S.B. returned home on August 25, 2021, Blair found a hall pass with S.B.'s male name on it.  (*Id.* at ¶ 61.)  S.B. told Blair that she was identifying as a boy at school.  (*Id.*)  S.B. allegedly told Blair that she had been threatened with violence by boys at school and she was afraid of what they would do.  (*Id.* at ¶ 61.)  Blair told S.B. that she did not need to return to school and they would "figure it out in the morning."  (*Id.* at ¶ 62.)  That night S.B. ran away from home.  (*Id.* at ¶ 63.)

S.B. was abducted by an adult male stranger, drugged, raped, and trafficked to Washington D.C.  (*Id.* at ¶ 64.)  She was then taken to Baltimore, where she was located on September 2, 2021.  (*Id.* at ¶ 66.)  Law enforcement contacted Blair on September 2, 2021, and told her that she could pick S.B. up in Maryland on September 3, 2021.  (*Id.* at ¶¶ 68-69, 72.)

S.B. was taken to a juvenile detention center, where she remained for five days.  (*Id.* at ¶ 71.)  On September 3, 2021, S.B. appeared in court via video and was assigned a public defender to represent her—Aneesa Khan ("Khan").  (*Id.* at ¶¶ 72-73, 75.)  Khan informed the court that S.B. was a "trans male" who used a male name and male pronouns.  (*Id.* at ¶ 76.)  She represented to the court that S.B. did not consent to returning home, reported being the victim of emotional and physical abuse from her parents, that her parents did not support her being transgender, and that she was unsafe at home.  (*Id.* at ¶ 78.)  Khan told the court that S.B. told her that Blair repeatedly said S.B. could not be transgender in their house.  (*Id.* at ¶ 79.)  The court ordered that S.B. remain in Maryland under the custody of the Maryland Department of Juvenile Services ("DJS").  (*Id.* at ¶ 80.)  Maryland DJS placed S.B. in a group home with teenage boys and she was enrolled in public school.  (*Id.* at ¶ 94.)  Plaintiffs allege that S.B. was subjected to sexual assaults by the male residents of the group home and did not receive trauma therapy or medical care.  (*Id.* at ¶ 100.)

Khan communicated with Olsen on September 9, 2021, regarding S.B.  (*Id.* at ¶ 85.)  Plaintiffs allege that they are "informed and believe[]" that Khan communicated with Olsen and Via "on numerous occasions in September and October 2021 with the intent to elicit testimony and other information for purposes of falsely accusing Mrs. Blair of emotional and physical abuse of S.B. related to S.B.'s asserted gender identity . . . ."  (*Id.*)

On November 12, 2021, S.B. removed her GPS tracking device and ran away.  (*Id.* at ¶ 101.)  S.B. thought she was meeting a 16-year-old boy who liked skateboarding—whom she had met online—but actually met an older man who trafficked her to Texas.  (*Id.* at 104.)  S.B. was rescued by law enforcement on January 24, 2022.  (*Id.*)  Texas officials released S.B. to Blair, and they returned to Virginia.  (*Id.*)  S.B. has received intensive inpatient and outpatient

therapy to address the trauma she experienced and has been diagnosed with Complex PTSD. (*Id.* at ¶ 105.)

  There are no factual allegations in the Complaint related to the School Board nor factual allegations linking Plaintiffs' injuries to the School Board.

## III. ARGUMENT

### A. Standard of Review

  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, the complaint must contain facts that, when taken as true, are sufficient to state a claim to relief that is "plausible on its face." *Id.* at 678 (internal quotations omitted). To state a *plausible* claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This is because "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

  The law is clear that "in reviewing a Rule 12(b)(6) dismissal, [courts] are not confined to the four corners of the Complaint." *U.S. ex. rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F. 3d 131, 136 (4th Cir. 2014). The Court may also consider documents integral to the Complaint.

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  A document is integral to a complaint when the claims "turn on, []or are . . . otherwise based" on the document.  *Id.* "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint . . . .  This ruling encompasses not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims."  *Spirito v. Peninsula Airport Comm'n,* 350 F. Supp. 3d 471, 486 (E.D. Va. 2018) (citing *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Pursuant to the exhibit-prevails rule, if a plaintiff "relies upon the documents to form the basis for a claim or a part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Ill. Dep't of Prof'l Regul.*, 300 F.3d 750, 754 (7th Cir. 2002); *Goines*, 882 F.3d at 166. Where the plaintiff incorporates a document upon which her claim is based, or when the Complaint shows that the plaintiff has adopted the contents of the document, it is proper to accept the contents of the documents over conflicting allegations in the Complaint.  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233-35 (4th Cir. 2004).

Here, Plaintiffs' Complaint provides a detailed narrative of the conversations alleged to have taken place during counseling sessions between S.B. and Olsen.  (*See* ECF Doc. 1, at ¶¶ 31, 35-38, 46-48, 51, 53, 55, 58, 60.)  These quotations could only have been obtained from Olsen's Counseling Notes.  As such, Plaintiffs "quoted" and "relied upon" Olsen's notes, which were

attached as Exhibit 1 to Olsen's Motion to Dismiss and have been placed under seal by this Court.[4]  (ECF Doc. 24, 25.)

**B.**  **Plaintiffs' First, Second, and Third Causes of Action do not state a claim against the School Board.**

"For the purpose of determining liability under *Monell*, local school boards in Virginia are treated as municipalities." *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 533 (4th Cir. 2022) (citing *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 522 n.3 (4th Cir. 2000)).  "[M]unicipal liability attaches only when the decision maker is the municipality's governing body, a municipal agency, or an official possessing final authority to create official policy." *Howard v. City of Durham*, 68 F.4th 934, 951 (4th Cir. 2023) (quoting *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999)).  Thus, "*Monell* liability is not respondeat superior liability under a different moniker." *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  To survive a motion to dismiss, a plaintiff must plausibly allege "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Id.* at 952 (quoting *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994)).  A policy or custom can arise in several ways:

(1)    [t]hrough an express policy, such as a written ordinance or regulation;

(2)    through the decisions of a person with final policymaking authority;

(3)    through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or

(4)    through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

---

[4] The School Board does not intend to convert its Motion to Dismiss into a Motion for Summary Judgment by referring to documents relied upon or quoted in Plaintiffs' Complaint.  To the extent the Court disagrees, the School Board requests that the Court disregard the documents relied upon or quoted in Plaintiffs' Complaint and proceed in reviewing this pleading as a Motion to Dismiss, rather than a Motion for Summary Judgment.

*Id.* (quoting *Starbuck*, 28 F.4th at 533 (internal quotation marks omitted)).

Plaintiffs' First, Second, and Third Causes of Action assert that the School Board "fail[ed] to adequately direct, train and/or supervise District administration and staff" as to (1) the parameters of Blair's liberty interest in the care, custody, and control of S.B.; (2) the parameters of Plaintiffs' liberty interest in familial privacy; (3) the implementation of District Policy IJ and its prohibition on engaging in psychotherapy; and (4) the implementation of District Policy JFHA/GBA's requirements for reporting and investigating incidents of sexual harassment and assault. (ECF Doc. 1, at ¶¶ 114, 117-18, 130, 133-34.) The Complaint also alleges that the School Board violated Plaintiffs' liberty interests by permitting "District administration and staff" pursuant to a "protocol or guideline" not to disclose to parents that a child requested to be referred to by a gender nonconforming name and gender nonconforming pronouns, requested to use a gender nonconforming restroom, or expressed gender confusion, unless the child consented. (*Id.* at ¶¶ 115-16, 131-32.)

Under these allegations, it appears that the Complaint is attempting to hold the School Board liable under a policy theory, a failure to train theory, and a failure to supervise theory.[5]

At the outset, Plaintiffs' claims under any of these theories necessarily fail because as set forth in greater detail in the Briefs in Support of Olsen's and Dr. Bennett's Motions to Dismiss, the Complaint fails to plausibly allege that Dr. Bennett, Olsen, and Via—the School Board's subordinates for purposes of § 1983—violated Plaintiffs' substantive due process rights. *See Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 532 (D. Md. 2020) (noting that a plaintiff

---

[5] Plaintiffs also allege that the School Board failed to "adequately direct." Because there is no discernable distinction between a failure to "adequately direct" and a failure to "adequately supervise"—and Plaintiffs fail to draw any distinction—this brief combines Plaintiffs' potential claims for failure to direct and failure to supervise.

"must plausibly allege a constitutional harm that stems from the acts of a municipal employee 'taken in furtherance of some municipal "policy or custom"'") (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984)).

But assuming for purposes of this Motion to Dismiss that Dr. Bennett, Olsen, and Via did violate Plaintiffs' substantive due process rights, which they did not, Plaintiffs' claims still fail. The respective theories of liability are addressed in order.

      1.    <u>**The Complaint does not plausibly allege a "protocol or guideline" attributable to the School Board.**</u>

Plaintiffs allege that the School Board violated Plaintiffs' liberty interests by permitting employees pursuant to a "protocol or guideline" not to disclose to parents that a child requested to be referred to by a gender nonconforming name and gender nonconforming pronouns, requested to use a gender nonconforming restroom, or expressed gender confusion, unless the child consented. (ECF Doc. 1, at ¶¶ 115-16, 131-32.) Plaintiffs also allege, without factual support, that based on "inform[ation] and belie[f]," the School Board was "aware of the protocol or guideline, adhered to, and implemented it." (*Id.* at ¶ 59.)

Such conclusory allegations based merely "upon information and belief," however, "are insufficient to defeat a motion to dismiss." *Harman v. Unisys Corp.*, 356 F. App'x 638, 640-41 (4th Cir. 2009); *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true."). Plaintiffs cannot simply rely on a general allegation that on "inform[ation] and belie[f]" the School Board has an unconstitutional policy. *Segura v. City of La Mesa*, --- F. Supp. 3d ---, 2022 WL 17905529, at *8 (S.D. Cal. Dec. 23, 2022) (noting that a plaintiff's allegations "upon information and belief" that the defendant "authorized and/or ratified" a use of force were too conclusory); *Masciotta v. Clarkstown Cent. Sch. Dist.*, 136 F.

Supp. 3d 527, 546-47 (S.D.N.Y. 2015) (noting that a claim based on "information and belief"
was "conclusory, and therefore must be disregarded") (quotation omitted); *Danilkowicz v. City of
Park Ridge*, No. 13 C 3103, 2013 WL 4401428, at *3 (N.D. Ill. Aug. 15, 2013) (dismissing as a
legal conclusion a plaintiff's claim that "[u]pon information and belief" the defendants acted
pursuant to a city's policy). Put simply, Plaintiffs' allegations fail to do more than raise a
"speculative possibility" that the purported "protocol or guideline" is attributable to the School
Board. *Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1162 (2023) (internal quotation
mark and quotation omitted).

    **2.**    **Even if the "protocol or guideline" were attributable to the School Board, the Complaint does not plausibly allege that it violated Plaintiffs' substantive due process rights.**

Even assuming that the School Board did have the purported "protocol or guideline," the
"protocol or guideline" did not violate Plaintiffs' substantive due process rights.

The Due Process Clause of the Fourteenth Amendment contains a substantive component
that "provides heightened protection against government interference with certain fundamental
rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v.
Glucksberg*, 521 U.S. 702, 719 (1997)). *See also Dobbs v. Jackson Women's Health Org.*, 597
U.S. ---, 142 S. Ct. 2228, 2246 (2022). Two such liberty interests are the "right of parents to
make decisions concerning the care, custody, and control of their children," *id.* at 66, and the
right of familial privacy, *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994). The rights, however,
are "neither absolute nor unqualified." *Bailey v. Va. High Sch. League, Inc.*, 488 F. App'x 714,
716 (4th Cir. 2012) (citation omitted); *Renn ex rel. Renn v. Garrison*, 100 F.3d 344, 349 (4th Cir.
1996) (quoting *Hodge*, 31 F.3d at 164). For example, a parent's interest is "subject to the child's
interest in his personal health and safety and the state's interest as parens patriae in protecting

that interest." *D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016) (quoting *White ex rel. White v. Chambliss*, 112 F.3d 731, 735 (4th Cir. 1997)). Additionally, because the liberty interest in familial privacy is difficult to define, actionable violations of an individual's interest in familial privacy are strictly construed. *Hodge*, 31 F.3d at 163-64.

Because the alleged "protocol or guideline" is legislative, rather than executive, in nature, a court first must determine whether the asserted right is fundamental. *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 845 (E.D. Va. 2022) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720-22 (1997)). "If the asserted interest is determined to be a fundamental one, the court will engage in strict scrutiny; otherwise, the court will use only rational basis review." *Id.* (citing *Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999)).

Although Plaintiffs assert that Blair has a liberty interest in the care, custody, and control of S.B. and that they have a liberty interest in familial privacy, these assertions merely address liberty interests at a broad level. A substantive due process analysis "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1986)).

When stated with the appropriate level of specificity, Plaintiffs assert a liberty interest in Blair being notified that S.B. requested to be referred to by a male name and male pronouns, used the boys' restroom, and expressed gender confusion over S.B.'s objection.[6]  (ECF Doc. 1, at ¶¶ 59, 115-16.)   There is no such fundamental right.  *See John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 622 F. Supp. 3d 118, 130 (D. Md. 2022) ("I must consider whether the Plaintiffs' constitutional rights as parents encompasses a fundamental right to be promptly informed of their child's gender identity, when it differs from that usually associated with their sex assigned at birth, regardless of their child's wishes or any concerns regarding the detrimental effect the disclosure may have on that child.  As explained below, there is no such fundamental right under the Due Process Clause of the Fourteenth Amendment."), *vacated on other grounds*, 78 F.4th 622 (4th Cir. 2023).[7]

The right to the care, custody, and control of a child, as well as the right to familial privacy, do not entitle a parent to dictate the nature of a child's school environment.  *See Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1200 (9th Cir. 2005) (holding that "there is no

---

[6] Contrary to Plaintiffs' allegations that Blair was unaware of S.B.'s male identity until August 25, 2021, (ECF Doc. 1, at ¶¶ 35, 58, 61, 79, 83), and that Blair was unaware of S.B.'s experiences at school, (*id.* at ¶¶ 39, 45, 49, 58), Olsen's Counseling Notes indicate Olsen did, in fact, keep Blair informed and that Blair was aware that S.B. identified as male.

- Blair's "response was is this because [S.B.] is acting like a boy."
- S.B. to Olsen: "No, because I don't want my mom to know I used the men's restroom.  I don't want her to get mad at me about being transgender again at me and I don't want to talk to her about that.  Every time she brings it up it's yelling and stuff."
- Blair to Olsen: "Let me guess, it's about [S.B.] wanting to be a boy isn't it?"
- "Student had asked me to make sure I use the name [S.B.] and pronoun *she* when talking with mom because mom gets so upset about the student choosing to identify as a male."

(ECF Doc. 25, at 3, 5, 7.)

[7] Moreover, it is unclear how S.B. could have a right to fundamental familial privacy that was violated by following her request to not tell Blair that she was using a male name, male pronouns, and the male restroom at school.

13

fundamental right of parents to be the *exclusive* provider of information regarding sexual matters to their children, either independent of their right to direct the upbringing and education of their children or encompassed by it"); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395-96 (6th Cir. 2005) ("While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child."); *see also Leebaert v. Harrington*, 332 F.3d 134, 141 (2d Cir. 2003) (noting that a parent does not have a fundamental right "to tell a public school what his or her child will and will not be taught").

This is especially so where—as in this case—there is no corresponding alleged violation of the First Amendment. *See Herndon by Herndon v. Chapel Hill-Carrboro City Ed. of Educ.*, 89 F.3d 174, 179 (4th Cir. 1996) ("From *Meyer* to *Runyon*, the Supreme Court has stated consistently that parents have a liberty interest, protected by the Fourteenth Amendment, in directing their children's schooling. Except when the parents' interest includes a religious element, however, the Court has declared with equal consistency that reasonable regulation by the state is permissible even if it conflicts with that interest. *That is the language of rational basis scrutiny*.") (Emphasis added).

Because the Complaint fails to plausibly allege that a parent's right to be notified of the above information over the child's objection is "fundamental," the alleged "protocol or guidance" need only "bear[] some rational relationship to legitimate state purposes." *Herndon by Herndon*, 89 F.3d at 179 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 40 (1973)). As noted above, the state has an interest in protecting a "child's interest in his personal health and safety." *D.B.*, 826 F.3d at 740 (quoting *White ex rel. White*, 112 F.3d at 735). Additionally, "[p]ublic education is among the domains 'where states historically have been

sovereign.'" *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 878 (4th Cir. 2023) (quoting

*United States v. Lopez*, 514 U.S. 549, 564 (1995)).  The alleged "protocol or guideline" passes

constitutional muster because it is rationally related to the state's interest in protecting a child's

health and safety.  Thus, the First, Second, and Third Cause of Action fail to state a claim.[8]

**3.    The Complaint does not plausibly allege that the School Board failed to train its employees.**

"In limited circumstances, a local government's decision not to train certain employees

about their legal duty to avoid violating citizens' rights may rise to the level of an official

government policy for purposes of § 1983."  *Moody v. City of Newport News*, 93 F. Supp. 3d

516, 537 (E.D. Va. 2015) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  To survive a

motion to dismiss, a plaintiff must plausibly allege "(1) [that] the subordinates actually violated

the plaintiff's constitutional or statutory rights; (2) [that] the supervisor failed to train properly

the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with

whom the subordinates come into contact; and (3) [that] this failure to train actually caused the

subordinates to violate the plaintiff's rights."  *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp.

3d 721, 726 (E.D. Va. 2014) (quoting *Brown v. Mitchell*, 308 F. Supp. 2d 682, 701 (E.D. Va.

2004)).  Thus, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a

municipality—a 'policy' as defined by our prior cases—can a city be liable for such failure

---

[8] The First Cause of Action vaguely references Virginia Code § 1-240.1.  (ECF Doc. 1, at ¶ 107.)
If Blair is asserting that the alleged "protocol or guideline" violated section 1-240.1, § 1983 is
not the appropriate vehicle for such a claim.  *See Health & Hosp. Corp. of Marion Cnty. v.
Talevski*, 143 S. Ct. 1444, 1453 (2023) (noting that § 1983 protects *federal* rights).  Because a
violation of section 1-240.1 arises under state law, the First Cause of Action must be dismissed
to the extent it is premised on a violation of section 1-240.  *Snider Int'l Corp. v. Town of Forest
Heights*, 739 F.3d 140, 145 (4th Cir. 2014) ("Conduct violating state law without violating
federal law will not give rise to a § 1983 claim.") (citation omitted).  Furthermore, any claim
under section 1-240.1 should be dismissed because the statute does not contain a statutory-
enforcement provision.  *McArthur*, 610 F. Supp. 3d at 846 (citing *Cherrie v. Va. Health Servs.,
Inc.*, 292 Va. 309, 315-16, 787 S.E.2d 855, 858 (2016)).

under § 1983." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

As noted above, Plaintiffs do not plausibly allege that Dr. Bennett, Olsen, and Via violated their substantive due process rights. Thus, Plaintiffs' failure to train theory fails at the first element.

Plaintiffs' failure to train theory likewise fails at the second and third elements. "Deliberate indifference only exists where a municipal policy, or lack of a policy, 'make[s] the specific violation [alleged] almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Simmons v. Corizon Health, Inc.*, 136 F. Supp. 3d 719, 723 (M.D.N.C. 2015) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Further, a plaintiff "must point out 'a specific deficiency' in training, 'rather than general laxness or effectiveness in training.'" *Washington*, 457 F. Supp. 3d at 532 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)). The Complaint fails to plausibly allege that the School Board demonstrated deliberate indifference to Plaintiffs' liberty interests by failing to train its employees on the alleged policies. The Complaint also fails to point to a specific deficiency in the School Board's training. Plaintiffs instead rely on a leap in logic that because Dr. Bennett, Olsen, and Via allegedly engaged in misconduct over a two-week period—from August 11-25, 2021—the School Board must have failed to adequately train them and that that failure caused Plaintiffs' alleged injuries. That is insufficient to state a plausible failure to train claim.

### 4. **The Complaint does not plausibly allege that the School Board failed to supervise its subordinates.**

"As an initial matter, it is not clear that the Fourth Circuit has established that supervisory liability principles apply to municipalities, although other courts have suggested that municipalities might be liable for failure to supervise an officer." *Moody*, 93 F. Supp. 3d at 540

16

(collecting cases).  Assuming that there is supervisory liability for municipalities, a plaintiff must plausibly allege three elements to survive a motion to dismiss:

1.    "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff";

2.    "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and

3.    "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

*Id.* at 540-41 (quoting *Willis v. Blevins*, 966 F. Supp. 2d 646, 661-62 (E.D. Va. 2013)).  The three elements can be summarized as "knowledge, deliberate indifference, and causation."  *Id.* at 541.

As to the knowledge element, a plaintiff must plausibly allege "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff."  *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).  Said differently, "[a] failure to supervise gives rise to municipal liability 'only in those situations in which there is a history of widespread abuse.'"  *Washington*, 457 F. Supp. 3d at 537 (quoting *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983)).

The Complaint fails to plausibly allege a history of widespread abuse such that the School Board would be aware of an unreasonable risk of injury to Plaintiffs' liberty interests, much less that the School Board acted with deliberate indifference.  As noted above, Plaintiffs rely on alleged conduct by Dr. Bennett, Olsen, and Via during a two-week period at the beginning of the school year to impute knowledge on the School Board.  Dr. Bennett's, Olsen's, and Via's alleged conduct during the two-week period is insufficient to plausibly allege a failure to supervise claim against the School Board.

\*        \*        \*

For the reasons set forth above, the Complaint fails to plausibly allege a policy or custom attributable to the School Board or that such a policy or custom violated their substantive due process rights.  Additionally, the Complaint fails to plausibly allege that the School Board failed to train and supervise its employees.  Thus, this Court should dismiss the First, Second, and Third Causes of Action.

**C.    Title IX claim against the School Board (Fourth Cause of Action).**

**1.    The Complaint does not allege a plausible Title IX claim against the School Board.**

"Title IX provides that '[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'"  *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023) (quoting 20 U.S.C. § 1681(a)).  To prevail on a claim under Title IX, a plaintiff ultimately must prove "that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex [or race], (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution."[9]  *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007).

A school may be held liable for a Title IX claim of student-on-student discrimination only when the school's response is "clearly unreasonable in light of the known circumstances."  *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999).  The student-on-student harassment must be "severe, pervasive, and objectively offensive."  *Id.* at 633.  The liability standard under Title IX "precludes a finding of deliberate indifference in all but limited

---

[9] The School Board does not dispute that at the time of the events underlying the Complaint, S.B. was a student at an educational institution that received federal funds.

circumstances. *Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F. Supp. 2d 641, 654 (D. Md. 2013). Deliberate indifference occurs when an institution "refuses to take action" and makes "an official decision . . . not to remedy harassment." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Deliberate indifference does not, however, require a complete failure to act and a "half-hearted investigation or remedial action" will not shield a school division from liability. *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 77 (4th Cir. 2016). But "school administrators are entitled to substantial deference when they calibrate a disciplinary response to student-on-student bullying or harassment, and a school's actions do not become 'clearly unreasonable' simply because a victim or h[er] parents advocated for stronger remedial measures." *Id.* (first citing *Davis*, 526 U.S. at 648; then quoting *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012)).

The Complaint asserts a claim of student-on-student discrimination.[10] (ECF Doc. 1, at ¶ 158.) The Complaint alleges that the School Board violated Title IX in a variety of respects, including failing to notify Blair of the incidents of harassment, "failing to take appropriate responsive action," and failing to notify the Title IX coordinator of the harassment. (*Id.* at ¶ 157-58.)

Despite these assertions, the Complaint's allegations demonstrate that the School Board's employees responded appropriately to the events underlying the Complaint. As to the bullying and harassment S.B. allegedly experienced on the bus, Olsen and the ACHS Assistant Principal

---

[10] To the extent Plaintiffs are asserting a Title IX claim based on teacher-on-student discrimination, the Complaint does not allege that the School Board or its employees discriminated against S.B. on the basis of sex. Any Title IX claim based on teacher-on-student discrimination should therefore be dismissed because the Complaint does not allege a plausible claim. *See Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021) (holding that a Title IX plaintiff must plausibly allege that the alleged discrimination was on the basis of sex, *i.e.*, but-for causation).

reviewed the bus film the same day that S.B. reported the incident to them.  (*Id.* at ¶¶ 36-37.)
And although the film did not substantiate all of S.B.'s report, Olsen contacted Blair to pick up
S.B. from school and shared with Blair what had occurred on the school bus.[11]  (*Id.* at ¶¶ 37-39.)

Additionally, although S.B. allegedly experienced "harassment, threats, and assaults in
the hallways and the male bathrooms at the high school between August 12 and August 25,
2021," Plaintiffs allege that Olsen was not aware of these incidents until the August 23, 2021,
because S.B. apparently failed to report the incidents to Olsen despite Olsen meeting with S.B.
multiple times during that approximately two-week period.  (*Id.* at ¶¶ 40-41, 46.)  ACHS
administrators notified Olsen of the incidents upon learning of them.  (*Id.* at ¶ 40.)  The next day,
August 24, 2021, Olsen and another school counselor spoke with S.B. and agreed that S.B.
should use the nurse's restroom.  (*Id.* at ¶ 48.)  Notably, at that meeting S.B. reported only that
she was harassed when using the boys' restroom.  (*Id.*)  Following another meeting on August
25, 2021, Olsen then informed Blair that S.B. had been using the boys' restroom and there were
safety concerns.  (*Id.* at ¶ 58.)  Olsen also informed Blair that she noticed evidence of self-harm
on S.B.'s body.  (*Id.* at ¶ 60.)

Furthermore, although the Complaint alleges that on "inform[ation] and belie[f]"
Dr. Bennett "was aware" of "incidents in the boys' restroom during the time S.B. was using
them," (*id.* at ¶¶ 46-47), such a vague allegation is insufficient to plausibly suggest that
Dr. Bennett failed to act.  Conclusory allegations based merely "'upon information and belief'
. . . are insufficient to defeat a motion to dismiss."  *Harman*, 356 F. App'x at 640-41; *In re*

---

[11] Olsen also interviewed two students that were on the bus at the time of the alleged incident.
(ECF Doc. 25, at 2.)  Both interviews also failed to substantiate all of S.B.'s report.  Olsen also
informed Blair that S.B. identifying as male was a factor in the bus incident in response to
Blair's question.  (*Id.* at 3.)

*Darvocet,* 756 F.3d at 931 ("The mere fact that someone believes something to be true does not create a plausible inference that it is true.").

In short, the Complaint does not plausibly allege that the School Board and its employees' response to was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. The allegations instead demonstrate that upon learning of safety concerns with S.B. using the boys' restroom, the School Board's employees responded reasonably to address those concerns during the two-week period before S.B. ran away from home. Blair or S.B.'s desire for a different response does not overcome the deference afforded to the School Board and its employees' response. *See S.B. ex rel. A.L.*, 819 F.3d at 77. Thus, this Court should dismiss the Fourth Cause of Action against the School Board.

### 2.    The Complaint does not allege a claim for damages under Title IX.

The damages available under Title IX are limited. Punitive damages, for example, are unavailable. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1568, 1571-72 (2022) (noting that punitive damages are not available under Congress's antidiscrimination Spending Clause statutes, which include Title IX); *Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002) (per curiam); *Stover v. College of William & Mary in Va.*, 635 F. Supp. 3d 429, 444 n.2 (E.D. Va. 2022). So too are damages for emotional distress. *Cummings*, 142 S. Ct. at 1571-72; *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-614, 2023 WL 424265, at *3-4 (E.D. Va. Jan. 25, 2023). Emotional distress damages include expenses stemming from medical or psychological treatment. *Doe*, 2023 WL 424265, at *5; *J.C. v. Bd. of Regents of Univ. Sys. of Ga.*, No. 1:20-cv-4445, 2023 WL 4938054, at *4-5 (N.D. Ga. Aug. 1, 2023); *see Doe v. City of Pawtucket*, 633 F. Supp. 3d 583, 590 (D.R.I. 2022) (allowing request for damages related to physical harm that was sustained during sexual assault).

Damages for lost educational opportunities and benefits, however, are available under Title IX. *Doe*, 2023 WL 424265, at *4-5. Those damages must "stem directly from lost opportunities suffered as a result of discrimination." *Id.* at *5. A plaintiff may be deprived of educational opportunities or benefits if the alleged harassment:

1.  "results in the physical exclusion of the victim from an educational program or activity";

2.  "so undermines and detracts from the victim's educational experience as to effectively deny her equal access to an institution's resources and opportunities"; or

3.  "has a concrete negative effect on the victim's ability to participate in an educational program or activity."

*Doe v. Fairfax County Sch. Bd.*, 1 F.4th 257, 275 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Jennings*, 482 F.3d at 699).

The Complaint alleges that as a result of the harassment S.B. experienced at ACHS, S.B. "suffered and will continue to suffer significant physical and psychological trauma, educational disruption, and emotional distress." (ECF Doc. 1, at ¶ 161.) As relief, Plaintiffs request compensatory and punitive damages. (*Id.* at 53.)

At the outset, to the extent Plaintiffs are requesting punitive or emotional distress damages under Title IX, those damages do not state a claim because they are not available under Title IX. *E.g.*, *Cummings*, 142 S. Ct. at 1568, 1571-72. Likewise, this Court should dismiss the claim based on the request for damages for "physical and psychological trauma." (ECF Doc. 1, at ¶ 161.) The Complaint does not allege that S.B. incurred damages related to physical harm as a result of the alleged incidents at ACHS. Instead, the Complaint alleges that S.B. sustained physical harm after running away from home. (*Id.* at ¶¶ 64-105.) Thus, Plaintiffs' request for damages stemming from "physical and psychological trauma" is simply another way of

requesting damages for emotional distress. *See Doe v. City of Pawtucket*, 633 F. Supp. 3d at 590.

Additionally, to the extent that Plaintiffs are requesting compensatory damages for lost educational opportunities and benefits, this Court should dismiss that claim as well. The Complaint does not allege that S.B.'s grades suffered, that she was unable to attend class, or that she had to seek alternative education as a result of the alleged harassment. *See Doe*, 1 F.4th at 269-70. The Complaint also does not allege that the alleged harassment and assault "so undermine[d] and detract[ed]" from her education that she was "effectively den[ied]" equal access to ACHS's resources and opportunities or that the alleged harassment and assault physically prevented her from accessing those resources and opportunities.

Instead, the Complaint alleges that any disruption to S.B.'s education occurred because S.B. ran away from home and the events that followed thereafter. Furthermore, the alleged harassment that S.B. faced at ACHS on a recurring basis apparently occurred almost exclusively in the boys' restroom. (*E.g.*, ECF Doc. 1, at ¶¶ 40, 46, 48, 52, 61.) Upon learning this, Olsen promptly met with S.B. and instructed S.B. to use the nurse's restroom. (*Id.* at ¶ 48.) Thus, Plaintiffs also fail to plausibly allege that S.B. suffered damages as a result of lost educational opportunities and benefits.

For these reasons, Plaintiffs' Title IX claim should be dismissed.

## IV.   CONCLUSION

For all of the foregoing reasons, the School Board, by counsel, respectfully requests that this Court grant its motion to dismiss and dismiss the Complaint against it in its entirety and with prejudice.

**APPOMATTOX COUNTY SCHOOL
BOARD**

By Counsel

s/Melissa Y. York
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Counsel for Appomattox County School Board
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com

# C E R T I F I C A T E

I hereby certify that on the 2nd day of October, 2023, I electronically filed the foregoing
with the Clerk of the Court using the CM/ECF system, which will send notification of such filing
to the following:

> Mary E. McAlister, Esq.
> VSB No. 76057
> Child & Parental Rights Campaign, Inc.
> P.O. Box 637
> Monroe, VA 24574
> 770-448-4525 - Phone
> mmcalister@childparentrights.org
>
> Vernadette R. Broyles, Esq.
> VSB No. GA 593026
> Ernest G. Trakas, Esq.
> VSB No. MO 33813
> Child & Parental Rights Campaign, Inc.
> 5805 State Bridge Road, Suite G310
> Johns Creek, GA 30097
> 770-448-4525 - Phone
> vbroyles@childparentrights.org
> etrakas@childparentrights.org

> s/Melissa Y. York
> Jeremy D. Capps (VSB No. 43909)
> Melissa Y. York (VSB No. 77493)
> Counsel for Appomattox County School Board
> Harman, Claytor, Corrigan & Wellman
> P.O. Box 70280
> Richmond, Virginia  23255
> 804-747-5200 - Phone
> 804-747-6085 - Fax
> jcapps@hccw.com
> myork@hccw.com