# Appendix A

## I.   Blair Complaint Allegations That Fail to Meet Rule 11 and Verification Requirements

Set forth below are direct quotes from the Blair Complaint in numerical order, with references to the page number and paragraph number, highlighted in **boldface** to point out material that Via respectfully asserts are improper for a verified complaint under 28 U.S.C. § 1746, the relevant case law in this Circuit, and Fed. R. Civ. P. 11:

"**Deprived of her parents' care and treatment** as a result of Appomattox Defendants' conduct, S.B. feared continuing harassment and assaults at school and threats from schoolmates to pursue S.B. and her family at home and ran away." ECF No. 1, at 2, ¶ 3. (*Only S.B. could properly verify such a statement factually, and without such support this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Mrs. Blair is <u>informed and believes</u> that Ms. Khan **made material misrepresentations to S.B. regarding her parents** and **convinced the traumatized S.B. to lie about the Blairs' conduct** so as to deprive Mrs. Blair of rightful custody of her daughter." ECF No. 1, at 3, ¶ 5. (*Without direct statements from S.B., this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"<u>On information and belief</u>, **aided by** Ms. Olsen and **Mr. Avery** [Via], Ms. Khan facilitated the initiation of child protective services investigations in Virginia and Maryland with the intent of depriving Mrs. Blair of her right to custody of her daughter in the Commonwealth of Virginia." ECF No. 1, at 3, ¶ 5. (*Without specific examples of misconduct, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Appomattox Defendants' conduct further resulted in Ms. Khan representing S.B. and engaging in **further actions**, including <u>on information and belief</u>, **working with** Ms. Olsen and **Mr. Avery** [Via] **to deprive Mrs. Blair of rightful custody of her daughter and tortiously interfere with her right to care, custody and control of her daughter**." ECF No. 1, at 4, ¶ 8. (*Without specific examples of misconduct, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"<u>On information and belief</u>, Ms. Khan also w**orked in concert with Virginia residents Olsen and Avery [Via] to intentionally interfere with Mrs. Blair's right to custody and control** of her daughter in Virginia." ECF No. 1, at 5, ¶ 12. (*Without specific examples of misconduct, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Plaintiff is <u>informed and believes</u> and based thereon alleges that Superintendent Bennett was aware of the reported incidents **but did not direct** Ms. Olsen, **Mr. Via**, or any other ACHS staff **to follow the Appomattox County Public School's anti-harassment/bullying policies**." ECF No. 1, at 12, ¶ 47. (*Without specific examples of misconduct, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Mrs. Blair was never told about the result of the [security video] review but is <u>informed and believes</u> that Officer Gunter contemporaneously reported that the tapes revealed several male students entering into the boys' bathroom during times that S.B. was in there." ECF

No. 1, at 12, ¶ 52. (*Without quoting from supporting documents in her possession, which should be submitted for the Court's evaluation in connection with pending Motions to Dismiss, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Plaintiff is <u>informed and believes</u> and based thereon alleges that **Defendants** Olsen's and **Via's concealment of information from Mrs. Blair was part of a District protocol or guideline that directed staff to not inform parents when their children expressed a discordant gender identity and asked to be treated as the opposite sex, using opposite sex names and pronouns and use opposite sex privacy facilities, unless the minor child agrees to disclosing the information**." ECF No. 1, at 14, ¶ 59. (*In light of the existence of the 2020 Virginia statute and the 2021 version of the Virginia Board of Education's Model Policies document (as addressed on pages 17-21 of Via's dismissal Memorandum), as well as the materiality of medical and counseling records that other Appomattox Defendants made available to Ms. Blair before she filed this action (as addressed at page 7 & n.4 and at 11 & n.6 of the Olsen dismissal Memorandum), Via submits that this allegation violates 28 U.S.C. § 1746 as well as Rule 11, by failing to inform the Court of the existence of a document setting for the VDOE's official position under the 2020 statute, and constitutes a blatant lack of candor to the Court.*)

"Plaintiff is <u>informed and believes</u> that **Superintendent Bennett and members of the School Board were aware of the protocol or guideline, adhered to, and implemented it.**" ECF No. 1, at 14, ¶ 59. (*Same comment.*)

"Plaintiff is <u>informed and believes</u> that **Ms. Khan did not tell S.B. that her parents were there, clearly and intentionally giving S.B. the impression that her parents had not come to get her.**" ECF No. 1, at 16-17, ¶ 73. (*Without direct statements from S.B., this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Plaintiff is <u>informed and believes</u> that[,] when Ms. Khan introduced herself to S.B. on September 3, 2021, she asked S.B. if her parents used a male name and pronouns with her at home." ECF No. 1, at 17, ¶ 74. (*Without direct statements from S.B., this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Plaintiff is <u>informed and believes</u> and based thereon alleges that **Ms. Khan communicated with** Ms. Olsen and **Mr. Via on numerous occasions in September and October 2021 with the intent to elicit testimony and other information for purposes of falsely accusing Mrs. Blair of emotional and physical abuse of S.B. related to S.B.'s asserted gender identity**, and thereby interfere with Mrs. Blair's right to custody of her daughter in the Commonwealth of Virginia." ECF No. 1, at 19, ¶ 85. (*Without quoting from supporting documents in her possession, which should be submitted for the Court's evaluation in connection with pending Motions to Dismiss, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Mrs. Blair is <u>informed and believes</u> that **S.B. learned that the judge's order to return her to Virginia was being appealed by Ms. Khan so that she would have to continue staying**

**in Maryland**.” ECF No. 1, at 22, ¶ 100. (*Without direct statements from S.B., this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

“Plaintiff is <u>informed and believes</u> that the details about S.B.’s case were also shared at the Maryland high school.” ECF No. 1, at 22, ¶ 103. (*For lack of context provided elsewhere in the Complaint, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746. Furthermore, the actual context was investigations conducted by Ms. Khan, social services officials, and others after S.B. ran away in Maryland.*)

“Appomattox County Public Schools officials with authority to take corrective action, in particular, <u>on information and belief</u>, the Board and Superintendent Bennett, and with prior knowledge, were deliberately indifferent to S.B.’s reports, reports by witnesses and video evidence of sexual harassment and assaults on school buses, in hallways and male restrooms causing her to undergo repeated acts of sexual harassment and assault, thereby creating an unsafe, sexually hostile environment that was severe, pervasive, and objectively offensive….” ECF No. 1, at 35-36, ¶ 157. (*Without specific examples of misconduct, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

“On <u>information and belief</u>, at all relevant times the School Board and Superintendent Bennett exercised substantial control over the response, and lack of response, to S.B.’s reports of being sexually harassed and assaulted at school.” ECF No. 1, at 36, ¶159. (*Without specific examples of misconduct, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

“Plaintiff is <u>informed and believes</u> and based thereon alleges that **Defendant**s Dena Olsen, **Avery Via**, and Aneesa Khan **conspired to violate Plaintiff’s fundamental right to custody and control and to direct the care and upbringing of her daughter, S.B.**, based on Mrs. Blair’s perceived viewpoint about affirming an incongruent gender identity in her daughter.” ECF No. 1, at 37, ¶ 163. (*Without specific factual examples of misconduct supporting a conspiracy, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

“Plaintiff is <u>informed and believes</u> that on or about September 3, 2021, Ms. Khan learned that S.B. had asserted a discordant gender identity and was being addressed by a male name and pronouns while attending ACHS.” ECF No. 1, at 37, ¶ 164. (*Without direct statements from Khan, S.B., or others, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

“Mrs. Blair is <u>informed and believes</u> that while S.B. was in custody in Baltimore Ms. Khan asked S.B. whether S.B.’s parents called her a boy at home, to which S.B. answered no.” ECF No. 1, at 37-38, ¶ 164. (*Without direct statements from Khan, S.B., or others, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

“On <u>information and belief</u>, Mrs. Blair alleges that **on or about September 3, 2021, Ms. Khan communicated with** Ms. Olsen and **Mr. Via in Virginia regarding S.B.’s assertion of a discordant gender identity and Ms. Khan’s belief that Mrs. Blair was not**

**appropriately supporting the alternate identity and thereby being abusive and neglectful."** ECF No. 1, at 38, ¶ 166. (*Without direct statements from Khan, S.B., or others, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"On underlined information and belief, **Mrs. Blair alleges that** Ms. Olsen and **Mr. Via had a meeting of the minds with Ms. Khan that Mrs. Blair was guilty of abuse and neglect for not being sufficiently supportive of S.B.'s assertion of a male gender identity and that** they, Khan, Olsen and **Via, should act to deprive Mrs. Blair of custody of her daughter** because of a perceived disfavored viewpoint regarding affirming S.B.'s assertion of a male identity." ECF No. 1, at 38, ¶ 166. (*Without direct statements from Khan, S.B., or others, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"On underlined information and belief, Mrs. Blair alleges that on or after September 3, 2021, **Ms. Olsen and Mr. Via agreed to work with Ms. Khan to provide evidence to the Maryland juvenile court to demonstrate that Mrs. Blair was guilty of neglect and abuse of S.B.** because of their perception that Mrs. Blair had and unfavorable viewpoint regarding S.B.'s assertion of a male gender identity." ECF No. 1, at 38, ¶ 167. (*Without direct statements from Khan, S.B., or others, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Plaintiff is underlined informed and believes that **Ms. Olsen and Mr. Via took other actions in concert with Ms. Khan aimed at depriving Mrs. Blair of her fundamental right to have custody and control and to direct the upbringing and care of S.B., based on** Ms. Khan's, **Mr. Via's** and Ms. Olsen's **discriminatory animus toward Mrs. Blair** because of their perception of Mrs. Blair's viewpoint concerning the proper response to S.B.'s assertion of a male gender identity." ECF No. 1, at 39, ¶ 169. (*Without direct statements from Khan, S.B., or others, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

"Plaintiff is underlined informed and believes that **Ms. Khan took further overt acts in furtherance of the conspiracy** of which Plaintiff is presently unaware but were aimed at depriving Mrs. Blair of custody, care, and control of her daughter because of Ms. Khan's discriminatory animus toward Mrs. Blair due to her perceived disfavored viewpoint on affirmation of S.B.'s asserted male identity." ECF No. 1, at 40, ¶ 172. (*Without direct statements from Khan, S.B., or others, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

**Ms. Khan's intentional acts taken to interfere** with Mrs. Blair's parental relationship with S.B. **include**, *inter alia*, . . . 3) "On underlined information and belief, **working with third parties to make allegations of abuse and neglect against Mr. and Mrs. Blair** to prevent them from regaining custody and returning with S.B. to Virginia." ECF No. 1, at 46, ¶ 199. (*Without direct statements from Khan, S.B., or others, this allegation is beyond the scope of statements verifiable under 28 U.S.C. § 1746.*)

4

## II.   Blair Complaint Allegations That Violate Rule 12(f) Requirements

Set forth below are direct quotes from the Blair Complaint in numerical order, with references to the page number and paragraph number, highlighted in **boldface** to point out examples of material that likely violate the requirements of Rule 12(f) and therefore certainly do not belong in a verified complaint:

"On information and belief, **aided by** Ms. Olsen and **Mr. Avery** [Via], Ms. Khan facilitated the initiation of child protective services investigations in Virginia and Maryland with the intent of depriving Mrs. Blair of her right to custody of her daughter in the Commonwealth of Virginia." ECF No. 1, at 3, ¶ 5. "On information and belief, Ms. Khan also w**orked in concert with Virginia residents Olsen and Avery [Via] to intentionally interfere with Mrs. Blair's right to custody and control** of her daughter in Virginia." ECF No. 1, at 5, ¶ 12. (*Without examples of specific misconduct, this allegation is merely a scandalous description of 'full cooperation with a court of competent jurisdiction in Maryland'."*)

"These egregious acts resulted from the Appomattox Defendants' deliberate concealment of information regarding S.B.'s discordant gender identity, actions taken at school to affirm that identity, and unaddressed assaults resulting from the affirmed identity **that undermined Mrs. Blair's parental authority and prevented her from exercising her right to direct S.B.'s upbringing and provide needed care**." ECF No. 1, at 3, ¶ 8. (*The verified Complaint directly alleges that Defendant Via and others are legally responsible for the vile abuse that S.B. allegedly received at the hands of unidentified third parties who deserve to be prosecuted and punished appropriately for each alleged crime.  This and other allegations offered to support such a claim, and seek damages from these Defendants, would require such a drastic change in current law and contemporary standards that its allegation without a plain statement regarding the required change in the law is immaterial, impertinent and scandalous.*)

"A child's assertion of a discordant gender identity is a significant mental health concern. Ms. Olsen's and Mr. Via's actions in affirming S.B.'s assertion of a male identity and facilitating social transitioning through use of opposite sex names, pronouns, and opposite sex privacy facilities is an integral part of mental health intervention for gender dysphoria, *Grimm v. Gloucester County School Board*, 972 F.3d 586, 596 (4th Cir. 2020)." ECF No. 1, at 11, ¶ 43. "Therefore, in meeting and counseling with S.B., Ms. Olsen and Mr. Via were engaging in a form of psychotherapy in violation of District policy regarding counseling services. District Policy I.J provides:

The guidance and counseling program does not include the use of counseling techniques which are beyond the scope of the professional certification or training of counselors, **including hypnosis, or other psychotherapeutic techniques that are normally employed in medical or clinical settings and focus on mental illness or psychopathology**.

"At no point did Ms. Olsen or Mr. Via notify Mrs. Blair that they were counseling her daughter about transgender identities . . . ." (ECF No. 1, at 11, ¶ 44.) (*The Complaint lacks any assertion that Mr. Via lacked the training and certification to engage in psychological*

*counseling generally, or gender incongruence therapy in particular, and the same applies to Ms. Olsen. Furthermore, the quoted example of an improper counseling technique is hypnosis, which is entirely different from conversation with an awake student, and there is no Complaint allegation that gender-incongruence counseling is either forbidden, or should be banned, in high schools. In any event, these impertinent and immaterial allegations at most might support a negligence claim, and clearly cannot support a claim of intentionally harmful conduct.*)

"Plaintiff is informed and believes that Ms. Khan did not tell S.B. that her parents were there [at the Maryland Detention Center], clearly and intentionally giving S.B. the impression that her parents had not come to get her." ECF No. 1, at 16-17, ¶ 73. (*If this verified allegation is false, it unjustifiably slanders Ms. Khan under oath, therefore is scandalous, and does not belong in a verified pleading.*)

"Desperate, Mrs. Blair offered to have S.B. return to Virginia to live with another family who S.B. knew and who had arranged for trauma therapy. Ms. Khan stated that the offer was rejected and that S.B. also rejected having her parents transport her to Virginia. Ms. Khan further stated that S.B. said that Mrs. Blair repeatedly told her that she could not be a transgender in her house. **This was a blatantly false statement as, due to the Appomattox Defendants' concealment, Mrs. Blair did not know about S.B.'s transgender identity until she told Mrs. Blair just hours before she ran away.**" ECF No. 1, at 18, ¶ 79. (*Like similar allegations elsewhere in the Complaint, the last sentence of this paragraph is biased and otherwise argumentative, and should not have any place in a verified complaint, especially in a proceeding where custody is not at issue, and the right to custody does not include control over administration of public schools.*)

"Appomattox County social service officials also received reports that Mrs. Blair had subjected S.B. to "conversion therapy" aimed at changing S.B.'s gender identity. **This was factually impossible, as Mrs. Blair did not know about S.B.'s asserted male gender identity** until August 25, 2021, shortly before S.B. ran away[,] and therefore **could not have subjected her to any form of therapy** regarding her gender identity." ECF No. 1, at 18, ¶ 83. (*Without supporting documentation or identification of sources with personal knowledge of, the highlighted allegations as being attributable to Defendants, or any of them, these allegations are a scandalous effort to interject the issue of "conversion therapy" – practices of typically fundamentalist parents and organizations that want to suppress behavior or emotions incongruent with a person's birth sex – as an impertinent and immaterial issue in this litigation. In the simplest terms, this allegation ineptly pleads a defense to a possible criticism of Ms. Blair's conduct that no Defendant has yet asserted.*)

"The calls and reports to Appomattox County's hotline prompted a child abuse investigation into Mrs. Blair. **Mrs. Blair is a long-time volunteer with CASA, Court Appointed Special Advocates, who provide individualized support for children who are victims of abuse and must navigate the juvenile court system. As a CASA volunteer Mrs. Blair had been vetted and trained regarding helping child abuse victims.** The investigation by Appomattox County DSS was closed with no findings of abuse or neglect on the part of the Blairs." ECF No. 1, at 19, ¶ 84. (*Especially in context, this allegation presents a*

*misleadingly false dichotomy, suggesting that someone else is liable for what happened here unless Ms. Blair and her husband are proved to be guilty of abuse or neglect.  Defendants here do not have to prove "abuse or neglect" to present a complete defense, and therefore this allegation is immaterial and impertinent, especially as to Mr. Via.  To the extent that this allegation has any relevance to claims solely against Ms. Khan (see, e.g., ¶¶ 95-100 & 103), it should be stricken as to Mr. Via.)*

 "Plaintiff is informed and believes and based thereon alleges that **Ms. Khan communicated with** Ms. Olsen and **Mr. Via** on numerous occasions in September and October 2021 **with the intent to elicit testimony and other information for purposes of falsely accusing Mrs. Blair of emotional and physical abuse of S.B. related to S.B.'s asserted gender identity**, and thereby interfere with Mrs. Blair's right to custody of her daughter in the Commonwealth of Virginia."  ECF No. 1, at 19, ¶ 85.  (*Without any factually specific allegation whatsoever of such wrongfully purposeful involvement in any misconduct by Ms. Khan involving Mr. Via and others in the course of judicial proceedings, this allegation is impertinent and scandalous.*)

 "On information and belief, Mrs. Blair alleges that on or after September 3, 2021, **Ms. Olsen and Mr. Via agreed to work with Ms. Khan to provide evidence to the Maryland juvenile court to demonstrate that Mrs. Blair was guilty of neglect and abuse of S.B.** because of their perception that Mrs. Blair had and unfavorable viewpoint regarding S.B.'s assertion of a male gender identity."  ECF No. 1, at 38, ¶ 167.  "Plaintiff is informed and believes that **Ms. Olsen and Mr. Via took other actions in concert with Ms. Khan aimed at depriving Mrs. Blair of her fundamental right to have custody and control and to direct the upbringing and care of S.B., based on** Ms. Khan's, **Mr. Via's** and Ms. Olsen's **discriminatory animus toward Mrs. Blair** because of their perception of Mrs. Blair's viewpoint concerning the proper response to S.B.'s assertion of a male gender identity."  ECF No. 1, at 39, ¶ 169.  (*Same comment*.)

 "Mrs. Blair told S.B. that she did not need to return to school and that they would 'figure it out in the morning'."  ECF No. 1, at 15, ¶ 62.  "S.B. was still frightened and was afraid she and her family would be subjected to more threats or harm. S.B. **suffered a psychotic breakdown** and decided to run away."  ECF No. 1, at 15, ¶ 63.[1]  (*Those allegations, while*

---

[1] In stark contrast with certain above-cited impertinent or scandalous allegations mentioned and discussed elsewhere herein, the following allegation is material and properly stated, with or without verification (ECF No. 1, at15, ¶ 65):

 "After S.B. ran away, law enforcement found a good-bye note S.B. left for her parents. They provided her with a copy.  The note said, 'You've done your job, Jesus loves you.'  She said 'I'm afraid of what is to come if I stayed.  Be on your guard.  There are bad people around here[.]'  S.B. signed the note "All my love."

*That is, S.B. respectfully acknowledged her parents efforts to bring her up according to their religion, she recognized that typical teenagers and other people of Appomattox County were not ready to accept her, and she warned her parents to be on the lookout for misconduct against the*

*plausible under Rule 12(b)(6) standards, lie at the heart of likely disputes in this case, avoid any mention of Ms. Blair's admitted disapproval of S.B.'s open identification of herself as male, and therefore are materially misleading even as a plausible hypothesis about what happened that day and why S.B. ran away that night.  As such, they are improper as the subject for a verified allegation, and should not be relied upon by the Court as objectively accurate, instead of recognized as a pleading putatively designed to avoid making any adverse admissions regardless of the full truth and/or S.B.'s actual personal interests and rights.)*

---

*family.  She did not blame the school or its personnel in any way, even though permission to use the male bathroom obviously had led to an adverse reaction from certain male students.*

*This allegation highlights an additional problem with the Verified Complaint, which is that, while Ms. Blair purports to represent S.B.'s legal interest as a minor, Ms. Blair and her interests and objectives are religiously and otherwise at odds with S.B.'s personal rights and legal interests. Accordingly, Via is preparing a Motion to Appoint an independent Guardian ad Litem for S.B., from whom the Court may either request or otherwise expect a separate pleading from legal counsel retained by or appointed to assist that guardian in this litigation.*