**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| MICHELE BLAIR, individually and as Guardian and next friend of S.B., a minor; *Plaintiffs*, | * | |
| | * | |
| v. | * | No. 6:23-cv-00047-NKM |
| | * | |
| APPOMATTOX COUNTY SCHOOL BOARD, ET AL., | * | |
| *Defendants.* | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**ANEESA KHAN'S MEMORANDUM IN SUPPORT**
<u>**OF HER MOTION TO DISMISS**</u>

Charles M. Sims (VSB No. 35848)
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, VA 23219
***csims@ohaganmeyer.com***
(804) 403-7111
(804) 237-0250 (facsimile)

Wendy L. Shiff (Admitted *Pro Hac Vice*)
Federal Bar No. 09076 (Maryland)
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
***wshiff@oag.state.md.us***
(410) 576-6996
(410) 576-6955 (facsimile)

*Attorneys for Aneesa Khan*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

FACTUAL ALLEGATIONS IN THE COMPLAINT ........................................................1

ARGUMENT ........................................................................................................................3

I.   Standard of Review ...................................................................................................3

    A.   Rule 12(b)(2) – Lack of Personal Jurisdiction ................................................3

    B.   Rule 12(b)(6) – Failure to State a Claim .........................................................4

II.  This Court Does Not Have Personal Jurisdiction Over Ms. Khan ..............................5

III. The Complaint Fails to State a Claim Against Ms. Khan ...........................................10

    A.   Plaintiffs Fail to State a § 1985 Conspiracy Claim Against Ms. Khan ..............10

        1.   The Complaint Does Not Allege Facts Sufficient to Show the Existence of a Conspiracy ..........................................................................11

        2.   The Complaint Does Not Allege Facts Sufficient to Support a Claim of Specific Class-Based Invidiously Discriminatory Animus ..................13

        3.   Absent Constitutional Violation, There Can Be No Cognizable Conspiracy ..............................................................................................13

    B.   Maryland Law Applies to the Remaining Causes of Action Against Ms. Khan..............................................................................................................14

    C.   The Maryland Tort Claims Act Bars Recovery Against Ms. Khan ...................14

        1.   Recovery Against Ms. Khan is Barred by Statutory Immunity ................14

        2.   The Complaint Does Not Allege Malice ...................................................15

        3.   The Complaint Failed to Sufficiently Allege Gross Negligence ..............16

        4.   Failure to Satisfy a Condition Precedent Bars Recovery ..........................17

    D.   The Complaint Fails to State a Claim for Legal Malpractice .............................17

    E.   The Complaint Fails to State a Claim for Intentional Interference with Parental Rights ..................................................................................................20

F.    The Complaint Fails to State a Claim for Intentional Infliction of
Emotional Distress ................................................................................21

CONCLUSION ................................................................................................23

CERTIFICATE OF SERVICE ........................................................................24

## <u>TABLE OF AUTHORITIES</u>

### Cases

*AFL-CIO v. Scott*, 463 U.S. 825 (1983) ...................................................... 11, 13

*American Chiropractic Ass'n v. Trigon Healthcare, Inc*, 367 F.3d 212 (4th Cir. 2004) .... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 4

*Barbre v. Pope*, 935 A.2d 699 (Md. 2007) .................................................... 15, 16

*Batson v. Shifflett*, 602 A.2d 1191 (Md. 1992) .................................................... 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 555 (2007) .................................... 4, 5

*Bellamy v. Mason's Stores*, 368 F. Supp. 1025 (E.D. Va. 1973) ........................ 13

*Beztak Land co., v. City of Detroit*, 298 F.3d 559 (6th Cir. 2002) ..................... 14

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) ................... 13

*Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985) .............................................. 13

*Caldeira v. County of Kauai*, 866 F.2d 1175 (9th Cir. 1989) ........................... 14

*Cape  v. von Maur,* 932 F. Supp. 124 (D. Md. 1996) ..................................... 9, 10

*Carter v. Aramark Sports and Entertainment Services, Inc.,* 835 A.2d 262
   (Md. App. 2001) .......................................................................................... 21

*Carter v. Va. Dep't of Game & Inland Fisheries*, No 3:15cv661, 2018 WL 3614975
   (E.D. Va. July 27, 2018) .............................................................................. 12

*Combs v. Bakker,* 886 F.2d 673 (4th Cir. 1989) ................................................ 4

*Denney v. City of Albany*, 247 F.3d 1172 (11th Cir. 2001) ............................... 14

*DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419 (E.D. Va. 1996) ............ 7

*Drzymala v. BAE Sys. Controls, Inc.*, No. 7:21cv00522, 2022 WL 3971050
   (W.D. Va. Aug. 31, 2022) ............................................................................ 12

*Elliot v. Kupferman*, 473 A.2d 960 (Md. App. 1982) ....................................... 15

*Flaherty v. Weinberg*, 492 A.2d 618 (Md. 1985) ............................................. 17

*Foor v. Juvenile Services Admin.*, 552 A.2d 947, *cert. denied*, 558 A.2d 1206 (Md. 1989) ...................................................................................................... 22

*Ford Motor Co. v. National Indem. Co.*, 972 F. Supp. 2d 850 (E.D. Va. 2013) ............... 14

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ............................................... 5

*Gasner v. County of Dinwiddie*, 162 F.R.D. 280 (E.D. Va. 1995) ................................ 5

*Goines v. Valley Community Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016) ........................... 5

*Gooden v. Howard County, Md.*, 954 F.2d 960 (4th Cir. 1992) ...................................... 13

*Grayson v. Anderson*, 816 F.3d 262 (4th Cir. 2016) ........................................... 3, 4

*Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979) ............... 11

*Haines v. Vogel*, 249 A.3d 151 (Md. App. 2021) ................................................... 20

*Harris v. Jones*, 380 A.2d 611 (Md. 1977) .................................................... 21, 22

*Haskins v. Washington Adventist-Hospital*, No. 3:12cv515-HEH, 2012 WL 92360 (E.D. Va. Jan. 11, 2012) ...................................................................... 7, 8, 10

*Hinkle v. City of Clarksburg*, *W. Va.*, 81 F.3d 416 (4th Cir. 1996) ................................. 11

*Houghton v. Forest*, 959 A.2d 816 (Md. App. 2008), *aff'd in part & vacated in part*, 989 A.2d 223 (Md. 2009) ...................................................................... 15

*In re: Gault*, 387 U.S. 1 (1967) ....................................................................... 18

*Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925 (W.D. Va. 1990) ...................................................................................... 4

*Int'l Shoe v. Washington*, 326 U.S. 310 (1945) ...................................................... 7

*Jackson v. Genuine Data Servs., LLC,* No. 3:21cv211 (DJN), 2022 WL 256281 (E.D.Va. Jan. 26, 2022) ........................................................................ 3, 4

*Kaetz v. Unknown U.S. Marshals*, No. 21-62, 2021 WL 6808287 (W.D. Pa. June 7, 2021) ............................................................................ 13

*Kashdan v. George Mason Univ.*, 70 F.3d 694 (4th Cir. 2023) ....................................... 12

*Khalifa v. Shannon*, 945 A.2d 1244 (Md. 2007) .................................................... 20

*Lasater v. Guttman*, 5 A.3d 79 (Md. App. 2010) ................................................... 22

*Lee v. Cline*, 863 A.2d 297 (Md. 2004) .............................................................................. 15

*Manikhi v. Mass Transit Admin.*, 758 A.2d 95 (Md. 2000) ............................................... 21

*Medeco Security Locks, Inc. v. Fichet-Bauche*, 568 F. Supp. 405 (W.D. Va. 1983) .......... 9

*Milton v. IIT Research Inst.*, 138 F.3d 519 (4th Cir. 1988) ............................................... 14

*Mitrano v. Hawes*, 377 F.3d 402 (4th Cir. 2004) ................................................................ 8

*Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993) .................................... 4

*Mylan Labs. v. Akzo, N.V.,* 2 F.3d 56 (4th Cir. 1993) ......................................................... 3

*Nelson v. Kenny*, 710 A.2d 345 (Md. 1998) ...................................................................... 16

*Noble v. Bruce*, 709 A.2d 1264 (Md. 1998) ...................................................................... 17

*Parks v. Clarke*, No. 3:22cv00029, 2023 WL 2760070 (W.D. Va. Mar. 31, 2023) ........ 12

*Pusheck v. C.A. Lindman, Inc*, No. 1094, 2015 WL 5944442
    (Md. App., June 12, 2015) .......................................................................................... 17

*Rosario v. Wands,* No. 1:09-cv-663 (AJT/TCB), 2009 WL 2986614
    (E.D. Va. Sept. 17, 2009) ....................................................................................... 9, 10

*Russo v. White*, 400 S.E.2d 160 (Va. 1991) ...................................................................... 21

*Ruttenberg v. Jones*, 283 F. App'x 121 (4th Cir. 2008) ..................................................... 11

*Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995) ................................................................... 11

*Society Without a Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011) ........................... 11, 13

*Spirito v. Paneninsula Airport Comm'n*, 350 F. Supp. 3d 471 (E.D. Va. 2018) ................. 5

*State v. Thomas*, 211 A.3d 274 (Md. 2019) ...................................................................... 16

*Stracke v. Estate of Butler*, 214 A.3d 561 (Md. 2019) ...................................................... 16

*Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc.*, 774 F. Supp. 393
    (E.D. Va. 1991) ............................................................................................................ 9

*Thomas v. State,* 186 A.3d 857 (Md. App. 2018), *rev'd on other grounds* ...................... 16

*Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750 (7th Cir. 2002) ................. 5

*U.S. ex rel. Oberg. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131
(4th Cir. 2014) ................................................................................................ 5

*Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391 (E.D. Va. 1984) ................... 9

*United Bros. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*,
463 U.S. 825 (1983) ................................................................................ 11, 13

*V & V Mining Supply, Inc. v. Matway*, 295 F. Supp. 643 (W.D. Va. 1969) ..................... 9

*Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30 (D. Md. 2020) ..................................... 12

*Williams Crane & Rigging, Inc. v. B & L Systems, Ltd.*, 466 F. Supp. 956
(E.D. Va. 1979) ............................................................................................... 9

*Wimbush v. Youngkin*, No. 7:22-cv-00640, 2023 WL 2505483
(W.D. Va. Mar. 14, 2023) ............................................................................ 14

*Wyatt v. McDermott*, 725 S.E.2d 555 (Va. 2012) ........................................................... 20

**Statutes**

42 U.S.C. § 1985(3) .......................................................................................... 10, 11, 13

Md. Code Ann., Crim. Proc. § 16-202 ........................................................................ 15

Md. Code Ann., Cts. & Jud. Proc., § 5-522(b) ........................................................... 14

Md. Code Ann., State Gov't § 12-101(a)(1) ................................................................ 15

Md. Code Ann., State Gov't § 12-104 ......................................................................... 15

Md. Code Ann., State Gov't, § 12-105 ........................................................................ 15

Md. Code Ann., State Gov't, § 12-108(b)(1) ............................................................... 17

Va. Code Ann. § 8.01-328.1 .......................................................................................... 6

Va. Code Ann. § 8.01-328.1 (A)(1)(2004) ................................................................... 8

Va. Code Ann. § 8.01-330 ............................................................................................. 6

**Other Authorities**

*Role of Juvenile Defense Counsel in Delinquency Court,* National Juvenile Defender
Center, Spring 2009 ...................................................................................... 18

**Rules**

ABA Model Rules of Professional Conduct Preamble, 1.14(a) ....................................... 18

ABA Model Rules of Professional Conduct Preamble, 1.2(a) ......................................... 18

Maryland Attorneys' Rule of Professional Conduct, Rule 19-301.2 ................................ 18

Maryland Attorneys' Rule of Professional Conduct, Rule 19-301.14 .............................. 18

Defendant, Aneesa Khan ("Ms. Khan"), by her undersigned counsel, pursuant to Rules 12(b)(2) and 12(b)(6) and this Court's Standing Order for Civil Cases, submits this Memorandum of Points and Authorities in support her Motion to Dismiss.  The Complaint (ECF 1) fails to allege that this Court has personal jurisdiction over Ms. Khan and fails to state a claim against her necessitating dismissal of all claims against her with prejudice.

## FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff Michele Blair ("Ms. Blair"), who brings this action in her personal capacity and as Guardian and next friend of S.B., is the paternal grandmother and adoptive mother of the minor plaintiff of S.B.[1]  (ECF 1, ¶ 13.)  During the events at issue, S.B. had a history of mental health issues, including depression, eating disorders, self-harm, and hallucinations. (ECF 1, ¶¶ 14, 21.) S.B. had been diagnosed with "severe gender dysphoria" and at all relevant times, identified as a male.  (ECF 1, ¶¶ 27, 29.)

Plaintiffs allege that when school opened on August 11, 2021, S.B. met with Dena Olsen, a guidance counselor at Appomattox County High School ("ACHS"), and told her that she identified as a boy and wanted to use a male name and male pronouns. (ECF 1, ¶¶ 31-32.)  Plaintiffs claim that Ms. Olsen told S.B. that she could use the boys' restroom but failed to share that information with Ms. Blair. (ECF 1, ¶¶ 32, 34.)

Plaintiffs allege that S.B. experienced "harassment, threats, and assaults" at school, including in the boys' restroom during the first two weeks of school. (ECF 1, ¶ 40.)  On August 25, 2021, Ms. Olsen advised Ms. Blair that S.B. had been using the boys' restroom and that there were safety concerns.  (ECF 1, ¶ 58.)   Upon return from school that day, S.B. told Ms. Blair that

---

[1]The Complaint refers to S.B. by using feminine pronouns.  For ease of this Court, this brief follows that convention, without intending any disrespect to any party or reader.

she identified as a boy at school and that her male classmates threatened her with violence (ECF 1, ¶ 61.)  Ms. Blair told S.B. that she did not need to return to school and that they would "figure it out in the morning." (ECF 1, ¶ 62.)  S.B. ran away from home that evening.  (ECF 1, ¶ 63.)

Law enforcement found S.B. in Baltimore on September 2, 2021.  (ECF 1, ¶ 66.).  On September 3, 2021, Ms. Khan, a Maryland Assistant Public Defender,[2] was assigned to represent S.B. in juvenile court proceedings in Maryland[3]. (ECF 1, ¶¶ 4, 73).  Ms. Khan and S.B. met that day. (ECF 1, ¶ 74.)  A hearing occurred later that day at which the Blairs, S.B., and Ms. Khan appeared. (ECF 1, ¶¶ 74-75.)  In the presence of S.B., Ms. Khan represented that S.B. did not consent to returning to her Virginia home, that the Blairs did not support her identification as a male and that she felt unsafe at home (ECF 1, ¶ 78.)  The presiding judge, the Honorable Robert Kershaw, ordered that S.B. remain in Maryland under the temporary custody of the Maryland Department of Juvenile Services ("DJS").  (ECF 1, ¶ 80.)

Plaintiffs allege that Ms. Khan communicated with Ms. Olsen on September 9, 2021 (ECF 1, ¶ 85.)  Plaintiffs further allege that upon information and belief, Ms. Khan communicated with Ms. Olsen and Mr. Via on numerous occasions in September and October 2021 with the intent of falsely accusing Ms. Blair of abuse of S.B.  (*Id.*)

The Commonwealth of Virginia and the State of Maryland participate in the Interstate Compact for Juveniles ("ICJ"),  (ECF 1, ¶ 89.)  The ICJ applies when a juvenile runs away from her home state and is found in a different state.  (*Id.*) The ICJ includes policies and procedures regarding the return of juveniles. (*Id.*)

---

[2] The Complaint refers to Ms. Khan as a Maryland Public Defender.  The correct title is Assistant Public Defender.

[3] The juvenile court referenced throughout this brief is the Circuit Court for Baltimore City, Division of Juvenile Causes.

The juvenile court conducted hearings and continued to order that DJS retain temporary custody over S.B. until November 10, 2021, when it ordered, pursuant to the ICJ, that S.B. be returned to Virginia, specifically, a residential facility in Northern Virginia (not her home with Ms. Blair).  (ECF 1, ¶ 98.)  The next business day, November 12, 2021, the Office of the Public Defender filed an Ex Parte Emergency Motion for Injunction in the Court of Appeals of Maryland[4] requesting a stay of the juvenile court's order.  (ECF 1, ¶ 99.)  That same day, S.B. removed her GPS tracking device and ran away from Maryland.  (ECF 1, ¶ 101.)   In January 2022, S.B, was found by Texas law enforcement and returned with Ms. Blair to Virginia. (ECF 1, ¶ 104.)

## ARGUMENT

### I.   Standard of Review

#### A.   Rule 12(b)(2) – Lack of Personal Jurisdiction.

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Plaintiff must "prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). "If a federal court reviews 'only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint,' then a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2)." *Jackson v. Genuine Data Servs., LLC,* No. 3:21cv211 (DJN), 2022 WL 256281, at *1 (E.D.Va. Jan. 26, 2022) (quoting *Grayson*, 816 F.3d at

---

[4] Despite the representation in the Complaint, the Motion for Injunction was filed with the Court of Special Appeals, the intermediate appellate court of Maryland.  In 2022, following a state referendum, the Maryland appellate courts were renamed.  The Court of Special Appeals was renamed the Appellate Court of Maryland.  The Court of Appeals, Maryland's highest-level appellate court, was renamed the Supreme Court of Maryland.  Throughout this brief those appellate courts will be referenced by their current names.

267. "[T]he court must construe all relevant pleading allegations in the light most favorable to [plaintiff], assume the credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).

"'[W]here the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient factual evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence.'" *Jackson*, 2022 WL 256281, at *1 (quoting *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990)).

**B.     Rule 12(b)(6) – Failure to State a Claim.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the complaint fails to state a claim upon which relief can be granted.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1143 (4th Cir. 1993).  In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, the complaint must contain facts that, when taken as true, are sufficient to state a claim to relief that is "plausible on its face." *Id.* at 678 (internal quotations omitted).  To state a *plausible* claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555 (2007).  This is because "naked assertions" of wrongdoing necessitate some 'factual enhancement' within the complaint to cross "the line between possibility and plausibility of

4

entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557.)

The law is clear that "in reviewing a Rule 12(b)(6) dismissal, [courts] are not confined to the four corners of the Complaint." *U.S. ex rel. Oberg. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). The Court may also consider documents integral to the complaint. *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A document is integral to a complaint when the claims "turn on, []or are …otherwise based" on the document. *Id*. "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach a document to a motion dismiss the complaint…not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims." *Spirito v. Paneninsula Airport Comm'n*, 350 F. Supp. 3d 471, 486 (E.D. Va. 2018) (citing *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Pursuant to the exhibit-prevails rule, if a plaintiff "relies upon the documents to form the basis for a claim or a part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *Goines*, 882 F.3d at 16. Where the plaintiff incorporates a document upon which her claim is based, or when the complaint shows that the plaintiff has adopted the contents of the document, it is proper to accept the contents of the documents over conflicting allegations in the complaint. *American Chiropractic Ass'n v. Trigon Healthcare, Inc*, 367 F.3d 212, 233-35 (4th Cir. 2004).

## II.   This Court Does Not Have Personal Jurisdiction Over Ms. Khan.

Ms. Khan works as an Assistant Public Defender for the State of Maryland. (ECF 1, ¶ 3; Affidavit of Aneesa Khan, ¶ 2—filed as Exhibit 1.) She works exclusively in the juvenile division (Exhibit 1, ¶ 2.) Her actions vis-à-vis S.B. were exclusively in that capacity. (ECF 1, ¶¶ 73-100;

Exhibit 1, ¶ 6.)  Ms. Khan's actions were precipitated by S.B.'s running away from home and being found in Maryland.  (ECF 1, ¶ 4; Exhibit 1, ¶ 7.)  Ms. Khan is a Maryland resident.  (Exhibit 1, ¶ 4.)  She is a member of the Maryland Bar.  (Exhibit 1, ¶ 8.)  She is not licensed to practice law in Virginia. (*Id*.)

Perhaps recognizing that Virginia does not have long-arm personal jurisdiction over Ms. Khan, Plaintiffs asserted jurisdiction based on Virginia Code § 8.01-330 (Jurisdiction on any other basis authorized) rather than the Virginia long-arm statute § 8.01-328.1. Under § 8.01-330, jurisdiction is authorized "on any other basis authorized by law".  The Complaint, however, fails to state any legal basis for jurisdiction, other than a modified version of the long-arm statute.  The alleged basis for venue (and personal jurisdiction) is that Ms. Khan was representing a Virginia resident, who was the minor child of Virginia residents. (ECF 1, ¶ 12.)  Plaintiffs also alleged that Ms. Khan "worked in concert" with Virginia residents (*Id*.)

Under Plaintiffs' theory of jurisdiction, by working as an Assistant Public Defender in Maryland representing juveniles, Ms. Khan could subject herself to jurisdiction in all fifty states. Theoretically, minors from every state could runaway to Maryland and Ms. Khan could be assigned to represent them in proceedings which could be adversarial toward their parents or legal guardians. The assertion of personal jurisdiction in this circumstance clearly violates public policy. The reward for engaging in public service and working as a juvenile public defender should not be to subject oneself to personal jurisdiction in every state. Why would a Maryland attorney want to subject herself to jurisdiction in any state by representing a juvenile who needs legal assistance?

Regardless of the Plaintiffs' failure to assert jurisdiction under the long-arm statute, the assertion of jurisdiction must be analyzed thereunder.  Ms. Khan is a Maryland resident who works for the State of Maryland as an Assistant Public Defender. (Exhibit 1, ¶¶ 2-4.)   In determining

whether this Virginia Court has personal jurisdiction over this non-resident defendant, this Court must undertake a two-step inquiry:

> The first step is to determine whether Virginia's long-arm statute reaches the non-resident defendant given the cause of action alleged and the nature of the defendant's Virginia contacts. The second step requires determining whether the exercise of personal jurisdiction in the circumstances is consistent with due process, that is, whether the long-arm statute's reach in the situation exceeds its constitutional grasp.

*DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 422-23 (E.D. Va. 1996).

In this case, the only alleged relationship of Ms. Khan's actions to Virginia were (1) her knowledge that she was representing a Virginia resident; (2) she communicated with Virginia residents; and (3) she acted to the detriment of Virginia residents. (ECF 1, ¶ 12.) The assertion of jurisdiction in this case is analogous to the assertion of jurisdiction in *Haskins v. Washington Adventist Hospital*, No. 3:12cv515-HEH, 2012 WL 92360 (E.D. Va. Jan. 11, 2012). In *Haskins*, the plaintiff's decedent, a Virginia resident, was treated at defendant Maryland hospital. Plaintiff's decedent was transferred by ambulance from the Maryland hospital to a nursing home in Virginia. The plaintiff asserted claims of medical negligence against the Maryland hospital for care the decedent received and for the hospital's alleged failure to provide the ambulance crew with proper instructions at the time of transfer.

In finding a lack of personal jurisdiction, the *Haskins* Court stated, "A court's exercise of jurisdiction over a nonresident defendant comports with due process provided that the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Haskins,* at *3 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). The Court added that to "justify an exercise of jurisdiction, a defendant's actions must have been directed at the forum state in more than a random, fortuitous, or attenuated way." *Id.* (quoting *Mitrano v. Hawes*, 377 F.3d 402, 207 (4th

Cir. 2004).  Noting that the alleged tortious injury occurred in Maryland, the Court found that where the tortious injury occurs outside of Virginia, jurisdiction only arises if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth." *Id.* (citing Va Code Ann. § 8.01-328.1 (A)(1)(2004)).  The Court found the defendant hospital did not regularly do business or engage in any persistent conduct within the Commonwealth of Virginia. *Id. at* *4.  Further, while the defendant hospital may treat patients from Virginia, it did not derive substantial revenue from any services rendered within Virginia.  *Id.*  Accordingly, the Court declined to exercise personal jurisdiction over defendant hospital.  *Id.*

As in *Haskins*, this case involves the provision of legal services by a Maryland lawyer in Maryland to a Virginia resident related to Maryland juvenile court proceedings. As in *Haskins*, neither Ms. Khan nor the Office of the Public Defender solicits business from Virginia residents[5]. (Exhibit 1, ¶ 11.)  Ms. Khan's salary is paid entirely by the State of Maryland.  (Exhibit 1, ¶ 3.) At all times, Ms. Khan worked as an Assistant Public Defender for the State of Maryland.   Ms. Khan is only assigned to represent juveniles who are found in Maryland.  Ms. Khan represented a Virginia juvenile, S.B., who ran away from home and was found in Maryland in connection with Maryland juvenile court proceedings.  S.B. was always in Maryland when Ms. Khan was providing her with advice or representing her before the Maryland court. (Exhibit 1, ¶ 9.)    All court proceedings in which Ms. Khan represented S.B. occurred in Maryland (or via Zoom for Government in a Maryland Court).   (Exhibit 1, ¶ 10.; Exhibit 2—Order of Circuit Court for

---

[5] The Office of the Public Defender will provide services to non-Maryland residents, including Virginia, where, as in this case, it is appropriate.

Baltimore City, Division of Juvenile Causes, filed under seal.)  Ms. Khan is only licensed to practice law in Maryland.  (Exhibit 1, ¶ 8.)

In *Rosario v. Wands,* No. 1:09-cv-663 (AJT/TCB), 2009 WL 2986614 (E.D. Va. Sept. 17, 2009), the Court held that it did not have personal jurisdiction over a New York resident who provided "professional psychic" services to the plaintiff, who was a psychiatrist who resides and works in the Commonwealth of Virginia.  The plaintiff alleged that the defendant acted as medical provider and counselor to the plaintiff and that he breached his fiduciary duty to plaintiff by informing the New York Police Department of plaintiff's substance abuse, and then causing the information to be sent to the Virginia Board of Medicine. *Id.* at *1-2.  The Court held that the defendant's contacts with Virginia was a "random and fortuitous fact," that was brought about by the plaintiff moving to Virginia after she established the relationship with defendant in New York. *Id*. at  *5.  The Court also found that defendant's four phone calls to plaintiff in Virginia over a 7 year period and the transmittal of information to the Virginia Department of Medicine was not sufficient to establish a *prima facie* case of personal jurisdiction. *Id.*; *See also Cape  v. von Maur,* 932 F. Supp. 124, 128 (D. Md. 1996) (court lacks personal jurisdiction over out-of-state attorney where defendant's actions were not directed at the state, but resulted only from the mere and fortuitous fact that the plaintiff resided there).[6]

---

[6] Numerous courts have held that mere phone  calls and letters (and the technological equivalent of email) ancillary to a transaction but directed to the plaintiff in the forum state are insufficient contacts to form the basis for personal jurisdiction.  *Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc.*, 774 F. Supp. 393, 397-8 (E.D. Va. 1991) (citing *Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 396 (E.D. Va. 1984); *Medeco Security Locks, Inc. v. Fichet-Bauche*, 568 F. Supp. 405, 408 (W.D. Va. 1983); *Williams Crane & Rigging, Inc. v. B & L Systems, Ltd.*, 466 F. Supp. 956, 957 (E.D. Va. 1979); *V & V Mining Supply, Inc. v. Matway*, 295 F. Supp. 643, 645 (W.D. Va. 1969)).

Like the *Haskins*, *Rosario, and Cape* courts, this Court lacks personal jurisdiction over Ms. Khan because Ms. Khan's connection with Virginia is an entirely random and fortuitous fact that occurred simply because S.B. happened to leave her home in Virginia and was found in Baltimore, Maryland. Accordingly, this Court should dismiss all claims against her.

**III.    The Complaint Fails to State a Claim Against Ms. Khan.**

**A.    Plaintiffs Fail to State a § 1985 Conspiracy Claim Against Ms. Khan.**

The only federal cause of action against Ms. Khan is for conspiracy to violate civil rights under 42 U.S.C. § 1985(3). Plaintiffs assert that Ms. Olsen, Mr. Via, and Ms. Khan "conspired to violated Plaintiff's fundamental rights to custody and control and to direct the care and upbringing of her daughter, S.B., based on Mrs. Blair's perceived viewpoint about affirming an incongruent gender identity in her daughter." (ECF 1, ¶ 163.) As shown below, the Complaint does not state a claim under § 1985(3), so this cause of action should be dismissed with prejudice as to Ms. Khan.

Section 1985(3) provides, in relevant part:

> If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws:…in any case of conspiracy set forth in this section, if one of more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3), Thus, a claim for conspiracy to interfere with civil rights requires:

> (1)    a conspiracy of two or more persons, (2) who are motivated by a specific class-based invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).   Section 1985 creates no substantive rights, but merely provides a remedy for conspiracies to violate a person's right to equal protection of the laws.   *See United Bros. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983); *Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 373 (1979).   A plaintiff has "a weighty burden to establish a civil rights conspiracy."   *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996).

1.   **The Complaint Does Not Allege Facts Sufficient to Show the Existence of a Conspiracy.**

To prove the conspiracy element under 42 U.S.C. § 1985, a plaintiff must plead sufficient facts that would "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."   *Ruttenberg v. Jones*, 283 F. App'x 121, 132 (4th Cir. 2008).   A plaintiff "must show an agreement or a meeting of the minds by [the defendants] to violate the [plaintiff's] constitutional rights."   *Simmons*, 47 F.3d at 1377.   When no concrete factual allegations are offered to support such a meeting of the minds among defendants, the § 1985(3) claim must fail.   *Society Without a Name*, 47 F. 3d at 346-7.   The Fourth Circuit Court of Appeals has "rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a § 1985 conspiracy."   *Simmons*, 77 F.3d at 1377.   It has specifically rejected § 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts."   *Id.* at 1376-7.

In *Society Without a Name*, the Fourth Circuit affirmed the magistrate judge's conclusion that the plaintiff had not alleged sufficient facts to support the existence of a conspiracy.   655 F.2d at 347.   The magistrate judge noted that the plaintiff failed "to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the

11

conspirators, or the manner in which any such communications were made." *Id*. As such, the allegations were "insufficient to support a meeting of the minds by the defendants." *Id*.

Plaintiffs fail to allege any facts to support their bare allegation that Ms. Olsen, Mr. Via and Ms. Khan conspired to violate Ms. Blair's civil rights. All allegations that they "conspired" and "had a meeting of the minds" are conclusory and lacking in any factual support. (*See*, *e.g.*, ECF 1, ¶¶ 163, 166.) Moreover, the purported factual allegations supporting Plaintiff's conspiracy claim are pled "upon information and belief" (*See*, *e.g.*, ECF 1, ¶¶ 166-7, 169.) Those allegations are insufficient of the pleading standard required to survive a motion to dismiss. *See Kashdan v. George Mason Univ.*, 70 F.3d 694, 701-2 (4th Cir. 2023).

"Although a plaintiff may initially plead parts of [her] case 'upon information and belief,' [her] allegations may not be wholly conclusory." *Id*. at 701. There must be facts supporting the allegations pled upon information and belief. *Id*. at 702. "'[O]n information and belief' in pleading cannot salvage otherwise conclusory allegations." *Parks v. Clarke*, No. 3:22cv00029, 2023 WL 2760070 at *6 (W.D. Va. Mar. 31, 2023) (Moon, J.) (citing *Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 36 (D. Md. 2020)). "[A]llegations based 'upon information and belief' must be supported by 'secondhand information' that provides the plaintiff with a 'good-faith reason' for believing it to be true." *Drzymala v. BAE Sys. Controls, Inc.*, No. 7:21cv00522, 2022 WL 3971050, at *3 (W.D. Va. Aug. 31, 2022) (quoting *Carter v. Va. Dep't of Game & Inland Fisheries*, No 3:15cv661, 2018 WL 3614975, at *9 (E.D. Va. July 27, 2018)).

Here, there are no facts to support the allegations that Plaintiffs plead on "information and belief." Instead, the allegations are merely conclusory recitations of the elements of the cause of action. Because the Complaint does not allege facts to support the existence of a conspiracy, this cause of action should be dismissed.

##### 2. The Complaint Does Not Allege Facts Sufficient to Support a Claim of Specific Class-Based Invidiously Discriminatory Animus.

The second element of a claim for civil conspiracy to interfere with civil rights is that the conspirators must be motivated by a specific, class-based invidiously discriminatory animus. *Society Without a Name*, 655 F.3d at 346.  "To meet the requirement of a class-based discriminatory animus, under this section the class must possess the 'discrete, insular, and immutable characteristics comparable to those characterizing classes such as race, national origin and sex'." *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) (quoting *Bellamy v. Mason's Stores*, 368 F. Supp. 1025, 1028 (E.D. Va. 1973)).  Class-based invidiously discriminatory animus requires concrete supporting facts and cannot be inferred.  *See Gooden v. Howard County, Md.*, 954 F.2d 960, 970 (4th Cir. 1992).  "The other 'class-based animus' language of this requirement has been narrowly construed…."  *United Bros. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 827 (1983).

Plaintiffs have not and cannot allege any facts to support the existence of a class-based discriminatory animus on the part of Ms. Khan or any other Defendant.  In fact, neither Plaintiff has alleged that she is a member of any class protected by § 1985(3). *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274 (1993) (a viewpoint on abortion was "not the stuff out of which § 1985(3) "invidiously discriminatory animus' is created"); *Kaetz v. Unknown U.S. Marshals,* No. 21-62, 2021 WL 6808287, at *6 (W.D. Pa. June 7, 2021) (holding that viewpoints and political opinions do not constitute "immutable characteristics" to state a § 1985(3) conspiracy claim).  As such, this cause of action against Ms. Khan should be dismissed.

##### 3. Absent Constitutional Violation, There Can Be No Cognizable Conspiracy.

Absent an underlying constitutional violation there can be no § 1985 conspiracy

claim.  *Wimbush v. Youngkin*, No. 7:22-cv-00640, 2023 WL 2505483, at *3 (W.D. Va. Mar. 14, 2023) (citing *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989); *Beztak Land co., v. City of Detroit*, 298 F.3d 559, 569 (6th Cir. 2002); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001)).  There is no constitutional violation alleged against Ms. Khan; thus, she cannot be part of a conspiracy to violate constitutional rights.  Accordingly, this cause of action against Ms. Khan should be dismissed.

>    **B.**    **Maryland Law Applies to the Remaining Causes of Action Against Ms. Khan.**

The remaining causes of action Plaintiffs assert against Ms. Khan are state tort claims. Under Virginia choice of law rules, *lex loci delicti*, the law of the place of the wrong applies.  *Ford Motor Co. v. National Indem. Co.*, 972 F. Supp. 2d 850, 856 (E.D. Va. 2013) (citing *Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1988)).  "[W]hen Virginia residents are victims of out-of-state torts, the Virginia courts routinely appley the law of other states, even though the physical pain or economic impact caused by the tort injury may be experienced by the Virginia plaintiffs within the boundaries of the Commonwealth."  *Id*. at 522.

In this case, Ms. Khan's interactions with S.B., and with the juvenile court occurred in Maryland.  Pursuant to the doctrine of *lex loci delicti*, Maryland law applies to the tort claims of legal malpractice, intentional interference with parental rights, and intentional infliction of emotional distress.

>    **C.**    **The Maryland Tort Claims Act Bars Recovery Against Ms. Khan.**

>    **1.**    **Recovery Against Ms. Khan is Barred by Statutory Immunity.**

Maryland state personnel have statutory immunity from tort claims for actions taken in the scope of their public duties, so long as the personnel acted without malice or gross negligence.  *See* Md. Code Ann., Cts. & Jud. Proc., § 5-522(b) (LexisNexis 2020); Md. Code Ann., State Gov't, §

12-105[7] (LexisNexis 2021).  An Assistant Public Defender is State personnel as she is paid by the Central Payroll Bureau in the Office of the Comptroller of the Treasury.  (Exhibit 1, ¶ 3.)  State Gov't § 12-101(a)(1).   The Office of the Public Defender in the State of Maryland is an independent agency in the executive branch of state government.  Md. Code Ann., Crim. Proc. § 16-202 (LexisNexis 2018).  In general, a claim for tortious conduct, whether a common law tort or a constitutional tort, may only be pursued against the state, not the individual employee.  *Lee v. Cline*, 863 A.2d 297 (Md. 2004).

## 2.    The Complaint Does Not Allege Malice.

To pursue a claim against a Maryland state employee, Plaintiffs' Complaint must sufficiently allege conduct which is either malicious or grossly negligent.  Nowhere in the Plaintiffs' Complaint does the word malice appear, much less does the Complaint state any facts that could plausibly establish that Ms. Khan acted with malice.  To establish malice under Maryland law, Plaintiffs must show that the conduct at issue was "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraudulent."  *Barbre v. Pope*, 935 A.2d 699, 714 (Md. 2007) (quoting *Lee v. Cline*, 863 A.2d at 311).   "A plaintiff cannot prove malice, merely by asserting that an act 'was done maliciously or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive…"  *Houghton v. Forest*, 959 A.2d 816, 823-4 (Md. App. 2008), *aff'd in part & vacated in part*, 989 A.2d 223 (Md. 2009) (quoting *Elliot v. Kupferman*, 473 A.2d 960, 969 (Md. App. 1982)).

 "Indeed, the plaintiff must present facts that indicate a nefarious motive, ill-will towards the plaintiff, or a history of animosity."  *Houghton,* 959 A.2d at 823-4 (citing *Nelson v. Kenny*,

---

[7] Where the action was taken without malice or gross negligence, the State may be liable under the Tort Claims Act.  *See* State Gov't § 12-104 (providing for a limited waiver of sovereign immunity).

710 A.2d 345, 351-352 (Md. 1998)).  Here, the Complaint does not allege sufficient facts to justify a finding of malice:  there is no allegation of a nefarious motive, no allegation of ill-will towards Ms. Blair or S.B. and no allegation of a history of malice.

### 3.    The Complaint Failed to Sufficiently Allege Gross Negligence.

Again, the term "gross negligence" is not found within the Complaint, nor does the Complaint allege facts that could plausibly support a finding of gross negligence.  The Supreme Court of Maryland explained the standard for a finding of gross negligence as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Stracke v. Estate of Butler*, 214 A.3d 561, 568-569 (Md. 2019) (citing *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007)).  In *Stracke,* 214 A.3d at 569, the Court observed that "gross negligence is not just big negligence ... [but] must be sufficient to establish that the defendant …had wanton or disregard for human life…Only conduct that is of extraordinary or outrageous character will be sufficient to imply this state of mind." (quoting *Thomas v. State,* 186 A.3d 857, 863 (Md. App. 2018), *rev'd on other grounds, State v. Thomas*, 211 A.3d 274 (Md. 2019)).

Based on the Complaint's allegations, Ms. Khan's conduct does not, as a matter of law, rise to the level of gross negligence.  The allegations and the reasonable inferences therefrom do not plausibly establish that Ms. Khan acted in reckless disregard of the consequences or showed outrageous character.  The Complaint has failed to sufficiently allege acts that rise to the level of gross negligence.

### 4.      Failure to Satisfy a Condition Precedent Bars Recovery.

Under the Maryland Tort Claims Act, an individual cannot institute an action to recover in tort if the person has not submitted a written claim to the Treasurer (or his designee) within one year of the claimed injury.  Md. Code Ann., State Gov't § 12-108(b)(1) (LexisNexis 2021).  In this case Plaintiffs did not file a written claim to the Maryland State Treasurer within one year of the alleged injury.

Since the Maryland Tort Claims Act controls all claims for tortious injury caused by Maryland State personnel, and since Plaintiffs have failed to meet a condition precedent to filing an action under the Act, all claims for tortious injury against Ms. Khan should be dismissed.

### D.      The Complaint Fails to State a Claim for Legal Malpractice.

Notwithstanding Ms. Khan's immunity and Plaintiffs' failure to satisfy the conditions to pursue their tort claims against Ms. Khan, their legal malpractice claim fails as a matter of law. Under Maryland law, to set forth a claim legal malpractice, Plaintiffs must allege "1) the attorney's employment; 2) his neglect of a reasonable duty; 3) loss to the client proximately caused by that neglect of duty."  *Pusheck v. C.A. Lindman*, *Inc*, No. 1094, 2015 WL 5944442 at *7 (Md. App., June 12, 2015) (citing *Noble v. Bruce*, 709 A.2d 1264, 1269 (Md. 1998) (quoting *Flaherty v. Weinberg*, 492 A.2d 618, 624 (Md. 1985)).[8]  In this case, Plaintiffs have failed to properly state a claim based on the second and third elements.

There is no dispute that Ms. Khan was charged with representing S.B. as her attorney.  The Complaint, however, fails to state the correct duty owed by Ms. Khan to S.B.  In the Complaint, Plaintiffs assert that Ms. Khan had an obligation to act in the best interest of her client. (ECF 1, ¶

---

[8] The elements of a legal malpractice claim are similar under Virginia law. *See Hendrix v. Daugherty,* 457 S.E.2d 71 (Va. 1995).

176.)  The duty of an attorney when representing a juvenile is the same as when an attorney is representing an adult, namely, to act in the expressed interest of the client.  *See In re: Gault*, 387 U.S. 1 (1967); *See* Maryland Attorneys' Rules of Professional Conduct, Maryland Rules 19-301.2 and 19-301.14.  *See also Role of Juvenile Defense Counsel in Delinquency Court,* pp. 7-12, National Juvenile Defender Center[9], Spring 2009*.*  "At each stage of the case, juvenile defense counsel acts as the client's voice in the proceedings, advocating for the client's expressed interests, not the client's 'best interest' as determined by counsel, the client's parents or guardian, …or the judge." *Role of Juvenile Defense Counsel*, p. 7 (citing ABA Model Rules of Professional Conduct Preamble; 1.14(a) Client with Diminished Capacity; 1.2 (a) Scope of Representation and Allocation of Authority between Client and Lawyer.)

This Complaint fails to state that Ms. Khan failed to act in the expressed interest of S.B. or how she failed to do so.  Nowhere in the Complaint do Plaintiffs allege that Ms. Khan took any action contrary to S.B.'s expressed wishes and instructions.  *See* Exhibit 2 which demonstrates that Ms. Khan consulted with S.B. prior to making any representations to the juvenile court about S.B.'s expressed wishes.  The Complaint also fails to allege that the outcome of the juvenile court proceedings would have been different (or as Plaintiffs desired) had Ms. Khan acted any differently.

Additionally, the Complaint fails to state how any damage to S.B. was proximately caused by Ms. Khan's actions.  The Complaint contends that S.B. now suffers from complex PTSD (post-traumatic stress disorder) among other psychologic, physical, and emotional damages. (ECF 1, ¶ 188.) The Complaint, however, acknowledges that S.B. had emotional, psychological, and

---

[9] The National Juvenile Defense Center is now known as the Gault Center.  All juvenile public defenders in Maryland are trained by the Gault Center.

physical injuries prior to meeting Ms. Khan. (ECF 1, ¶¶ 184-186.)  Nevertheless, the Complaint fails to allege facts establishing that there was any change to S.B.'s medical from the time immediately prior to Ms. Khan's representation (September 3, 2021) until the conclusion of that representation (November 12, 2021).  Prior to Ms. Khan's representation, S.B. had received mental health services, had been harassed at school, disclosed her gender identity issues to Ms. Blair, ran away from home, and allegedly had been sexually and physically abused.  (ECF 1, ¶¶ 1-2, 23-27, 40, 61-64.)  When S.B. ran away from Maryland, she effectively terminated her attorney-client relationship with Ms. Khan.   After S.B. ran away from Maryland, she lived in Texas for approximately 10 weeks, during which time the Complaint alleges she was sexually and physically abused.  (ECF 1, ¶¶ 101, 104.)  Stating that Ms. Khan's actions exacerbated the injuries is insufficient.

Ms. Khan was not S.B.'s social worker, therapist, or guardian.  Ms. Khan was her lawyer and was obliged to represent her in accordance with the professional and ethical standards of the State of Maryland.  As her lawyer, Ms. Khan was not responsible for activities that occurred in S.B.'s Maryland residences. Indeed, the Complaint alleges that the Maryland Department of Juvenile Services ("DJS"), not Ms. Khan, placed S.B. in an arguably inappropriate residence. (ECF 1, ¶ 94.)  As her lawyer, Ms. Khan was not responsible for preventing S.B. from running away from Maryland. As such Ms. Khan could not be responsible for any adverse consequences to S.B. because of S.B.'s decision to run away to meet a person she had contacted on the internet. Further, S.B.'s decision to run away occurred after the Maryland juvenile court ordered that she be returned to Virginia.  That order was issued by the judge, not Ms. Khan. (Exhibit 2.)

Having failed to correctly state the duty owed by Ms. Khan to S.B., and any breach thereof; and having failed to assert a proximate cause between Ms. Khan's actions and the alleged change

in S.B.'s medical/mental condition, the Complaint fails to state a claim for legal malpractice against Ms. Khan.

### E.      The Complaint Fails to State a Claim for Intentional Interference with Parental Rights.

Maryland recognizes the tort of interference with parental (custodial) rights. *Khalifa v. Shannon*, 945 A.2d 1244 (Md. 2007).  "[T]he basis of a tort claim for interference with custody and visitation, is that the conduct must be (1) intentional; (2) outrageous, and (3) involve the physical removal and harboring of the child from the parent." *Haines v. Vogel*, 249 A.3d 151, 161 (Md. App. 2021).[10]  For conduct to be considered outrageous, it cannot be merely words or acts that cause estrangement, but rather must be conduct which results in the physical removal of the child from a parent. *Id.* at 227.  In *Khalifa*, 945 A.2d at 1256, the mother intentionally deceived the father about where she was taking the children and deliberately, without his consent, took the minor children out of the country.

In this case, Ms. Khan did not physically remove S.B. from her Virginia home.  The physical removal of a child from a parent occurred when S.B. ran away from her home in August 2021, approximately one week before Ms. Khan was assigned to represent S.B.  (ECF 1, ¶¶ 64, 73.)  Ms. Khan's lack of involvement in the removal of S.B. from her Virginia home precludes her behavior from being outrageous as set forth in *Haines,* 249 A.3d at 161-2. Furthermore, Ms. Khan did not, and is not alleged to have taken any action to restrain or otherwise prevent S.B. from leaving Maryland and returning to Virginia.  Ms. Khan was simply S.B.'s lawyer, who represented

---

[10] While the elements of claim for tortious interference with parental rights under Virginia law are slightly different, Virginia similarly requires that the plaintiff plead and prove that the defendant intentionally interfered with the parent's parental or custodial relationship "by removing or detaining the child from returning to the complaining parent, without the parent's consent, or otherwise preventing the complaining parent from exercising her parental or custodial rights." *Wyatt v. McDermott*, 725 S.E.2d 555, 562 (Va. 2012).

her before the Maryland Courts.  Once S.B. was discovered in Maryland, the Maryland DJS had custody of her – not Ms. Khan.

Having failed to sufficiently assert the necessary elements, the Complaint fails to state a claim for tortious interference with custodial rights.

### F. The Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress.

Under Maryland law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege facts that show (1) intentional or reckless conduct which is (2) extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress and (4) the emotional distress must be severe.  *Carter v. Aramark Sports and Entertainment Services, Inc.,* 835 A.2d 262, 282 (Md. App. 2001) (citing *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113-4 (Md. 2000) (quoting *Harris v. Jones*, 380 A.2d 611 (Md. 1977)).[11]  In the Complaint, Plaintiffs make conclusory allegations, but provided no specific facts to show that Ms. Khan's conduct was intentional and reckless, extreme, or outrageous. (ECF 1, ¶¶ 210-214, 224-229.)

In *Carter,* 835 A.2d at 283, the Appellate Court of Maryland was presented with an amended complaint with similar conclusory allegations.  In dismissing the count for intentional infliction of emotional distress, the court found that "a complaint alleging intentional infliction of emotional distress must allege and prove the elements for that tort 'with specificity,'" *Carter,* 835 A.2d at 283 (citing *Foor v. Juvenile Services Admin.*, 552 A.2d 947, *cert. denied*, 558 A.2d 1206

---

[11]Virginia recognizes a cause of action for intentional infliction of emotional distress. Like Maryland, a plaintiff must show the defendant has a specific purpose of inflicting emotional distress and "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991).

(Md. 1989)).  The Court also found that the pleadings did not set forth sufficient facts of extreme and outrageous conduct.  *Id.*  "For conduct to meet the test of 'outrageousness, it must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 284 (citing *Batson v. Shifflett*, 602 A.2d 1191, 1216 (Md. 1992) (quoting *Harris*, 281 Md. at 567)).  Whether the conduct complained of meets the element of extreme and outrageous is for the court to determine. [12]  *Batson*, 602 A.2d at 1216.

Plaintiffs' Complaint has a similar lack of specificity.  Plaintiffs failed to allege with specificity the extreme or outrageous conduct necessary to state a claim.  Using the words "extreme and outrageous" does not cause the allegations to be extreme and outrageous.  As the Complaint recognizes, Ms. Khan was assigned to S.B.'s case.  There is no allegation that she maneuvered case assignments so that she could inflict emotional distress on either Plaintiff.  Attorneys routinely take adversarial positions.  Clients routinely do not understand all the reasons why attorneys take certain actions.  Court orders, based on the advocacy of attorneys, can result in hardship, distress, or dissatisfaction for one or more parties.  Parties to adversarial proceedings routinely believe that the other side's version of the facts is inaccurate.  None of these scenarios demonstrates extreme or outrageous conduct by Ms. Khan.  Causing someone emotional distress without extreme or outrageous conduct fails to meet the elements of a claim for intentional infliction of emotional distress. Accordingly, this complaint fails to state a claim for intentional infliction of emotional distress against Ms. Khan.

---

[12] In *Lasater v. Guttman*, 5 A.3d 79, 83 (Md. App. 2010), the Appellate Court of Maryland noted that while the tort of intentional infliction of emotional distress was recognized in Maryland, the Supreme Court of Maryland has upheld such claims minimally.

## <u>CONCLUSION</u>

Wherefore, Aneesa Khan respectfully requests that this Honorable Court grant her motion to dismiss pursuant to Rule 12(b)(2) and dismiss the Complaint, or alternatively dismiss the Complaint against her in its entirety with prejudice pursuant to Rule 12(b)(6).

January 8, 2024                                          Respectfully submitted,

**ANEESA KHAN**

*/s/ Charles M. Sims*
Charles M. Sims (VSB No. 35848)
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, VA 23219
csims@ohaganmeyer.com
(804) 403-7111
(804) 237-0250 (facsimile)

*/s/ Wendy L. Shiff*
Wendy L. Shiff (Admitted *Pro Hac Vice*)
Federal Bar No. 09076 (Maryland)
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
wshiff@oag.state.md.us
(410) 576-6996
(410) 576-6955 (facsimile)

*Attorneys for Aneesa Khan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

*/s/ Charles M. Sims*
Charles M. Sims, Esq.
