CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/29/2024
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MICHELE BLAIR, individually and as a Guardian and next friend of S.B., a minor,<br><br>*Plaintiff,*<br><br>v.<br><br>APPOMATTOX COUNTY SCHOOL BOARD, *et al.*,<br><br>*Defendants.* | CASE NO. 6:23-cv-47<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Aneesa Khan's Motion to Dismiss, Dkt. 76. The Court has considered the arguments of the parties as to personal jurisdiction over Khan and determined that oral argument would not aid in its decision. Because the Court concludes that it does not have personal jurisdiction over Khan, her Motion to Dismiss will be **granted**.

Personal jurisdiction over Khan is in part bound up with one of Plaintiff's claims—conspiracy to violate her civil rights—and so the Court will also address the merits of this one claim, Count 5. Plaintiff names Defendants Khan, Dena Olsen and Avery Via as co-conspirators. The Court therefore also considers Olsen's and Via's Motions to Dismiss, Dkts. 12, 45, as to Count 5. The court will **grant** those motions as to this claim.

### Background[1]

Plaintiff is the paternal grandmother and adopted mother of S.B., a juvenile who was born female and in 2021 informed staff at Appomattox County High School that she used a male

---

[1] The Court confines its recitation of the alleged facts to those which are relevant to either personal jurisdiction or the disposition of Plaintiff's claim based on conspiracy to violate her civil rights.

1

name and pronouns.² Dkt. 1 ¶¶ 13, 31. Defendants Olsen and Via were counselors at the high school.³ ¶¶ 17, 18. After gender-based bullying and harassment at school, as well as the revelation to Plaintiff that S.B. was using a male name, S.B. ran away. ¶¶ 48, 61, 63. She was sex trafficked to Maryland, where she was rescued by law enforcement. ¶¶ 64, 66. Defendant Aneesa Khan was assigned to represent S.B. in juvenile court proceedings in Maryland. ¶ 73.

Based on alleged conduct during the course of that representation, Plaintiff brings claims against Khan for conspiracy to violate her civil rights, legal malpractice, intentional interference with parental rights, and intentional infliction of emotional distress.

Plaintiff alleges that Khan refrained from telling S.B. that her parents had come to get her in order to intentionally mislead S.B., deprived S.B. of mail from her parents while S.B. was placed in a group home for juvenile boys, and also coerced S.B. to lie to the juvenile court about parental abuse. ¶¶ 73, 78 96, 97. Plaintiff states that Khan made many misrepresentations to the juvenile court in Maryland, causing the judge to order that the Maryland Department of Juvenile Services keep temporary custody of S.B., in Maryland. ¶ 80. Further, Plaintiff avers that Khan communicated with S.B.'s school counselor Olsen on September 9, 2021, and then had "more" communications with Olsen and Via to plan false testimony accusing Plaintiff of abuse in order to deprive her of custody. ¶ 85. Via shared S.B.'s mental health records with Khan, including a diagnosis of gender dysphoria. ¶ 86. Via and Olsen appeared virtually in the Maryland juvenile court and allegedly "provided false testimony about [Plaintiff's] purported failure to (in their view) properly support her daughter's assertion of a male gender identity[.]" ¶ 168. According to

---

² The Court has no information as to S.B.'s current gender identification, and so, consistent with briefing in this case, will refer to S.B. with female pronouns.

³ Plaintiff has brought multiple claims against Olsen and Via. As noted above, at this point the Court will consider the merits of only the conspiracy claim, Count Five.

2

Plaintiff, Khan revealed details of S.B.'s case to a classmate and S.B.'s school in Maryland. ¶¶ 102–03.

Plaintiff also alleges that some unnamed party or parties made calls to the Appomattox County child abuse hotline making misrepresentations similar to what Khan stated to the juvenile court in Maryland; in addition, a caller stated Plaintiff had tried to change S.B.'s gender identity through conversion therapy. ¶¶ 81–83.

Khan submitted an affidavit stating that she is a Maryland resident, employed by the State of Maryland as an Assistant Public Defender, that she is barred only in Maryland; that she only met with S.B. in Maryland, and that virtual meetings and appearance during the course of her representation of S.B. took place on networks established by the Maryland Public Defender's Office or the Circuit Court for Baltimore City. Dkt. 77-1 at 2–3. Plaintiff has not submitted an affidavit or other evidence that makes contrary claims or places Khan in Virginia at any point.

## Legal Standard

### 1. Personal Jurisdiction

Rule 12(b)(2) provides that a defendant may file a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). That is, the court must determine "whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction," and the court "may also consider affidavits submitted by both parties" in so doing, "although it must resolve all factual disputes and draw all reasonable inferences in

favor of the party asserting jurisdiction." *Hawkins*, 935 F.3d at 226.

The federal rules provide that a district court must first look to state law to determine if personal jurisdiction exists over a defendant. Specifically, Rule 4(k)(1)(A) asks whether a defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A). The exercise of personal jurisdiction is therefore lawful "if [1] such jurisdiction is authorized by the long-arm statute of the state in which it sits and [2] the application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). "Virginia's long-arm statute extends personal jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350–51 (4th Cir. 2020). Therefore the statutory and constitutional analyses merge into one inquiry, asking "whether the defendant has sufficient 'minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations marks and citation omitted).

The Fourth Circuit has "synthesized the due process requirements for asserting specific personal jurisdiction into a three-prong test[.]" *Kurbanov*, 963 F.3d at 352. That test looks at "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

4

Notably, the minimum contacts analysis has particular focus on the forum state itself, rather than simply contact with people who live in the state. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014) (explaining that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"). The jurisdiction in which injury is felt is not determinative; it "must ultimately be accompanied by the defendant's own sufficient minimum contacts with the state if jurisdiction … is to be upheld." *Young*, 315 F.3d at 262 (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997)) (cleaned up).

### 2. Motion to Dismiss for Failure to State a Claim

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in a plaintiff's favor, *Rubenstein*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact

pleading of specifics," instead a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

## Discussion

### 1. Personal Jurisdiction over Defendant Aneesa Khan

Khan, a Maryland public defender assigned to represent S.B., who was then in Maryland, in connection with Maryland legal proceedings, does not have sufficient minimum contacts with *Virginia* for this Court to exercise specific personal jurisdiction over her.

First, the Court looks to whether Khan purposely availed herself of the privilege of conducting activities in Virginia. The most Plaintiff alleges in this vein is that Khan contacted people in Virginia. Specifically, she claims that Khan communicated with Olsen regarding S.B., on September 9, 2021 (¶ 85), and that there were more communications among Khan, Olsen, and Via through September and October 2021 to plan false testimony. *Id.* Plaintiff alleges that at some point Via shared S.B.'s mental health records with Khan. ¶ 86. So the sum of Khan's alleged contact with Virginia is *one* specifically identified communication, the receipt of a record, and then "more" unspecified communications, with or from people in Virginia.

But, significantly, these communications, by a Maryland attorney located in and employed by the State of Maryland, all have the purpose of affecting *Maryland* court proceedings. They take place in the course of her representation of a child who was at that time in Maryland. The Court struggles to see how Khan purposely availed herself of the privilege of conducting activities *in Virginia*. Khan did not contract with any Virginia parties, an action which would implicate Virginia's legal frameworks and protections. She did not receive any

payments from Virginia parties, or engage in any Virginian legal proceedings. In short, the focus of Khan's communications was in Maryland—purposeful contact with Virginia is lacking.

The second prong is whether Plaintiff's claims arise out of the activities which Khan directed at Virginia. Plaintiff's claims for legal malpractice (Count 6), intentional interference with parental rights (Count 7), and intentional infliction of emotional distress (Counts 8 and 9) all arise from actions that Khan took *in Maryland*; specifically, her alleged lies to the Baltimore juvenile court and to S.B., and alleged coercion of S.B. to lie to the juvenile court as well. Dkt. 1 ¶¶ 179–82, 199, 210–2=13, 224–27.

Plaintiff's claim based on conspiracy to violate her civil rights (Count 5) comes somewhat closer to being rooted in conduct with a tie to Virginia. In Count 5, Plaintiff alleges that Khan conspired with Olsen and Via, who were located in Virginia. Dkt. 1 ¶ 85. However, not only is that contact with *Virginia* quite attenuated, the conspiracy claim is fatally flawed, as explained below. Since the claim will be dismissed, it cannot provide grounds for personal jurisdiction going forward.

Turning to the third prong and considering whether the exercise of personal jurisdiction would be constitutionally reasonable, the Court looks at whether the "litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to [her] opponent." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 303 (4th Cir. 2012) (internal quotations omitted). The inquiry is guided by the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. *Id.* When considering this issue in *CFA Institute v. Institute of Chartered Financial Analysts of India*, the Fourth Circuit found that the exercise of personal jurisdiction over a business based in India was constitutionally reasonable where the defendant could secure counsel and also had

reached out repeatedly to transact business with the plaintiff, a Virginia entity. 551 F.3d, 285, 296–97 (4th Cir. 2009). The Court of Appeals also found that Virginia had "a valid interest in the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of Virginia law." *Id*. at 297.

Here, Plaintiff is a Virginian who has, of course, an interest in obtaining relief. Defendant Khan has secured representation for this proceeding in Virginia. However, Virginia's interest is limited to the fact that Plaintiff is a Virginia citizen, because Khan is not alleged to have taken any actions which engage with the Commonwealth of Virginia as an entity, or its legal processes, or Virginia law. Regardless, the conduct alleged by Plaintiff does not demonstrate that Khan sufficiently availed herself of the privilege of conducting business in Virginia, or that her Virginia-directed conduct gives rise to claims against her.

In summary, this Court cannot properly exercise personal jurisdiction over Khan, and so must grant her Motion to Dismiss.

### 2. Plaintiff's Claim under 42 U.S.C. § 1985(3) for Conspiracy to Violate Her Civil Rights

Plaintiff brings this claim against Olsen, Via, and Khan. ¶ 163. For the reasons explained below, the Court will dismiss it as to all three Defendants.

In order to state a claim for conspiracy "to deny equal protection of the laws under section 1985(3), a plaintiff must plausibly allege: '(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.'" *Strickland v. United States*, 32 F.4th 311, 360 (4th Cir. 2022) (quoting

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (internal citations omitted)).

Not all discrimination falls within the ambit of § 1985(3). "To meet the requirement of a class-based discriminatory animus … the class must possess the 'discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex.'" *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) (quoting *Bellamy v. Mason's Stores, Inc.,* 368 F. Supp. 1025, 1028 (E.D.Va. 1973), *aff'd,* 508 F.2d 504 (4th Cir. 1974)).

Plaintiff alleges that Olsen, Via and Khan "conspired to violate Plaintiff's fundamental right to custody and control and to direct the care and upbringing of her daughter, S.B., based on Mrs. Blair's perceived viewpoint about affirming an incongruent gender identity in her daughter." ¶ 163. Her articulation of the civil conspiracy claim focuses on the allegation that these three Defendants perceived her as insufficiently supportive of S.B.'s alternative gender identity. ¶¶ 165, 166, 167, 170, 172.

Olsen, Via and Khan argue that Plaintiff fails to state a claim because discrimination against a "perceived viewpoint" does not qualify as a specific, class-based discriminatory animus, as is required for liability under § 1985(3). Dkt. 77 at 21; Dkt. 13 at 22–23; Dkt 46 at 30–31. They are correct. As stated above, the affected class "must possess the discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex." *Buschi*, 775 F.2d at 1257 (quotation omitted). For the purposes of § 1985(3), the term "class … unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors[.]" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993). In other words, a disfavored perspective is not the marker of a "class." And viewpoints are hardly markers of a discrete, insular and immutable group because they can, after all, evolve. Furthermore, Plaintiff cites no authority for

9

the proposition that her viewpoint is a class-based characteristic, but instead attempts to pivot to an argument that by interfering with Plaintiff's parental rights, the alleged conspirators "exhibited discriminatory animus against S.B., a disabled young girl." Dkt. 82 at 13. This argument is both logically attenuated and absent from the Complaint, Dkt. 1, and as such does not save the conspiracy claim.

In conclusion, the Court will **grant** Defendant Aneesa Khan's Motion to Dismiss, Dkt. 76, in its entirety. The Motions to Dismiss filed by Defendants Dena Olsen and Avery Via, Dkts. 12, 45, will be **granted in part**. The conspiracy claim against Olsen and Via, Count 5 of the Complaint, will be **dismissed**.

The Court will enter a separate Order to this effect.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this __29th__ day of April, 2024.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE