IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

SAGE LILY BLAIR,

   Plaintiff,

v.                                                           Case No. 6:23-cv-00047-NKM-CKM

APPOMATTOX COUNTY SCHOOL
BOARD,

   Defendant.

### BRIEF IN SUPPORT OF MOTION TO STRIKE OR, IN THE ALTERNATIVE, DENY PLAINTIFF LEAVE TO FILE A SECOND AMENDED COMPLAINT

## I.     INTRODUCTION

Despite having all the information necessary to assert a First Amendment claim in August 2023, when this action was originally initiated, Plaintiff and her grandmother/adoptive mother Michele Blair ("Blair") only now assert the claim in a Second Amended Complaint. This is problematic for at least five reasons. First, the Second Amended Complaint violates Federal Rule of Civil Procedure 15 because it was filed without this Court's leave or the consent of the Appomattox County School Board ("School Board"), the only remaining defendant in this action. Second, the Second Amended Complaint violates the "mandate rule" as it exceeds the Fourth Circuit's mandate. Third, Blair's First Amendment claim is barred by the doctrine of *res judicata*. Fourth, Plaintiff and Blair have offered no excuse for waiting to file the Second Amended Complaint until now, after the Fourth Circuit affirmed the dismissal of all claims but Plaintiff's Title IX claim against the School Board. And finally, the Second Amended Complaint is brought in bad faith because it contains allegations inconsistent with the Amended Verified Complaint, which operates as an affidavit signed by Blair. For the reasons below, this

1

Court should strike the Second Amended Complaint under Federal Rule of Civil Procedure 12(f) or, in the alternative, deny Plaintiff leave to amend.

## II.    BACKGROUND

On August 22, 2023, Plaintiff and Blair initiated this action against five defendants and asserted nine claims. (ECF Doc. 1.) The original Complaint did not contain any reference to the First Amendment or Blair's religious beliefs. On October 3, 2023, this Court entered a Pretrial Order under Federal Rule of Civil Procedure 16. (ECF Doc. 33.) This Court ordered that it would consider a party's motion to amend a pleading in accordance with Rule 15. (*Id.* at ¶ 24.) This Court also ordered that, "[e]xcept for good cause shown, any such motion must be filed no later than 45 days from the date of this order," i.e., November 17, 2023. On October 6, 2023, this Court amended the Pretrial Order to hold certain deadlines in abeyance until this Court ruled on the defendants' respective motions to dismiss. (ECF Doc. 39.) This Court did not alter the deadline for moving to amend a pleading. (*Id.* ("All other aspects of the Pretrial Order, Dkt. 33, remain in effect.").)

Even after all defendants filed motions to dismiss, Plaintiff and Blair did not move for leave to file an amended complaint within the 45-day deadline set by this Court's Pretrial Order. Instead, on January 24, 2024, Plaintiff and Blair filed an Amended Verified Complaint that removed a reference to Plaintiff's full name, who at that time was a minor. (ECF Doc. 84.) The removal of Plaintiff's full name was the only difference between the original Complaint and the Amended Verified Complaint. Thus, the Amended Verified Complaint did not mention the First Amendment or Blair's religious beliefs. Between January 24 and June 24, 2024, Plaintiff and Blair did not request leave to file an amended pleading.

On June 25, 2024, this Court granted the Motions to Dismiss filed by the School Board, Dena Olsen ("Olsen"), Dr. Annette Bennett ("Dr. Bennett"), and Avery Via ("Via"). (ECF Doc. 106 at 1.) Plaintiff and Blair timely appealed. (ECF Doc. 107.) On August 7, 2025, the Fourth Circuit affirmed this Court's dismissal of all but Plaintiff's Title IX claim against the School Board. (ECF Doc. 115.) The School Board timely filed a Petition for Rehearing En Banc, which was denied on September 3, 2025. (ECF Doc. 118.) The Fourth Circuit issued its mandate on September 11, 2025, "remand[ing] the district court's ruling with respect to Blair's deliberate indifference claim and affirm[ing] the district court's ruling with respect to all other claims." (ECF Doc. 115, at 17; ECF Doc. 119.) Thus, Plaintiff and the School Board are the only parties to this lawsuit, and only Plaintiff's Title IX claim remains pending.

On September 12, 2025, this Court vacated its Opinion & Order as to Plaintiff's Title IX claim against the School Board. (ECF Doc. 120.) This Court also directed the parties to confer and file a joint status report by October 6, 2025, including "plans for compliance with, or need for modification of, the Court's pretrial order," a proposed schedule under Rule 26(f), and "any Rule 16(b) conference conducted by this Court." (*Id.*)

On September 17, 2025, defense counsel contacted Plaintiff's counsel about their availability for a conference call and the possibility of filing a second amended complaint to omit reference to Blair, the eight dismissed claims, and the four dismissed defendants. Plaintiff's counsel responded that they would provide their thoughts the week of September 22, 2025. On September 23, 2025, defense counsel followed up on their availability for a conference call and the possibility of a second amended complaint under the parameters discussed above. Plaintiff's counsel did not respond. Instead, Plaintiff filed a Second Amended Complaint without the School Board's consent or this Court's leave and outside the deadline set by this Court's Pretrial

3

Order.    (ECF Doc. 121.)    The Second Amended Complaint named Olsen and Via as defendants—both of whom have been dismissed from this action—and included a First Amendment claim asserted by Blair—who is no longer a plaintiff in this matter.

### III.    LAW AND ARGUMENT

**A.    This Court should strike the Second Amended Complaint as an improper pleading.**

A plaintiff may amend his or her complaint only "once as a matter of course," and there are only two circumstances under which a plaintiff may do so.  Fed. R. Civ. P. 15(a)(1). First, a plaintiff may amend the complaint as a matter of course no later than "21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A).  Second, a plaintiff may amend the complaint as a matter of course no later than the earlier of "21 days after service of a responsive pleading or . . . a motion under Rule 12(b), (e), or (f)," "if the responsive pleading is one to which a responsive pleading is required."  Fed. R. Civ. P. 15(a)(1)(B).  Otherwise, a plaintiff may only amend his or her complaint with the court's leave or the opposing party's written consent. Fed. R. Civ. P. 15(a)(2).

In matters with multiple defendants, the 21-day clock begins to run from service of the first responsive pleading or motion.  *B.R. v. F.C.S.B.*, No. 1:19-cv-917 (RDA/TCB), 2020 WL 12435689, at *11 (E.D. Va. Mar. 10, 2020) (noting that to conclude otherwise would permit a plaintiff multiple opportunities to amend "as a matter of course); *United States ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d 869, 878 (E.D. Va. 2015) (collecting cases).

If a plaintiff files an amended complaint outside of the 21-day period and without the court's leave or the defendant's written consent, the court should strike the amended complaint under Federal Rule of Civil Procedure 12(f).  *Jiangmen Kinwai Furniture Decoration Co. Ltd v. IHFC Properties, LLC*, 780 F. App'x 1, 2 n.2 (4th Cir. 2019) ("Rule 12(f) is not the only basis for striking a complaint.  A district court may also strike a complaint filed without leave of the

court in violation of Rule 15(a)(2)."); *Oliver v. PHH Mortg. Corp.*, No. 3:20-CV-304-GCM, 2021 WL 354127, at *1-2 (W.D.N.C. Feb. 2, 2021) (noting that "[e]ven in cases with a *pro se* litigant, it is acceptable for the court to strike a complaint that is filed where there is no right to amend as a matter of course, there is no written consent from the opposing party, and there is no leave of the court granted"). *See Anderson v. Ford Motor Co.*, No. 3:22-cv-758-HEH, 2023 WL 5987379, at *2 (E.D. Va. July 13, 2023) (striking an amended complaint that did not comply with Rule 15); *accord Dungey v. Culmen Int'l LLC*, No. 1:21-cv-1027 (RDA/JFA), 2022 WL 4357443, at *3 (E.D. Va. Sept. 20, 2022); *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 719 (D. Md. 2002).

Olsen filed a Motion to Dismiss on September 20, 2023.  (ECF Doc. 12.)  Thus, the 21-day period to file an amended complaint as a matter of course expired on October 11, 2023.  *See B.R.*, 2020 WL 12435689, at *11 (noting that to conclude otherwise would permit a plaintiff multiple opportunities to amend "as a matter of course); *Halliburton Co.*, 144 F. Supp. 3d at 878 (collecting cases).  Plaintiff filed the Second Amended Complaint on September 23, 2025, outside of the Rule 15 21-day deadline and the November 17, 2023 deadline set by this Court's Pretrial Order.  (*See* ECF Doc. 33, at ¶ 24.)

Because the Second Amended Complaint is improper under Rule 15 and this Court's Pretrial Order, this Court should strike the Second Amended Complaint from the docket.

**B.**     **Even if this Court construes the Second Amended Complaint as a motion for leave to amend, this Court should deny the motion.**

Whether to grant leave to amend is a matter of discretion.  *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 231 (4th Cir. 2025). "Although leave to amend should be 'freely give[n] when justice so requires,' a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse 'to grant the leave without any justifying

reason.'" *Equal Right Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (quotations and citations omitted). Leave to amend should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Carlisle v. Allianz Life Ins. Co.*, 540 F. Supp. 3d 567, 572 (E.D. Va. 2021) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)). Leave to amend can also be denied "for other reasons consistent with 'what justice so requires.'" *Sysco Mach. Corp.*, 143 F.4th at 222 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

1.      **The Second Amended Complaint violates the "mandate rule".**

"The mandate rule governs what issues the lower court is permitted to consider on remand," *United States v. Susi*, 674 F.3d 278, 283 (4th Cir. 2012), and "is a more powerful version of the law of the case doctrine," *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005). With limited exception, the mandate rule "requires a lower court to faithfully apply the mandate of a higher court, which is controlling as to all matters within its scope." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 291 (4th Cir. 2021). Any issue conclusively decided by the Fourth Circuit on appeal is not remanded and any issue that could have been but was not raised on appeal is waived and not remanded. *Id.* A district court must apply both "the spirit" and "the letter of the mandate." *Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1139 (7th Cir. 2023) (quotation omitted).

Here, the Fourth Circuit remanded only Plaintiff's Title IX claim. (ECF Doc. 115, at 17.) Blair's claims were conclusively decided, rendering her no longer a party to this case. Blair did not seek leave to amend before or during her appeal and the remand of Plaintiff's Title IX claim does not give Blair a second bite at the apple. *See BPP Illinois, LLC v. Royal Bank of Scotland Grp., PLC*, No. 13–CV–638, 2015 WL 6143702, at *3 (S.D.N.Y. Oct. 19, 2015) ("It goes

6

without saying that, had the FFC Plaintiffs and the Equity Plaintiff been the only parties to appeal, they would not have been free to return to this Court after the Second Circuit's decision for another bite at the apple.  The fact that they happened to appeal with other parties and the Second Circuit vacated the Court's dismissal of the *other parties'* claims and remanded for further proceedings as to *those* claims makes no difference to the analysis.  In short, the claims of the FFC Plaintiffs and the Equity Plaintiff died on appeal, and this Court is not free on remand to resurrect them.").  *See also Azeez v. City of New York*, No. 16-CV-342, 2021 WL 3578500, at \*9 (E.D.N.Y. Aug. 13, 2021) ("Where a plaintiff fails to raise an argument asserting a right to amend before the District Court and then appeals the final judgment, such arguments are waived; no opportunity to amend remains.").

Because Blair is no longer a party to this action, she cannot file a Second Amended Complaint.  Moreover, Blair is attempting to assert claims against Olsen and Via who are also no longer parties to this case.  Thus, the Second Amended Complaint is inconsistent with the Fourth Circuit's mandate and, as such, leave must be denied for this reason alone.

### 2.    Blair's First Amendment claim is barred by the doctrine of *res judicata*.

*Res judicata* or claim preclusion precludes a party from relitigating an issue that was or could have been raised in an action that resulted in a final judgment on the merits.  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981).  Precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.  *Brown v. Felsen*, 442 U.S.127, 131 (1979).  *Res judicata* requires: (1) a final judgment on the merits in a prior suit; (2) identity of the cause of action in both the earlier suit and later suit; and (3) an identity of the parties or their privies in the two suits.  *Nash Cnty. Bd. of Educ. v.*

*Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981).  "The determination of whether two suits arise out of the same cause of action . . . does not turn on whether the claims asserted are identical. Rather, it turns on whether the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'"  *Pueschel v. United States*, 369 F.3d  345, 355 (4th Cir. 2004) (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir.1996)).  "Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'" *Id.* (quoting *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991)).

This court's June 25, 2024 Order was a final judgment on the merits. *Moitie*, 452 U.S. at 399 & n.3 (1981).  That Order was affirmed as to Blair and reversed and remanded only as to Plaintiff's Title IX claim.  (ECF Doc. 115, at 17.)  This Court vacated only that portion of the June 25, 2024 Opinion and Order that dismissed Plaintiff's Title IX claim against the School Board.  (ECF Doc. 120.)  As such, the decision with respect to Blair remains a final judgment on the merits.  Blair's First Amendment claim arises out of the same core of operative facts as her prior substantive due process claims—namely, the events of August 10-25, 2021 at Appomattox County High School.  Finally, there is identity of parties, as Blair previously asserted claims against Olsen, Via, and the School Board.

In short, the doctrine of *res judicata* bars Blair's First Amendment claim and, as such, leave to amend must be denied.

8

**3.        The Second Amended Complaint is the result of undue delay.**

Undue delay in the leave-to-amend context has been equated to "dilatoriness associated with the motion." *Sandcrest Outpatient Servs., P.A. v. Cumberland Cnty. Hosp. Sys.*, 853 F.2d 1139, 1148 (4th Cir. 1988) (quotation omitted). "[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule." *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) (quotation omitted).

A motion to amend must also satisfy the good-cause requirement found in Rule 16(b)(4) when—as is the case here—the amendment would "'disrupt' the litigation timeline set in a scheduling order, even [if] the order did not set a deadline for amendments." *Carlisle*, 540 F. Supp. 3d at 571 (citation omitted). "Good cause under Rule 16 focuses on the timeliness of the amendment, particularly the diligence of the moving party." *Id.* (quotation marks omitted) (quoting *Montgomery v. Anne Arundel Cnty.*, 182 F. App'x 156, 162 (4th Cir. 2006)).

The Second Amended Complaint contains numerous allegations related to Blair's religious beliefs, which serve as the basis for Blair's First Amendment claim. (*E.g.*, ECF Doc. 121, at ¶¶ 9-13, 49, 72-73, 83-84.) Because this information was available to Plaintiff and Blair as early as August 2023 when they initiated this lawsuit, they should have included this information in the original Complaint or in a proposed amended complaint at any point before this Court dismissed this action almost a year later on June 25, 2024. But they did not, and they have offered no reason for their failure to do so. Not only does their undue delay violate the spirit of Rule 15, *Deasy*, 833 F.2d at 41, but it contravenes Rule 16(b)(4)'s good-cause requirement, which "focuses on the timeliness of the amendment, particularly the diligence of the moving party," *Carlisle*, 540 F. Supp. 3d at 571 (quotation marks omitted) (quoting

*Montgomery*, 182 F. App'x at 162); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (holding that the plaintiffs failed to show good cause under Rule 16(b)(4) when they had "delayed more than one year" after learning of the basis for their proposed amended complaint).

Indeed, the Second Amended Complaint employs a "wait and see" approach that courts disfavor. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (noting that a dispositive motion is not "a 'dry run' for the nonmovant to "wait and see" what the district court will decide before requesting leave to amend"). In *Sullivan v. etectRx, Inc.*, No. 1:21-cv-12126-IT, 2023 WL 5613306, at *1 (D. Mass. Aug. 30, 2023), the plaintiff sought leave to file a third amended complaint after the First Circuit affirmed the dismissal of all but one breach of contract claim against one defendant ("etectRx"). The third amended complaint added a fraud claim against etectRx and a defendant that had been dismissed, and the plaintiff represented that the evidence and events underlying the fraud claim were in the scope of the second amended complaint. *Id.* The district court denied the plaintiff's motion because, given that the fraud claim fell within the scope of the second amended complaint, the plaintiff could have included the fraud claim in her previous complaints and she failed to provide any excuse for her failure to do so. *Id.* (citing *Kader v. Sarpeta Therapeutics, Inc.*, 887 F.3d 48, 60 (1st Cir. 2018)). The district court found undue delay because the plaintiff waited to request leave to amend until after the district court dismissed her second amended complaint and the First Circuit affirmed the dismissal of all but one claim. *Id.*

The circumstances leading to the denial of the plaintiff's motion to amend in *Sullivan* mirror the circumstances here, with the additional fact that Blair is no longer a party to this lawsuit. So, Blair (a nonparty) is attempting to re-enter this lawsuit to assert a new claim (the facts of which were known to her at the latest in August 2023) against the School Board, Olsen,

10

and Via (two of whom are no longer parties to this action). Like the plaintiff in *Sullivan*, Plaintiff and Blair have offered no justification for the prior failure to assert the First Amendment claim.

Any argument that the late effort to assert a First Amendment claim is justified by the Supreme Court's decision in *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025), is factually and legally without merit. **Factually**, this case is dissimilar from *Mahmoud* such that its holding has no bearing on the facts of this case. *Mahmoud*, 145 S. Ct. at 2353 (noting that "the question whether a law 'substantially interfer[es] with the religious development' of a child will always be fact-intensive") (quotation omitted). There, an elementary school curriculum required that students be introduced to "LGBTQ+-inclusive" storybooks that were "designed to 'disrupt' children's thinking about sexuality and gender." *Id.* at 2341. The board of education told parents that they would not receive notice when the books would be used and that their children's attendance at lessons was mandatory. *Id.* The Supreme Court held that the parents were likely to succeed on their First Amendment claim because the storybooks presented a narrative that was hostile toward religious viewpoints and that sought to have the students conform to a certain viewpoint. *Id.* at 2353-56.

Here, on the other hand, there was no mandatory, religiously hostile instruction thrust upon unwilling or unexpecting elementary school students. *See id.* at 2353 ("The storybooks, however, are designed to present the opposite viewpoint to young, impressionable children who are likely to accept without question any moral messages conveyed by their teachers' instruction.") Plaintiff was a high school student who was diagnosed with gender dysphoria, stated that she wanted to be referred to by a male name and male pronouns, and stated that her parents did not approve of her gender identity. School employees were therefore asked to

11

balance (1) the well-being of a transgender student who represented that her parents did not approve of her gender identity, (2) the interests of Plaintiff's parents in being notified of matters related to Plaintiff's health and safety, (3) the privacy interests of other students attending the school, and (4) the school's interest in ensuring a safe and accepting environment for all students. Thus, assistance offered to Plaintiff is far removed from the mandatory instruction discussed in *Mahmoud*. *See id.* at 2353 ("High school students may understand that widespread approval of a practice does not necessarily mean that everyone should accept it, but very young children are most unlikely to appreciate that fine point.").

**Legally**, *Mahmoud* does not represent a basis for a cause of action that was previously unavailable to Blair. *See McKenna v. City of Phila.*, 511 F. Supp. 2d 518, 527-28 (E.D. Pa. 2007) (holding that the Supreme Court's clarification of the "adverse employment action" necessary to make out a Title VII retaliation claim was not sufficient to justify a delay in moving to amend). *Mahmoud* rested much of its reasoning on *Wisconsin v. Yoder*, 406 U.S. 205 (1972), a case decided more than 50 years ago. *E.g.*, *Mahmoud*, 145 S. Ct. at 2355. So while factual nuances exist between *Mahmoud* and *Yoder* (and this case), Blair at least had notice of the existence of a First Amendment claim based on her right "to direct the religious upbringing" of Plaintiff. *Yoder*, 406 U.S. at 233. Yet Blair chose not to assert that claim until now, when all of her other claims have been dismissed.

The Fourth Circuit has made clear that "a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." *Deasy*, 833 F.2d at 41 (quotation omitted). Because the Second Amended Complaint violates this directive, this Court should deny leave to amend for this second, independent reason.

4.      **The Second Amended Complaint is brought in bad faith.**

Courts have found "bad faith" in denying a motion to amend when a plaintiff's proposed amended complaint asserts allegations that contradict other evidence offered by the plaintiff. *See Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 108–09 (D. Md. 2013) (deposition testimony); *Billy Baxter, Inc. v. Coca-Cola Co.*, 47 F.R.D. 345, 347–49 (S.D.N.Y. 1969) (interrogatory answers); *see also Havtech, LLC v. AAON, Inc.*, No. SAG-22-00453, 2022 WL 2987076, at *2 (D. Md. July 28, 2022) ("Pleading practices marked by excessive gamesmanship may evidence bad faith and warrant denial of leave to amend.") (citations omitted). Although an amended complaint ordinarily "supersedes those that came before it," "an amended complaint does not divest an earlier verified complaint of its evidentiary value as an affidavit." *Goodman v. Diggs*, 986 F.3d 493, 499 (4th Cir. 2021).

Blair signed the Amended Verified Complaint "under penalty of perjury under 28 U.S.C. § 1746." (ECF Doc. 84, at 54.)  Thus, the Amended Verified Complaint's evidentiary value—like deposition testimony and interrogatory answers—is not superseded by the allegations in the Second Amended Complaint (which is not signed under oath).

At the outset, this Court previously held that it could consider Olsen's counseling notes at the pleading stage because the counseling notes were integral to the Amended Verified Complaint, which has the effect of an affidavit of Blair. (ECF Doc. 105, at 4 n.3; *see* ECF Doc. 43, at 24-25; ECF Doc. 43-1; ECF Doc. 54, at 13-15.) Olsen's counseling notes confirm, among other things, that:

- Olsen investigated Plaintiff's report of the August 11 school-bus incident by reviewing footage from the school bus and interviewing the students present, including the student alleged to have harassed Plaintiff;

- Plaintiff asked Olsen to refer to her as "Sage" when speaking with Blair because Blair would "get upset";

13

- Olsen told Blair that Plaintiff's gender identity was part of the school-bus incident in response to a question from Blair about whether Plaintiff "acting like a boy" was related to the incident;

- The August 24, 2021 conversation between Olsen and Plaintiff resulted from a report of Plaintiff using the boys' restroom on a single occasion the previous day;

- Olsen was unaware that Plaintiff used the boys' restroom on more than one occasion; and

- Olsen communicated concern for Plaintiff using the boys' restroom because "after [Plaintiff] passe[d] the doors of the [rest]room, there [we]re no longer cameras that allow for [faculty] to see what takes place in the bathroom or adults outside or inside of the [rest]room constantly."

This information directly conflicts with many of the allegations in the Second Amended Complaint, and when documents integral to a complaint conflict with allegations, courts credit the documents. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016).

Additionally, one contradiction between the Amended Verified Complaint and the Second Amended Complaint relates directly to Blair's First Amendment claim. The Amended Verified Complaint alleged that Plaintiff told Olsen and Via that Blair and her husband "were not supportive of [Plaintiff's] gender identity." (ECF Doc. 84, at ¶ 35.) The Amended Verified Complaint also alleged that Plaintiff asked Olsen "not to use" Plaintiff's male name with Blair "because it might upset her." (*Id.* at ¶ 38.) The Second Amended Complaint alleges, however, that Via told Plaintiff it was "better not to tell [her parents] about her asserted new 'identity,'" because her parents were religious and she "would not be 'safe.'" (ECF Doc. 121, at ¶ 49.) This contradiction is a blatant attempt to rewrite the allegations in the Amended Verified Complaint to support the First Amendment claim included in the Second Amended Complaint.

14

Moreover, as mentioned *supra*, the Amended Verified Complaint was devoid of any allegations of religion or religious beliefs or any purported infringement thereof.  The new allegations appear to be a last-ditch effort to manufacture a claim on behalf of Blair.

For these reasons, the contradictions between the Amended Verified Complaint (which includes Olsen's counseling notes as an integral document) and the Second Amended Complaint reflect bad faith by Plaintiff.  Leave to amend should be denied for this third reason.

## IV.    CONCLUSION

This Court should strike the Second Amended Complaint because it violates Rule 15 and this Court's Pretrial Order under Rule 16.  Alternatively, if this Court construes the Second Amended Complaint as a motion for leave to amend, this Court should deny the motion because it violates the mandate rule, is brought in bad faith, and is the product of undue delay.

**APPOMATTOX COUNTY SCHOOL BOARD AND DENA OLSEN**

By Counsel

/s/ Melissa Y. York
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Brian P. Ettari (VSB No. 98800)
Counsel for Appomattox County School Board
and Dena Olsen
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 – Fax
jcapps@hccw.com
myork@hccw.com
bettari@hccw.com

15

# C E R T I F I C A T E

I hereby certify that on the 26th day of September 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mary E. McAlister (VSB No. 76057)
Vernadette R. Broyles (*pro hac vice*)
Ernest G. Trakas (*pro hac vice*)
Child & Parental Rights Campaign, Inc.
P.O. Box 637
Monroe, VA 24574
770-448-4525 - Phone
mmcalister@childparentrights.org
vbroyles@childparentrights.org
etrakas@childparentrights.org

/s/ Melissa Y. York
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Brian P. Ettari (VSB No. 98800)
Counsel for Appomattox County School Board and Dena Olsen
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 – Fax
jcapps@hccw.com
myork@hccw.com
bettari@hccw.com

16