## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

MICHELE BLAIR, individually,)
SAGE BLAIR, individually    )      Civil Action No. 6:23-cv-00047-NKM-CKM
                         )
         Plaintiffs   )
v.                      )      Plaintiffs' Opposition to
                      )      Defendant Avery Via's
                      )      Motion to Strike/Motion to Dismiss
                      )      Second Amended Complaint
APPOMATTOX COUNTY      )
SCHOOL BOARD, DENA       )
OLSEN, AVERY VIA,         )
                      )
         Defendants  )
_____)

        Plaintiffs, Michele and Sage Blair, by and through the undersigned counsel, respectfully submit this opposition to Defendant Avery Via's ("Via") Motion to Strike the Second Amended Complaint ("SAC"), or in the alternative, dismiss the SAC under Fed.R.Civ.P. 12(b)(1).[1] Plaintiffs incorporate by reference the arguments made in their opposition to Defendants Appomattox County School Board's (ACSB) and Dena Olsen's Motion to Strike Second Amended Complaint (Dkt. 123). Regarding Mr. Via's motion, Plaintiffs further allege:

---

[1] Mr Via raised Rule 12 (b)(1) as a basis for dismissal of the complaint for "lack of jurisdiction," but did not analyze that request. Since Mrs. Blair remains a named Plaintiff in the case pending this Court's termination of her as a party, there is no jurisdictional issue. Since Mr. Via did not discuss this basis for his motion, Mrs. Blair is focusing on the arguments related the Motion to strike, *i.e.,* res judicata and collateral estoppel.

## INTRODUCTION

Like Defendants Appomattox County School Board and Dena Olsen, Defendant Avery Via is asking this Court to suppress the voice and rights of Sage Blair, a victim of unaddressed sexual harassment and bullying by her Appomattox County High School ("ACHS") classmates. As a result of therapy with a licensed mental health professional for diagnosed Complex Post Traumatic Stress Disorder ("PTSD") resulting from the harassment, assaults and subsequent traumatic events (SAC, Dkt. 121, ¶85), between 2023 and the present, Sage Blair is now able to recall and allege facts that not only further support her claims for sexual harassment under Title IX, but also provide the basis for her mother, Michele Blair's, claim for violation of her free religious exercise rights under the First Amendment as against Defendants Dena Olsen and Avery Via. Those allegations are incorporated into the SAC, which restates the Title IX claim in Sage's own voice (since she has reached the age of majority and is bringing the claim in her own name), eliminates the claims dismissed by this Court, and includes a claim by Mrs. Blair for violation of her free religious exercise rights under the First Amendment.

Sage Blair's Title IX claim retains verbatim many of the factual allegations raised on her behalf by her mother in the initial Complaint, with additional facts and details now recalled by Sage from recovered memories during the operative time. (SAC, Dkt 121, pp. 5-14). In addition to supporting the Title IX claim, some of the updated and new allegations reveal for the first time that Defendants Olsen and Via were aware of Mrs. Blair's Christian faith and that they made statements and took actions to withhold information from Mrs. Blair and interfere with her free exercise

of her religious beliefs. (SAC, Dkt 121, pp. 5-10). Based on those allegations, Michele Blair alleges a claim for violation of her free religious exercise rights under the First Amendment. (SAC, Dkt 121, pp. 18-22).

Defendant Via is asking this Court to strike Mrs. Blair's portion of the SAC, arguing that it is barred by res judicata and collateral estoppel, which are unfounded. Mrs. Blair's claim in the SAC is grounded in the First Amendment Free Exercise clause, which prohibits schools from substantially interfering with parents' right to direct the religious upbringing of their children, as elucidated most recently by the Supreme Court in *Mahmoud v. Taylor,* 145 S. Ct. 2332 (2025),[2] not based on the Fourteenth Amendment substantive due process clause (the source of her claims in the initial 2023 Complaint). Mrs. Blair's First Amendment claim is also based on Sage Blair's newly recalled details of August 2021 conversations with District staff, Olsen, and Via. They convinced Sage that her Christian mother would not be "safe" and supportive, so Mrs. Blair would not be told about Sage using the boys' restroom at Olsen's direction and the associated sexual harassment and assault. (Dkt. 121 ¶¶ 49, 65, 85). Mrs. Blair was not privy to those conversations, and neither Ms. Olsen nor Mr. Via provided her with information regarding their actions.[3] Without discovery,

---

[2] As discussed more fully *infra*, *Mahmoud* did not establish new precedent, but re-established pre-existing law concerning a parent's free exercise rights in the public school setting, as set forth in *Wisconsin v Yoder*, 406 U.S. 205 (1972).

[3] Defendants have emphasized the existence of typewritten pages identified by Defendants as Mrs. Olsen's "Counseling Notes," upon which some of Mrs. Blair's allegations regarding the facts of August 12-25, 2021 were derived. Since there has not been any discovery, the typewritten pages have not been authenticated as complete and accurate. Those "notes" contain no mention of the conversations regarding Mrs. Blair's faith and the need to conceal information from her as a result.

Mrs. Blair could not know those facts until Sage was able to recall them in the summer of 2025. Defendants should not be permitted to take advantage of their intentional concealment of information from Michele Blair and from Sage Blair's impaired memory brought on by trauma by depriving Mrs. Blair of her right to address the violation of her free exercise rights.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Michele Blair incorporates by reference the Factual Background discussion in her Brief in Opposition to Defendants Appomattox County School Board ("ACSB") and Olsen's Motion to Strike (Dkt. 133). Mrs. Blair also provides the following narrative, particularly related to Mr. Via's actions.

At the time the initial Complaint was filed, Sage was newly home with her parents following a year apart, during which Sage 1) was abducted, raped, drugged, tortured and sex-trafficked by many adult men, 2) was initially rescued, then kept from her parents by court officials in Maryland who placed her in a juvenile group home for at risk teen-age males from which she ran away, and 3) was abducted, raped, tortured and sex-trafficked a second time before being returned from Texas to Virginia to a residential facility ordered by the Maryland Court, and then released to her parents. (Dkt. 1, ¶¶ 25-105; SAC, Dkt. 121, ¶¶ 34-86). Sage was abducted by an adult male stranger after running away from home on August 25, 2021, for fear of facing further sexual harassment and assault from classmates at ACHS. This

---

(Dkt. 25). Mrs. Blair has no similar "notes" from Mr. Via since there has not been any discovery. Neither Ms. Olsen nor Mr. Via should profit from their lack of candor or from the fact that they have not yet been compelled to respond to discovery requests.

harassment, assault, and threats of assault went unaddressed by District staff and were concealed from her mother, along with the fact that Sage had been directed by Counselor Dena Olsen to use the boys' restroom exclusively after saying she "identified as a boy" when asked by Ms. Olsen.  (Dkt. 1, ¶¶ 25-105; SAC, Dkt. 121, ¶¶ 34-86).

Sage was already a victim of childhood sexual abuse and other trauma that included hospitalization immediately before starting school at ACHS in August 2021. These facts were in mental health records that were provided to ACHS, and which Sage specifically asked Mr. Via to review so that he would be aware of her history of trauma and of her mental health diagnoses. (SAC, Dkt. 121, ¶ 31). Mr. Via refused Sage's request stating, "I promise you that I will not look at your records. I am not interested in your records. I'm going to look at you." (SAC, Dkt. 121, ¶ 32). As a result of Mr. Via's refusal to review Sage's mental health records, even after Sage requested it, he was purposefully unaware of Sage's history of sexual assault and other trauma when he interacted with her. (SAC, Dkt. 121, ¶ 32).

Unbeknownst to Mrs. Blair until the SAC was prepared, Sage had told the counselors that her mom was a Christian. (SAC, Dkt. 121, ¶ 49). In response, Mr. Via told Sage that since her parents are religious, it was better not to tell them about her asserted new "identity," because she would not be "safe." Since Sage was already scared of being harmed by classmates, hearing that she would also not be safe at home if she told her parents, convinced her not to say anything to them. (SAC, Dkt. 121, ¶ 49). As a result, Mrs. Blair did not know that Sage was being treated as a boy

at school and, at the direction of Mrs. Olsen, using only the boys' restroom, where she was repeatedly assaulted and harassed, until August 25, 2021, just hours before Sage had a psychotic breakdown and ran away from home and into the arms of a rapist. (SAC, Dkt. 121, ¶ 69).

Mr. Via told Sage that he could tell that she was different from other kids, and he wanted her to get support for her new "identity." Without notifying Mrs. Blair, Mr. Via directed Sage to LGBTQ websites and social media sites where she could get "support" and find "friends." (SAC, Dkt. 121, ¶ 48). After accessing the sites Via directed her to, Sage tragically learned that those sites were frequented by adult sexual predators, including one who abducted her. (SAC, Dkt. 121, ¶ 48).

Virginia law requires that parents receive notice of and be provided the opportunity to excuse their children from Family Life Education materials that address human sexuality. Under the statute, parents do not need to provide a reason for excusing their children from human sexuality materials. Va. Code Ann. § 22.1-207.2. (SAC, Dkt. 121, ¶ 72). Ms. Olsen and Mr. Via were discussing and counseling Sage on issues related to human sexuality, including "gender identity," and were directing Sage to Websites and social media sites that promote LGBTQ lifestyles and beliefs, addressing many of the same topics addressed in Family Life Education, and in the case of the Websites and social media sites, with more explicit details than provided by Family Life Education materials. (SAC, Dkt. 121, ¶ 73). Mrs. Blair was not notified about the meetings and discussions that Ms. Olsen and Mr. Via were having with Sage regarding "gender identity." (SAC, Dkt. 121, ¶ 73). More

6

particularly, Mr. Via did not notify Mrs. Blair about referring Sage to sexually explicit materials on the Websites and social media sites, and provide Mrs. Blair with the opportunity to excuse Sage from viewing those materials. (SAC, Dkt. 121, ¶ 73). Therefore, Mrs. Blair was unknowingly deprived of her right to excuse Sage from exposure to sexually explicit materials, addressing issues that are the focus of Family Life Education. (SAC, Dkt. 121, ¶ 73). These materials directly contradicted the sincerely held religious beliefs she had instilled in Sage from childhood. Moreover, Mrs. Blair was deprived of the rights accorded to parents, even those without religious convictions, to notice and an opportunity to excuse their child, from the materials. (SAC, Dkt. 121, ¶ 73). She was unaware of these facts until the time that the SAC was being prepared in the summer of 2025.

In August 2023, when the initial Complaint was filed, Sage Blair was still a minor undergoing therapy for the trauma and newly diagnosed Complex PTSD she suffers, resulting from her months-long ordeal. Sage's Title IX and constitutional claims arising from the actions of Defendants had to be brought on her behalf by her mother, Michele. At that time, Sage could not provide Michele with detailed recollections of the events at ACHS because of the effects of Complex PTSD. Therefore, the factual allegations in the initial Verified Complaint were based upon the knowledge that Mrs. Blair had at the time from limited communications with ACHS staff, including limited, unauthenticated documents provided as part of an open records request, and contemporaneous conversations she had with Sage before Sage was kidnapped. Consequently, the allegations of the Complaint necessarily

included some allegations based on "information and belief." (Dkt. 1, ¶¶ 5, 8, 12, 59, 73, 74, 85, 100, 103, 115, 157, 159, 163, 164, 166, 167, 172, 199). Defendant Via claimed that Michele Blair used that language to "circumvent her obligation to thoroughly investigate the facts – as well as to plead them as limited by personal knowledge," (Motion to Strike Verification, Dkt. 59, p. 9). However, when, as was the case with the initial Complaint, the plaintiff (Michele acting on behalf of her minor daughter) is in a position of uncertainty because the necessary evidence is controlled by the defendant, she is "generally permitted to plead facts based on 'information and belief.'" *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015): *Monegain v. Va. Dep't of Motor Vehicles*, 491 F. Supp. 3d 117, 138 n.13 (E.D. Va. 2020); *GMS Indus. Supply v. G&S Supply, LLC*, 441 F. Supp. 3d 221, 237 (E.D. Va. 2020). "Information and belief" allegations were even more justified in this instance, where the party on behalf of whom the allegations are made (Sage Blair) is unable to provide the detailed factual recollections because of trauma that is still in the process of being treated.

The initial Complaint was "amended" on January 24, 2024 at the direction of this Court solely to correct an inadvertent use of Sage's full name instead of her initials on the same day that this Court noted the error and ordered that the name be redacted. (Dkt. 83, 84). Notably, that amendment was made after Defendants filed their Motions to Dismiss (Dkt. 12, 26, 28, 45, 76). Since there was no substantive change, the motions were not amended. This Court granted Maryland public defender Aneesa Khan's motion to dismiss based on lack of jurisdiction on April 29, 2024 (Dkt.

97) and she was terminated as a Defendant on the Court's docket. Following oral argument, this Court granted the remaining Defendants' motions to dismiss on June 25, 2024. (Dkt 106).

Mrs. Blair appealed this Court's order dismissing her Complaint to the Fourth Circuit in her individual capacity and as next friend for Sage, who was still a minor. (Notice of Appeal, Dkt. 107). While the appeal was pending, on October 20, 2024, Sage turned 18 and, under Va. Code § 1-204, achieved the age of majority. Defendants moved to substitute Sage Blair for Michele Blair as to claims brought by Mrs. Blair in her capacity as Sage's Next Friend, or, if Sage were unwilling to substitute in as a party, then to dismiss those claims. (Fourth Circuit Court of Appeals, Case 24-1682, Dkt. 37). Michele Blair responded:

> (F)or purposes of prosecuting the issues of whether the district court erred in dismissing the claims for violation of S.B.'s right to familial privacy and S.B.'s right to be free from sexual harassment under Title IX, S.B. is the proper Appellant. Consequently, Mrs. Blair agrees that for purposes of prosecuting those claims in this appeal, S.B. should be substituted in as Appellant."

(Case 24-1682, Dkt. 39). Based on that response, the Fourth Circuit added "Sage Lily Blair" to the caption as a Plaintiff/Appellant to Case 24-1682 in the Fourth Circuit. The appeals court focused on the deliberate indifference to sexual harassment/hostile sex environment claim against ACSB pursuant to Title IX,  and three substantive due process claims *i.e.,* 1) violation of parental rights to direct the upbringing of her children, 2) right of familial privacy brought by Michele Blair individually and 3) violation of familial privacy brought by Michele Blair on behalf of Sage Blair. (Case 24-1682, Dkt 68, p.11).

9

In a decision issued on August 7, 2025, the Fourth Circuit panel affirmed this Court's dismissal of the claims for violation of fundamental parental rights and rights of familial privacy under the substantive due process clause of the Fourteenth Amendment but reversed this Court's dismissal of the Title IX deliberate indifference sexual harassment claim.  (Case 24-1682, Dkt 68, pp. 13-16). With respect to the Title IX claim the Court said, in part, "At this stage, Blair has sufficiently alleged deliberate indifference." (Case 24-1682, Dkt 68, pp. 13-14). The panel affirmed this Court's finding that Mrs. Blair had not sufficiently alleged a "policy" under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), to state claims for violation of substantive due process parental rights and familial privacy rights against ACSB. The panel also affirmed this Court's decision that Michele Blair had not alleged sufficient facts to support a finding that the substantive due process rights under the Fourteenth Amendment were clearly established so that the individual Defendants were entitled to qualified immunity.  (Case 24-1682, Dkt 68, p. 16).

## LEGAL ARGUMENT

Mr. Via's motion conveniently ignores the detailed factual allegations of Sage Blair, the person who was actually in the room with him when statements were uttered and actions taken that for the first time reveal Defendants' interference with Mrs. Blair's free exercise rights. (SAC, Dkt. 121, ¶¶ 31, 32, 48, 49, 69, 72-73, 84). Ignoring those allegations permits Mr. Via to argue that Mrs. Blair's claims for violation of her First Amendment rights should be stricken under the doctrine of res judicata because this Court and the Fourth Circuit dismissed her claims for violation of her Fourteenth Amendment substantive due process rights to direct the upbringing

of her children and familial privacy. (Memorandum in Support of Motion to Strike, Dkt. 137, pp. 3-9).

Disregarding those allegations also permits Mr. Via to allege that Mrs. Blair's First Amendment claim is subject to collateral estoppel on the issue of qualified immunity related to the Fourteenth Amendment claim. (Memorandum, Dkt. 137, pp. 9-11). For good measure, Mr. Via employs a diversionary tactic of citing to the wrong First Amendment clause, claiming that issue preclusion of Mrs. Blair's free exercise claim should "follow *a fortiori*, because public schools are forbidden to **establish or impose any particular religion**." (Memorandum, Dkt. 137, p. 10) (emphasis added). Of course, Mrs. Blair is not seeking to impose or establish a religion for all children at ACHS. Instead, she is seeking to vindicate her right to not have public school officials substantially burden her exercise of her religion, which includes directing the religious upbringing of her daughter. *Mahmoud v. Taylor,* 145 S.Ct. 2332, 2351-2352 (2025) (citing *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943), *Wisconsin v. Yoder*, 406 U.S. 205 (1972)). Facts raising that issue only became available to Mrs. Blair when Sage's recovery from trauma had progressed to the point where Sage could clearly recall the events in August 2021 and could assert them as an adult, bringing her own Title IX claim following the Fourth Circuit's reversal of this Court's dismissal. (Case 24-1682, Dkt 68). Neither of Mr. Via's arguments for striking the SAC has merit. His motion should be denied.

11

I.     **Res Judicata does not bar Mrs. Blair's First Amendment Free Exercise Claim.**

Contrary to Mr. Via's arguments, the Fourth Circuit's affirmation of this Court's dismissal of Mrs. Blair's Fourteenth Amendment claims does not bar her assertion of a First Amendment claim based on the newly revealed facts regarding the events of August 2021. The "(r)ules of claim preclusion provide that(,) if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *In re Varat Enters*., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996). Here, Mrs. Blair's claim in the SAC is a cause of action based on violation of her fundamental right to free exercise of religion under the First Amendment, as most recently described in *Mahmoud*, 145 S.Ct. at 2351-2352, but founded in long-standing constitutional precedents including *Barnette,* 319 U.S. at 630-633 and *Yoder,* 406 U.S. at 211, 218. By contrast, the causes of action dismissed by this Court and affirmed as dismissed by the Fourth Circuit were based on substantive due process concepts under the Fourteenth Amendment, *i.e.,* fundamental parental rights to direct the upbringing of children and the right to familial privacy. While the causes of action both arose during Sage Blair's enrollment at ACHS in August 2021, they arise from different operative facts related to Mrs. Blair's religious beliefs and Mr. Via's speech and conduct related to those beliefs. (SAC, Dkt. 121, ¶¶ 31, 32, 48, 49, 69, 72-73, 84).

Mrs. Blair's claim could be stricken on the basis of res judicata only if Mr. Via can satisfy three elements: that there was "(1) a final judgment on the merits in a

prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004). Mr. Via cannot meet his burden.

### A. There is no final judgment on the merits of Mrs. Blair's First Amendment Claim.

As to the first element, there is no dispute that there was a final judgment on the merits of Mrs. Blair's fundamental parental rights claim prior to the filing of the SAC. The dispute arises as to the nature of the final judgment vis-à-vis Mrs. Blair's cause of action for violation of her First Amendment rights.

In its June 25, 2024, Order this Court dismissed Mrs. Blair's claims for violation of her substantive due process right to direct the upbringing of her child and of her and Sage's substantive due process right to familial privacy under the Fourteenth Amendment. Consequently, there is a final judgment on the merits for *res judicata* purposes as to those Fourteenth Amendment claims. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). However, contrary to Mr. Via's argument, that does not mean that there is a final judgment on the merits as to Mrs. Blair's First Amendment free religious exercise claim.

Res judicata, or claim preclusion, is designed to prevent the re-litigation of claims that were or could have been raised in a prior action, but it does not operate to foreclose the assertion of new claims based on facts or legal standards that were unavailable or unascertainable at the time of the original complaint. As the Fourth Circuit has recognized, "[r]es judicata bars only those claims that **could have been raised based on facts known at the time"** of the prior litigation**. *Duckett v.*

*Fuller*, 819 F.3d 740, 744 (4th Cir. 2016) (emphasis added). The facts regarding Defendants' knowledge of and actions taken in response to Mrs. Blair's religious beliefs were known only to Sage, Mr. Via, and Ms. Olsen, the participants in the conversations and conduct. They were not revealed in documents available to Mrs. Blair without discovery or voluntary disclosure by Ms. Olsen or Mr. Via, neither of which occurred. Nor were they available to her from the other participant in the meetings, Sage, whose healing from trauma had not sufficiently progressed to the point where she was able to recollect the actions relevant to Mrs. Blair's religious exercise claim when Mrs. Blair filed the initial complaint in 2023. Therefore, the facts pertinent to Mrs. Blair's present claim for violation of her free exercise rights under the First Amendment could not have been raised in the initial Complaint. Consequently, the free exercise claim is not barred by this Court's prior adjudication of substantive due process claims under the Fourteenth Amendment.

> **B.    There is no identity between Mrs. Blair's causes of action for violations of the Fourteenth Amendment and violation of the First Amendment.**

Mrs. Blair's free exercise claim also does not satisfy the second element of res judicata, *i.e.,* identity of cause of action. Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Brown v. Felsen*, 442 U.S.127, 131 (1979) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). The determination of whether two suits arise out of the same cause of action "turns on whether the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'" *Pueschel*, 369 F.3d at 355.

Mr. Via attempts to fit the square peg of the Fourteenth Amendment claim into the round hole of the First Amendment claim by arguing that the two claims arise out of the same core of operative facts, *i.e.,* Sage's attendance at ACHS between August 10-25, 2021, including counseling sessions with Mr. Via when he discussed Sage's statement that she identified as a boy, referred her to Websites, and discussed her use of a male name and pronouns and the male restrooms. (Memorandum, Dkt. 137, p. 6). Via then asserts that the primary focus of the Second Amended Complaint is still just related to the school's guidance counselors allegedly "denying parents such as Mrs. Blair notice regarding discussions related to 'gender identity,' referral to sexually explicit LGBTQ-promoting Websites, and access to opposite sex restrooms." (*Id.*). Not surprisingly, Mr. Via fails to account for the new operative facts underlying Mrs. Blair's First Amendment claim, the new facts Mr. Via conveniently ignores throughout his Motion. (SAC, Dkt. 121, ¶¶ 31, 32, 48, 49, 69, 72-73, 84). Those facts demonstrate that the SAC is not simply a reassertion of previously litigated claims but is based on newly revealed facts regarding Mrs. Blair's religious beliefs and Mr. Via's speech and conduct specifically related to those beliefs, which were not known or available to Mrs. Blair at the time of the original complaint. The dates of Sage's attendance and the meetings between her and Mr. Via are the same, but the pertinent content of the conversations is significantly different as evidenced by Sage's newly recollected details of her conversations with him.  It is those details regarding Mrs. Blair's Christian faith,  Mr. Via's counsel to Sage that her mother's religious beliefs made her unsafe for Sage, Mr. Via's decision that Mrs. Blair would not be

15

informed as a result of those beliefs, and his actions in secretly sharing and encouraging Sage to use pro-LGBTQ Websites with content contrary to Mrs. Blair's beliefs that form the operative facts showing that Defendants interfered with Mrs. Blair's right to freely exercise her religion to direct the religious upbringing of her child under the First Amendment. (SAC, Dkt. 121, ¶¶ 31, 32, 48, 49, 69, 72-73, 84). Those facts were not and could not have been known by Mrs. Blair when she filed the initial complaint in 2023. So they could not have been adjudicated because Mrs. Blair did not have the facts necessary to allege a claim for violation of her free exercise rights at the time of this Court's prior adjudication of her claims. Mr. Via's statement that Mrs. Blair knew her religious beliefs is irrelevant. What is relevant is Mr. Via's knowledge of Mrs. Blair's Christian faith and his response to that knowledge by intentionally acting to interfere with directing the religious upbringing of her child in accordance her faith, something only Mr. Via and Sage knew and something Sage was finally able to recall as the SAC was being drafted in summer 2025.

The First Amendment claim is grounded in violation of Mrs. Blair's fundamental right to free exercise of religion, as most recently described in *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2351-52 (2025), and founded in long-standing constitutional precedents including *Barnette*, 319 U.S. at 630-33, and *Yoder*, 406 U.S. at 211, 218. By contrast, the causes of action dismissed by this Court and affirmed by the Fourth Circuit were based on substantive due process concepts under the Fourteenth Amendment regarding fundamental parental rights to direct the upbringing of children and the right to familial privacy based on *Pierce v. Society of*

16

*Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville*, 530 U.S. 57, 68 (2000), *Parham v. J.
R.,* 442 U.S. 584 (1979), *Moore v. East Cleveland*, 431 U.S. 494, 503-504 (1977), *Prince
v. Massachusetts*, 321 U.S. 158, 166 (1944). (Dkt. 1, ¶¶ 107, 108, 122). While both sets
of claims arose during Sage Blair's enrollment at ACHS in August 2021, they arise
from different operative facts. The new claim is factually and legally distinct, as it is
based on specific conduct and statements by Via that interfered with Mrs. Blair's
religious exercise and her right to direct her child's religious upbringing.

The Supreme Court has cautioned that the policy underlying res judicata is to
bar vexatious litigation, not to foreclose legitimate new claims based on new facts.
*Felsen*, 442 U.S. at 131 (1979). In *Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016),
this Court made clear that res judicata bars only those claims that could have been
raised based on facts known at the time of the prior litigation. Mrs. Blair's First
Amendment claim does not come close to meeting that criterion.

## C. The First Amendment claim names some of the same parties but is substantially different.

Two of the individual Defendants being named in the First Amendment claim,
Ms. Olsen and Mr. Via, are the same. The third individual defendant named in the
dismissed Fourteenth Amendment claim, Dr. Annette Bennett, is not named. Even
with some privity of parties, the distinctiveness of the First Amendment claim vis-a-
vis the Fourteenth Amendment claims, militates against application of the third
element of the res judicata analysis. Two of the same parties are being sued but Mrs.
Blair's First Amendment claim is not a mere rehashing of the previously dismissed
claims.

### D.    Mr. Via's other arguments in support of res judicata have no merit.

Mr. Via attempts to bolster his argument that res judicata should apply with several claims that lack legal or factual support. First, Mr. Via claims that later discovery of new facts that are based on the same transaction or occurrence is not a recognized exception to the application of res judicata. (Memorandum, Dkt. 137, p. 8). Mr. Via again ignores the reality that the new facts supporting the First Amendment claim, particularly those involving Mr. Via's conduct, were not available to Mrs. Blair at the time the initial complaint was filed.

Mr. Via also points to the fact "Counsel for Plaintiff and Blair relied on a similar First Amendment claim on April 20, 2023—four months before Plaintiff and Blair initiated this action. *See Willey v. Sweetwater County Sch. Dist. #1 Bd. of Trs.*, No. 1:23-cv-69-SWS, Complaint, ECF No. 1, ¶ 180 (D. Wyo. Apr. 20, 2023)." (Memorandum, Dkt. 137, p. 8). However, the fact that a similar claim was raised in a case involving different parties, different facts, and in a different venue has no bearing on this case. The present case is distinguished by the unique set of facts concerning Sage's trauma and the delayed ability to recall key events.

Therefore, res judicata does not bar Mrs. Blair's First Amendment Free Exercise claim. The claim is factually and legally distinct from the previously litigated Fourteenth Amendment claims, is based on new operative facts regarding Mrs. Blair's religious beliefs and Via's conduct, and is supported by a clarified legal standard for violation of First Amendment free exercise rights described by the Supreme Court in *Mahmoud v. Taylor*. The new facts were not available at the time

of the original complaint, and the SAC properly asserts a new cause of action that could not have been raised in the prior proceedings. Mrs. Blair should be permitted to proceed on the merits of her First Amendment claim.

## II.    Claim preclusion does not apply to grant Mr. Via qualified immunity for a First Amendment claim that was not part of the motion to dismiss upheld by the Fourth Circuit.

As this Court said in *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995), "Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings **provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding**." (emphasis added). Mr. Via would be entitled to collateral estoppel, and therefore, qualified immunity on the First Amendment claim only if he can demonstrate five elements: 1) The issue or fact is identical to the one previously litigated; 2) The issue or fact was actually resolved in the prior proceeding; 3) The issue or fact was critical and necessary to the judgment in the prior proceeding; 4) The judgment in the prior proceeding is final and valid; and 5) The party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding. *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998). Mr. Via fails to satisfy these elements.

First, the issue at stake, the violation of a parent's right to free religious exercise under the First Amendment, as restated by *Mahmoud*, is not identical to the Fourteenth Amendment substantive due process claims previously litigated. The prior proceedings focused exclusively on whether the conduct of Via and Olsen

violated the Fourteenth Amendment, not the distinct religious free exercise rights now asserted. Second, the new factual allegations involving Via's statements and conduct, specifically, instructing Sage to conceal information and actions taken concerning the child's sex rejection from Mrs. Blair due to her mother's religious beliefs, were not previously known, alleged, or resolved in the prior action. Third, since the issue of the school officials' interference with Mrs. Blair's First Amendment religious liberty was not part of the original complaint, it could not have been critical or necessary to the judgment in the prior proceeding. Fourth, while the prior judgment is final and valid as to the claims adjudicated, it does not reach the new First Amendment claim supported by newly recalled facts and a restated longstanding legal precedent. Most importantly, collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the earlier case. Since the First Amendment claim asserted by Mrs. Blair is based upon newly acquired facts and a restated longstanding legal precedent, Mrs. Blair could not have had a full and fair opportunity to litigate the issues underlying that claim. Consequently, collateral estoppel does not apply, and qualified immunity cannot be applied to the new cause of action in the SAC.

Qualified immunity shields government officials from liability for civil damages unless their conduct violated a constitutional right that was "clearly established" at the time of the alleged violation. The "clearly established" prong requires that the contours of the constitutional right be sufficiently clear that every

reasonable official would understand their conduct violates that right. *Atkinson v. Godfrey*, 100 F.4th 498, 505 (4th Cir. 2024) (citing *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018). Immunity is denied when the constitutional right at issue was so well defined that it would be apparent to all reasonable officials that their conduct was unlawful under the circumstances. *Id.* In its prior adjudication of Mrs. Blair's claims, this Court analyzed whether the Fourteenth Amendment claims raised by Mrs. Blair were clearly established so as to preclude the application of qualified immunity to Mr. Via. This Court described the right[4] 1) "a fundamental right to be notified by school officials that her troubled teenaged child has chosen to use a name and pronouns of a different gender and to use the restrooms of the other gender, even when that child requests that the school refrain from such notification" (Memorandum Opinion, Dkt. 105, p. 9), 2) "a fundamental familial privacy right to be notified by school officials that her troubled child has chosen to use a name and pronouns of a different gender and to use the restrooms of the other gender, even when that child requests that the school refrain from such notification," (*Id.,* p. 13), and 3) "that S.B. enjoys a constitutional right to have school counselors ignore her expressed desire that they refrain from raising her gender identity issue with her parent." (*Id.,* p. 16). Mrs. Blair had a full and fair opportunity to challenge qualified immunity as to those Fourteenth Amendment rights at the motion to dismiss stage and on appeal before the Fourth Circuit, which affirmed the qualified immunity

---

[4] Mrs. Blair quotes this Court's description of the rights it determined were not clearly established but does not agree that that the descriptions accurately described the rights as asserted by Mrs. Blair.

decision. However, Mrs. Blair had no opportunity to challenge qualified immunity as to a free exercise claim, which is based on new factual allegations and longstanding legal precedent re-established by the Supreme Court in *Mahmoud*.

The Supreme Court's decision in *Mahmoud* provides authoritative guidance on the scope of parental religious liberty under the First Amendment in the public school context. Drawing on longstanding precedent such as *Yoder*, 406 U.S. 205, and *Barnette*, 319 U.S. 624, the Court held that the Free Exercise Clause prohibits schools from substantially interfering with parents' right to pass along their sincerely held religious beliefs to their children. *Mahmoud* re-established what the Supreme Court had said in *Yoder* in 1972, *i.e.,* that state actors may not impose values or policies that are hostile to a parent's religious beliefs or undermine the parent's ability to direct the religious upbringing of their child. *Mahmoud,* 145 S.Ct. 2355 (citing *Yoder,* 406 U.S. at 218). This recent reinforcement of longstanding precedent shows that taking actions and making statements such as those taken and stated by Mr. Via regarding Mrs. Blair's religious beliefs substantially interfere with parents' free exercise of their religion under the First Amendment. Under *Yoder* actions such as not informing Mrs. Blair about treating Sage as a boy named Draco and instructing her to use the boys' restroom, instructing Sage to conceal information from her mother because her religious beliefs made her unsafe, and directing Sage to LGBTQ-friendly Websites that conflict with her mother's religious beliefs would be understood to violate Mrs. Blair's religious free exercise rights. *Mahmoud's* reinforcement of that right only strengthens the conclusion that the right asserted by

Mrs. Blair was clearly established. Qualified immunity does not apply to Mr. Via's violation of Mrs. Blair's clearly established First Amendment right to free exercise of religion.

Collateral estoppel does not bar Mrs. Blair's First Amendment claim against Mr. Via on the grounds of qualified immunity. The issue of violation of Mrs. Blair's religious free exercise rights and facts underlying that issue were not part of and therefore not identical to the issues and facts previously litigated. That being the case, the issue and facts were not resolved in the prior proceeding and could not be critical and necessary to the judgment. Mrs. Blair did not have any, let alone a full and fair opportunity, to litigate the issue in the prior proceeding. Consequently, the Court must permit the First Amendment claim to proceed on the merits, as neither claim preclusion nor qualified immunity shield defendants from liability under the current legal and factual landscape.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Via's Motion to Strike the Second Amended Complaint and, to the extent leave of court is required under Rule 15(a)(2), grant leave to amend *nunc pro tunc*. The SAC is procedurally proper without bad faith or delay, is factually justified, and is legally supported as to both Plaintiffs, Sage Blair and Michele Blair.

Good cause and the interests of justice support the amendment in light of the Fourth Circuit's remand, new factual developments, and intervening Supreme Court precedent. Accordingly, Plaintiffs respectfully request that the Court deny the motion

to strike and allow this case to proceed on the merits of both Sage Blair's Title IX claim and Michele Blair's First Amendment claim, so that the truth may be fully and fairly adjudicated.

Respectfully Submitted,

Dated: November 4, 2025.

/s/Mary E. McAlister
Mary E. McAlister (VA Bar No.76057)
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org

Vernadette R. Broyles (GA Bar No. 593026)*
Ernest G. Trakas (MO Bar 33813)*
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5425 Peachtree Pkwy, Suite 110
Norcross, GA 30092
770.448.4525
vbroyles@childparentrights.org
etrakas@childparentrights.org
*Admitted pro hac vice
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of November, 2025, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system, which will

send notification to all filers of record.

*/s/Mary E. McAlister*
Mary E. McAlister (VA Bar No.76057)