IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

SAGE LILLY BLAIR,

    Plaintiff,

v.                              Case No. 6:23-cv-00047-NKM-CKM

APPOMATTOX COUNTY SCHOOL
BOARD,

    Defendant.

**AVERY VIA'S REPLY MEMORANDUM IN SUPPORT OF MOTION
TO STRIKE THE SECOND AMENDED COMPLAINT AND/OR
TO DISMISS FOR LACK OF JURISDICTION**

Original Defendant Avery Via ("Via"), by and through his undersigned counsel, Kiernan Trebach LLP, and, pursuant to Rules 12(f) and 12(b)(1) and this Court's Standing Order, hereby submits this Reply Memorandum of Points and Authorities in support of Via's Motion to Strike the Second Amended Complaint [ECF No. 121] and/or to Dismiss for Lack of Jurisdiction. Via also joins in, adopts, and incorporates by reference herein, the arguments presented in the Opening and Reply Briefs of Defendant Appomattox County School Board and original Defendant Dena Olsen [ECF Nos. 124, 135] in support of their Motion to Strike or, in the alternative, Deny Plaintiff Leave to File a Second Amended Complaint.

## INTRODUCTION

Although the Second Amended Complaint ("SAC") should be stricken for failure to obtain leave of Court or Via's consent to amend, Via's Motion is solely directed to dismissed Plaintiff Michelle Blair's ("Mrs. Blair") improper section 1983 claim (Count One of the SAC). The Title IX claim of Plaintiff Sage Blair ("Sage") is not asserted against Via, and this Motion therefore does not address that claim.

On August 7, 2025, the Fourth Circuit affirmed this Court's dismissal of all of Mrs. Blair's claims, including the asserted violations of fundamental parental and familial privacy rights in reliance on the Fourteenth Amendment, leaving only Sage's Title IX claim against the School Board. ECF No. 115. Subsequently, Mrs. Blair has alleged additional facts concerning Sage's discussions with school counselors – assertedly first remembered by Sage since the appeal was filed – to support a First Amendment claim for Mrs. Blair arising from the same incident on which this Court's original, now affirmed dismissal was based.[1] *See* ECF No. 140, at 2-4, 7, 11, 14 & 16. As the primary grounds for her Opposition, Mrs. Blair claims that these newly remembered facts allow her to overcome res judicata. She is wrong.

"For purposes of res judicata, it is not necessary to ask if the plaintiff knew of [her] present claim at the time of the former judgment, **for it is the existence of the present claim, not party awareness of it, that controls**." *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986). "This principle distinguishes from this case those cases where the challenged claim <u>did not **exist**</u> at the time of the prior litigation." *Id*. Here, as in *Harnett*, the record is clear that, at the time of the prior judgment, the alleged unconstitutional conduct of Via and Olsen that forms the asserted basis of Blair's First Amendment claim had taken place years prior.

The Court must therefore reject Plaintiff's unfounded argument that her lack of awareness of the newly alleged facts from 2021 allows her to bring this First Amendment claim in 2025, despite the prior final judgment against her prior Fourteenth Amendment claim and resulting dismissal and affirmance based on the same events. As the law overwhelmingly supports the striking and/or dismissal of the SAC's Count One pursuant to the doctrines of res judicata, collateral estoppel, and qualified immunity, Via respectfully requests his dismissal from this

---

[1] These additional facts are set forth in just two paragraphs of the SAC. ECF No. 121, ¶¶ 49 & 84.

second lawsuit.  In addition, leave to amend would be futile, because Mr. Via and Ms. Olsen are indisputably entitled to qualified immunity from Ms. Blair's new, First Amendment claim.

## ARGUMENT

### I.    MRS. BLAIR'S SECTION 1983 FIRST AMENDMENT CLAIM IS BARRED BY RES JUDICATA.

Mrs. Blair's Opposition confuses and misapplies the res judicata standard.  For such claim preclusion to apply, the underlying causes of action in the old suit and new suit can be different — the underlying operative facts/transaction or occurrence just needs to be the same for the old and new claims.  *Ikome v. Gen. Dynamics Info. Tech.*, 2023 U.S. Dist. LEXIS 99636, at *12 (E.D. Va. June 7, 2023) (the "inquiry importantly turns on a comparison of the facts in each suit rather than the nature of the claims themselves").  In other words, Mrs. Blair cannot relabel the same factual claims as a First Amendment religious issue and expect to overcome claim preclusion.  *See id.* at *14 ("a litigant cannot avoid res judicata simply by pleading a 'different theory' by which he could obtain relief on the same set of events").  Mrs. Blair's different characterizations of the same core facts is precisely what res judicata prevents.  *See Walls v. Wells Fargo Bank, N.A.*, 557 F. App'x 231, 233 (4th Cir. 2014) ("As the district court properly held, [the plaintiff's] attempts to restyle her earlier factual allegations . . . are insufficient to avoid the res judicata bar.").

Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues <u>that</u> were or <u>could have been raised</u> in that action."  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  Claim preclusion "bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented."  *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996).  Res Judicata has three elements:  "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their

privies in the two suits." *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004). Every one of those requirements is present herein.

> **A.    There was a final judgment on the merits prior to the filing of this Second Amended Complaint.**

Plaintiff concedes there was a final judgment on the merits for the claims against Via presented in the prior complaint, including the Fourteenth Amendment claim(s). *See* ECF No. 140, at 13 ("As to the first element, there is no dispute that there was a final judgment on the merits of Mrs. Blair's fundamental parental rights claim prior to the filing of the SAC."). That is the end of the Court's inquiry for the first element. The remainder of Mrs. Blair's argument and framing for the first element is incorrect, because the standard is not whether there was a final judgment on the merits for the (new) First Amendment claim.[2] As the Fourth Circuit noted, Plaintiff "fails to recognize that the doctrine of res judicata not only bars claims that were actually litigated in a prior proceeding, but also claims that could have been litigated." *Pueschel*, 369 F.3d at 355-56.

Blair's argument that the facts pertinent to her First Amendment claim could not have been raised in the initial Complaint due to her lack of awareness is dealt with factually in the next section. Legally, however, it is not a viable contention under Fourth Circuit precedent. *Harnett*, 800 F.2d at 1313. "It is well established that res judicata applies not only to causes of action of which Plaintiff was aware, but also to all which arose out of the same transaction as the first suit." *Meisner v. Zymogenetics, Inc.*, 2016 U.S. Dist. LEXIS 125378, at *6 (D.S.C. Sep. 15, 2016). Mrs. Blair's "argued lack of knowledge" about the current First Amendment claim prior to the first judgment "does not bar the imposition of res judicata." *Id*. at 10 (noting that the "plaintiff's objections regarding when she became aware of certain claims and her 'opportunity to litigate' them are unavailing").

---

[2] Mrs. Blair supplies no case citation following her erroneous framing of the inquiry.

**B.**    **There is identity of the cause of action in both the earlier and the later suit, as Mrs. Blair's section 1983 Fourteenth Amendment claim and new First Amendment claim arise from the same core of operative facts.**

After confirming that there was a final judgment on the merits in a prior suit, the Court then compares the underlying facts of the old and new suits and the parties to determine whether the new claim should have been brought in the prior suit. *Snell v. Gustafson*, 2024 U.S. Dist. LEXIS 199019, at *25 (W.D. Va. Nov. 1, 2024) (Moon. J.) ("any claim that Plaintiff had against the instant Defendants which arose out of the same transaction or conduct … should have been raised in the prior action").

"The determination of whether two suits arise out of the same cause of action . . . **does not turn** on whether <u>the **claims**</u> asserted are identical." *Pueschel*, 369 F.3d at 355.  "Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of res judicata through artful pleading and claim splitting[,] given that [a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law." *Id*.  Thus, Mrs. Blair's Opposition argument (at 16-17) regarding the fact that the Fourteenth Amendment claim relied on different Supreme Court precedent and covered a different constitutional right is irrelevant to the Court's inquiry of res judicata's second element, which instead focuses on the factual occurrence that forms the underlying factual basis for the two causes of action: *i.e.*, whether these claims are largely based on the same set of the events or instead on two different, unrelated events.

As Mrs. Blair acknowledges, there is identity between causes of action when the claims asserted in each "arise out of the same transaction or series of transactions or the same core of operative facts." *Id*.  This approach to detecting precluded claims "asks only if a claim made in the second action involves a right arising out of the same transaction or series of connected

transactions that gave rise to the claims in the first action." *Harnett*, 800 F.2d at 1314. The answer herein is a resounding "yes:" the newly asserted right arose out the same transaction that gave rise to the old substantive due process claims, namely the school guidance counselors' advice and interactions with Sage concerning gender identity and their alleged failure to notify Mrs. Blair.

In *Pueschel*, the Fourth Circuit held that the plaintiff's FTCA and Title VII suits arose out of "the same transaction or series of transactions or the same core of operative facts." *Id*. at 355. The court found that "both suits assert claims that are based on an alleged pattern of [employer] conduct that supposedly took place between January 1984, when Pueschel was reinstated, and April 5, 1994, when Pueschel took a sick leave from which she never returned." *Id*. That is, the "same transaction" inquiry looks at the overall conduct and timeline of events in each suit.

As in *Pueschel*, Blair's section 1983 First Amendment claim in the SAC arises out of the same transaction or core of operative facts as her prior section 1983 substantive due process claims — namely, the August 10-25, 2021 events at Appomattox County High School, including the alleged guidance that Plaintiff received from school counselors when she expressed a transgender identity. In particular, the Amended Verified Complaint from the prior suit provides the following summary:

> Defendants Appomattox County School Board, Bennett, Olsen and Via and their employees and agents ("Appomattox Defendants") deliberately concealed from Plaintiff information related to her daughter's asserted gender identity and Appomattox Defendants' efforts to affirm S.B.'s asserted discordant gender identity at school, including the use of an alternate name and pronouns and use of opposite sex restroom facilities. Appomattox Defendants further withheld information regarding bullying, verbal, physical and sexual assault that S.B. suffered as a result of her asserted discordant gender identity and use of opposite sex restrooms. As a result of Appomattox Defendants' conduct, Mrs. Blair was deprived of information required to exercise her fundamental parental rights to direct the upbringing of her daughter, including making educational and mental health decisions.

ECF No. 84, ¶ 2. Mrs. Blair could have easily added "[First Amendment] rights to direct the

[religious] upbringing of her daughter, including making educational, [religious], and mental health decisions" to the final sentence above in 2023, but did not. The above fact pattern falls squarely within the alleged narrative and core facts of the new pleading.

When given the opportunity in her Opposition, Mrs. Blair could only point to 8 paragraphs in the 107-paragraph SAC that purportedly contain "new facts" in support her First Amendment claim that differ from the old lawsuit, citing paragraphs 31, 32, 48, 49, 69, 72-73 and 84. *See* ECF No. 140 at 15-16. Moreover, a quick review of these cited paragraphs runs contrary to her narrative, leaving just two paragraphs in the entire SAC that potentially differ from the prior suit as an added ground for her First Amendment claim.

To begin, paragraphs 31 and 32 of the SAC, discussing mental health records, have nothing to do with Via interfering with Blair's religious beliefs. If relevant at all, they appear directed only towards Sage's Title IX claim, which is not brought against Via. ECF No. 121, ¶¶ 31-32.

Next, paragraph 48 of the SAC, which discusses Via's alleged LGBTQ resources referral to Sage, is not a new factual allegation, because its paragraph 42 states that "Mr. Via also directed S.B. to internet sites, apps, and social media networks that promoted transgender ideas, indicating she could find friends there;" in paragraph 123 that Sage "was provided with pro-transgender resources including websites, social media platforms and apps which were frequented by men who sought to harm and traffic vulnerable girls;" in paragraph 139 that Sage "was provided with online sites that promote transgender ideas including websites, social media platforms and apps which were frequented by men who sought to harm vulnerable girls;" and in paragraph 195 that "Mr. Via directed S.B. to online resources aimed at affirming transgender identities." *Compare* ECF No. 121, ¶ 48, *with* ECF No. 84, ¶¶ 42, 123, 139, & 195.

Third, paragraph 69 of the SAC, discussing the night Sage ran away and the unfortunate

aftermath, contains identical allegations to paragraph 64 of the Amended Verified Complaint coupled with paragraphs 123 and 139 therein regarding online predators.

Turning to paragraphs 72 and 73 of the SAC, they contain allegations about Family Life Education Materials concerning a Virginia law that was available to Mrs. Blair back in 2023 (Va. Code Ann. § 22.1-207.2) and thus could have been cited in the Amended Verified Complaint. Those assertions are premised on and include allegations that Olsen and Via discussed gender identity issues with Sage and directing Sage to websites and social media that are LGBTQ friendly without notifying Mrs. Blair, which of course are allegations that she made almost twenty times in the prior suit, and therefore have nothing to do with newly discovered facts.

Indeed, Mrs. Blair admits that her allegations in Paragraphs 72 and 73 relate to parental rights generally, and <u>are not</u> exclusive of religion: "Mrs. Blair was deprived of the rights **accorded** parents, <u>even those without religious convictions</u>, to notice and an opportunity to excuse their child." ECF No. 121, ¶ 73. As demonstrated above, Mrs. Blair's claim in her Opposition (at 6-7) that "she was unaware of these facts until the time that the SAC was being prepared in the summer of 2025" lacks merit, unless she never properly reviewed the complaint verification she signed under penalty of perjury in 2023. *See* ECF No. 84, at 54. And if Mrs. Blair had wanted to get the Court to focus specifically on religious rights, she needed to do that before the final judgment that went up on appeal.

Lastly, adding the allegations contained in paragraphs 49 and 84 to the SAC[3] does not allow Mrs. Blair to circumvent Res Judicata, because the First Amendment claim was available in

---

[3] Paragraph 49 adds that "Sage had told the counselors that her mom was a Christian" and apparently Via then allegedly stated that, "since her parents are religious[,] it was better not to tell them about her asserted new identity, because she would not be safe." ECF No. 121, ¶ 49. Paragraph 84 then states that "Mrs. Olsen and Mr. Via knew that Mrs. Blair was a Christian whose sincerely held religious beliefs would oppose having her 14-year-old daughter use male privacy facilities, lie about her sex, or withhold information from her parents." *Id.*, ¶ 84.

the prior suit.  In the SAC, Mrs. Blair lists four actions that purportedly violated her First Amendment rights.  Paragraphs 49 and 84 only implicate one of the four alleged violations, so there is no reason that the First Amendment claim could not have been brought with the other alleged violations back in 2023.  The SAC lists the following actions of Defendants that "violated Mrs. Blair's right to direct Sage's religious upbringing" (ECF No. 121, ¶ 95):

> 1) failing to notify Mrs. Blair before treating her daughter as a boy named "Draco" with male pronouns, 2) directing Sage to use only the boys' bathroom, 3) directing Sage to Websites and social media sites that discuss sexual orientation, gender identity and similar sexual issues with no parental notice, and 4) telling Sage that she should not and staff would not tell Mrs. Blair about Sage's "gender identity" because Mrs. Blair's religious beliefs meant that Sage would not be "safe" at home if Mrs. Blair knew about the "gender identity…."

Accepting Mrs. Blair's narrative of the claimed factual "religious" revelations in the summer of 2025 for arguments sake only,[4] only one-half of the fourth alleged action contains slightly different facts from the old verified complaint ("because Mrs. Blair's religious beliefs," instead of because Sage asked counselors not to tell Mrs. Blair).  This is significant for two reasons.

First, there was nothing stopping Mrs. Blair from asserting violations of her right to direct Sage's religious upbringing for the first three claimed actions:  (1) failing to notify Mrs. Blair about the name change; (2) directing Sage to use only the boys' bathroom and (3) directing Sage to LGBTQ sites.  In the SAC, she claims these actions violated her religious beliefs[5] and rights related to raising Sage.  Mrs. Blair knew what her religious beliefs were when she filed the original complaint, and she knew about at least three actions alleged in the original complaint that apparently violated her religious beliefs.  She should have pleaded the First Amendment claim

---

[4] Mrs. Blair's Opposition fails to adequately explain why Sage was not asked by Blair or her attorneys about the specifics of her conversation with Via until after they lost the Fourth Circuit appeal.

[5] The SAC alleges that Blair's religious beliefs include "that there is not a separable 'gender identity' based on feelings," ECF No. 121, ¶ 10, and that, "by requiring that Sage use only the male restroom and using a false male name and pronouns, Defendants are imposing values and beliefs that are hostile to Mrs. Blair's religious beliefs…."  *Id.*, ¶ 91.

with the first three actions in the original complaint before there was a final judgment on the merits, so that, if there was some new revelation from Sage later on when Blair was still a party and her claims were still active, Blair could have sought amendment at that time to add the fourth factual reason. But adding a new claim now after a final judgment against her when she is no longer a party, where the core facts of said claim were available to her long ago, will not suffice to overcome a claim preclusion defense under Fourth Circuit precedent.

Second, the old verified complaint, which made its allegations under penalty of perjury, also alleged that the counselors — per Sage's instruction and wishes — agreed not to divulge her gender identity and chosen name to her parents. *See* ECF No. 84, ¶ 38 ("S.B. asked Ms. Olsen not to use that name [her male name Draco] with Mrs. Blair because it might upset her"); *id.*, ¶ 35 ("Ms. Olsen and Mr. Via claimed that S.B. told them that her parents were not supportive of her gender identity."). Those new SAC allegations contradict her previous, verified allegation, alleging now that the motivation not to tell Mrs. Blair (rather than following Sage's request) was because she was a Christian whose beliefs meant Sage would not be safe. ECF No. 121, ¶¶ 49 & 84. The SAC <u>does not</u> allege this factual contradiction under penalty of perjury. To the extent any credibility is due to this factual flip-flop, this minor factual change (comprised of only of two paragraphs in the SAC) would not be sufficient to transform the basis of Blair's First Amendment claim into a different transaction or a different core of operative facts. *Accord*, *Mitchell v. United States Bank Nat'l Ass'n*, 2020 U.S. Dist. LEXIS 99484, at *20 (D. Md. June 8, 2020) ("Merely stating additional facts in the complaint . . . does not change the nature of the cause of action for purposes of res judicata.").

In sum, the core operative facts have not changed since the denial of the original section 1983 claims and the new section 1983 claim arises from operative facts that are not separate and

distinct from those underlying Blair's initial claims in 2023. Therefore, the second res judicata element is satisfied.

### C.     There is identity of parties in the two suits.

In an attempt to rebut this element (at 17), Mrs. Blair points out that Dr. Annette Bennett, who was a defendant in the prior suit, is not named in the new First Amendment claim. Mrs. Blair, however, cites no case law stating that the third element of a res judicata analysis cannot be met if the old lawsuit had an additional party not present in the new suit (likely because the law states the opposite). Indeed, in *Hall v. St. Mary's Seminary & University.*, the court explained that mere "roster changes" will not defeat the identity-of-parties requirement when it held that an additional named Defendant in the prior suit who was not present in the new suit is of no consequence for claim preclusion purposes. *Id*., 608 F. Supp. 2d 679, 685 (D. Md. 2009).

Here, there is identity of parties, as Mrs. Blair again brings a claim against Via, Olsen and the School Board and previously asserted claims against Via, Olsen and the School Board that were dismissed by this Court and affirmed by the Fourth Circuit, which meets the third, and final, res judicata element. Put another way, every party against whom Mrs. Blair has brought her First Amendment claim was a party in the prior lawsuit. *Accord, Jones v. Nationstar Mortg. LLC*, 2023 U.S. Dist. LEXIS 214787, at *7 (D. Md. Dec. 4, 2023) (Maryland law). Mrs. Blair asks the Court to ignore the appropriate inquiry for the third element by arguing – without any supporting legal authority – that, regardless of the identity of the parties, "the distinctiveness of the First Amendment claim[,] vis-a-vis the Fourteenth Amendment claims, militates against application of the third element of the res judicata analysis." Indeed, that argument in Blair's Opposition does not support any element of the claim preclusion analysis, so the Court should disregard it.

In summary, Mrs. Blair was obligated to bring all constitutional challenges under section

1983 in her initial suit, and her failure to do so before the final judgment as affirmed by the Fourth Circuit precludes the first Count of the proposed Second Amended Complaint.

### D.    There are no recognized exceptions to the application of res judicata here.

The Blair Opposition argues (at 13) without supporting authority that res judicata does not operate to foreclose the assertion of new claims based on facts or legal standards that were "unavailable" or "unascertainable" at the time of the original complaint.  Unfortunately for Plaintiff, "the controlling issue is whether the claim existed at the time of the prior suit, not whether plaintiff had actual knowledge of claim at that time." *Vaeth v. Mayor & City Council of Baltimore City*, 2019 U.S. Dist. LEXIS 88582, at *10 (D. Md. May 24, 2019) (citing *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir. 1990)).  The reality is that all facts supporting the new claim occurred before the original complaint was filed in 2023 and were discoverable.  A witness's alleged memory lapse of select details later remembered, or "the production of new evidence that perhaps could have saved the claim in the first case," does not allow causes of action to exist in perpetuity to be later asserted after a final judgment in the prior suit.  *See Estate of Keesee v. American Bankers Life Assurance Co.*, 2023 U.S. Dist. LEXIS 134071, at *4-*5 (D. Md. Aug. 1, 2023); *Meisner*, 2016 U.S. Dist. LEXIS 125378, at *7 & *9-*10.

Plaintiff's Opposition solely and erroneously relies on *Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016), for the quoted proposition in bold text that "[r]es judicata bars only those claims that could have been raised based on facts known at the time" of the prior litigation.  *See* ECF No. 140 at 13-14 & 17.  This purported quote (at 13-14) and paraphrase (at 17) from *Duckett* in Plaintiff's Opposition neither exists nor is an accurate paraphrase of any rule from *Duckett*.[6]  The

---

[6] It also contravenes actual Fourth Circuit law, as the plaintiff's lack of awareness or knowledge of the claim is not a relevant factor.  The Court's proper inquiry looks to whether the facts supporting the claim existed (had occurred) at the time of the prior suit, not whether plaintiff had actual knowledge of those facts.  *See Harnett*, 800 F.2d at 1313; *Aliff*, 914 F.2d at 43-44.

issue in *Duckett* centered on the fact that Duckett was neither a party nor a participant in a prior suit filed by another prisoner; on that basis, the Fourth Circuit found that Duckett was not precluded from raising the same claims <u>as a different prisoner</u> in his later action.  819 F.3d at 742 & 744.  Nothing about *Duckett* is relevant to this case.

Irrespective of Plaintiff's lack of authority to support their primary contention, Via has established *supra* that the operative facts <u>were available</u> to Mrs. Blair at the time of the original complaint and were even included in the original complaint, and arguably only half of a fourth ground for the First Amendment claim was assertedly "newly" remembered.  *See Hall*, 608 F. Supp. 2d at 686 ("Even if additional facts are pleaded in the later suit, the new claims will be precluded if those facts and issues could have been presented in the earlier suit.").  Blair's minor "newly remembered facts" occurred in 2021, well before suit was filed in 2023, and before the final judgment here and ensuing appeal.

Conversely, Mrs. Blair has failed to establish that she may circumvent claim preclusion by discovering some minor new facts later on that are based on the same transaction or operative set of facts from the prior suit for a claim that could have been pleaded on other known grounds back in 2023.  Indeed, **"'[p]laintiff's discovery of additional facts following entry [of final] judgment <u>does not</u> block the application of res judicata,' where the 'facts and events themselves arose prior to the filing of the original complaint' <u>even while the plaintiff's</u> <u>'awareness of these facts . . . came later</u>**.'"  *Mitchell*, 2020 U.S. Dist. LEXIS 99484, at *20-*21 (quoting *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999)); s*ee also Jones*, 2023 U.S. Dist. LEXIS 214787, at *8-*9 (explaining that subsequent discovery of new evidence does not undermine the application of res judicata under Maryland law and holding that, "even if the [plaintiffs] now know some material fact that they did not know then, that does not

defeat the res judicata effect of the [prior] Action when, as here, their claims were brought or could have been brought in that action").

Lastly, a change in legal standards or case law <u>does not</u> allow the plaintiff to circumvent res judicata. *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 211 (4th Cir. 2013) ("an intervening change in case law . . . almost never warrants an exception to the application of res judicata."). And in any event, the First Amendment claim, legally speaking, was available back in 2023, which Mrs. Blair does not dispute. *See* ECF No. 140 at 3 n.2 & 18. Nor could she, considering her counsel had filed similar First Amendment claims during the relevant time frame in other transgender-related school cases. *See Willey v. Sweetwater County Sch. Dist. #1 Bd. of Trs.*, No. 1:23-cv-69-SWS, Complaint, ECF No. 1, ¶ 180 (D. Wyo. Apr. 20, 2023); *Landerer v. Dover Area Sch. Dist.*, No. 1:24-cv-566-JPW, Compl., ECF No. 1, ¶¶ 109-24 (M.D. Pa. Apr. 3, 2024).

The doctrine of res judicata bars Blair's First Amendment claim. Leave to amend should be denied as futile, and the new Count One should be stricken and/or dismissed with prejudice.

II.   **AS QUALIFIED IMMUNITY WAS ALREADY DECIDED AGAINST BLAIR ON THE BASIS OF THE SAME OPERATIVE FACTS, COLLATERAL ESTOPPEL PRECLUDES HER FROM BRINGING THE FIRST AMENDMENT COUNT HERE.**

   A.   **Qualified immunity for the events alleged in the original complaint was fully and fairly litigated on the merits, and its re-litigation is precluded now.**

Collateral estoppel (or issue preclusion) bars re-litigation of a decided and litigated issue. *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995). "The determination of a question directly involved in one action is conclusive as to that question in a second suit." *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 147 (2015). "Once a court has decided an issue, it is forever settled as between the parties." *Id.*

Here, Via and Olsen are entitled to issue preclusion with regard to their recently affirmed judgment on the "qualified immunity" issue, which is forever settled between Mrs. Blair and Via

and Olsen. Via demonstrated in his Opening Memorandum that (1) the qualified immunity issue now is identical to the one previously litigated; (2) the issue was actually resolved in the prior proceeding; (3) qualified immunity was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) Mrs. Blair had a full and fair opportunity to litigate the qualified immunity issue in the prior proceeding. *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998).

Mrs. Blair does not contest that the judgment in the prior proceeding was final and valid (the fourth element), ECF No. 140, at 20, but takes issue with what was adjudicated in the prior proceeding. However, the issue of qualified immunity for Blair's section 1983 constitutional claims was resolved by the Court (second element) and formed the basis for the dismissal of said claims against Via and Olsen (*i.e.*, was critical and necessary, satisfying the third element). *See* ECF No. 105, at 9 ("the Court resolves Plaintiff's constitutional claims by applying the doctrine of qualified immunity"). Mrs. Blair had a full and fair opportunity to challenge (and did challenge) the qualified immunity issue, both at the motion to dismiss stage and on appeal (fifth element), and that was a principal basis for affirmance. *See id.*, 147 F.4th 484, 493-94 (4th Cir. 2025).

The Fourth Circuit affirmed the district court's qualified immunity decision for Blair's section 1983 constitutional claims in which Blair alleged that "Olsen and Via violated her fundamental right to direct upbringing of S.B., her right to familial privacy, and S.B.'s right to familial privacy." *Id.* at 493-94. The appellate court held as follows (*id.*):

> With respect to Blair's two claims related to the upbringing of S.B. and familial privacy, … we find all claims fail even at this stage. Blair alleged that she had a fundamental right to be notified of S.B.'s gender preferences and Dr. Bennett, Olsen and Via's failure to notify her of such preferences violated her and S.B.'s fundamental rights. But under the facts alleged here, none support a finding that these rights are clearly established under the law.

Mrs. Blair argues that — because the Fourth Circuit addressed whether her "fundamental

parental rights to direct the upbringing of [S.B.]" were clearly established, instead of her fundamental "right to direct the <u>religious</u> upbringing of [S.B.]" — collateral estoppel does not apply as the issue (*accord*ing to Plaintiff) is not "identical" to the one previously litigated. She is incorrect. For issue preclusion purposes, "issues are not identical when the legal standards governing their resolution are significantly different." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 380 (4th Cir. 2017). The "clearly established" legal standard governing whether Via and Olsen are entitled to qualified immunity for their alleged conduct at the school in August 2021 is the same whether Mrs. Blair's right is asserted under the First or Fourteenth Amendment. It certainly is not "significantly different" legally.

In *Brown v. Lumpkin*, the plaintiff in his prior action pleaded violations of the First and Fourteenth Amendments for the denial of his request to wear religious clothing in prison. *Brown v. Lumpkin*, 2022 U.S. Dist. LEXIS 144703, at *6 (D.S.C. Apr. 7, 2022), *adopted for summary judgment by id*., 2022 U.S. Dist. LEXIS 143559, at *2-*8 (D.S.C. Aug. 10, 2022). The court in the prior suit found that "the defendants were entitled to qualified immunity because it was not clearly established that their actions in following policy with regard to religious headgear … would violate any constitutional rights." 2022 U.S. Dist. LEXIS 144703, at *6 & *10. The magistrate judge therefore recommended that the plaintiff's constitutional claims in the current case as they pertained to the religious clothing denial be dismissed pursuant to collateral estoppel. *Id*. at *10.

The fact that the SAC asserts a different constitutional violation under section 1983 for the same core set of facts as the original complaint <u>does not</u> allow Mrs. Blair to overcome issue preclusion. As the Supreme Court explained, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same <u>or</u>

a different claim." *B&B Hardware*, 575 U.S. at 148. "[R]ecognizing that the second suit may present different causes of action than the first suit, collateral estoppel focuses on whether the issues which are being sought to be litigated in the second suit were actually litigated in the first suit." *Vogt v. American Arbitration Ass'n*, 2020 U.S. Dist. LEXIS 59536, at *7 (N.D.W. Va. Mar. 17, 2020) (West Virginia law).

For her new count, Mrs. Blair primarily relies in this regard on the 2025 Supreme Court case, *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025). Blair argues that, because her First Amendment claim is based on *Mahmoud*, she did not have a "full and fair opportunity" to litigate the qualified immunity issue in the earlier case. However, before the Fourth Circuit published its opinion, Mrs. Blair filed a notice of supplemental authorities to the Fourth Circuit discussing *Mahmoud* regarding, in her words, the parents' "fundamental right to direct the religious upbringing of their children when the Board refused to notify parents" on the discussion of LGBTQ issues in elementary school instruction. *See* Appeal No. 24-1682, Doc No. 65 (July 3, 2025). Via filed his Response to same on July 9, 2025, explaining that "local officials sued in their individual capacities for violations of federal constitutional rights are entitled to qualified immunity if the right was not clearly established <u>at the time of the violation</u>. Thus, to the extent the Court construes the *Mahmoud* decision as altering the landscape of 'clearly established rights' in any way, the qualified immunity analysis at hand only focuses on the state of the law at the time of the alleged violation for notice purposes, which in this case was at the start of the 2021-2022 school year." Appeal No. 24-1682, Doc No. 67 (July 9, 2025). With Blair's full and fair opportunity to litigate *Mahmoud*'s effect on Via's qualified immunity on appeal, the Fourth Circuit still found that Mrs. Blair's asserted rights <u>were not</u> clearly established.

"Because the issue of whether th[e] rights were clearly established at the time of the

17

incidents in question was decided against [the plaintiff], that issue cannot be relitigated here."
*Corporal v. Weber*, 2022 U.S. Dist. LEXIS 17493, at *17 (D. Md. Jan. 28, 2022). The dismissal
(or striking) of Count One of the SAC is thus warranted on collateral estoppel grounds.

### B.    Relitigation of the qualified immunity issue herein would be futile.

Finally, even if the Court were to find that issue preclusion alone does not control in this
instance, Via would still be entitled to qualified immunity against Mrs. Blair's First Amendment
claim in this suit, making amendment futile as a matter of pleading rather than preclusion.  An
amendment to a complaint is futile where it "does not properly state a claim under Rule 12(b)(6)."
*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

To determine whether a school officer is entitled to qualified immunity, a court must
determine, in either order, (1) whether a constitutional violation occurred and (2) whether the right
was clearly established.  *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016).  A right is "clearly
established" if a "reasonable official would have understood that what he was doing violates that
right."  *Id.* at 887.  Via is entitled to qualified immunity if the asserted right was not clearly
established at the time of the violation (August 2021).  *See Harlow v. Fitzgerald*, 457 U.S. 800,
818 (1982).  In conducting this analysis, courts "first examine ... decisions of the Supreme Court,
this court of appeals, and the highest court of the state in which the case arose.  We ordinarily need
not look any further than decisions from these courts."  *Booker v. South Carolina Dep't of Corr.*,
855 F.3d 533, 538–39 (4th Cir. 2017) (citations and quotation marks omitted).  Clearly established
rights "<u>should not</u> be defined at a high level of generality," but rather must be "particularized to
the facts of the case."  *White v. Pauly*, 580 U.S. 73, 79 (2017).

Whether the violation of a constitutional right is asserted under the First or Fourteenth
Amendment for the same underlying conduct here, Via and Olsen are equally entitled to qualified

immunity, as any purported constitutional violation in the new suit was no more clearly established in August 2021 than the violation asserted in the old suit. Mrs. Blair argues that "qualified immunity does not apply to Mr. Via's violation of Mrs. Blair's clearly established First Amendment right." ECF No. 140, at 23. However, Mrs. Blair's asserted violations of her right to direct Sage's religious upbringing for (1) failing to notify Mrs. Blair about Sage's use of her preferred male name Draco; (2) directing Sage to use only the boys' bathroom, (3) directing Sage to LGBTQ sites during a private counseling session, and (4) advising what to share with her mother related to gender identity for safety reasons based on Mrs. Blair's beliefs <u>would not</u> be understood by Mr. Via in August 2021 to violate Mrs. Blair's religious free exercise rights. ECF No. 121, ¶ 95. To that end, Mrs. Blair does not cite, nor can the undersigned identify, any precedent of th Supreme Court, the Fourth Circuit, or the Supreme Court of Virginia that clearly established the right that Plaintiff asserts in this specific factual context. And as Plaintiff's Opposition does not show any consensus of persuasive authority for the establishment of such a right as of 2021, she <u>has not</u> met her burden.

Plaintiff cites three Supreme Court cases in the SAC to support her First Amendment claim: *Mahmoud*, *supra*; *Espinoza v. Montana Dept. of Revenue*; and *Wisconsin v. Yoder*. *See* ECF No. 121, ¶¶ 88-99. While *Espinoza* is not discussed in her argument, Mrs. Blair also cites to *West Virginia Bd. of Ed. v. Barnette* in her Opposition. None of these cases are sufficiently analogous to have put Via and Olsen on notice that their conduct was unlawful in the situation they confronted.

First, even if the facts of *Mahmoud* did not significantly differ from Via's alleged conduct,[7] to the extent the Court construes *Mahmoud* as altering the landscape of 'clearly established rights'

---

[7] This new suit involves a damages action against public school counseling personnel where Mr. Via raises the affirmative defense of qualified immunity, while the *Mahmoud* decision involved only injunctive relief

in any way, a proper qualified-immunity analysis only focuses on the state of the law when the alleged violation occurred — as a matter of notice — which in this case was at the start of the 2021-2022 school year.  Harlow, 457 U.S. at 818.  Thus, *Mahmoud* could not have any effect on whether Via is entitled to qualified immunity, as it was decided in 2025.

 *Yoder*, *Barnette*, and *Espinoza*, also cited by Plaintiff, do not clearly establish the specific right asserted here.  Via reiterates that an inquiry into qualified immunity "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  The *Yoder* Court considered a compulsory-education law that would place Amish children into "an environment hostile to Amish beliefs."  *Yoder*, 406 U.S. 205, 211 (1972).  The Court held that the First Amendment prevents a state from compelling Amish parents to cause their children, who have graduated from the eighth grade, to attend formal high school to age 16.  *Id.* at 234.  And in *Barnette*, the Court held that the First Amendment protects students from being forced to salute the American flag or say the Pledge of Allegiance in public school.  *Barnette*, 319 U.S. 624, 642 (1943).  "[T]he *Barnette* right to abstain from the pledge is well established enough that our court has previously described a case in which it was violated as a rare exception to the trend that educators are rarely denied immunity from liability arising out of First Amendment disputes."  *Oliver v. Arnold*, 3 F.4th 152, 160 (5th Cir. 2021).  And lastly, the issue in *Espinoza* was whether the Free Exercise Clause precluded the Montana Supreme Court from applying Montana's no-aid provision to bar religious schools from the scholarship program, or put differently, whether students who received a state-funded scholarship to be used at private schools could use those funds at sectarian schools.  *Espinoza*, 591 U.S. 464, 474 & 467-70 (2020).

---

in the context of a curriculum opt-out issue for elementary school students.  Furthermore, Via acted in a manner consistent with Fourth Circuit law in *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020) and transgender-assistance guidelines that Virginia's Department of Education ("VDOE") had adopted earlier in 2021 in the wake of supportive state legislation the previous year.

As shown above, while Plaintiff's cited cases may clearly establish the right to free exercise of religion generally, none of those cases deal with the particular context in which Plaintiff's claim arose: namely, school counseling related to a student's expressed gender identity preferences and balancing the needs, views, and wellbeing of the high school student with their parent's religious beliefs or other cultural preferences. Accordingly, the clearly established threshold is not met, because Plaintiff has pointed to no Supreme Court or Fourth Circuit decision involving a Free Exercise claim regarding a school counselor's (1) failure to notify a parent about the student's assertion of preferred gender identity; (2) direction to use the bathroom of the student's preferred gender identity, (3) directing a student to LGBTQ resources during a private counseling session, and (4) advising the student on what to share with her mother for safety or other reasons related to her gender identity based on her parent's religious beliefs or other cultural preferences.

In sum, Amendment would be futile because there are no cases that would allow Mrs. Blair to overcome qualified immunity for the variant right she now asserts, which also <u>was not</u> clearly established at the start of the 2021-2022 school year. Consequently, the individual-capacity original Defendants (Via and Olsen) are entitled to qualified immunity on Count One of the SAC, because Mrs. Blair has not sufficiently alleged that they violated a clearly established right to which she was entitled. Plaintiff's arguments to the contrary in her Opposition therefore fail.

## <u>CONCLUSION</u>

When the Fourth Circuit remanded this case, Mrs. Blair was no longer a party. The remand of Plaintiff Sage's Title IX claim does not give Mrs. Blair a second bite at the apple to rejoin this lawsuit and assert a previously available claim based on the same operative facts/transaction against two individuals (Via and Olsen) who are also no longer parties, or force those former defendants to relitigate a qualified-immunity affirmative defense to which they have been proven

entitled. Allowing amendment now would be futile, unjust, and contravene Fourth Circuit precedent. Through the doctrines of claim and issue preclusion, Plaintiffs already have litigated and lost the right to file any further claim arising from the incidents that occurred at the Appomattox County High School in August 2021 and the right to contest finality on whether Mr. Via and Ms. Olsen have qualified immunity for their part in those events. Furthermore, Via and Olsen would surely have qualified immunity on the merits of the alleged violations in the SAC, making the proposed amendment futile.

For all the above reasons and those stated in Via's Opening Memorandum, as supported by the related briefs of Defendants Appomattox County School Board and Ms. Olsen [ECF Nos. 124, 135], Mr. Via respectfully requests that this Court grant the instant Motion to Strike and/or to Dismiss, officially release Mr. Via from this lawsuit, and enter such other and or further relief as the Court deems appropriate in the interests of justice.

Date: November 18, 2025

/s/ *Andrew Butz*
Andrew Butz (VSB No. 16280)
Heather S. Deane (VSB No. 41895)
Brandi R. Howell (VSB No. 74110)
Charles Y. Sipe (VSB No. 31598)
Patrick J. Crowley (*Pro Hac Vice*)
Kiernan Trebach LLP
1223 20th St. N.W., Suite 800
Washington, D.C. 20046
Tel: 202-712-7000; Fax: 202-712-7100
abutz@kiernantrebach.com
hdeane@kiernantrebach.com
bhowell@kiernantrebach.com
csipe@kiernantrebach.com
pcrowley@kiernantrebach.com
Counsel *for Avery Via*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of November 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mary E. McAlister (VSB No. 76057)
Vernadette R. Broyles (*pro hac vice*)
Ernest G. Trakas (*pro hac vice*)
Child & Parental Rights Campaign, Inc.
P.O. Box 637
Monroe, VA 24574
770-448-4525 - Phone
mmcalister@childparentrights.org
vbroyles@childparentrights.org
etrakas@childparentrights.org

Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Brian P. Ettari (VSB No. 98800)
Counsel for Appomattox County School Board and Dena Olsen
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 – Fax
jcapps@hccw.com
myork@hccw.com
bettari@hccw.com

/s/ *Andrew Butz*
Andrew Butz (VSB No. 16280)