**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| SAGE LILY BLAIR; MICHELE BLAIR, <br>    *Plaintiffs,* <br><br><br> v. <br><br> APPOMATTOX COUNTY SCHOOL BOARD, ET AL., <br>    *Defendants.* | CASE NO. 6:23-CV-00047 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

In 2021, at the start of her freshman year of high school, 14-year-old Sage Blair[1]—who is biologically female—asserted her desire to identify as male; be called by a male name; and be referred to using male pronouns. This case stems from the alleged harassment, threats, and assaults she experienced from other students because of her gender identity, and her school's alleged failure to notify her parents of the events that were taking place at school.

In the original iteration of this case, Sage's mother, Michele Blair ("Mrs. Blair"), sued the Appomattox County School Board ("the School Board"), Annette Bennett, Dena Olsen, Avery Via, and Aneesa Khan (collectively "Defendants") for allegedly: (1) violating her due process right to direct Sage's upbringing; (2) violating her due process right to familial privacy; (3) violating Sage's right to familial privacy; (4) violating Sage's rights under Title IX; (5) conspiring to violate her "fundamental right to custody and control" of Sage; (6) committing legal malpractice (as to Defendant Khan); (7) intentionally interfering with her parental rights in violation of Virginia law;

---

[1]   Plaintiff's briefings refer to Sage Blair as "Sage," and use female pronouns. *See* Dkts. 133, 140. The Court will do the same.

1

(8) intentionally inflicting emotional distress on her; and (9) intentionally inflicting emotional distress on Sage.[2] *See generally*, Dkt. 84. This Court dismissed all of these claims. *See* Dkts. 96, 97, 105, 106. Mrs. Blair appealed, and the Fourth Circuit affirmed the dismissal of all the claims, except for Sage's Title IX claim against the School Board (Count 4).[3] *See Blair v. Appomattox Cnty. Sch. Bd.*, 147 F.4th 484, 487 (4th Cir. 2025).

Following the Fourth Circuit's remand, Sage, who is now an adult, and Mrs. Blair unilaterally filed a Second Amended Complaint without leave of Court or the consent of the opposing parties. Dkt. 121. In the Second Amended Complaint, Sage restates her Title IX claim, and Mrs. Blair adds her own First Amendment claim relying upon *Mahmoud v. Taylor*, 606 U.S. 522, 530 (2025). Defendants move to strike the Second Amended Complaint, arguing that: (1) it violates Federal Rule of Civil Procedure 15 because it was filed without the Court's leave or the consent of the School Board, and (2) Mrs. Blair's newly asserted First Amendment claim: (a) is barred by *res judicata* (b) violates the "mandate rule"; (c) is untimely; and (d) is brought in bad faith. Dkt 124 at 1.[4]

For the following reasons, the Court will dismiss Mrs. Blair's newly asserted First Amendment claim. With regard to Sage's Title IX claim, the First Amended Complaint will remain the operative complaint in this matter. Dkt. 84.

---

[2]     In January 2024, Mrs. Blair amended the initial complaint to remove a reference to Sage's full name, who was a minor at the time. Dkt. 84. Other than that redaction, there is no difference between the original complaint, Dkt. 1, and the amended complaint, Dkt. 84. The amended complaint is the pleading that was considered by the Fourth Circuit, and only the Title IX claim from that pleading was remanded.

[3]     While the appeal was pending, Sage turned 18. As a result, the Fourth Circuit substituted in "Sage Blair" as the Plaintiff for all claims that were brought on her behalf by Mrs. Blair. *See* Dkt. 115.

[4]     As noted *infra*, the Court will construe Defendants' motions as requests to dismiss Mrs. Blair's First Amendment claim.

## I.    BACKGROUND

The facts of this case have been thoroughly detailed by this Court and the Fourth Circuit. *See* Dkt. 105 at 2–8; *see also Blair*, 147 F.4th at 487–491. The Court will not repeat them here. The only new facts—which Mrs. Blair argues support her First Amendment claim—are that Sage allegedly told school employees that her mother was a Christian, and that they instructed her that, "because of her mom's Christian faith," sharing information about her gender identity would be "unsafe." Dkt. 121 ¶¶ 49, 84; Dkt. 133 at 3-4, 16-17.

## II.    LEGAL STANDARDS

### 1. MOTION TO STRIKE

Motions to strike are ordinarily brought pursuant to Federal Rule of Civil Procedure 12(f). That Rule provides that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, Rule 12(f) is not the only basis for striking a pleading. Courts may also strike amended complaints that run afoul of Federal Rule of Civil Procedure 15(a)(2). *See Jiangmen Kinwai Furniture Decoration Co. Ltd v. IHFC Properties, LLC*, 780 F. App'x 1, 2 n.2 (4th Cir. 2019) ("Rule 12(f) is not the only basis for striking a complaint. A district court may also strike a complaint filed without leave of the court in violation of Rule 15(a)(2)."). Here, Defendants move to strike under Rule 15(a)(2) because Mrs. Blair did not: (1) amend her complaint within 21 days of filing it or within 21 days of being served with an answer or a Rule 12(b), (e), or (f) motion, *see* Fed. R. Civ. P. 15(a)(1)(A) and (B); or (2) seek leave of court or obtain the consent of the Defendants, *see* Fed. R. Civ. P. 15(a)(2).

### 2. MOTION TO DISMISS

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of the claims that entitles him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

Affirmative defenses can rarely be raised at the motion to dismiss stage; however, *res judicata* is an exception. *See Chin-Young v. United States*, 774 F. App'x 106, 114, n.3 (4th Cir. 2019). *Res judicata* may be raised under Rule 12(b)(6) "only if it clearly appears on the face of the complaint." *Richmond, Fredericksburg & Potomac R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993); *see also Andrews v. Daw*, 201 F.3d 521, 524, n.1 (4th Cir. 2000). A court "may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews*, 201 F.3d at 524, n.1.

## III.    <u>ANALYSIS</u>

At the outset, the Court notes that the School Board does not dispute Sage's ability to assert her Title IX claim against it. Dkt. 135 at 2. Instead, the Defendants focus their arguments on whether Mrs. Blair should be permitted to assert her newly raised First Amendment claim at this stage in the litigation. Thus, the Court will first address whether *res judicata* bars Mrs. Blair's newly asserted First Amendment claim.[5]

---

[5]    The Court will construe Defendants' motions, as to Mrs. Blair's First Amendment claim, as motions to dismiss under Fed. R. Civ. P. 12(b)(6) rather than motions to strike under Fed. R. Civ. P. 15(a)(2). A motion to strike pursuant to Rule 15(a)(2) does little to move the ball forward.

### 1.  THE NEW FIRST AMENDMENT CLAIM IS BARRED BY *RES JUDICATA*

Under the doctrine of *res judicata*, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (citations omitted) (emphasis added). *Res judicata* prevents litigation of claims that "were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). For the doctrine to apply, there must be: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel*, 369 F.3d at 354-55.

Defendants argue that Mrs. Blair's First Amendment claim should be barred by *res judicata* because: (1) the Court's prior dismissal of Mrs. Blair's claims operated as a final judgment on the merits; (2) the new First Amendment claim arises out of the same core operative facts as her prior claims; and (3) the parties to both actions are the same. Dkt. 124 at 8. Mrs. Blair, on the other hand, argues that none of these elements are met. The Court agrees with Defendants and will address each element in turn.

#### a.  *Final Judgment on the Merits*

For purposes of *res judicata*, a dismissal on a 12(b)(6) motion, unless explicitly identified as a dismissal "without prejudice," is a final judgment on the merits. *McLean v. United States*, 556

---

Although Mrs. Blair certainly failed to comply with Rule 15(a)(2) before filing her Second Amended Complaint, she could simply seek leave of court to refile an amended pleading if the Court struck her Second Amended Complaint on that ground alone. Dismissal of her First Amendment claim skips this unnecessary step in a case that has already been pending for three years. As to the rest of the Second Amended Complaint, the Court will strike those portions pursuant to Rule 15(a)(2).

F.3d 391, 396 (4th Cir. 2009). On June 25, 2024, this Court entered an opinion and order granting the 12(b)(6) motions to dismiss and ordered dismissal of the First Amended Complaint "in its entirety." Dkts. 105, 106. The opinion and order did not state that the dismissal was "without prejudice"; therefore, according to Fourth Circuit precedent, the dismissal was "with prejudice" and operated as a final judgment on the merits. *See Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."). Indeed, Mrs. Blair concedes that the prior dismissal operated as a final judgment. *See* Dkt. 140 at 13 ("In its June 25, 2024, Order[,] this Court dismissed Mrs. Blair's [prior] claims … [c]onsequently, there is a final judgment on the merits for *res judicata* purposes as to those [claims]."). Nevertheless, she argues that *res judicata* is inapplicable because there "[has] not [been] a final judgment on the merits of [her newly asserted] First Amendment claim." *Id.*

This argument, however, misapplies the first element of *res judicata*. The *res judicata* doctrine exists to determine whether a new claim should be barred from being litigated in the first place. This prevents an adversary from being put to the time and expense of re-litigating the merits of a claim that has already been decided or should have been decided. *See Montana v. United States*, 440 U.S. 147, 153–54 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."). Requiring a final adjudication of a new claim would defeat the purpose of *res judicata* by forcing the Court to decide the merits of the claim before determining whether it may be brought at all. That is not the standard. The "final judgment on the merits" requirement refers to the prior action, not to the newly asserted claim. *See*

6

*Younger-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) ("[A] final judgment on the merits bars *further* claims by parties or their privies.") (emphasis added). Because this Court's June 25, 2024 order and opinion operated as a final judgment on the merits of Mrs. Blair's initial claims, the first element of *res judicata* is met.

### b.  *Identity of Causes of Action*

For the second element of *res judicata*, the Fourth Circuit instructs district courts to apply a "transactional" test, which considers whether "the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved in the prior judgment.'" *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 204 (4th Cir. 2013) (quoting *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999)). Under this approach, *res judicata* will bar a "'newly articulated claim[]' if it is based on the same underlying transaction and could have been brought in the earlier action." *Id.* at 210 (citing *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008)). To determine whether the causes of action stem from the same transaction or series of transactions, courts consider factors such as "whether the facts are related in time, space, origin, or motivation." *Anayanwutaku v. Fleet Mortg. Group, Inc.*, 85 F. Supp. 566, 571 (D. Md. 2000).

The record leaves no doubt that Mrs. Blair's prior substantive due process claims and her new First Amendment claim arise from events that took place at Appomattox County High School between August 10, 2021 and August 25, 2021. Her prior claims and new claim are based on alleged facts involving the school guidance counselors' advice and interactions with Sage concerning her gender identity, their instruction that she should use the boys' restroom, and their alleged failure to notify Mrs. Blair of these events. *See* Dkt. 84 ¶ 2; Dkt. 121 ¶¶ 95-96. Indeed,

Mrs. Blair, herself, acknowledges that "both sets of claims arose during Sage['s] enrollment at ACHS in August 2021." Dkt. 140 at 17.

Nevertheless, Mrs. Blair argues that this element of *res judicata* is not met because (1) the specific "operative facts" giving rise to her First Amendment claim, "were not known or available to [her] at the time [she filed] the original complaint" in 2023; and (2) her First Amendment claim "was not fully recognized until the [Supreme Court's *Mahmoud v. Taylor*] decision was announced on June 27, 2025." *Id.* at 15; Dkt. 133 at 16; 606 U.S. 522 (2025).

### i. Unknown or Unavailable Facts

"Actual knowledge of a potential claim [] is not a requirement for application of *res judicata* principles." *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996). "For purposes of res judicata, it is not necessary to ask if the plaintiff knew of [her] present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls." *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986); *see also L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) ("Plaintiff's discovery of additional facts following entry of [judgment] does not block the application of *res judicata*" when the "facts and events themselves arose prior to the filing of the original complaint.").

According to Mrs. Blair, her First Amendment claim is "based on Sage's newly recalled details" of conversations Sage had with Olsen and Via where she told them that her mother was a "Christian" and they instructed her that "because of her mom's Christian faith," sharing information about her gender identity would be "unsafe." Dkt. 133 at 3, 16-17. Mrs. Blair alleges that, when the initial complaint was filed in August 2023, Sage "could not provide [her] with detailed recollections" of these conversations, because she was "undergoing therapy for the trauma" she had experienced and suffered from "Complex PTSD." Dkt. 140 at 7, 16. It was not

until the "summer of 2025" that Sage allegedly recalled the specific details that purportedly give rise to Mrs. Blair's First Amendment claim. *Id.*

Mrs. Blair argues that, without knowledge of these facts, it was impossible for her to allege a claim based upon a violation of her First Amendment right to direct her child's religious upbringing. Dkt. 133 at 16-17. She contends that she had no way of knowing that the "Defendants' [knew] of [her] religious beliefs" or that they instructed Sage to withhold information from her based on those beliefs. *Id.* at 17.

This argument, however, relates to Mrs. Blair's *lack of awareness* of certain facts, but not the *existence* of those facts. "[A]wareness" of facts is not a requirement for this element to be met—the proper question is not whether Mrs. Blair was *aware* of the facts giving rise to her First Amendment claim; rather, it is whether these facts *existed* at the time she filed her initial complaint. *Harnett*, 800 F.2d at 1313. Here, there is no question they did. The conversations between Sage, Via and Olsen, regarding Mrs. Blair's religion, took place in August 2021—two years before she filed her initial complaint. Dkt. 133 at 3. Mrs. Blair concedes this point. Dkt. 133 at 3. ("The First Amendment claim is … based on … August 2021 conversation with District staff, Olsen and Via."). The law is clear that later "discovery of additional facts" pertaining to events that took place "prior to the filing of the initial claims" will not preclude the application of *res judicata*. *Cougar Elec. Org., Inc.*, 198 F.3d at 88.[6] Therefore, this argument fails.

---

[6]    The Court notes that, "[a]n exception to the general principle that lack of knowledge will not avoid the application of *res judicata* is found in cases where fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action." *Harnett*, 800 F.2d at 1313. Mrs. Blair does not allege that she was unable to assert her First Amendment claim at the time she filed her initial complaint because the Defendants fraudulently withheld or concealed from her the specific details of the conversations between Via, Olsen and Sage. Instead, Mrs. Blair contends that her failure to assert her claim was due to lack of discovery, voluntary disclosure, and/or Sage's inability to recall the details of those conversations. Dkt. 140 at 14. For this reason, no exception will apply.

Moreover, even absent these alleged newly recalled facts, Mrs. Blair could have asserted a First Amendment claim at the time she filed her initial complaint. She cites no authority suggesting that, as a prerequisite to bringing a First Amendment claim based on violations of a parent's right to direct their child's religious upbringing, the violator must know about the parent's religious beliefs or that the parent must know about the violator's knowledge. The relevant inquiry is not whether Olsen or Via knew about Mrs. Blair's religious beliefs or whether Mrs. Blair knew that they knew, but whether Mrs. Blair believed their actions violated her rights under the Free Exercise Clause. A Free Exercise claim ripens when a public school "submits [a child] to instruction that poses a very real threat of undermining the religious beliefs and practices that the parents wish to instill." *Mahmoud*, 606 U.S. 522, 530 (2025). Accordingly, Mrs. Blair's claim existed the minute Appomattox County High School or its employees instructed or encouraged Sage to behave in a way that undermined Mrs. Blair's religious beliefs. Simply put, Mrs. Blair did not need Sage's newly recalled facts to assert her First Amendment claim.[7]

### ii. Effects of *Mahmoud v. Taylor* on the Application of *Res Judicata*

Next, Mrs. Blair argues that the second element is not met because her First Amendment claim "was not fully recognized until the *Mahmoud* decision was announced on June 27, 2025." Dkt. 133 at 16. This argument fails for two reasons. First, assuming for argument's sake, that *Mahmoud* constitutes a change in the law, it is well-settled in the Fourth Circuit that "an intervening change in case law" will "almost never warrant[] an exception to the application of *res*

---

[7]    Apart from the allegations pertaining to her religion, the remaining facts she alleges to support her First Amendment claim are nearly identical to the facts she alleged to support her prior substantive due process claims—*i.e.*, failing to notify her regarding Sage's adopted male identity; using male pronouns when referring to Sage; directing Sage to use the boys' restroom; and referring Sage to websites and social media sites that promote transgender ideas. *See* Dkt. 121 ¶ 95; Dkt. 84 ¶¶ 2, 42. This further supports the conclusion that Mrs. Blair's claim existed as of August 2021.

*judicata.*" *Clodfelter*, 720 F.3d at 211 (explaining that an exception might exist where there has been a change in statutory law). *Res judicata* is not undone simply because subsequent case law develops or clarifies existing principles.

Second, and with that said, *Mahmoud* does not represent an intervening change in the law. The Court in *Mahmoud* expressly acknowledged that the parental right to direct the religious upbringing of a child is not a new right. *See Mahmoud*, 606 U.S. at 547 ("[W]e have long recognized the rights of parents to direct 'the religious upbringing' of their children" and have also recognized "limits on the government's ability to interfere with a student's religious upbringing in a public school setting." (citations omitted)). Indeed, Mrs. Blair herself concedes that "*Mahmoud* did not establish new precedent," but instead "re-established pre-existing law concerning a parent's free exercise rights in the public-school setting." Dkt. 140 at 3 n. 2, 18. She goes on to correctly explain that "*Mahmoud* provides authoritative guidance on the scope of parental religious liberty under the First Amendment in the public school setting" and "draw[s] on longstanding precedent such as *Yoder*, 406 U.S. 205, and *Barnette*, 319 U.S. 624," to do this. Dkt. 140 at 22.

Although *Mahmoud* may bolster Mrs. Blair's First Amendment claim, it does not establish a new legal right, such that she could not have raised her claim prior to *Mahmoud's* existence. In fact, she cites other cases in support of her First Amendment claim that predate *Mahmoud*. *See* Dkt. 121 ¶¶ 88, 92 (citing to *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 486 (2020); *Wisconsin v. Yoder*, 406 U.S. 205, 211, 218 (1972)). Her reliance on *Espinoza* and *Yoder* further demonstrates that she could have raised her claim when she filed her complaint in 2023—two years before *Mahmoud* was decided. Accordingly, the Court is not persuaded by Mrs. Blair's "new law" argument.

Because Mrs. Blair's prior claims and her new claim are "based on the same underlying transaction[s]" that took place at Appomattox County High School between August 10 and August 25, and because her new First Amendment claim "could have been brought in the earlier action," the second element of *res judicata* has been satisfied. *Clodfelter*, 720 F.3d at 210.

### c. *Identity of Parties*

Finally, Mrs. Blair argues that the third element of *res judicata* is not satisfied because "some of the same parties" are listed in her new claim, but "not all" parties are the same. Dkt. 140 at 17. Specifically, she asserts that although Dr. Annette Bennett was named a party to the initial claims, she is not named as a party to her new First Amendment claim. *Id.* Mrs. Blair, however, cites no case law supporting her theory that *res judicata* cannot apply when a party to the original suit is omitted from the new suit.

Indeed, the law says otherwise. For claim preclusion to apply to a particular party, "that party must have been a party to the earlier action." *Riley v. Murdock*, 828 F. Supp. 1215, 1223 (E.D.N.C. 1993) (citing *Martin v. Wilks*, 490 U.S. 755 (1989)); *Klugh v. United States*, 818 F.2d 294 (4th Cir. 1987)); *see also Hall v. St. Mary's Seminary & Univ.*, 608 F. Supp. 2d 679, 685 (D. Md. 2009) (noting that mere "roster changes" will not defeat the identity of parties requirement when an additional named party in the prior suit is no longer a party in the new suit). Here, Mrs. Blair asserts her First Amendment challenge against the School Board, Via, and Olsen, all of whom were parties to the prior proceedings. The mere absence of Dr. Bennett as a defendant does not change the fact that Mrs. Blair has already litigated these issues against the School Board, Via, and Olsen. Accordingly, the third element of *res judicata* is satisfied.

Because each element of *res judicata* has been met, Mrs. Blair's First Amendment claim is barred and must be dismissed.

### 2. THE MANDATE RULE ALSO PRECLUDES MRS. BLAIR'S FIRST AMENDMENT CLAIM

In addition to being barred by *res judicata*, the First Amendment claim exceeds the scope of the Fourth Circuit's mandate. The mandate rule "generally bars litigation of issues that could have been, but were not, raised before remand." *United States v. Hawkins*, 599 Fed. Appx. 485, 488 (4th Cir. 2015). In other words, "under the mandate rule[,] a remand proceeding is not the occasion for raising new arguments or legal theories." *Id.* (quoting *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007)). Rather, the district court "is restricted in the range of issues it may consider on remand." *United States v. Stein*, 964 F.3d 1313, 1324 (11th Cir. 2020); *see also Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) ("The mandate rule likewise restricts the district court's authority on remand from the court of appeals. First, 'any issue conclusively decided by this court on the first appeal is not remanded,' and second, 'any issue that could have been but was not raised on appeal is waived and thus not remanded.'").

Here, the Fourth Circuit remanded only Sage's Title IX claim against the School Board. Dkt. 115 at 14. In doing so, it affirmed the dismissal of all of Mrs. Blair's claims, as well as all claims brought against Via and Olsen. Consequently, Mrs. Blair, Via, and Olsen are no longer parties to this case. Mrs. Blair cannot enlarge this case following remand because that would encourage piecemeal litigation and repetitive appeals.[8] *See Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 345 (4th Cir. 2005); *see also Stein*, 964 F.3d at 1324 ("the mandate rule . . . discourage[s]

---

[8]    The Court acknowledges that there are exceptions to the Mandate rule, which include circumstances where "(1) a litigant can demonstrate that the legal landscape has dramatically changed, (2) significant new evidence has come to light, or (3) a 'blatant error in the prior decision will, if uncorrected, result in a serious injustice." *Hawkins*, 599 Fed. Appx. at 488. For the reasons discussed earlier in this opinion, there has not been a dramatic shift in the legal landscape or significant new evidence, such that an exception would be warranted. Neither do the parties argue that a "blatant error in the prior decision" warrant's exception. *Id.*

13

precisely this type of inefficient, piecemeal litigation."). This is yet another reason to dismiss the new First Amendment claim.[9]

### IV. CONCLUSION

For the reasons stated above, the Court will dismiss Mrs. Blair's First Amendment claim. Pursuant to the Fourth Circuit's remand, the only remaining claim in this litigation is Sage's Title IX claim against the Appomattox County School Board. (Count IV of the First Amended Complaint, Dkt. 84). With regard to the Title IX claim, the First Amended Complaint will remain the operative complaint in this matter. Dkt. 84. To the extent Sage believes she is not properly listed as a party in the First Amended Complaint, she may file a motion to substitute in "Sage Blair" as the Plaintiff for her Title IX claim against the School Board.

The Court will strike the remaining portions of the Second Amended Complaint, Dkt. 121, pursuant to Rule 15(a)(2).

A separate Order will follow.

Entered this 20th day of March, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] Because the First Amendment claim is barred by both the doctrine of *res judicata* and the mandate rule, the Court need not address whether the claim is brought in bad faith.